REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1

COOLEY LLP
HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
MARK R. WEINSTEIN (193043)
(mweinstein@cooley.com)
MATTHEW J. BRIGHAM (191428)
(mbrigham@cooley.com)
LOWELL D. MEAD (223989)
(lmead@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone: (650) 843-5000
Facsimile:  (650) 849-7400

Attorneys for Defendants
FACEBOOK, INC., WHATSAPP
INC., INSTAGRAM, INC., and
INSTAGRAM, LLC

COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
101 California Street
5th Floor
San Francisco, CA  94111-5800
Telephone: (415) 693-2000
Facsimile:  (415) 693-2222

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BLACKBERRY LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK INC., WHATSAPP INC., INSTAGRAM, INC., and INSTAGRAM, LLC,<br><br>Defendants. | Case No.  2:18-cv-01844-GW-KS<br><br>*[Assigned to the Hon. George H. Wu]*<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**<br><br>DATE:  August 2, 2018<br>TIME: 8:30 a.m.<br>COURTROOM: 9D<br>JUDGE:  Hon. George H. Wu |

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

MEMO. OF POINTS AND AUTHORITIES ISO
DEFENDANTS' MOTION TO DISMISS
Case No.  2:18-cv-01844-GW-KS

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     MOTION TO DISMISS COUNTS II, VII, VIII, AND IX (35 U.S.C. § 101) ...................................................................................................................... 3

        A.      BACKGROUND ........................................................................................ 3

                1.      The '351 Patent ............................................................................. 3

                2.      The '929 Patent ............................................................................. 4

                3.      The '634 Patent ............................................................................. 4

                4.      The '120 Patent ............................................................................. 5

        B.      LEGAL STANDARD ................................................................................ 6

        C.      ARGUMENT ............................................................................................ 7

                1.      Alice Step One – The Patents Are Directed to Patent-Ineligible Abstract Ideas ................................................................ 7

                        a.      The claims of the '351 and '929 patents are directed to the abstract idea of sending advertisements to users based on triggering events. ..................................................... 7

                        b.      The '634 patent claims are directed to the abstract idea of displaying information regarding unread messages. .......................................................................... 12

                        c.      The claims of the '120 patent are directed to the abstract idea of silencing message notifications. ............... 14

                2.      Alice Step Two – The Claims of Blackberry's Patents Recite No Inventive Concept ................................................................ 16

                3.      Determination of Invalidity Under 35 U.S.C. § 101 Is Appropriate On A Rule 12(b)(6) Motion To Dismiss ................. 19

III.    MOTION TO DISMISS (INDIRECT AND WILLFUL INFRINGEMENT) ............................................................................................... 22

        A.      Plaintiff has Failed to Plead Pre-Suit Notice of the Asserted Patents .... 22

        B.      Plaintiff Also Fails to Plead Facts Sufficient to Satisfy the "Egregiousness" Element of Willful Infringement ................................. 25

IV.     CONCLUSION ................................................................................................. 25

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

i.

MEMO. OF POINTS AND AUTHORITIES ISO
DEFENDANTS' MOTION TO DISMISS
Case No.  2:18-cv-01844-GW-KS

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*3G Licensing, S.A. et al. v. Blackberry Ltd., et al.*,
No. 17-cv-0082 (D. Del. March 22, 2018) ............................................................ 21

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
883 F.3d 1121 (Fed. Cir. 2018) ............................................................................ 20

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
838 F.3d 1253 (Fed. Cir. 2016) ...................................................................*passim*

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
838 F.3d 1266 (Fed. Cir. 2016) ......................................................................... 8, 9

*Alice Corp. v. CLS Bank Int'l*,
134 S. Ct. 2347 (2014).................................................................................*passim*

*Apple, Inc. v. Ameranth, Inc.*,
842 F.3d 1229 (Fed. Cir. 2016) ............................................................................ 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................... 20, 21

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016) .......................................................................... 16

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018) ..................................................................... 20, 21

*Bilski v. Kappos*,
561 U.S. 593 (2010)............................................................................................ 19

*buySAFE, Inc. v. Google, Inc.*,
765 F.3d 1350 (Fed. Cir. 2014) .......................................................................... 19

*Chalumeau Power Sys. LLC v. Alcatel–Lucent*,
No. 11-cv-1175, 2012 WL 6968938 (D. Del. July 18, 2012) ............................. 23

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
859 F.3d 1352 (Fed. Cir. 2017) .......................................................................... 19

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Commil USA, LLC v. Cisco Sys., Inc.*,
 135 S. Ct. 1920 (2015)..................................................................................... 22

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l
 Ass'n*,
 776 F.3d 1343 (Fed. Cir. 2014) ............................................................... 3, 19

*CyberSource Corp. v. Retail Decisions, Inc.*,
 *654 F.3d 1366 (Fed. Cir. 2011)*............................................................... 10

*DDR Holdings, LLC v. Hotels.com, L.P.*,
 773 F.3d 1245 (Fed. Cir. 2014) ............................................................... 18

*Dealertrack, Inc. v. Huber*,
 674 F.3d 1315 (Fed. Cir. 2012) ............................................................... 19

*Elec. Power Grp., LLC v. Alstom S.A.*,
 830 F.3d 1350 (Fed. Cir. 2016) ......................................................*passim*

*Emazing Lights LLC v. De Oca*,
 No. 15-cv-1561, 2016 WL 7507765 (C.D. Cal. June 20, 2016) ............................. 25

*Enfish, LLC v. Microsoft Corp.*,
 822 F.3d 1327 (Fed. Cir. 2016) ...................................................... 11, 15

*Exergen Corp. v. Kaz USA, Inc.*,
 Nos. 2016-2315 & 2016-2341, 2018 WL 1193529 (Fed. Cir. Mar. 8,
 2018) ...................................................................................................... 20

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
 839 F.3d 1089 (Fed. Cir. 2016) ................................................... 2, 14, 15

*Genetic Techs. Ltd. v. Merial L.L.C.*,
 818 F.3d 1369 (Fed. Cir. 2016) ............................................................... 19

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
 136 S. Ct. 1923 (2016)................................................................... 22, 25

*I/P Engine, Inc. v. AOL Inc.*,
 576 F. App'x 982 (Fed. Cir. 2014) ......................................................... 20

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iii.

MEMO. OF POINTS AND AUTHORITIES ISO
DEFENDANTS' MOTION TO DISMISS
Case No.  2:18-cv-01844-GW-KS

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Immersion Corp. v. Fitbit, Inc.*,
No. 17-cv-3886, 2018 WL 1156979 (N.D. Cal. Mar. 5, 2018)............................. 18

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015) ....................................................7, 8, 9, 15

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
850 F.3d 1332 (Fed. Cir. 2017) ........................................................... 7, 13

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
850 F.3d 1315 (Fed. Cir. 2017) ...................................................................11

*Int'l Designs Corp., LLC, et al. v. Hair Art Int'l, Inc.*,
No. 17-cv-8411 (C.D. Cal. Apr. 19, 2018)......................................20, 25

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) .................................................................24

*Maxell, Ltd. v. Blackberry Corp.*,
No. 17-cv-1446 (D. Del. Feb. 9, 2018) .............................................. 1, 17

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
132 S. Ct. 1289 (2012)...............................................................................6

*Morsa v. Facebook Inc.*,
77 F. Supp. 3d 1007 (C.D. Cal. 2014).......................................................8

*OIP Techs., Inc. v. Amazon.com, Inc.*,
788 F.3d 1359 (Fed. Cir. 2015) ...............................................................19

*Parker v. Flook*,
437 U.S. 584 (1978)................................................................................12

*Puma SE v. Forever 21, Inc.*,
No. 17-cv-2523, 2017 WL 4771004 (C.D. Cal. June 29, 2017) ............................22

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
855 F.3d 1322 (Fed. Cir. 2017) ...............................................................21

*Smartflash LLC v. Apple Inc.*,
680 Fed. App'x 977 (Fed. Cir. 2017) .......................................................9

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iv.

**MEMO. OF POINTS AND AUTHORITIES ISO
DEFENDANTS' MOTION TO DISMISS
Case No. 2:18-cv-01844-GW-KS**

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Soteria Encryption, LLC v. Lenovo U.S., Inc. et al.*,
No. 16-cv-7958, 2017 WL 3449058 (C.D. Cal. Feb. 27, 2017) ............................. 22

*Spherix Inc. v. Juniper Networks, Inc.*,
No. 14-cv-0578, 2015 WL 1517508 (D. Del. Mar. 31, 2015) ................................ 23

*Telesaurus VPC, LLC v. Power*,
623 F.3d 998 (9th Cir. 2010) ................................................................................ 21

*In re TLI Commc'ns LLC Patent Litig.*,
823 F.3d 607 (Fed. Cir. 2016) .................................................................. 12, 15, 16

*TS Patents LLC v. Yahoo! Inc.*,
279 F. Supp. 3d 968 (N.D. Cal. 2017) .................................................................. 11

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017) .................................................................. 3, 13, 21

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014) ............................................................................ 8, 16

*Van Buskirk v. Cable News Network, Inc.*,
284 F.3d 977 (9th Cir. 2002) ................................................................................ 24

*Voter Verified, Inc. v. Election Sys. & Software, LLC*,
887 F.3d 1376 (Fed. Cir. 2018) ......................................................................... 2, 20

**Statutes**

35 U.S.C. § 101 ............................................................................................... *passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ..................................................... *passim*

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

v.

**MEMO. OF POINTS AND AUTHORITIES ISO
DEFENDANTS' MOTION TO DISMISS
Case No.  2:18-cv-01844-GW-KS**

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## I.    INTRODUCTION

Four of Blackberry's patents are directed at ineligible ancient communication concepts—who gets a message, how it is sent, and the manner of notification.  None of the patents solve a specific technological problem.  Rather, they take abstract concepts and apply them "on a computer."  This is not enough to be patent-eligible.  Blackberry, when acting as a defendant in other courts, has perhaps said it best—"[a]ppending generic devices to otherwise abstract ideas is not a magic bullet . . . ."[1]

With this motion, Defendants Facebook, Inc., WhatsApp Inc., and Instagram, LLC[2] (collectively, "Defendants") move to dismiss under Federal Rule of Civil Procedure 12(b)(6) all claims related to four of Blackberry's nine asserted patents:  U.S. Patent Nos. 8,296,351 ("the '351 patent"); 8,676,929 ("the '929 patent"); 8,209,634 ("the '634 patent"); and 9,349,120 ("the '120 patent") (Counts II, VII, VIII, and IX).[3] The patents are invalid under 35 U.S.C. § 101 and the Supreme Court's two-part test in *Alice Corp. v. CLS Bank International*, 134 S. Ct. 2347 (2014).

The '351 and '929 patents are directed to the abstract idea of sending advertisements or other information to users based on a "triggering event," like a time or location.  But businesses have been promoting products and services in this manner for generations, such as sending coupons for a free dessert on your birthday or handing you a coupon when you walk by a certain store.

The claims of the '634 and '120 patents are equally abstract, as they are directed to the abstract ideas of displaying or silencing message notifications.  The '634 patent claims the concept of displaying a count of senders that have sent unread messages (*e.g.* "Two people have been trying to reach you—your mom called and your boss called three times"), while the '120 patent claims silencing notifications for certain messaging

---

[1] Defs.' Reply Br. in Supp. of Mot. to Dismiss at 6, *Maxell, Ltd. v. Blackberry Corp., et al.* ("*Maxell*"), No. 17-cv-1446 (D. Del. Feb. 9, 2018) ECF No. 18.
[2] Instagram, Inc. is no longer an active corporation, but joins this motion if necessary.
[3] Although Defendants move to dismiss only these four patents at this juncture, the remaining five patents also fail to claim patent eligible subject matter.  Defendants will address the numerous validity issues—including issues arising under Sections 101, 102, 103, 112—of the remaining patents at the appropriate stage.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1.

MEMO. OF POINTS AND AUTHORITIES ISO
DEFENDANTS' MOTION TO DISMISS
Case No.  2:18-cv-01844-GW-KS

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

threads (*e.g.* "Hold any calls about the Facebook matter and tell me about those later."). Both of these functions have long been part of human communication. None of the patents recite anything beyond conventional technologies to implement the concepts— wireless or mobile devices, servers, messaging applications, and the like. And none improve the technology in any way.

District courts have routinely held that claims similar to these are patent-ineligible on motions to dismiss, and the Federal Circuit has routinely affirmed these rulings. The Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016) (internal quotation and citation omitted); *Voter Verified, Inc. v. Election Sys. & Software, LLC*, 887 F.3d 1376, 1384 (Fed. Cir. 2018). Thus, for the reasons set forth below, Defendants respectfully request that the Court grant their motion to dismiss Counts II, VII, VIII, and IX and rule that the '351, '929, '634 and '120 patents are invalid under 35 U.S.C. § 101.

In addition, Plaintiff's allegations of willful and indirect infringement in all Counts must be dismissed because the Complaint is devoid of any factual support for an essential element of these claims – pre-suit knowledge of the patents. Instead, for six of the nine patents Plaintiff relies on a single conclusory allegation that Defendants have had knowledge of the patents "since at least as early as the filing and/or service of this Complaint." (Compl. for Patent Infringement, ECF No. 15 ("FAC") ¶¶ 204, 234, 263, 290, 315, 334.) For the seventh patent ('173 Patent), Plaintiff adds an irrelevant allegation about indirect notice through the USPTO during prosecution of three Facebook patent applications. (*See* FAC ¶ 178.) For the remaining two patents, Plaintiff relies on legally irrelevant communications covered by a non-disclosure agreement between the parties. (*See* Defs.' Req. for Judicial Notice, Ex. A ("NDA"); FAC, ¶¶ 8, 122, 149.) Because none of these allegations sufficiently allege pre-suit knowledge of the patents, Plaintiff's claims of willful and indirect infringement must be dismissed.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

2.

MEMO. OF POINTS AND AUTHORITIES ISO
DEFENDANTS' MOTION TO DISMISS
Case No.  2:18-cv-01844-GW-KS

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## II.    MOTION TO DISMISS COUNTS II, VII, VIII, AND IX (35 U.S.C. § 101)

### A.    BACKGROUND

#### 1.    The '351 Patent

The '351 patent relates to "pushing information" based on location or some other "triggering event." ('351 patent (Ex. K to FAC), claims 1, 14.)  The FAC asserts claims 1 and 14.  Claim 1 is representative[4]:

> 1. A system for pushing information to a mobile device comprising:
>
> a proxy content server that receives information over a computer network from an information source and stores the information to one of a plurality of channels based on pre-defined information categories, wherein the plurality of channels comprise memory locations included in at least one of the proxy content server or a proxy content server database;
>
> the proxy content server to receive a feedback signal over a wireless network that indicates a position of the mobile device, and to use the feedback signal to select a channel for transmission of the information from the selected channel over the wireless network to the mobile device, wherein the information comprises at least one of static advertising information, dynamic advertising information, default advertising information, or content information, and wherein a combination of the static advertising information with one of the dynamic or default advertising information comprises an advertisement or an information bulletin.

('351 patent, claim 1 at 14:8-28.)  Claim 14 is identical, except that it calls for the selection of a channel "in response to a triggering event" rather than location.  (*Id.*, claim 14 at 15:18-19.)  The dependent claims only add *where* the information comes from and is stored (mobile device [2], base station [3], Internet [4, 16], WWW server [6, 18], server database [9, 21], plurality of sources [10, 22], software modules [12, 24], operating systems [13]), *when* it is sent (regular intervals [7, 19], automatically [8, 20], or at a given time [15]), or *what* it contains (particular advertisers [5, 17] or formatted data packets [11, 23]).  None of these limitations change the patentability analysis.

---

[4] The Federal Circuit has held that it is enough to analyze a "representative claim" under Section 101 when, as here, the claims are substantially similar and linked to the same abstract idea.  *See, e.g., Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (applying *Alice* framework to "representative claims" resulting in a finding of invalidity under Section 101).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

3.

MEMO. OF POINTS AND AUTHORITIES ISO
DEFENDANTS' MOTION TO DISMISS
Case No.  2:18-cv-01844-GW-KS

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

### 2.      The '929 Patent

The '929 patent is a continuation of the '351 patent and shares the same written description.  The '929 patent claims require that the event triggering the content push be a "time triggering event."  For example, claim 1 requires:

> 1. A method for pushing information to a mobile device, the method comprising:
>
> detecting a triggering event comprising a time triggering event;
>
> determining, by a server, information relevant to the detected triggering event from among information stored in one of a plurality of memory location channels, wherein the information is stored in the one of the plurality of memory location channels based on a category of the information matching a pre-defined category of the one of the plurality of memory location channels;
>
> when the information relevant to the detected triggering event comprises content information, inserting to the content information, by the server, a meta tag for one or more advertisements to be displayed with the content information, wherein the meta tag identifies the one or more advertisements and advertisement display requirements, and wherein the one or more advertisements are selected based on the detected triggering event; and
>
> transmitting the content information that includes the meta tag to the mobile device.

('929 patent (Ex. L to FAC), claim 1 at 14:11-31.)  Claim 9 is an equivalent "server" claim.  The remaining claims are nothing of substance, merely calling out *what* is sent (types of advertisements [2, 4, 8, 10, 12, 16], meta tag types [6, 14]) and *when* it is sent (mealtime [3, 11], pre-established time [5, 13], repeatedly [7, 15]).

### 3.      The '634 Patent

The '634 patent relates to the display of a count of message correspondents (senders) who have sent unread messages by "visually modif[ying]" an "application's icon."  ('634 patent, Abstract.)  In other words, "please tell me how many people sent me messages".   Independent claims Claim 1 reads[5]:

> 1. A method of providing notifications of unread messages on a wireless communication device, comprising:
>
> displaying at least one icon relating to electronic messaging on a graphical user interface of the wireless communication device;

---

[5] The FAC asserts claims 1, 5-7, 11-13, 17 and 18 of the '634 patent.  (FAC ¶ 144.)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

4.

MEMO. OF POINTS AND AUTHORITIES ISO
DEFENDANTS' MOTION TO DISMISS
Case No.  2:18-cv-01844-GW-KS

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

receiving a plurality of electronic messages on the wireless communication device, the plurality of electronic messages including messages from a plurality of different messaging correspondents; and

in response to receiving at least one of the plurality of electronic messages, visually modifying at least one displayed icon relating to electronic messaging to include a numeric character representing a count of the plurality of different messaging correspondents for which one or more of the electronic messages have been received and remain unread.

('634 patent (attached to the FAC as Ex. B), claim 1 at 11:13-28.)   The other independent claims (*i.e.*, 7 and 13) claim systems paralleling the method of claim 1. The dependent claims add obvious ways to view and interact with the icon or message, such as being "selectable" (claims 2, 4, 8, 10, 14, 16) and displaying a "count," "identifier," or "preview" (claims 3, 5, 6, 9, 11, 12, 15, 17, 18).

### 4.    The '120 Patent

The '120 patent relates generally to silencing message notifications, and more specifically to allowing a user to "select to silence a message thread" such that "the user will no longer receive notifications of new messages added to the thread." ('120 patent (attached to the FAC as Ex. G), Abstract.)  In other words, "hold calls on the Facebook matter and just take a note."

Claim 24 which is representative of the rest of the claims recites:

24. A non-transitory computer readable medium comprising processing instructions which when executed by a data processor cause the data processor to perform a method for silencing notifications for incoming electronic messages to a communication system, the method comprising:

receiving one or more selected message threads for silencing;

in response to receiving the one or more selected message threads, activating one or more flags, each flag in association with a selected message thread of the one or more selected message threads, wherein the one or more flags indicate that the associated one or more selected message threads have been silenced;

receiving a new incoming electronic message;

identifying the new incoming message as associated with the selected one or more message threads;

determining that a message thread associated with the new incoming message has been flagged as silenced using the one or more flags;

overriding at least one currently-enabled notification setting to prevent

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

5.

MEMO. OF POINTS AND AUTHORITIES ISO
DEFENDANTS' MOTION TO DISMISS
Case No.  2:18-cv-01844-GW-KS

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

a notification pertaining to receipt of the new incoming message from being activated; and

displaying the new incoming electronic message in an inbox together with any message thread not flagged as silenced, while silencing any further notifications pertaining to receipt of the new incoming electronic message;

wherein the new incoming message thread flagged as silenced is displayed in the inbox in a different manner than any message thread not flagged as silenced.

('120 patent, claim 24 at 18:35-64.)  The other independent claims (*i.e.*, 1 and 13) claim systems and methods paralleling claim 24.  The other remaining dependent claims add obvious types of messaging (group [2, 14], wireless [9]), ways to display and store [4-6, 10-12, 16-18, 21-23] and ways to silence and unsilence (user specific [3, 15], unflagging [7, 8, 19, 20]).

## B.   LEGAL STANDARD

The Supreme Court in *Alice* set out a two-step test for addressing challenges to claims under 35 U.S.C. § 101.  *Alice*, 134 S. Ct. at 2355.  First, the court determines whether the claims "are directed to a patent-ineligible concept," such as an abstract idea. *Id.*  If the court finds the heart of the claims to be abstract, it then proceeds to the second step to determine whether "the elements of each claim both individually and as an ordered combination . . . transform the nature of the claim into a patent-eligible application."  *Id.* (internal quotation and citation omitted).  To survive the second step, a claim must include "additional features" ensuring that the claim does "more than simply stat[e] the abstract idea while adding the words 'apply it.'"  *Id.* at 2357 (internal quotations, citation and brackets omitted).  A claim that adds only "well-understood, routine, conventional activity" does not constitute an "inventive concept."  *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012).  In the context of computer-related claims, "if a patent's recitation of a computer amounts to a mere instruction to implement an abstract idea on a computer, that addition cannot impart patent eligibility."  *Alice*, 134 S. Ct. at 2348 (internal quotations, citation, ellipses and brackets omitted).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

6.

MEMO. OF POINTS AND AUTHORITIES ISO
DEFENDANTS' MOTION TO DISMISS
Case No.  2:18-cv-01844-GW-KS

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## C.    ARGUMENT

### 1.    *Alice* Step One – The Patents Are Directed to Patent-Ineligible Abstract Ideas

The first step looks holistically at the claims' overall "focus" and "character as a whole." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). Only at the second step—the search for an inventive concept—does the court look "more microscopically" at the claim limitations. *Id.* at 1354.

The Federal Circuit has explained that for computer-based claims, the first step of *Alice* asks whether the claims focus on a "specific means or method that improves the relevant technology," which may pass muster under Section 101, or on a "result or effect that itself is the abstract idea and merely invoke[s] generic processes and machinery," which cannot. *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016) (internal quotation marks and citation omitted). The claims at issue here fall squarely within the latter category.

#### a.    The claims of the '351 and '929 patents are directed to the abstract idea of sending advertisements to users based on triggering events.

"Stripped of excess verbiage," the claimed concept of the '351 and '929 patents is straightforward. *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1256-57 (Fed. Cir. 2016) ("*Affinity/DIRECTV*"); *see also Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1339 (Fed. Cir. 2017) ("*IV/Capital II*"). These two patents call for advertisements or other information to be sent (or "pushed") to users following a triggering event. Courts have consistently held that providing advertising or other content based on "information known about the user" is a "'fundamental . . . practice long prevalent in our system . . . .'" *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) ("*IV/Capital I*") (quoting *Alice*, 134 S. Ct. at 2356). For example, the Federal Circuit has observed that "[t]here is no dispute that newspaper inserts had often been tailored based on information known about the customer—for example, a newspaper might advertise based on the customer's location.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Providing this minimal tailoring—*e.g.,* providing different newspaper inserts based upon the location of the individual—is an abstract idea." *Id.* Similarly, providing content based on time of day "is also an abstract, overly broad concept long-practiced in our society. There can be no doubt that television commercials for decades tailored advertisements based on the time of day during which the advertisement was viewed." *Id.* at 1370; *see also, e.g.*, *Morsa v. Facebook Inc.*, 77 F. Supp. 3d 1007, 1014 (C.D. Cal. 2014) (invalidating claims directed to abstract ideas of "targeting advertisements to certain consumers, and using a bidding system to determine when and how advertisements will be displayed"); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (invalidating claims directed to "the abstract idea of showing an advertisement before delivering free content").

The claims of the '351 patent select the appropriate advertisement based on the location of the user's wireless device (cellphone). But using location-related information and access rules to selectively transmit content are also abstractions. The Federal Circuit has held that "the concept of delivering user-selected media content to portable devices is an abstract idea." *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1267-69 (Fed. Cir. 2016) ("*Affinity/Amazon*") (invalidating claims directed to "a network-based media system with a customized user interface, in which the system delivers streaming content from a network-based resource upon demand to a handheld wireless electronic device having a graphical user interface."). Likewise, the Federal Circuit has invalidated claims directed to a software application that provided users "out-of-region access to regional broadcast content." *Affinity/DIRECTV*, 838 F.3d at 1255-58. Similarly, in *IV/Capital I*, the claims recited a system providing a website that uses "dynamic web site navigation data" and delivers webpages tailored to the user based on the navigation data and the user's personal characteristics such as "the viewer's location or address." *IV/Capital I*, 792 F.3d at 1369. As the Federal Circuit explained, this type of "tailoring of content based on information about the user—such as where the user lives or what time of day the user

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

8.

MEMO. OF POINTS AND AUTHORITIES ISO
DEFENDANTS' MOTION TO DISMISS
Case No.  2:18-cv-01844-GW-KS

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1    views the content—is an abstract idea." *Affinity/Amazon*, 838 F.3d at 1271 (citing

2    *IV/Capital I*, 792 F.3d at 1369).

3         Both patents recite only conventional and well-known components including

4    mobile devices, servers and/or databases (*i.e.*, "proxy content server" and "proxy

5    content server database") that include memory locations (or "memory location

6    channels"), wireless networks, and tags used to identify digital content.  (*See* '351

7    patent, claim 1; '929 patent, claim 9.)  The patents concede that these concepts and

8    components were known in the art, acknowledging the variety of well-known mobile

9    devices, the "traditional radio frequency (RF) network," and that "[s]ystems for

10   transmitting information from databases in a computer network, such as World-Wide-

11   Web (WWW) servers on the Internet, over a wireless network to a mobile device are

12   known."  (*See e.g.*, '929 patent 1:29-32, 1:37-40, 5:9-21.)  Similarly, the shared

13   specification acknowledges that the "proxy content server" may "for example, be a

14   wireless proxy server that functions as a gateway between the computer network and

15   the wireless network", and that it "may be implemented in several ways"—*i.e.*, it is

16   merely a proxy server, which was known in the art.  (*See e.g.*, '929 patent at 2:62-64;

17   4:19-20.)  The specification further admits the existence of network services that

18   "automatically 'push' small amounts [of] information" to paging devices, "such as

19   sports scores, weather reports, or stock information."  (*Id.* at 1:44-47.)  Use of generic

20   components such as these do not make the abstract idea of delivering content patentable.

21   *See Affinity/DIRECTV*, 838 F.3d at 1255-56 (finding abstract system claim containing

22   "storage medium" and "wireless cellular telephone device").  Likewise, the Federal

23   Circuit has invalidated claims relating to the distribution of content even where the

24   claims also included "rules" for accessing content—*e.g.*, involved controlling users'

25   access to content based on validation criteria such as amount of payment.  *Smartflash*

26   *LLC v. Apple Inc.*, 680 Fed. App'x 977, 983-84 (Fed. Cir. 2017).  Accordingly, the

27   inclusion of "triggering events" does not make the abstract ideas expressed in the '351

28   and '929 patents patent-eligible.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

9.

MEMO. OF POINTS AND AUTHORITIES ISO
DEFENDANTS' MOTION TO DISMISS
Case No.  2:18-cv-01844-GW-KS

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Indeed, it is not necessary to employ any technology in order to practice the concepts embodied in either the '351 or '929 patents.  Consider, for example, an information desk/kiosk in a shopping center in the 1960s:[6]



Workers at the kiosk provided information to shoppers so they could find the nearest clothing store, restaurant, etc. (*i.e.*, provide information based on customer's location) or can find out which stores or restaurants may be open late (*i.e.*, provide information based on time).   Kiosks also typically provide coupons, advertising materials, or brochures (*i.e.*, including "static", "dynamic", or "default" advertising information) for the stores or restaurants that match the location, time, or other criteria the customer has specified.  These coupons or materials may be stored according to their category in stacks behind the counter or in cubbies (*i.e.*, "channels" or "memory locations") so that the workers can easily find and provide the relevant information to customers.  Or, kiosk attendants may pass out advertising materials to customers who come by at a specified time (*e.g.*, a Memorial Day sale or happy hour drink coupons.)  Thus, the kiosk (*i.e.*, "proxy content server") is handing out (*i.e.,* "pushing") advertising materials in response to the shopper's location, at a certain time, or based on some other "triggering event."  That the underlying idea of the '351 and '929 patents can be accomplished without any technology demonstrates that they "embody the 'basic tools of scientific and technological work' that are free to all men and reserved exclusively to none," and therefore comprise a non-patent-eligible abstract idea. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011) (explaining that "[s]uch a method

---

[6] https://mallsofamerica.blogspot.com/2006/08/harundale-mall.html

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

10.

MEMO. OF POINTS AND AUTHORITIES ISO
DEFENDANTS' MOTION TO DISMISS
Case No. 2:18-cv-01844-GW-KS

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1   that can be performed by human thought alone is merely an abstract idea and is not

2   patent-eligible under § 101") (citation omitted).

3        The addition of limitations calling for "meta tag[s]" in the asserted claims of the

4   '929 patent do not save the claims from being abstract.  As claim 1 recites, the meta tag

5   merely "identifies the . . . advertisements and advertisement display requirements."

6   ('929 patent, claim 1 at 14:24-27.)  Per the specification, the meta tags "would normally

7   include an advertising name, a corresponding advertising identifier and perhaps

8   additional information like the number of advertising points for viewing the

9   advertisement." ('929 patent at 8:35-38.)  Thus, the meta tag is merely another piece

10  of electronic information, discrete from the advertising content, that is either sent with

11  or separately from the advertising content being sent or "pushed" to the user.  As the

12  Federal Circuit has made clear, "[i]nformation as such is an intangible." *Elec. Power*,

13  830 F.3d at 1353.  The inclusion of additional information does not change the overall

14  focus of the claims, which is to send content (*e.g.*, advertising) upon a triggering event.

15  Rather, the use of a meta tag merely identifies the content being sent (like a post-it note

16  saying "this one").  *Id.*; *see also TS Patents LLC v. Yahoo! Inc.*, 279 F. Supp. 3d 968,

17  994 (N.D. Cal. 2017) (claims employing metadata comprising "name, path, owner, or

18  timestamp" to preview information about a file were directed to the abstract idea of

19  preview-based file or folder sharing) (internal quotation and citation omitted);

20  *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1327 (Fed. Cir. 2017)

21  (finding abstract claims relating to XML tags where tags were "used to identify,

22  organize, and locate the desired resource.").

23       In sum, the '351 and '929 patents are not "directed to a specific improvement to

24  the way computers operate." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36

25  (Fed. Cir. 2016) (finding claims focusing "on the specific asserted improvement in . . .

26  capabilities" of a database were not abstract).  The disclosed use of a "feedback signal"

27  to determine the position of a mobile device ('351 patent, claim 1), or the use of "meta

28  tags" to identify advertisements (*see* '929 patent, claim 9) is just that—*use*.  The claims

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

use known technologies (*e.g.,* mobile networks and tags) to implement the abstract idea. But no actual improvement is made to the underlying technology itself.  The '351 and '929 patents do not purport to improve the functioning of mobile devices, mobile networks, proxy servers, or the like in any way.  Rather, they simply describe a process of delivering specific advertising content to users—which is abstract under Section 101.

### b.   The '634 patent claims are directed to the abstract idea of displaying information regarding unread messages.

The '634 patent is directed to nothing more than displaying information about unread messages.  "Information as such is an intangible" and, therefore, "we have treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas."  *Elec. Power*, 830 F.3d at 1353-4.  The '634 patent claims exactly that—collecting information about unread messages and displaying it to the user.  Nothing in the'634 claims is "directed to the solution of a 'technological problem,' nor is it directed to an improvement in computer or network functionality," but instead the claims are directed to a "general concept . . . without offering any technological means of effecting that concept."  *Affinity/DIRECTV*, 838 F.3d at 1262 (internal citation omitted).

As described above, the claims of the '634 patent are directed to abstract ideas that could be—and routinely were—performed by human beings without the aid of computers.  *Parker v. Flook*, 437 U.S. 584, 586 (1978) (abstract idea found where "the computations can be made by pencil and paper calculations").   Assistants, for example, routinely answer calls, take written messages on "while you were out" pads, and inform their bosses about the number of people that tried to reach them, like "two people called: John once and your husband twice".

Further, specifying that this task be carried out on a wireless device with messaging applications does not save the claims.  *See, e.g.*, *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (noting that it is "well-settled that mere

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

12.

MEMO. OF POINTS AND AUTHORITIES ISO
DEFENDANTS' MOTION TO DISMISS
Case No.  2:18-cv-01844-GW-KS

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1 recitation of concrete, tangible components is insufficient to confer patent eligibility to
2 an otherwise abstract idea").   While the independent claims recite a "wireless
3 communication device" with a "graphical user interface" displaying at least one "icon
4 relating to electronic messaging" and "visually modif[ying]" the icon to include a
5 "numeric character" indicating the quantity of "unread messages," use of these generic
6 components does not convey eligibility.  Indeed, the '634 patent does not claim to have
7 invented wireless communications devices (*e.g.*, cell phones), electronic messaging,
8 electronic messaging applications, graphical user interfaces, icons, the ability to receive
9 messages, or the ability to track whether received messages have been read or remain
10 unread.  (*See, e.g.*, '634 patent, Figs. 1 & 2, 1:41-60, 3:9-15, 3:53-7:31.)

11        Further, the claims do not explain *how* to accomplish the task of modifying the
12 messaging application icons to include the desired information.  Rather, they focus only
13 on the result—*i.e.*, that the number is somehow displayed—without any explanation of
14 how the number of unread messengers is tracked or communicated.   This is not
15 sufficient to rescue the claims from abstraction.  "[O]ur law demands more" than claims
16 that "provide[] only a result-oriented solution, with insufficient detail for how a
17 computer accomplishes it."  *IV/Capital II*, 850 F.3d at 1342; *see also Two-Way Media*,
18 874 F.3d at 1337 (holding claims ineligible where they recited only "result-based
19 functional language" without "sufficiently describ[ing] *how* to achieve these results in
20 a non-abstract way") (emphasis added).

21        The asserted claims of the '634 patent do not offer any improvement to the
22 underlying *functionality* of the wireless device.  In fact, nothing happens here at all other
23 than a number appearing:

24
25



26 ('634 Patent, excerpt from Fig. 7.)  The specification admits that numerous ways of
27 visually representing the icon were well known.  ('634 Patent, 7:52-54, 8:8-13.)  There
28 is no improvement to the user's experience as they access the messaging application,

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

13.

MEMO. OF POINTS AND AUTHORITIES ISO
DEFENDANTS' MOTION TO DISMISS
Case No.  2:18-cv-01844-GW-KS

1   no increased efficiency in accessing messages, and no streamlining of the process of

2   retrieving and reviewing messages.  The '634 patent claims are thus directed to an

3   abstract idea and offer no concrete improvement to the functioning of wireless devices

4   that would remove them from the realm of abstract ideas.

5           **c.      The claims of the '120 patent are directed to the abstract**

6           **idea of silencing message notifications.**

7           The '120 patent claims all focus on silencing notifications of incoming

8   messages—*i.e.*, setting flags indicating whether the user wants to "silence" a message

9   thread, and using those flags to determine whether to generate a new message

10  notification for a user.  The patent acknowledges that electronic "message threads" such

11  as emails and online group discussions and the display of notifications for received

12  messages were part of the generic "background" of the patent.  ('120 patent at 1:22-32.)

13  The claims merely take the decades-old concept of selective message delivery—"take

14  a message if someone calls about the Facebook matter"—and apply it in a conventional

15  electronic messaging environment. *See, e.g., FairWarning*, 839 F.3d at 1094 (observing

16  that ineligible claims "merely implement an old practice in a new environment").

17          The patent does not purport to provide any concrete new device or technology.

18  On the contrary, the specification proclaims that "[e]mbodiments of the present

19  application are not limited to any particular operating system, mobile device

20  architecture, server architecture, or computer programming language." ('120 patent at

21  2:53-55.)  The specification embraces that "the current application is not limited to any

22  particular messaging application nor to any particular implementation as to how

23  electronic messages may be stored in memory." ('120 patent at 11:38-42.)  In other

24  words, the claims do not provide any *specific* guidance for accomplishing the claimed

25  functionality.  Rather, they articulate only the abstract idea of silencing notifications.

26          The '120 patent claims are similar to many the Federal Circuit has held to be

27  patent-ineligible.  For example, in *FairWarning* the claims recited a technique for

28  detecting fraud by collecting information regarding access to a user's personal

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

information, analyzing that information according to several "rules" (*e.g.*, how, when and by whom the information had been accessed), and providing notification if it determined that there was improper access after applying the rules.  The Federal Circuit found those claims to be directed to the abstract concept of "collecting and analyzing information to detect misuse and notifying a user when misuse is detected", which has been done by humans to detect fraud "for decades, if not centuries."  *FairWarning*, 839 F.3d at 1094-95.  The claims of the '120 patent are *even simpler* than those considered by the Federal Circuit in *FairWarning*, as they apply only a single rule: has the notification flag been set to silent for the particular thread.

The '120 claims also merely cover methods of organizing human activity.  For example, in *Intellectual Ventures I LLC v. Capital One Bank (USA)*, the Federal Circuit found that claims directed to methods of storing user-selected pre-set limits on spending in a database and triggering a notification to the user when a limit is met, were "not meaningfully different from the ideas found to be abstract in other cases before the Supreme Court and our court involving methods of organizing human activity."  *IV/Capital I*, 792 F.3d at 1367.  Displaying or silencing notifications similarly organizes the basic human activity of communicating by providing notifications for certain communications, and suppressing others.

Further, the '120 patent does not purport to improve the operation of the wireless device itself.  Thus, it stands in contrast, for example, to the claims considered by the court in *Enfish,* which purported to improve the functioning of the *computer itself* by providing "increased flexibility, faster search times, and smaller memory requirements."  822 F.3d at 1337 (citations omitted).  The '120 patent makes no such improvement.  It does not add anything to the functioning of the wireless device—no enhancement in performance, efficiency, or usability.  And, it recites only conventional and generic technology for carrying out this abstract idea.  (*E.g.*, '120 patent, claim 24 reciting "computer readable medium", "data processor", and "communication system");  *see also, e.g.*, *TLI*, 823 F.3d at 613-15 (claims recite only conventional and generic

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

15.

MEMO. OF POINTS AND AUTHORITIES ISO
DEFENDANTS' MOTION TO DISMISS
Case No.  2:18-cv-01844-GW-KS

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  computer networking and database technology for carrying out an abstract idea); *see*

2  *also, e.g., Elec. Power*, 830 F.3d at 1354.

### 2.  *Alice* **Step Two – The Claims of Blackberry's Patents Recite No Inventive Concept**

The second *Alice* step requires the Court "to determine whether the claims do significantly more than simply describe [an] abstract method." *Ultramercial*, 772 F.3d at 715 (citation omitted).  In other words, the Court must determine whether the claims "contain[] an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice,* 134 S. Ct. at 2357 (internal quotations and citation omitted).  This inventive concept "must be *significantly more* than the abstract idea itself." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016) (emphasis added).

Here, the claim limitations do not recite any inventive concept, but instead merely tack well-known concepts, like sending advertising content to users, or displaying or silencing message notifications, onto conventional components, like wireless devices. Courts have repeatedly rejected claims that recite only generic components—like those recited in the '351, '929 '634 and '120 patents.[7]  *E.g.*, *Affinity/DIRECTV*, 838 F.3d at 1262 (finding no inventive concept because "[t]he claim simply recites the use of generic features of cellular telephones, such as a storage medium and a graphical user interface, as well as routine functions, such as transmitting and receiving signals, to implement the underlying idea"); *see also Alice*, 134 S. Ct. at 2357-60 (rejecting argument that recitation of "data processing system," "communications controller," or "data storage unit" conferred patent eligibility); *TLI*, 823 F.3d at 613 (rejecting

---

[7]  For example, the '351 patent claims recite routine and conventional components including: "mobile device", "proxy content server", "computer network", "proxy content server database", and "memory locations".  The '929 patent claims similarly recite: "mobile device", "server", and "memory location".  The '634 patent claims recite routine and conventional components including: "wireless communications device", "icon", "electronic messaging", "graphical user interface", and "electronic messages". And, the '120 patent claims recite routine and conventional components including: "electronic messages", "data processor", "non-transitory media", "electronic messages", "message thread" and "flag."

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

16.

MEMO. OF POINTS AND AUTHORITIES ISO
DEFENDANTS' MOTION TO DISMISS
Case No.  2:18-cv-01844-GW-KS

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

argument that recitation of "telephone unit," "server," "image analysis unit," and "control unit" conferred patent eligibility).

Blackberry itself recently argued this point while pursuing a motion to dismiss based on invalidity under Section 101 of a patent relating to obtaining location and orientation information between two portable devices, and then providing directions to get between those two points.  *Maxell*, No. 17-cv-1446 (D. Del.).  In that case, Blackberry argued that accused infringers "do not have to surrender § 101 arguments simply because the claims recite a physical product" and relied on *Alice* to argue:

> [I]f that were the end of the § 101 inquiry, an applicant could claim any principle of the physical or social sciences by reciting a computer system configured to implement the relevant concept.  Such a result turns *Alice* on its head and does nothing to prevent patents from monopolizing the basic tools of scientific and technological work.

(Defs.' Reply Br. in Supp. of Mot. to Dismiss at 9, *Maxell*, No. 17-cv-1446 (D. Del. Feb. 9, 2018) ECF No. 18 (internal quotations and citations omitted).)  Blackberry thus concluded that "this Court should grant BlackBerry's motion to dismiss because 'device' claims are not categorically patent eligible." (*Id.* at 10.)  Defendants agree. The four patents that are the subject of this motion may recite "wireless devices," "communication systems," and "data processors," but that does not confer patent eligibility.  The '634 patent concedes that the technical limitations recited in the claims were known in the art by describing prior art systems having graphical user interfaces (GUIs) using well-known icons, the ability to operate on a wireless network and subscribe to several messaging services, including instant messaging services and corporate and personal email accounts. ('634 patent at 1:41-60, 3:9-15, 3:53-7:31, 7:52-54, 8:8-13, Figs. 1 & 2.)  The '351 and '929 patents make similar concessions, acknowledging that systems for pushing information to users via a wireless network were known. (*See* '929 patent at 1:37-47.)  And the '120 patent discusses prior art messaging systems that included message threads and use of notifications, such as auditory user alerts, visual alerts, or physical alerts, when new messages are posted.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

17.

MEMO. OF POINTS AND AUTHORITIES ISO
DEFENDANTS' MOTION TO DISMISS
Case No.  2:18-cv-01844-GW-KS

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  ('120 patent at 1:22-46.)

2      Even considering each claim as an "ordered combination" adds nothing to confer

3  patent-eligibility. *Alice*, 134 S. Ct. at 2359-60 (internal quotation and citation omitted).

4  Nothing in the claims "purport[s] to improve the functioning of the computer itself" or

5  to "effect an improvement in any other technology or technical field." *Id.* at 2359. Nor

6  are the claims "necessarily rooted in computer technology" to "overcome a problem

7  specifically arising in the realm of computer networks." *DDR Holdings, LLC v.*

8  *Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). Rather, the claims merely

9  "follow[] a conventional order of how data is usually analyzed: data is first *received*,

10  then *processed*, and then signals are *outputted* as a result." *Immersion Corp. v. Fitbit,*

11  *Inc.*, No. 17-cv-3886, 2018 WL 1156979, at *18 (N.D. Cal. Mar. 5, 2018) (emphasis

12  added). "[M]erely selecting information, by content or source, for *collection, analysis,*

13  *and display*" does not provide an inventive concept. *Elec. Power*, 830 F.3d at 1355

14  (emphasis added).

15      In the case of the '634 patent, the claims follow this same flow, data is: (1)

16  *collected* in the form of "electronic messages including messages from a plurality of

17  different messaging correspondents", (2) *analyzed* as electronic messages are tallied,

18  and (3) *displayed* by "visually modify[ing]" the icon for the electronic messaging

19  application "to include a numeric character representing the count . . . " of unread

20  messaging correspondents. ('634 patent, claim 1 at 11:19-21, 11:23-25.) The same is

21  true for the claims of the '120 patent, data is: (1) *collected,* again in the form of

22  electronic messages, (2) *analyzed*, as the flags associated with message threads are read

23  and determined to be "silenced" or not, and (3) *displayed*—or not—in the event the flag

24  is set to "silenced." ('120 patent, claim 24.) Again for the claims of the '351 and '929

25  patents, data is: (1) *collected* in the form of feedback signals showing location, or

26  information about some other triggering event, (2) *analyzed* to determine whether the

27  triggering event has occurred and if so what information should be selected to be pushed

28  to users as a result of the trigger, and (3) *displayed* to users in the form of advertising

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

18.

MEMO. OF POINTS AND AUTHORITIES ISO
DEFENDANTS' MOTION TO DISMISS
Case No. 2:18-cv-01844-GW-KS

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

content pushed to their mobile devices.

Further, none of the patents specify code or algorithms for performing the steps of collecting, analyzing, and displaying. Rather, they simply describe the end goal of each step—to provide or silence a message notification or advertising—in the context of electronic messaging on wireless devices. "[A] mere instruction to implement an abstract idea" with software "cannot impart patent eligibility." *Alice*, 134 S. Ct. 2358 (internal quotation and citation omitted); *see also Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333-34 (Fed. Cir. 2012) ("The claims are silent as to how a computer aids the method, the extent to which a computer aids the method, or the significance of a computer to the performance of the method."). Thus, because the four patents at issue in this motion "add nothing of substance to the underlying abstract idea identified at step-one," of the *Alice* analysis, they are "patent ineligible under § 101." *Alice*, 134 S. Ct. at 2360.

### 3.     Determination of Invalidity Under 35 U.S.C. § 101 Is Appropriate On A Rule 12(b)(6) Motion To Dismiss

During the L.R. 7-3 conference, Plaintiff questioned whether the Section 101 issues were ripe for determination. Patent eligibility under 35 U.S.C. § 101, however, is a threshold issue of law. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the Federal Circuit has "repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced."[8] *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (citing cases).[9] Indeed, early disposal of such claims can "spare both litigants and courts

---

[8]  No plausible claim construction could confer patent-eligibility because the claims at issue are not directed to any concrete patent-eligible invention. Plaintiff will not be able to identify any proposed claim constructions that could save the claims from invalidity.
[9]  Citing *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016) ("We have repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion."); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015) (similar); *Content Extraction*, 776 F.3d at 1349 (similar); *buySAFE, Inc. v. Google, Inc.,* 765 F.3d 1350, 1355 (Fed. Cir. 2014) (similar).

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

years of needless litigation." *I/P Engine, Inc. v. AOL Inc.*, 576 F. App'x 982, 996 (Fed. Cir. 2014).   Dismissal now would also bring a semblance of order to a potentially unwieldy nine patent case against multiple parties and product lines.

Recent Federal Circuit jurisprudence does not change the rationale for deciding patent-eligibility issues at the initial pleadings stage.   In *Aatrix Software*, the Court affirmed that "patent eligibility can be determined at the Rule 12(b)(6) stage." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 883 F.3d 1121, 1125 (Fed. Cir. 2018); *Voter Verified*, 887 F.3d at 1384 (citing *Aatrix Software*).   Similarly in *Berkheimer v. HP Inc.* the Federal Circuit recognized that while consideration of patent eligibility under Section 101 may "contain disputes over underlying facts[,] [p]atent eligibility *has in many cases been resolved on motions to dismiss* . . . "   881 F.3d 1360, 1368 (Fed. Cir. 2018) (emphasis added).   In fact, four claims were affirmed to be patent ineligible in the *Berkheimer* case.   As a result, the Federal Circuit acknowledged that "not every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry" and accordingly "[n]othing in this decision should be viewed as casting doubt on the propriety" of determination of issues of patentability under Section 101 at the motion to dismiss stage.   *Id.; see also Exergen Corp. v. Kaz USA, Inc.*, Nos. 2016-2315 & 2016-2341, 2018 WL 1193529, at *4 (Fed. Cir. Mar. 8, 2018).

Blackberry's attempt to manufacture a factual dispute in the allegations of its FAC (for example by arguing that its claimed inventions were not "well-understood, routine, or conventional") must fail as these assertions are merely attorney argument which can be disregarded for purposes of the instant motion.   (*See* FAC ¶¶ 140, 282, 308, 327.)   When deciding whether to grant a motion to dismiss, the court must generally accept as true all "well-pleaded *factual* allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (emphasis added).   However, as this Court recently observed in *International Designs Corp., LLC, et al. v. Hair Art International, Inc.* ("*Int'l Designs*"), "'the court is not required to accept as true legal conclusions couched as factual allegations.'" (Civil Mins. at 4, *Int'l Designs*, No. 17-cv-8411 (C.D. Cal. Apr.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

20.

MEMO. OF POINTS AND AUTHORITIES ISO
DEFENDANTS' MOTION TO DISMISS
Case No.  2:18-cv-01844-GW-KS

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

19, 2018) (Wu, J.) ECF No. 59 (citing *Iqbal*, 556 U.S. at 678).) *See, also, Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (citing *Iqbal*, 556 U.S. 679). The FAC contains exactly that—legal argument couched as factual allegations. Defendants' disagreement with these attorney arguments and legal positions cannot form the basis for a factual dispute.

Further, even assuming, arguendo, that all of the legal conclusions and attorney arguments included in the FAC were presumed to be true, they still do not save the '351, '929, '634 or '120 patents from invalidity under Section 101 because none of them appear *in the claims themselves*. The two-step test articulated by the court in *Alice* requires a focus on the *claims*—not the specification, not the state of the art at the time of the invention, not the motivation of the inventors, and not any other factor. Where the claims are directed to an abstract idea (*i.e.*, *Alice* step-one is failed), the claims will also fail at step-two if the required "inventive concept" is not captured in the language of the claims. (*See*, *e.g.*, Mem. Op. at 14-15, *3G Licensing, S.A. et al. v. Blackberry Ltd., et al.*, No. 17-cv-0082 (D. Del. March 22, 2018) ECF No. 87 (quoting *Two-Way Media*, 874 F.3d at 1338-39 ("The main problem that Two-Way Media cannot overcome is that the *claim*—as opposed to something purportedly described in the specification—is missing an inventive concept." (emphasis in original)) and *Berkheimer*, 881 F.3d at 1369 (noting that the improvements over the prior art recited in the specification are only relevant to step-two of the *Alice* analysis "to the extent they are captured in the claims.").) For both the '634 and '120 patents, the claims recite only the abstract concepts of displaying or silencing message notifications, and fail to include any "inventive concept sufficient to transform the nature of the claim into a patent-eligible application." *See RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) (internal quotation and citation omitted). The same is true for the '351 and '929 patents—they merely recite the abstract concepts of sending advertisements or other information to users following a triggering event. Accordingly, resolution of the issue of patentability of the '351, '929, '634 and '120 patents is

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

21.

MEMO. OF POINTS AND AUTHORITIES ISO
DEFENDANTS' MOTION TO DISMISS
Case No.  2:18-cv-01844-GW-KS

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

appropriate here, on a Rule 12(b)(6) motion, as the determination does not require resolution of any factual dispute.

## III.   MOTION TO DISMISS (INDIRECT AND WILLFUL INFRINGEMENT)

### A.   Plaintiff has Failed to Plead Pre-Suit Notice of the Asserted Patents

It is well-established, and as this Court has previously found, pre-suit knowledge of the patent is a prerequisite to pleading willful infringement in an original complaint. *See Soteria Encryption, LLC v. Lenovo U.S., Inc. et al.*, No. 16-cv-7958, 2017 WL 3449058, at *3 (C.D. Cal. Feb. 27, 2017) (dismissing Plaintiff's claim for willful infringement when it did not alleged pre-suit notice of the asserted patent, reiterating that "a willfulness claim asserted in the original complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct.")[10]; *Puma SE v. Forever 21, Inc.*, No. 17-cv-2523, 2017 WL 4771004, at *3 (C.D. Cal. June 29, 2017) ("Nothing in the *Halo* decision supports [Defendant's] position that a plaintiff pleading willful patent infringement no longer need allege pre-suit knowledge of the patent.") (*Cf. Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016)).   Similarly, claims for indirect infringement require knowledge of the asserted patents.[11]   *See Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015) ("Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement.")   For the following reasons, Plaintiff's claim of willful and pre-suit indirect infringement in Counts I-IX should be dismissed.[12]

*First*, the FAC does not provide any allegations that Defendants had pre-suit knowledge of six of the nine patents at issue.[13]   For these six patents (Counts IV-IX),

---

[10] As this Court did in *Soteria*, the FAC at issue here (which was never served and contains identical allegations) should be treated the same as the original complaint. *Soteria*, 2017 WL 3449058, at *3 n.2.

[11] This motion to dismiss is directed solely at pre-suit, not post-suit, indirect infringement allegations. Defendants recognize that this Court has permitted *post*-suit indirect infringement allegations to survive the pleadings stage based on knowledge of the patent through the complaint. *See Soteria*, 2017 WL 3449058, at *2.

[12] Plaintiff's indirect and willful infringement allegations are contained at paragraphs 121-130, 148-157, 176-185, 203-212, 233-242, 262-271, 289-298, 315-319, and 334-338 of the FAC.

[13] U.S. Patents 8,301,713; 8,429,236; 8,677,250; 9,349,120; 8,296,351; 8,676,929.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

22.

MEMO. OF POINTS AND AUTHORITIES ISO
DEFENDANTS' MOTION TO DISMISS
Case No.  2:18-cv-01844-GW-KS

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

the FAC alleges only that Defendants have had actual knowledge "since at least as early as the filing and/or service of this Complaint." (*See, e.g.,* FAC, ¶ 204.) This statement fails to provide <u>any</u> allegation as to Defendants' knowledge of the patents prior to filing of the FAC, let alone facts sufficient to meet the *Twombly/Iqbal* standard. Plaintiff's failure to allege pre-suit notice is fatal to its claims.

*Second*, Plaintiff's allegations of pre-suit notice as to the seventh patent ('173) are factually deficient. Plaintiff alleges that "Facebook knew or should have known of the '173 Patent at least as early as March 7, 2014[,] . . . March 21, 2014[,] . . . or April 24, 2014" when the patent office cited the '173 Patent during prosecution of three of Facebook's patent applications. (*See* FAC, ¶ 178.) But courts have repeatedly found that a patent examiner's reference to the patent-in-suit as prior art during prosecution of a defendant's own patents does not constitute actual knowledge of the patent by the defendant. *See Chalumeau Power Sys. LLC v. Alcatel–Lucent,* No. 11-cv-1175, 2012 WL 6968938, at *1 (D. Del. July 18, 2012); *see also Spherix Inc. v. Juniper Networks, Inc.*, No. 14-cv-0578, 2015 WL 1517508, at *3 (D. Del. Mar. 31, 2015) ("The fact that the '123 patent was referenced during prosecution of two of defendant's over 1,700 patents [ ] is not compelling evidence of knowledge."). And for good reason: here, it is not reasonable to assume that Facebook had knowledge of the patent at issue simply because it was cited by the patent office during the prosecution of three out of hundreds of Facebook's patent applications. Thus, any allegations based on the patent office's citation of the '173 patent are insufficient to establish pre-suit notice.

*Third*, Plaintiff's allegations with respect to the remaining two patents ('961 and '634) cannot support a finding of pre-suit notice. The FAC alleges that Defendants were made aware of these patents through notice letters sent from BlackBerry to WhatsApp on March 25, 2016 and April 15, 2016, respectively. (*See* FAC, ¶ 122, 149.)

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

[14] Defendants have concurrently filed a request for judicial notice of the NDA entered

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

23.

MEMO. OF POINTS AND AUTHORITIES ISO
DEFENDANTS' MOTION TO DISMISS
Case No.  2:18-cv-01844-GW-KS

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20  ████████████████████████████████  Therefore, Plaintiff's willful and pre-suit indirect

21  infringement allegations must be dismissed.

22  _____

23  into between the parties. *See* Defs.' Req. for Judicial Notice in Supp. of Mot. to
    Dismiss.  The Ninth Circuit has recognized that "a court may look beyond the

24  pleadings without converting the Rule 12(b)(6) motion into one for summary
    judgment." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir.

25  2002).  Specifically, courts can consider a document when its contents are not
    explicitly alleged in, or physically attached to, the complaint, if the plaintiff's claim

26  depends on the contents of the document and there is no dispute as to the document's
    authenticity.  *See Knievel v. ESPN*, 393 F.3d 1068, 1072, 1076 (9th Cir. 2005).  Here,

27  Plaintiff's claims of willful infringement as to the '961 and '634 Patents depend on
    the agreement.  (*See*, FAC, ¶¶ 122, 149 (referencing NDA).)

28  ¹⁵

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

24.

MEMO. OF POINTS AND AUTHORITIES ISO
DEFENDANTS' MOTION TO DISMISS
Case No.  2:18-cv-01844-GW-KS

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

**B.    Plaintiff Also Fails to Plead Facts Sufficient to Satisfy the "Egregiousness" Element of Willful Infringement**

Even if Defendants had pre-suit knowledge, Plaintiff's willful infringement allegations still fail.  As this Court has recognized, for cases of willful infringement "the patentee must show that the infringement was an 'egregious case[ ] of misconduct beyond typical infringement'."  (Civil Mins. at 9, *Int'l Designs*, No. 17-cv-8411 (C.D. Cal. Feb. 22, 2018) ECF No. 40 (citing *Halo*, 136 S. Ct. at 1935) (striking willful infringement allegations).)  In this case, Plaintiff pleads nothing more than boilerplate language lacking any factual support that make it plausible Defendants engaged in egregious conduct.  These are precisely the kind of allegations that fail to meet the *Twombly/Iqbal* standard.  *See Emazing Lights LLC v. De Oca*, No. 15-cv-1561, 2016 WL 7507765, at *2 (C.D. Cal. June 20, 2016) (finding that statements such as "[Defendant's] infringements of the Subject Patent . . . are willful, wanton, deliberate, without license, and with full knowledge of Plaintiff's rights and ownership therein," and "[Defendant] acted in bad faith, in a knowing, willful, malicious, fraudulent and oppressive manner, and with the intent and purpose of advancing their own gain at the direct expense of Plaintiff's rights . . . " are legal conclusions without factual basis that are deemed insufficient under the *Twombly/Iqbal* standard).  Therefore, Plaintiff's willful infringement claims as to all asserted patents should be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to dismiss, and hold that the '351, '929, '634, and '120 patents are invalid under 35 U.S.C. § 101.  Defendants also request that the Court dismiss Plaintiff's willful and pre-suit indirect infringement allegations as to all patents-in-suit.

Dated:      June 7, 2018              COOLEY LLP

                                      */s/ Heidi L. Keefe*
                                      Heidi L. Keefe (178960)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

25.

MEMO. OF POINTS AND AUTHORITIES ISO
DEFENDANTS' MOTION TO DISMISS
Case No.  2:18-cv-01844-GW-KS

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

COOLEY LLP
HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
MARK R. WEINSTEIN (193043)
(mweinstein@cooley.com)
MATTHEW J. BRIGHAM (191428)
(mbrigham@cooley.com)
LOWELL D. MEAD (223989)
(lmead@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone: (650) 843-5000
Facsimile:  (650) 849-7400

COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
101 California Street
5th Floor
San Francisco, CA  94111-5800
Telephone: (415) 693-2000
Facsimile:  (415) 693-2222

Attorneys for Defendants
FACEBOOK, INC., WHATSAPP INC.,
INSTAGRAM, INC., and INSTAGRAM,
LLC

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

26.

MEMO. OF POINTS AND AUTHORITIES ISO
DEFENDANTS' MOTION TO DISMISS
Case No.  2:18-cv-01844-GW-KS