COOLEY LLP
HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
MARK R. WEINSTEIN (193043)
(mweinstein@cooley.com)
MATTHEW J. BRIGHAM (191428)
(mbrigham@cooley.com)
LOWELL D. MEAD (223989)
(lmead@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone: (650) 843-5000
Facsimile:  (650) 849-7400

COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
101 California Street
5th Floor
San Francisco, CA  94111-5800
Telephone: (415) 693-2000
Facsimile:  (415) 693-2222

Attorneys for Defendants
FACEBOOK, INC., WHATSAPP
INC. and INSTAGRAM, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

BLACKBERRY LIMITED,

Plaintiff,

v.

FACEBOOK INC., WHATSAPP
INC., INSTAGRAM, INC., and
INSTAGRAM, LLC,

Defendants.

Case No.  2:18-cv-01844-GW-KS

**DEFENDANTS' REPLY IN
SUPPORT OF MOTION TO
DISMISS RE INVALIDITY UNDER
35 U.S.C. § 101, INDIRECT
INFRINGEMENT, AND WILLFUL
INFRINGEMENT**

DATE:  August 2, 2018
TIME: 8:30 a.m.
COURTROOM: 9D
JUDGE:  Hon. George H. Wu

REDACTED PUBLIC VERSION

# TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION .............................................................. 1

II.   ARGUMENT.................................................................. 2

   A.   Assessing Patent Eligibility Under § 101 Is Appropriate At This Time ........................................................................... 2

   B.   BlackBerry's Analysis Impermissibly Ignores the Claim Language ....... 3

   C.   The '351 And '929 Patents Are Ineligible Under § 101 And Alice ........ 5

      1.   The '351 and '929 patents fail Alice Step 1. ................................. 5

      2.   The '351 and '929 patents fail Alice Step 2. ................................. 8

   D.   The '634 And '120 Patents Are Ineligible Under § 101 And Alice ....... 10

      1.   The '634 and '120 patents fail Alice Step 1. ................................ 10

      2.   The '634 and '120 patents fail Alice Step 2. ................................ 15

   E.   The dependent claims are equally patent-ineligible............................. 16

   F.   BlackBerry's Willfulness and Pre-Suit Indirect Infringement Claims Should be Dismissed........................................................ 17

      1.   BlackBerry Has Not Plead Pre-Suit Knowledge for Seven of the Patents-In-Suit............................................................. 17

      2.   BlackBerry is Precluded From Alleging Willful and Pre-suit Indirect Infringement for the '961 and '634 Patents. .................. 18

III.   CONCLUSION ............................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software v. Green Shades Software*,
    882 F.3d 1121 (Fed. Cir. 2018) ....................................................... 4

*Affinity Labs of Tex. v. DIRECTV*,
    838 F.3d 1253 (Fed. Cir. 2016) ........................................ 3, 5, 15, 17

*Alice Corp. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014) ........................................................... *passim*

*Anascape v. Microsoft*,
    No. 06-cv-158, 2008 WL 7182476 (E.D. Tex. Apr. 25, 2008) ............... 18

*Apple Inc. v. Ameranth, Inc.*,
    842 F.3d 1229 (Fed. Cir. 2016) ..................................................... 10

*Ariosa Diagnostics, Inc. v. Sequenom*,
    788 F.3d 1371 (Fed. Cir. 2015) ..................................................... 14

*Berkheimer v. HP*,
    881 F.3d 1360 (Fed. Cir. 2018) .............................................. *passim*

*Brookfield Commc'ns v. W. Coast Entm't*,
    174 F.3d 1036 (9th Cir. 1999) ......................................................... 6

*buySAFE v. Google*,
    765 F.3d 1350 (Fed. Cir. 2014) ....................................................... 6

*Content Extraction & Transmission v. Wells Fargo Bank*,
    776 F.3d 1343 (Fed. Cir. 2014) ....................................................... 2

*Cyberfone Sys. v. CNN Interactive Group*,
    558 F. App'x 988 (Fed. Cir. 2014) ................................................... 2

*Core Wireless Licensing SARL v. LG Elecs.*,
    880 F.3d 1356 (Fed. Cir. 2018) .............................................. *passim*

*Elec. Power Grp. v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ............................................ 12, 16, 17

ii

# TABLE OF AUTHORITIES
(Continued)

**Page(s)**

*Enfish v. Microsoft*,
  822 F.3d 1327 (Fed. Cir. 2016) ................................................................. 8

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*,
  No. 2:15-CV-1202-WCB, 2017 WL 2190055 (E.D. Tex. May 18,
  2017) ........................................................................................................ 20

*EveryMD.com v. Facebook*,
  No. 16-cv-6473, 2017 WL 3453294 (C.D. Cal. May 10, 2017) .......... 2, 3

*Genetic Techs. v. Merial*,
  818 F.3d 1369 (Fed. Cir. 2016) ................................................................. 2

*Halo Elecs. v. Pulse Elecs.*,
  136 S. Ct. 1923 (2016)................................................................... 17, 18

*Immersion v. Fitbit*,
  No. 17-cv-3886, 2018 WL 1156979 (N.D. Cal. Mar. 5, 2018)............. 15

*Intellectual Ventures I v. Capital One Fin.*,
  850 F.3d 1332 (Fed. Cir. 2017) ......................................................... 10, 16

*Intellectual Ventures I v. Erie Indem.*,
  850 F.3d 1315 (Fed. Cir. 2017) .................................................. 8, 9, 12, 16

*Intellectual Ventures I v. Symantec*,
  838 F.3d 1307 (Fed. Cir. 2016) ................................................................. 5

*Local Intelligence v. HTC Am.*,
  No. 17-cv-6437, 2018 WL 1697127 (N.D. Cal. Apr. 6, 2018) ............. 15

*McRo v. Bandai Namco Games Am.*,
  837 F.3d 1299 (Fed. Cir. 2016) ............................................................... 14

*Pareto v. Fed. Deposit Ins.*,
  139 F.3d 696 (9th Cir. 1998) ..................................................................... 4

*Puma SE v. Forever 21*,
  No. 17-cv-2523, 2017 WL 4771004 (C.D. Cal. June 29, 2017) ........... 17

Cooley LLP
Attorneys At Law
Palo Alto

iii.

**Defendants' Reply iso Motion to Dismiss
Case No. 2:18-cv-01844-GW-KS**

## TABLE OF AUTHORITIES
(Continued)

**Page(s)**

*RecogniCorp v. Nintendo Co.*,
  855 F.3d 1322 (Fed. Cir. 2017) ..................................................... 3, 9, 15

*Reese v. Sprint Nextel*,
  No. 13-cv-3811, 2018 WL 1737613 (C.D. Cal. Apr. 9, 2018) ................................ 2

*Smartflash LLC v. Apple Inc.*,
  680 F. App'x 997 (Fed. Cir. 2017) ......................................................... 13

*Soteria Encryption v. Lenovo United States*,
  No. 16-cv-7958, 2017 WL 3449058 (C.D. Cal. Feb. 27, 2017) (Wu,
  J.)......................................................................................... 17, 18

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ................................................................ 4

*Steckman v. Hart Brewing*,
  143 F.3d 1293 (9th Cir. 1998) ............................................................... 4

*Synopsys v. Mentor Graphics*,
  839 F.3d 1138 (Fed. Cir. 2016) .................................................... 3, 13, 16

*In re TLI Commc'ns Patent Litig.*,
  823 F.3d 607 (Fed. Cir. 2016) ................................................ 6, 7, 13, 14

*TriPlay v. WhatsApp*,
  No. 13-cv-1703, 2018 WL 1479027 (D. Del. Mar. 27, 2018) ............................... 14

*Two-Way Media v. Comcast Cable Commc'ns*,
  874 F.3d 1329 (Fed. Cir. 2017) ...................................................... 7, 12, 16

*Uniloc USA v. HTC America*,
  No. 17-cv-01558, 2018 WL 3008870 (W.D. Wash. June 15, 2018)................... 4, 14

*Versata Dev. Grp. v. SAP Am.*,
  793 F.3d 1306 (Fed. Cir. 2015) ...................................................... 7, 9, 13

**Statutes**

35 U.S.C. §101 ...................................................................*passim*

Cooley LLP
Attorneys At Law
Palo Alto

iv.

**Defendants' Reply iso Motion to Dismiss
Case No. 2:18-cv-01844-GW-KS**

# TABLE OF AUTHORITIES
(Continued)

**Page(s)**

**Other Authorities**

Rule 12(b)(6)............................................................................................................ 2, 4

# I.      INTRODUCTION

The claims of four of the nine patents[1] asserted by BlackBerry against Facebook, Inc., WhatsApp Inc., and Instagram LLC (collectively, "Defendants") are ripe for invalidation under 35 U.S.C. §101 because there are no material *facts* that indicate the claims themselves cover anything more than age-old ideas implemented "on a computer."[2]   BlackBerry's arguments fail.   BlackBerry fails to ground its arguments in the claim language itself; instead arguing from the specification and attorney supposition, as prohibited by law.   Further, BlackBerry's arguments about allegations in its complaint are *legal*, not factual, and properly ignored. Finally, BlackBerry misstates the law.   In particular, it overstates and mischaracterizes the *Core Wireless* decision in a way that would exempt any patent involving mobile user interfaces from the requirements of § 101 and *Alice*.   Ultimately, BlackBerry fails to identify any concrete, patent-eligible invention set forth in the claims themselves.   As such, Defendants respectfully request that the Court dismiss Counts II, VII, VIII, and IX of the First Amended Complaint.[3]

Additionally, BlackBerry's willfulness and pre-suit indirect infringement claims must be dismissed because the First Amended Complaint fails to allege the requisite pre-suit knowledge of the patents and the requisite egregious behavior.

---

[1]  U.S. Patent Nos. 8,209,634 ("the '634 patent"), 9,349,120 ("the '120 patent"), 8,296,351 ("the '351 patent"), and 8,676,929 ("the '929 patent").

[2]  Defendants believe that the remaining five asserted patents also fail to claim eligible subject matter and will address those patents at the appropriate stage.

[3]  Defendants moved to dismiss BlackBerry's claims of infringement of the '634, '120, '351 and '929 patents asserting invalidity under 35 U.S.C. § 101.  (*See* Case No. 2:18-cv-01844, D.I. 36.)   Defendant Snap Inc. ("Snap") also moved under § 101 as to the '634, '351, and '929 patents as well as U.S. Patent Nos. 8,301,713, 8,825,084. (Case No. 2:18-cv-02693, D.I. 24.)   The parties agreed to allow BlackBerry to file consolidated opposition briefing for issues common to both cases, while Defendants and Snap would file separate reply briefs.   The instant brief addresses only issues raised by BlackBerry in its two opposition briefs responding to Defendants' motion to dismiss the claims relating to the '634, '120, '351 and '929 patents in the instant Case No. 2:18-cv-01844: D.I. 47 ("Consol. Opp.") and D.I. 50 ("Facebook Opp.").

**DEFENDANTS' REPLY ISO MOTION TO DISMISS**
**CASE NO. 2:18-CV-01844-GW-KS**

## II. ARGUMENT

### A. Assessing Patent Eligibility Under § 101 Is Appropriate At This Time

BlackBerry urges the Court to postpone ruling on the § 101 issues until after claim construction. (Consol. Opp. at 3.) But the Federal Circuit has made clear that "in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." *Genetic Techs. v. Merial*, 818 F.3d 1369, 1373 (Fed. Cir. 2016). "In many cases, too, evaluation of a patent claim's subject matter eligibility under § 101 can proceed even before a formal claim construction." *Id.* at 1374; *Content Extraction & Transmission v. Wells Fargo Bank*, 776 F.3d 1343, 1349 (Fed. Cir. 2014); *Cyberfone Sys. v. CNN Interactive Group*, 558 F. App'x 988, 991 n.1 (Fed. Cir. 2014).

This is such a case. BlackBerry's opposition all but concedes that the present motion can be decided without a formal claim construction, as BlackBerry identifies only a single claim term for potential construction – "meta tag" from the '929 patent. (Consol. Opp. at 20.) BlackBerry does not identify any proposed construction for that term, let alone explain how such a construction would have any impact on the Court's analysis under § 101. *See EveryMD.com v. Facebook*, No. 16-cv-6473, 2017 WL 3453294, at *4 (C.D. Cal. May 10, 2017) (rejecting postponement of § 101 ruling for claim construction because "Plaintiff fails to explain … how the claim construction process would significantly impact the Court's assessment of patent eligibility in a way that the parties' arguments do not already do.").

BlackBerry also suggests that the Court should postpone ruling on Defendants' motion until it receives "the benefit of a technology tutorial, claim construction and expert opinion on relevant issues." (Consol. Opp. at 3.) But BlackBerry does not explain how anything in the claims requires a technical tutorial or expert testimony. *E.g.*, *Reese v. Sprint Nextel*, No. 13-cv-3811, 2018 WL 1737613, at *4 (C.D. Cal. Apr. 9, 2018) (holding claims invalid under § 101 prior to claim construction where the claimed concepts "are not so 'opaque such that claim construction would be necessary

1   to flush out [their] contours' before determining whether the claims are patent eligible.")

2   (quoting *EveryMD.com*, 2017 WL 3453294, at *4).   The claims at issue here are

3   directed to straightforward concepts using only generic computer equipment (*e.g.*,

4   servers, wireless networks, mobile devices).   Because "the basic character of the

5   claimed subject matter is readily ascertainable from the face of the patent,"

6   *EveryMD.com*, 2017 WL 3453294, at *4, the § 101 issue can be decided now without

7   claim construction, a technical tutorial, or expert testimony.

8   **B.   BlackBerry's Analysis Impermissibly Ignores the Claim Language**

9   BlackBerry's opposition suffers from an overarching flaw that infects its entire

10   § 101 analysis – its arguments have no basis in the *actual language of the claims*

11   *themselves*.   For example, BlackBerry's opposition asserts that the '634, '120, '351 and

12   '929 patents provide various supposed technological solutions to technological

13   problems, but as explained in more detail below, the purported solutions and

14   advancements are <u>not</u> recited in the claims.   Federal Circuit law is clear that "[t]he §

15   101 inquiry must focus on the language of the Asserted Claims themselves."   *Synopsys*

16   *v. Mentor Graphics*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) (citing cases); *RecogniCorp*

17   *v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) ("To save a patent at step two

18   [of *Alice*], an inventive concept must be evident in the claims.").

19   The *claims* at issue here are directed at abstract ideas for sending advertising or

20   other information following a triggering event ('351 and '929 patents) and gathering,

21   analyzing, and displaying information relating to message notifications ('634 and '120

22   patents).   Those claims recite high-level and result-oriented concepts similar to those

23   the Federal Circuit has repeatedly held to be patent-ineligible.   To the extent the claims

24   recite any technological concepts, they "simply append[] conventional steps specified

25   at a high level of generality," which "does not make that idea patentable."   *Affinity Labs*

26   *of Tex. v. DIRECTV*, 838 F.3d 1253, 1262-63 (Fed. Cir. 2016) (citation omitted).

27   BlackBerry eschews the actual claim language to pretend that "factual disputes"

28   exist that would preclude a ruling on the § 101 issue.   But the Federal Circuit in

3

*Berkheimer*, a decision heavily relied upon by BlackBerry, made clear that the purported improvements described in a patent specification raise a factual dispute for purposes of § 101 **only** if "they are captured in the claims." *Berkheimer v. HP*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). *Berkheimer* went on to invalidate half of the claims at issue under § 101 because those claims, as here, failed to "recite any of the purportedly unconventional activities disclosed in the specification." *Id.*

Similarly, the complaint in *Aatrix Software v. Green Shades Software*, 882 F.3d 1121 (Fed. Cir. 2018), was not sustained solely on the basis of conclusory allegations in the pleadings, as BlackBerry suggests. The plaintiff in *Aatrix* based its "inventive concept" argument on a specific limitation in the claim itself ("data file"), and a narrow construction of that term directly incorporating the purported technical improvement. *Id.* at 1129.

*Aatrix* does not stand for the proposition that a motion to dismiss must be automatically denied whenever the complaint alleges the existence of a supposed "inventive concept." It is well-established that, when ruling on a Rule 12(b)(6) motion to dismiss, a district court has no obligation to accept the truth of factual allegations that are contradicted by documents referenced in or attached to the complaint. *E.g., Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citing *Steckman v. Hart Brewing*, 143 F.3d 1293, 1295-96 (9th Cir. 1998)). As district courts have recognized after *Aatrix*, "[s]imply stating that the claimed method and systems were not conventional at the time of the patent application does not make it so, and the court need not credit such conclusory statements." *Uniloc USA v. HTC America*, No. 17-cv-01558, 2018 WL 3008870, at *12 (W.D. Wash. June 15, 2018) (citing *Pareto v. Fed. Deposit Ins.*, 139 F.3d 696, 699 (9th Cir. 1998)).

The lack of an inventive concept here is confirmed by the language of the challenged claims themselves—claim language that cannot be changed by BlackBerry's attempt at artful pleading. In contrast with *Aatrix*, BlackBerry's complaint contains no specific allegations showing a concrete improvement *set forth in the claims* of the

**DEFENDANTS' REPLY ISO MOTION TO DISMISS**
**CASE NO. 2:18-CV-01844-GW-KS**

patents.   BlackBerry dresses up summaries of the patents with conclusory legal contentions—boilerplate language about purported "improvements" that are not grounded in the language of the claims.

**C.      The '351 And '929 Patents Are Ineligible Under § 101 And *Alice***

**1.      The '351 and '929 patents fail *Alice* Step 1.**

BlackBerry does not dispute that providing tailored content based on information about a user (*e.g.*, location, preferences, etc.) is an abstract idea, as the Federal Circuit has repeatedly held.  (Mot. at 7-8 (citing cases); Consol. Opp. at 16.)  BlackBerry also fails to identify any flaw in Defendants' mall kiosk analogy.  BlackBerry argues that kiosk attendants "indiscriminately" pass out information, but the opposite is true – a key purpose of an information kiosk in the real world is to ensure that information is selectively provided to visitors based on their perceived needs, in response to their questions, interests, and/or location (*e.g.*, providing food-related information when the kiosk is located near a food court).  Further, the attendant may include different types of information such as a map ("default"), coupons ("static"), or a flyer for an event such as a sale ("dynamic").   The attendant may also place a post-it note on a particular advertising flier, much like the "meta tags" of the '929 patent.  (*Cf.* Consol. Opp. at 19.) The kiosk thus aptly illustrates the abstract nature of the '351 and '929 claims, which apply the same idea in a generic network environment.  *See Intellectual Ventures I v. Symantec*, 838 F.3d 1307, 1313-14, 1317 (Fed. Cir. 2016) (invalidating computer-implemented claims: "[w]e … think the district court's analogy to a corporate mailroom is also useful.").

BlackBerry argues that these patents focus on "how" the abstract idea is carried out (Consol. Opp. at 17), but fails to identify any language within the claims themselves that provides a concrete, patent-eligible improvement to any underlying computer. The claims themselves recite a "proxy content server" that "receives information," "stores the information," and receives and uses a "feedback signal" – those claimed steps being "specified at a high level of generality."  *Affinity Labs of Tex.*, 838 F.3d at

1262-63.  BlackBerry also does not dispute that the "proxy content server," "feedback signal," or "meta tags" were all commonly used before the patents were filed.[4]

BlackBerry essentially argues that the claims must be patent-eligible because they are situated in a computer or network environment, but it is well-settled under *Alice* that "limiting the use of an abstract idea to a particular technical environment" does not confer patent eligibility.  *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2358 (2014) (citation omitted); *In re TLI Commc'ns Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) ("[A]lthough the claims limit the abstract idea to a particular environment – a mobile telephone system – that does not make the claims any less abstract for the step 1 analysis.").

For the '351 patent, BlackBerry focuses on the "proxy content server," but does not argue that a proxy content server itself requires any particular hardware or software or is anything other than a generic prior art network component.  (Consol. Opp. at 14-15.)  In fact, BlackBerry's own descriptions (*see id*.) confirm that the "proxy content server" in the '351 patent is merely a functional label for a component used to move information around.  It serves as a generic intermediary to exchange information between "content servers" and users—no different from the kiosk attendant who selects fliers and coupons from cubbies to give to shoppers.  The claims' recitation of a generic and purely functional "proxy content server" thus fails to provide any concrete invention, consistent with *Alice* itself and its Federal Circuit progeny holding invalid similar claims using computers as intermediaries.  *Alice*, 134 S. Ct. at 2359 (holding that claims where "[t]he computer is itself the intermediary" were patent-ineligible under § 101) (citation omitted); *buySAFE v. Google*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("The computers in *Alice* were receiving and sending information over networks

---

[4]  The concept of "meta tags" and their use in advertisements dates back to the early dates of the Internet and World Wide Web.  *E.g.*, *Brookfield Commc'ns v. W. Coast Entm't*, 174 F.3d 1036, 1045 (9th Cir. 1999) (describing "metatags" as used on the Internet and web in the 1990s).  In the context of the web, "[m]etatags are HTML code intended to describe the contents of the web site."  *Id.*

connecting the intermediary to the other institutions involved, and the Court found the claimed role of the computers insufficient.").

The analogous claims at issue in *Two-Way Media*, for example, similarly recited an "intermediate server" that received data from a source and forwarded it to user devices. *Two-Way Media v. Comcast Cable Commc'ns*, 874 F.3d 1329, 1335-36 (Fed. Cir. 2017). The Federal Circuit affirmed invalidity under § 101 because nothing set forth in the claims, "including the use of 'intermediate computers,' requires anything other than conventional computer and network components operating according to their ordinary functions." *Id.* at 1338-39. Like the claims in *Two-Way Media*, the claims here state that results are achieved for moving around information among generic network components, but the claim language "does not sufficiently describe *how* to achieve these results in a non-abstract way." *Id*. at 1337 (emphasis added). This case therefore falls squarely in line with *Alice* and post-*Alice* precedent making clear that claiming a server does not confer patent-eligibility when, as here, the "server is described simply in terms of performing generic computer functions such as storing, receiving, and extracting data." *In re TLI*, 823 F.3d at 612.

For the '929 patent, BlackBerry argues that the use of "meta tags" "enable the wireless mobile device to display ads with reduced screen real estate and reduced delay or bandwidth consumption." (Consol. Opp. at 19.) These purported benefits, however, appear nowhere in the claims. *Berkheimer*, 881 F.3d at 1369. The '929 claims recite nothing about screen size or bandwidth, let alone improving displays or reducing delay. *Versata Dev. Grp. v. SAP Am.*, 793 F.3d 1306, 1335 (Fed. Cir. 2015) ("Examination of the claims—as a whole and in terms of each claim's limitations—reveals that the claims … do not recite any such benefit."). Moreover, the '929 patent itself admits that "standard techniques" are used to determine whether to insert meta tags, confirming that "meta tags" are not the technological innovation that BlackBerry now claims. *See* '929 patent, col. 12:5-11 (to determine which "meta tags" to insert, "the Proxy Content Server **18** can use *several standard techniques . . .*") (emphasis added).

BlackBerry also makes no effort to distinguish the analogous *IV/Erie* case.  (Mot. at 11, citing *Intellectual Ventures I v. Erie Indem.*, 850 F.3d 1315 (Fed. Cir. 2017).)  In that case, as in the '351 patent, the claims recited "tags," and more specifically the claims recited "XML tags including domain tags and category tags" that were used to organize information such as types of restaurants and payment options, as well as associated "metafiles."  *IV/Erie*, 850 F.3d at 1326.  The Federal Circuit confirmed that this use of "tags" and "metafiles" to implement the abstract idea did not confer patent-eligibility.  Here, as in *IV/Erie*, "tags are similarly used to identify, organize, and locate the desired resource" but they are merely an implementation tool for an abstract idea of moving around information, not a concrete, patent-eligible invention that improves the operation of any underlying computer system such as by making a computer itself operate more efficiently.  *Id*. at 1327.

BlackBerry also repeatedly cites *Enfish*, but the claims of the '351 and '929 patents are readily distinguishable.  The claims in *Enfish* were directed to a self-referential table for a computer database which sped up processing by the computer itself, not on "economic or other tasks for which a computer is used in its ordinary capacity" like the '351 and '929 claims here.  *Enfish v. Microsoft*, 822 F.3d 1327, 1337 (Fed. Cir. 2016).  The court in *Enfish* distinguished between patents focused on "the specific asserted improvement in computer capabilities," which may be valid, and "a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool," which are not.  *Id.* at 1336.  Here, the claims at issue in both patents fall squarely into the latter category.  The claim language such as "proxy content server," "feedback signal," and "meta tag" might appear "technical" at first glance, but on closer examination, these generic recitations of basic information-organizing features fail to provide any concrete technological improvement to any underlying computer itself.

## 2.   The '351 and '929 patents fail *Alice* Step 2.

BlackBerry fails to identify any inventive concept contained in the '351 and '929 claims that "transforms" them into a patent-eligible invention—something

"significantly more" than the abstract idea itself.  *Alice*, 134 S. Ct. at 2355.  "To save a patent at step two, an inventive concept must be *evident in the claims*."  *RecogniCorp*, 855 F.3d at 1327 (emphasis added).

For the '351 patent, BlackBerry cites only its own conclusory legal contentions from its First Amended Complaint.  (Consol. Opp. at 18.)  It alleges, for example, that the "proxy content server" enables the system to "cut down on transmission and battery costs."  (Consol. Opp. at 18.)  However, "these supposed benefits are not recited in the claims at issue."  *Versata*, 793 F.3d at 1335.  In fact, these supposed "transmission and battery cost" improvements are not even mentioned in the specification.  Rather, the shared '351/'929 specification admits that the idea is essentially a business method technique with an economic objective.  ('351 patent, col. 3:14-19 ("One possible goal of combining information with advertising content is to achieve a revenue source for the provider of the information ...").)

Similarly for the '929 patent, BlackBerry offers only attorney argument characterizing the patent, but fails to identify any concrete inventive concept in the claims beyond the abstract idea itself.  (Consol. Opp. at 20.)  It points to "meta tags" and implies that some claim construction might be useful, but fails to proffer any claim construction that might change the inquiry.  (*Id*.)  No claim construction is needed, however, because the "meta tag" is merely electronic information that the patent explicitly admits can be implemented using "standard techniques," as discussed above.  As in *IV/Erie*, the claimed use of "tags" and "meta" data is merely a use of electronic information—"mere indicators that provide additional information"—not a specific technology that improves any computer or device.  *IV/Erie*, 850 F.3d at 1329.  Here, as there, the claims merely state high-level desired functional results for organizing information, and "do not sufficiently recite *how* the inclusion of . . . tags or metadata leads to an improvement in computer database technology[.]"  *Id*. (emphasis added).

Nor do the "content information," "targeted advertising," or "feedback signal" contain any concrete inventive concept, for similar reasons.  These features are merely

functional reflections of the abstract idea itself, mirroring the kiosk attendant responding to a mall shopper's question. The claimed idea for disseminating information is just that—an idea—along with an instruction to "do it on a computer." *Apple Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1243 (Fed. Cir. 2016) (citing *Alice*, 134 S. Ct. at 2358. As discussed above, the '351 and '929 claims never specify *how* their information-moving ideas might be implemented with any underlying technological details for software programming or hardware logic. The claims thus fail the § 101 inquiry consistent with dozens of similar patents held invalid in the wake of *Alice* because, "taken individually or in combination, the recited limitations neither improve the functions of the computer itself, nor provide specific programming, tailored software, or meaningful guidance for implementing the abstract concept." *Intellectual Ventures I v. Capital One Fin.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017).

**D.** **The '634 And '120 Patents Are Ineligible Under § 101 And *Alice***

**1.** **The '634 and '120 patents fail *Alice* Step 1.**

BlackBerry's argument on the '634 and '120 patents rests on the false premise that to survive this § 101 challenge, BlackBerry need only "plausibly assert that its patents go to specific technical solutions, such as those that improve the user experience of mobile devices …." (Consol. Opp. at 8.) But neither *Core Wireless* nor any other governing authority provides such a broad and sweeping exemption that would permit a patentee to defeat a § 101 challenge merely by plausibly alleging some "technical" solution or alleged improvement to graphic user interface software. Instead, *Core Wireless* maintains that the Court must consider "whether the claims are directed to a *specific* improvement *in the capabilities of computing devices*[.]" *Core Wireless Licensing SARL v. LG Elecs.*, 880 F.3d 1356, 1361-62 (Fed. Cir. 2018) (emphasis added).

Tellingly, BlackBerry never compares the claims at issue in *Core Wireless* to the claims of the '634 and '120 patents, which are easily distinguishable. In its *Core Wireless* opinion, the Federal Circuit italicized the key language in the claims that

10

provided a technological improvement for mobile devices with small screens.[5]  When displaying a certain menu, an application summary could be "*reached directly* from the menu" so that information about one or more applications is "displayed while the one or more applications are in an *un-launched state*."  *Id*. at 1359-60 (italics in original). The claims thus explicitly recited an improvement to computer technology specific to computer software applications with no real-world analogy.  *Id*. at 1363.  As the Federal Circuit explained, these recitations provided "a requirement that the device applications exist in a particular state" (*i.e.*, an "un-launched state" where the application is not running) and "a particular manner by which the summary window must be accessed" (*i.e.*, "reached directly" through a particular menu).  *Id*. at 1362-63.  The Federal Circuit held that these specific claim recitations provided "an improvement in the functioning of computers[.]"  *Id.* at 1363.

By contrast here, the claims of the '634 and '120 patents do not provide any such improvement in the functioning of computers.  The '634 claims are directed to nothing significantly more than collecting and displaying information about unread messages, akin to a corporate assistant taking and reporting missed calls.  BlackBerry fails to identify any language "*captured in the claims*" themselves that allegedly improves the functioning of a computer.  *Berkheimer,* 81 F.3d at 1369 (emphasis added).  The only claim language it quotes is adding a "numeric character" to an icon representing a count of unread messages from correspondents.  (Consol. Opp. at 12.)  Merely displaying a number on an icon does not improve the functioning of a computer.  Nothing changes for the user beyond being presented with unread message information on an icon, and there is no improvement to the underlying device itself.  The user is merely presented

---

[5] Indeed, the *Core Wireless* court focused its analysis on the claims themselves, not the specification or any allegations or attorney arguments made in the complaint.  *See, e.g.*, at 1362-63 ("these claims are directed to …"; "Claim 1 of the '476 patent requires …"; "[t]he claim further requires …"; "this claim limitation restrains …;" "these claims recite ….").

with an additional piece of information.  This is merely an idea for presenting information, not a concrete technological innovation.

Contrary to BlackBerry's assertions, these claims therefore fail the § 101 test just like the claims in cases such as *Electric Power Group*, where the Federal Circuit has repeatedly confirmed that merely stating an idea for collecting information and displaying it is not a patent-eligible invention.  *Elec. Power Grp. v. Alstom S.A.*, 830 F.3d 1350, 1353-54 (Fed. Cir. 2016).  The '634 claims never specify any underlying technology showing *how* messages are recognized or *how* the numeric character is generated, such as through a particular programming algorithm.  The claims recite only a high-level, purely functional desired result that somehow, using some unspecified underlying programming or hardware, information about messages is received and a numeric character is displayed on an icon.  As such, "[t]he advance they purport to make is a process of gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions.  They are therefore directed to an abstract idea."  *Id*. at 1354.

Similarly, the '120 claims merely reflect the idea of applying a rule or filter to determine what is shown in the user's inbox.  (*See* '120 patent, col. 13:28-30; claim 1.)  Again, BlackBerry fails to identify any language set forth in the claims themselves that provides any concrete, patent-eligible invention.  The only claim language it cites is the use of "flags," "overrid[ing]" a notification setting, and displaying "silenced" messages in a "different manner."  (Facebook Opp. at 1-4.)  Nothing in those generic, high-level and result-oriented recitations provides any improvement to the underlying computer itself.  Again, the claims fail to specify *how* these desired results might be achieved through any particular underlying programming or hardware.  *Two-Way Media*, 874 F.3d at 1330; *IV/Erie*, 850 F.3d at 1329.  The claims never provide "any particular assertedly inventive technology for performing those functions."  *Elec. Power Grp.*,

830 F.3d at 1354.  There is also no increased efficiency in accessing messages, and no streamlining of the process of retrieving and reviewing messages.

Contrary to BlackBerry's suggestions, the idea of "silencing" a message notification is certainly not unique to the digital context (*e.g.*, instructing an assistant to "Hold my calls regarding the BlackBerry case!"), nor is the ability to "un-silence" notifications (*i.e.* "You can go ahead and put those calls through now").  The claims merely apply the same idea for organizing human communication to the environment of conventional electronic messaging, which does not make it patent-eligible.  *Alice*, 134 S. Ct. at 2358; *In re TLI*, 823 F.3d at 613.  And the manner in which the '120 patent accomplishes the silencing/un-silencing of message notifications—via a "flag" on the thread serving as a rule or filter—is merely an information-management idea that does not improve the function of the underlying device itself.  *See Smartflash LLC v. Apple Inc.*, 680 F. App'x 997, 984-85 (Fed. Cir. 2017) (holding invalid claims directed to the distribution of content based on "rules").  The device itself is not improved or made more efficient.

In a misguided effort to analogize *Core Wireless*, BlackBerry argues that the '634 patent allegedly "improves the display on a small hand held device" in view of alleged "size and navigational constraints." (Consol. Opp. at 13.) This argument misses the mark because the *claims* do not recite or require any "small hand held" device, nor any particular screen size or any relative sizes for the icon or numeric indicator.  *Versata*, 793 F.3d at 1335; *Synopsys*, 839 F.3d at 1149.  The claims broadly recite only a generic "wireless communication device," which, in theory, could encompass a giant wireless display screen on the Goodyear Blimp or a wireless electronic billboard.

Further, BlackBerry's argument that Facebook's analogy to handwritten message notifications ignores "computer-specific elements" of the '634 patent (Consol. Opp. at 13) is inapposite as the "computer-specific" elements of the '634 patent were all generic and known—*e.g.*, mobile device screens and application icons.  The analogy to handwritten messages illustrates the core of the abstract concept: delivering information

regarding messaging correspondents, performed in a generic and conventional computer environment. *Alice*, 134 S. Ct. at 2358; *In re TLI*, 823 F.3d at 613.

BlackBerry also argues that there is no "preemption" concern relating to the '634 patent because the claims cover only the use of a "numeric character" representing message correspondents. (Consol. Opp. at 12.) As an initial matter, BlackBerry's argument only highlights the abstractness of the '634 claims. Merely using a numeric character to represent message senders does not improve the device itself. Moreover, as the Federal Circuit has made clear, "questions on preemption are inherent in and resolved by the § 101 analysis." *Ariosa Diagnostics, Inc. v. Sequenom*, 788 F.3d 1371, 1379 (Fed. Cir. 2015). When claims fail the two-part *Alice* test, as they do here, "preemption concerns are fully addressed and made moot." *Id.* [6]

For these reasons, courts have recognized that *Core Wireless* does not magically confer § 101 eligibility on every patent that involves a computer display as BlackBerry suggests. For example, the *Uniloc* court found that while the claims recited a method involving displaying a manifestation of a device on a touchscreen, *Core Wireless* did not apply and the claims were patent-ineligible. *Uniloc USA*, 2018 WL 3008870, at *8. Likewise, the *TriPlay* court concluded that although the patent claimed a technique for using templates to format the messages to match users' device's display capabilities, *Core Wireless* did not save the claims. *TriPlay v. WhatsApp*, No. 13-cv-1703, 2018 WL 1479027, at *9 (D. Del. Mar. 27, 2018). Much like BlackBerry's claims here, the *TriPlay* claims amounted to nothing more than a high-level instruction to apply an abstract idea, not a concrete improvement to computer technology. *See id.*

---

[6] The claims here are also readily distinguishable from those at issue in *McRo*. (*Cf.* Consol. Opp. at 8-9, 12, citing *McRo v. Bandai Namco Games Am.*, 837 F.3d 1299 (Fed. Cir. 2016).) The claims at issue in *McRo* were focused on a specific improvement in computer *function* (*i.e.*, an improvement in the computer animation process which increased automation) and limited to a particular context (*i.e.*, computer animation, specifically automating the lip synchronization and facial expressions of 3-dimensional animated characters). By contrast, the claims at issue here do not improve the operation of the underlying device itself.

14

The two district court cases BlackBerry cites only confirm the narrow applicability of *Core Wireless*.  In fact, one of those courts specifically observed that "the reasoning of *Core Wireless* may rest on narrow ground" and that "[o]ther Federal Circuit cases confirm that not every purported technological improvement is patent eligible."  *Local Intelligence v. HTC Am.*, No. 17-cv-6437, 2018 WL 1697127, at *8 (N.D. Cal. Apr. 6, 2018) (citing *Affinity Labs of Texas v. DIRECTV*, 838 F.3d 1253, 1262 (Fed. Cir. 2016) (claims relating to "deliver[ing] content to handheld wireless electronic device" were directed to an abstract idea)).  Likewise, in the *Immersion v. Fitbit* case BlackBerry cites, the claims involved use of "haptic" (physical touch) notifications for motion detection devices used to track events such as the number of times a first-responder squeezes a manual resuscitator.  The court found that in this context, use of haptics constituted an improvement to the functionality of the motion detection device.  *Immersion v. Fitbit*, No. 17-cv-3886, 2018 WL 1156979, at *15 (N.D. Cal. Mar. 5, 2018).  BlackBerry's claims at issue here do not provide any such technological improvement to the underlying device itself.  In sum, nothing in *Core Wireless* itself or subsequent case law supports BlackBerry's false proclamation that every patent purportedly improving a graphical display is now patent-eligible.

### 2.   The '634 and '120 patents fail *Alice* Step 2.

As with Step 1, for Step 2, BlackBerry argues that the '634 patent's claimed invention uses "less screen real estate" as opposed to notifications that occupied a "major portion of the main screen."  (Consol. Opp. at 13.)  But as noted previously, the '634 *claims* recite nothing about handheld devices or small screens, nor do they specify that the icon or numeric indicator must be relatively small.  Thus, BlackBerry's alleged "inventive concept" is not "evident in the claims."  *RecogniCorp*, 855 F.3d at 1327.  On the contrary, as noted previously, the generic "wireless communication device" recited in these claims could literally encompass a large display on a blimp or billboard, and the icon and numeric indicator could occupy the majority of a device's screen.

**DEFENDANTS' REPLY ISO MOTION TO DISMISS**
**CASE NO. 2:18-CV-01844-GW-KS**

BlackBerry similarly argues that the '634 patent specification "describes a particular algorithm (calculating the number of people from whom unread messages have been received)." (Consol. Opp. at 14.) This argument fails because the '634 claims do not recite any such algorithm. *Berkheimer*, 881 F.3d at 1369 (affirming invalidity of claim that "does not recite" subject matter "disclosed in the specification"); *Synopsys*, 839 F.3d at 1149 (invalidating claims despite "'200 pages of code' attached to the specifications" of the patents-in-suit, because "[t]he § 101 inquiry must focus on the language of the Asserted Claims themselves.").

For the '120 patent, BlackBerry likewise fails to identify any inventive concept in the claims beyond the abstract idea for selectively silencing message notifications. (Facebook Opp. at 3-5.) It points to the claim language of "overrid[ing]" a typical notification setting and displaying "silenced" messages in a "different manner." Again, however, these are only statements of high-level functional results reflecting the abstract idea itself, with no underlying technical detail specifying *how* the results might be achieved in order to transform that idea into a concrete, patent-eligible invention. *Two-Way Media*, 874 F.3d at 1330; *IV/Erie*, 850 F.3d at 1329; *IV/Capitol One*, 850 F.3d at 1342. The bare idea of reporting "silenced" messages in a different manner is nothing more than the same abstract idea as a corporate assistant taking a message and reporting it instead of putting the caller through directly, as discussed previously. As with the other patents, these purely functional claimed results do not amount to "significantly more" than the abstract idea to transform the idea into a concrete invention eligible for patent protection under *Alice*. *Alice*, 134 S. Ct. at 2355.

## E.    The dependent claims are equally patent-ineligible.

BlackBerry asserts that Defendants offer only "cursory" treatment of the claims other than the representative claims. (Consol. Opp. at 9.) But BlackBerry never "presents any meaningful argument for the distinctive significance of any claim limitations other than those included in" the representative claims discussed in Defendants' motion. *Elec. Power Grp.*, 830 F.3d at 1352 (relying on representative

16

claim to hold invalid other claims).  Indeed, BlackBerry itself recognized the similarity across the claims by identifying "exemplary" claims in its First Amended Complaint. (*E.g.*, D.I. 15, ¶¶ 146, 288, 314 and 333.)[7]  The Federal Circuit has repeatedly endorsed the use of representative claims where, as here, no significant difference among the claims is demonstrated.  *Elec. Power Grp.*, 830 F.3d at 1352; *Berkheimer*, 881 F.3d at 1365 ("Courts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim . . .") (citing cases).

### F.  BlackBerry's Willfulness and Pre-Suit Indirect Infringement Claims Should be Dismissed.

#### 1.  BlackBerry Has Not Plead Pre-Suit Knowledge for Seven of the Patents-In-Suit.

The First Amended Complaint is completely devoid of allegations that Defendants had knowledge of seven of the nine asserted patents prior to the filing of this lawsuit.[8]  As BlackBerry now admits, this is fatal to any claims of pre-suit indirect infringement. (Consol. Opp. at 20) (acknowledging that indirect infringement is limited to post-suit conduct).  In this District, a failure to plead pre-suit knowledge of the patent is also fatal to a claim of willful infringement.  *E.g.*, *Soteria Encryption v. Lenovo United States*, No. 16-cv-7958, 2017 WL 3449058, at *3 (C.D. Cal. Feb. 27, 2017) (Wu, J.) (dismissing Plaintiff's claim for willful infringement when it did not allege pre-suit knowledge of the asserted patent); *Puma SE v. Forever 21*, No. 17-cv-2523, 2017 WL 4771004, at *3 (C.D. Cal. June 29, 2017) ("Nothing in the *Halo* decision supports [Defendant's] position that a plaintiff pleading willful patent infringement no longer need allege pre-suit knowledge of the patent.").  Reliance on knowledge through the complaint or post-complaint activities is not enough.  "[A] willfulness claim asserted in

---

[7] As to the '120 patent only, BlackBerry asserts that claim 24 does not represent claims 3 and 7 (Facebook Opp. at 4), but it does not argue, much less demonstrate, that any minor difference between these claims changes the claims' overall "character as a whole" for purposes of the § 101 inquiry.  *Affinity Labs*, 838 F.3d at 1257.

[8]  The seven patents are U.S. Patent Nos. 8,301,713; 8,429,236; 8,677,250; 9,349,120; 8,296,351; 8,676,929; 8,279,173.

DEFENDANTS' REPLY ISO MOTION TO DISMISS
CASE NO. 2:18-CV-01844-GW-KS

the original complaint must necessarily be grounded exclusively in the accused infringer's **pre-filing conduct**." *Soteria Encryption*, 2017 WL 3449058, at *3 (emphasis added); *Halo Elecs. v. Pulse Elecs.*, 136 S. Ct. 1923, 1933 (2016) ("[C]ulpability is generally measured against the knowledge of the actor at the time of the challenged conduct."). Because BlackBerry erroneously relies exclusively on post-suit knowledge, BlackBerry's willfulness and pre-suit indirect infringement claims for the seven patents should be dismissed.

Furthermore, even if BlackBerry could overcome the pre-suit knowledge hurdle, it has not (nor could it) adequately plead egregious behavior. BlackBerry points to Defendants' behavior during pre-suit licensing negotiations, but those discussions are irrelevant since they were not about these patents. Willful infringement requires notice and egregious conduct related to the *asserted* patents, not *other* patents. *E.g.*, *Anascape v. Microsoft*, No. 06-cv-158, 2008 WL 7182476, at *3 (E.D. Tex. Apr. 25, 2008) (finding that communications regarding parent patents of the asserted patent could not qualify as notice of the asserted patent). Because the First Amended Complaint failed to allege egregiousness, the willfulness claims as to seven of the patents-in-suit should be dismissed.

### 2. BlackBerry is Precluded From Alleging Willful and Pre-suit Indirect Infringement for the '961 and '634 Patents.

In an effort to save its willfulness and pre-suit indirect infringement claims for the '961 and '634 patents, BlackBerry argues that its pre-suit correspondence with Defendants are not subject to the parties' NDA, because they pre-date the signing of the NDA and have no confidentiality restrictions. However, BlackBerry ignores the fact that this correspondence falls under protected "Discussions," regardless of whether they were "Confidential Information."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.    CONCLUSION

For the foregoing reasons, Defendants request that the Court grant the motion to dismiss and (1) hold that the '929, '351, '634, and '120 patents are not directed to patent-eligible subject matter, and (2) dismiss BlackBerry's claims of willful and pre-suit indirect infringement.

Dated:  July 12, 2018                   COOLEY LLP

/s/ Heidi L. Keefe
_____
Heidi L. Keefe
Attorneys for Defendants
FACEBOOK, INC., WHATSAPP INC.,
INSTAGRAM, INC., and INSTAGRAM
LLC.

---

[9] Indeed, at least one court has found that even a defendant's *failure* to respond at all to a request for a patent license does not evidence egregious behavior. *See Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2017 WL 2190055, at *2 (E.D. Tex. May 18, 2017).

20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COOLEY LLP
HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
MARK R. WEINSTEIN (193043)
(mweinstein@cooley.com)
MATTHEW J. BRIGHAM (191428)
(mbrigham@cooley.com)
LOWELL D. MEAD (223989)
(lmead@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone: (650) 843-5000
Facsimile:  (650) 849-7400

COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
101 California Street
5th Floor
San Francisco, CA  94111-5800
Telephone: (415) 693-2000
Facsimile:  (415) 693-2222

Attorneys for Defendants
FACEBOOK, INC., WHATSAPP INC.,
INSTAGRAM, INC., and INSTAGRAM,
LLC

DEFENDANTS' REPLY ISO MOTION TO DISMISS
CASE NO. 2:18-CV-01844-GW-KS