COUNSEL LISTED
IN SIGNATURE BLOCK

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLACKBERRY LIMITED, a Canadian corporation,<br><br>        Plaintiffs,<br><br>    v.<br><br>FACEBOOK, INC., a Delaware corporation, WHATSAPP INC., a Delaware corporation, and INSTAGRAM, INC., a Delaware corporation, and INSTAGRAM, LLC, a Delaware limited liability company<br><br>        Defendants,<br><br>SNAP INC., a Delaware corporation<br><br>        Defendant. | CASE NO. 2:18-cv-01844 GW(KSx)<br>CASE NO. 2:18-cv-02693 GW(KSx)<br><br>**JOINT STATEMENT REGARDING SCHEDULING** |

Pursuant to the Court's guidance at the April 1, 2019 claim construction hearing, Plaintiff BlackBerry Limited ("BlackBerry"), Defendants Facebook, Inc., WhatsApp Inc., Instagram, Inc., and Instagram, LLC (collectively, "Facebook"), and Defendant Snap Inc. ("Snap") have met and conferred and hereby submit this Joint Statement Regarding Scheduling.

**BlackBerry's Statement**

The parties disagree regarding the schedule the Court should adopt through trial. BlackBerry proposes a schedule that would continue the litigation through trial at the end of this year. Defendants propose an indefinite stay of the case pending decisions from the PTAB regarding whether to institute eighteen separate petitions for *inter partes* review of the asserted patents. BlackBerry opposes this request for a stay. Because BlackBerry provides the Court with the only comprehensive case schedule through trial, BlackBerry's proposal should be adopted.

**I.     BlackBerry's Proposed Schedule**

BlackBerry proposes the Court adopt the schedule below, which continues the litigation through a proposed trial date in December, 2019.

| Event | Proposed Date |
|---|---|
| Fact Discovery Complete | June 14, 2019 |
| Final Infringement Contentions | July 5, 2019 |
| Final Invalidity Contentions | July 12, 2019 |
| Opening Expert Reports (reports for issues on which a party bears the burden of proof) | July 26, 2019 |
| Rebuttal Expert Reports (reports for issues on which a party does not bear the burden of proof) | August 23, 2019 |
| Expert Discovery Complete | September 6, 2019 |

| | |
|---|---|
| Summary Judgment and *Daubert* Motions Due | September 27, 2019 |
| Oppositions to Summary Judgement and *Daubert* Motions Due | October 18, 2019 |
| Mediation Deadline | October 24, 2019 |
| Post-Mediation Status Conference | October 25, 2019 |
| Replies to Summary Judgement and *Daubert* Motions Due | November 1, 2019 |
| Hearing on Summary Judgment and *Daubert* Motions | November 15, 2019 |
| Pretrial Motion Filing Deadline | N/A |
| Pretrial conference | November 25, 2019 |
| Trial | December 9, 2019 |

Defendants have refused to provide their own comprehensive scheduling proposal through trial. Instead, Defendants object on the basis that BlackBerry's proposal does not move slowly enough. But, BlackBerry—the party with the burden of proof—is ready and willing to adhere to the proposed schedule based on its diligent efforts to pursue discovery to date. To the extent Defendants are not similarly positioned, that is only because they have delayed their own discovery, presumably in the hopes that it would bolster their request for a stay.

First, Defendants contend that BlackBerry's proposed schedule is "completely unrealistic." But, Judge Guilford's Standing Patent Rules, which this Court has adopted in part, call for a significantly faster schedule than that BlackBerry proposes. For example, Judge Guilford's rules call for the exchange of opening expert reports only 28 days after issuance of a claim construction order—a pace that would require an exchange in this case by May 3. *See* Guilford Standing Patent Rule 4.1.

BlackBerry's proposed schedule instead calls for an exchange of expert reports nearly three months later, on July 26. Thus, BlackBerry's proposed schedule is a more than reasonable extension of the pacing laid out in Judge Guilford's rules, under which the parties have been operating for the past several months.

Next, Defendants insist BlackBerry's schedule does not allow them enough time to conduct the additional document discovery and depositions they have actively avoided pursing thus far. Notably absent from Defendants' statement is any indication that they have been diligently pursing such discovery or depositions. Defendants point to the limited number of documents they have obtained in discovery, but do not suggest that BlackBerry has provided anything less than what Defendants have actually requested. That is because, unlike Defendants, BlackBerry has been diligently responding to what little discovery Defendants have propounded. Defendants similarly complain of the number of remaining depositions they must take, but fail to mention that they have not served a single deposition notice or subpoena on the witnesses identified in BlackBerry's initial disclosures.

As discussed below, Defendants' failure to diligently pursue discovery thus far is no accident. They have strategically delayed those efforts in the hopes of obtaining an indefinite stay.

## II. BlackBerry Opposes Defendants' Attempts To Delay This Case Through An Unnecessary Stay

BlackBerry opposes any stay of the litigation based on the mere possibility that the PTAB may grant institution of one or more of the eighteen separate petitions for *inter partes* review regarding BlackBerry's asserted patents. Defendants' request is nothing more than an eleventh hour attempt to further holdup this litigation based on Defendants' own tactical decision to delay filing IPR petitions up until the one-year deadline following the filing of BlackBerry's complaints.

Defendants have consistently dragged their feet in both discovery in this case and in filing IPR petitions, with the apparent goal of obtaining a tactical advantage

during claim construction and then springing their request for a stay at the last possible moment.  Defendants have had a year to file their petitions, yet waited to file thirteen of them until just last month—most likely to avoid being held to account for inconsistent positions taken in those petitions relative to those they adopted during claim construction in this litigation.  While delaying those petitions Defendants have also consistently delayed production of documents in response to requests BlackBerry served as far back as August of last year, failed to provide available deposition dates for witnesses BlackBerry noticed as far back as January of this year, and (in the case of Snap) repeatedly failed to provide access to the specific source code BlackBerry has requested.  After all these delays, Defendants informed BlackBerry of their intention to move for a stay for the first time following the Court's ruling on claim construction. Defendants' constant delay tactics during discovery appear to have been purposefully calculated to support this last minute attempt to obtain a stay.  This conduct is highly prejudicial to BlackBerry.

Defendants' request for a stay would result in delays of up to half a year based solely on the possibility that the PTAB could decide to institute review of any of the asserted patents.  No decision by the PTAB as to *whether to institute* review based on the first of those petitions is required for another four months, until August 2019.  Of the more recent petitions—filed as recently as last Saturday, April 6—no institution decision is due until October 2019.  Furthermore, ten of the petitions have yet to even receive a Notice of Filing Date, meaning that the deadline for the PTAB decision regarding whether to institute *inter partes* review cannot even be calculated at this time.  This Court has expressly denied stays—like that here—which are based solely on the *possibility* that the PTAB might later institute review of an IPR petition.  *The California Institute of Technology v. Broadcom Limited, et al.*, 2:16-cv-03714-GW-AGR, Dkt. 118 at 3 (C.D. Cal. Mar. 2, 2017) (denying motion to stay where "the IPR petitions have not yet been granted and there is no indication as to which, if any, of the patents claims will be actually reexamined.").

Any further delay of this case would also prejudice BlackBerry by interrupting discovery, which has been ongoing for months, just as it is entering its most active phase. Despite Defendants continuing efforts to delay it, discovery is now well-underway. BlackBerry has invested literally hundreds of hours of expert witness time examining the source code made available for inspection by Defendants. BlackBerry has served 118 Requests for Production to the Facebook Defendants in four separate sets and 73 Requests for Production to Snap in three separate sets since July 2018. For their part, Facebook has served 57 Requests for Production to BlackBerry in three separate sets and Snap has served another 89 in three separate sets. BlackBerry also served formal Email Production Requests a month ago, pursuant to the Court's Protective Order Governing the Production of Electronically stored Information (Dkt. 100). The parties have similarly served and responded to dozens of complex Interrogatories. This extensive discovery to date has allowed BlackBerry to serve voluminous and highly detailed infringement contentions regarding every single asserted patent.

Further, BlackBerry has served twelve deposition notices on Defendants' witnesses, along with 30(b)(6) corporate deposition notices to all Defendants (which BlackBerry served over seven weeks ago). BlackBerry has also already deposed one witness and, while Defendants have consistently delayed providing deposition dates for any of the remaining witnesses, Defendants have recently represented that they will provide deposition dates for those witnesses within the first two weeks of May, including for witnesses designated on topics contained in BlackBerry's 30(b)(6) notices.

Defendants' request for a stay here is also contrary to prevailing case law holding that stays pending IPR are generally prejudicial to patentees, particularly where, as here, the patentee practices at least some of the asserted patents. *See Hologram USA, Inc v. Vntana, 3D, LLC*, 2015 WL 12791513, at *3 (C.D. Cal. Dec. 7, 2015) ("Staying a case while such harm is ongoing

usually prejudices the patentee that seeks timely enforcement of its right to exclude"); *SZ DJI Tech. Co. v. Yuneec Int'l Co.*, 2016 WL 9114148, at *3 (C.D. Cal. Dec. 1, 2016).

A pre-emptive stay would also waste the significant judicial resources already dedicated to this case, solely because Defendants waited until the last minute to file IPR petitions up through and following claim construction. *See Universal Elecs.*, 943 F. Supp. 2d at 1031 (Guilford, J.) (refusing to stay case pending IPR institution decisions where "Defendant did not file its *inter partes* review petitions until almost a year after being served with the complaint, and during that time the Court spent substantial effort construing the claims."). Defendants should not be rewarded for their tactical decision to delay filing their petitions and delay moving for a stay until after the Court's ruling on claim construction.

### III. Defendants' Alternative "Schedule" Is Unnecessary And Yet Another Attempt to Delay Progression Of The Litigation

Assuming the Court declines to stay the case, Defendants have refused to work with BlackBerry on a schedule that will keep the case moving forward. Instead, Defendants alternatively urge the Court adopt a schedule built exclusively around Defendants' preferred motions for summary judgment, while postponing the scheduling of any further substantive deadlines.[1] BlackBerry similarly opposes this piecemeal approach to scheduling, which represents yet another effort to delay the parties' day in court.

Defendants' alternative request is based on their stated intent to move for early summary judgment of validity within the next two months. All parties are, of course, free to move for summary judgment at any time they feel is appropriate through the

---

[1] During the parties' meet and confer in preparation for this Joint Statement, Defendants offered to postpone any claim narrowing until after their proposed motions for summary judgment on invalidity issues. Defendants have apparently reversed course on this point, presumably in an effort to further delay entry of a scheduling order through trial.

procedures set forth by Central District of California Local Rules 7-3 through 7-10. But there is no reason to set, in advance, a special briefing schedule for such motions while bringing the progression of the rest of the litigation to a standstill in the interim.

Defendants' argument that all further scheduling should cease simply because their proposed motions have the *possibility* of narrowing the issues before the Court is speculative, and could apply equally to any stage of any litigation. There is no basis to allow the case to languish indefinitely on the mere possibility that some future dispositive motion may result in narrowing.

Moreover, contrary to Defendants' representations, the proposed motions are unlikely to narrow any of the issues before the Court at this stage. The same fact issues that precluded Defendants' earlier motions to dismiss will similarly preclude any effort to obtain early summary judgment on purported Section 101 and 112 issues while discovery is still progressing. Indeed, as the Court noted multiple times in last week's Claim Construction Order, whether elements of the asserted patents are "routine, conventional and/or well-understood" for purposes of Section 101 will ultimately turn on "factual disputes" that "are not appropriately resolved on the current record." (*E.g.*, Claim Construction Order, Dkt. 156 at 12, 16-17.) Notably, BlackBerry's proposed schedule includes an explicit deadline for filing summary judgments in September by which time the factual record will be fully developed.

Finally, BlackBerry also notes that it intends to bring its own motions for early summary judgment in the near term, but intends to do so pursuant to the Local Rules and in parallel with its proposed case schedule—not as an alternative to progressing in accordance with a comprehensive case schedule. To the extent the Court believes that adopting a formal schedule for such motions now would be beneficial, BlackBerry requests that such a briefing schedule be adopted in addition to, and not instead of, BlackBerry's proposed schedule. BlackBerry also requests that any special briefing schedule for invalidity motions would not prevent BlackBerry from bringing

its own motions for summary judgment on certain issues before or at the same time as Defendants' planned motions.

**Defendants' Statement**

These consolidated patent cases involve eleven (11) patents, nine (9) of which are not related to each other, asserted against a wide range of products and services from four different companies. Forty-eight (48) claims are currently asserted against the Facebook Defendants, and forty-eight (48) claims are currently asserted against Snap. Defendants also each assert sixty (60) prior art references or systems.

Given the extreme breadth of this case and the case manageability issues, Defendants propose addressing the need to narrow this case and gatekeeping invalidity issues prior to further scheduling.

Conversely, Blackberry now attempts to rush this case to trial while allowing for minimal discovery, ignoring the potential impact of the *eighteen* pending IPR petitions, and without giving this Court a full opportunity to potentially narrow the scope of this litigation through renewed Section 101 and Section 112 motions. In furtherance of its goals, Blackberry has painted an inaccurate and disingenuous portrait of Defendants' motives and actions in this litigation. If Blackberry was indeed serious about expediting this matter, it could have filed these actions sooner (*i.e.*, not waiting until several years after the last patent-in-suit issued),[2] it could have identified a reasonable number of asserted claims in its original contentions (*i.e.*, far less than the 119 claims against Facebook and 66 claims against Snap), it could have provided detailed infringement contentions rather than the vague and incomplete contentions it provided, and it could have produced far more than the paltry 771 documents it has produced to date. In light of its own actions, Blackberry's attempts to cast aspersions on Defendants ring hollow.

---

[2] BlackBerry recently filed yet another lawsuit asserting the '929, '351, and '120 patents against Twitter. *BlackBerry v. Twitter*, No. 2:19-cv-1444 (C.D. Cal. Feb. 27, 2019) (Wu, J.).

Because Defendants do not believe the Court intended this joint report to be the forum for litigating the merits of Defendants' forthcoming motion to stay, Defendants will address Blackberry's spurious comments and mischaracterizations in their stay motion.

## I. Defendants Request a Brief Stay Pending IPR Institution Decisions.

All asserted claims are subject to pending *inter partes* review petitions. The Patent Office will issue its institution decisions, starting in August, with all decisions expected by November 2019.

As will be explained in Defendants' motion to stay,[3] a brief stay until those institution decisions are issued will conserve judicial, third-party, and party resources, and streamline the case. *E.g.*, *Polymer Tech. Sys. v. Jant Pharmacal*, No. 15-02585, 2015 WL 12860482, at *4 (C.D. Cal. Aug. 20, 2015) ("A brief stay of this action, *i.e.*, until the USPTO determines whether it will institute *inter partes* review proceedings, would be most efficient."); *Prime Focus Creative Servs. Canada v. Legend3D*, No. 15-2340, 2015 WL 12746207, at *4 (C.D. Cal. Sept. 23, 2015) ("[d]evelopment of the IPR record may … encourage settlement"); *Wonderland Nursery Goods v. Baby Trend*, No. 14-1153, 2015 WL 1809309, at *3 (C.D. Cal. Apr. 20, 2015) (even "if an IPR is not instituted, the stay will be relatively short and the action can continue with minimal delay"). Following institution decisions, BlackBerry will be better informed on whether it is worth the Court's resources to pursue certain patents-in-suit through expert discovery and trial, and Defendants will be better informed on what prior art to assert (or not assert).

---

[3] Defendants wish to file their motion to stay as soon as possible. Because BlackBerry did not provide its position on Defendants' motion to stay until Tuesday, April 9, per Local Rule 7-3, Defendants will file their motion on Tuesday, April 16.

## II. Alternatively, Threshold Patent Ineligibility Issues Under Section 101 and Indefiniteness/Enablement Issues Under Section 112 Should Be Resolved Before The Costliest Parts of the Case Proceed.

If the Court is not inclined to grant a stay, the Court should address certain threshold Section 101 patent ineligibility and Section 112 issues, while reasonable discovery continues, before further scheduling.[4] Now that the Court has issued its claim construction order, the patent ineligibility issues under § 101 for the '713, '634, '120, '084, '327, '351, and '929 patents in Defendants' prior motion to dismiss are ripe for resolution.[5] In addition, there are Section 112 issues with some of the patents that are ripe for resolution. Defendants therefore respectfully request that the Court enter the schedule set forth below, which would provide for briefing on §§ 101 and 112 issues before other dates in the case (such as expert discovery) are established.

Defendants anticipate that §§ 101 and 112 issues are likely to eliminate some, if not all, of these patents. It makes little sense for the parties and the Court to expend resources litigating claims and products now that will ultimately be abandoned, if the claims are found invalid. Granting Defendants' renewed § 101 motion would eliminate, for example, at least Facebook Workplace Chat, Pages Manager, Facebook

---

[4] BlackBerry mischaracterizes Defendants' position, incorrectly arguing that Defendants propose allowing the case to "languish indefinitely" and to allow things to come to a "standstill."

[5] *E.g.*, Dkt. 156 at 9 (agreed construction for "resumption message" in the '713 patent); Dkt. 68 at 18; Dkt. 156 at 28 (referring to Defendants "renew[ing] their § 101 motion" "soon"); Dkt. 68 at 12, n.7 ("If the proxy content server is a routine, conventional, and well-understood element, legal authority would suggest that at least the independent claims of the '351 Patent are drawn to patent-ineligible concepts."); Dkt. 68 at 6, n.4 ("Facebook Defendants assert that the claimed 'wireless communication device' in the '634 Patent 'in theory, could encompass a giant wireless display screen on the Goodyear Blimp or a wireless electronic billboard.' It is not clear if BlackBerry disputes this assertion, but to the extent BlackBerry does, the parties' dispute would support the conclusion that the Defendants' § 101 dispute for the '634 Patent might be better left for determination after claim construction.") (internal citations omitted).

Watch, Facebook Audience Network, and ads-related severs from the case. Moreover, granting the motion would eliminate Snap from the case entirely as every claim asserted against Snap is subject to the renewed § 101 motion.

At this point, setting dates for close of fact discovery, expert discovery, and trial would be arbitrary guesswork. As it now stands, Defendants do not know whether they need to present five fact witnesses for deposition or fifteen, take the deposition of one third-party inventor in Canada or fifteen, or respond to one expert report from BlackBerry or *five* different experts like BlackBerry presented during claim construction. By suggesting that the parties set a schedule now, irrespective of how many patents and how many accused products will remain, BlackBerry is guaranteeing that the parties, and this Court, will expend unnecessary resources on issues that are not likely to make it to trial, under unrealistic deadlines. For example, BlackBerry proposes a mere 28 days for Defendants to serve rebuttal expert reports, which may be reasonable in a one-patent case, but is certainly not reasonable if all eleven patents against the Defendants and all products are still at issue.

Instead, in the event that the Court is not inclined to stay this eleven-patent case pending *inter partes* review institution decisions, then the serious §§ 101 and 112 issues looming over the patents-in-suit should be addressed upfront, while appropriate fact discovery continues. Defendants thus propose the following schedule:

| Event | Defendants' Proposal |
|---|---|
| **Final Election of Asserted Claims** | Friday, May 3, 2019 |
| **Final Election of Prior Art** | Friday, May 17, 2019 |
| **Defendants to file a Renewed Section 101 Motion and any Section 112 Motions** | Thursday, May 23, 2019 |
| **Opposition Brief** | Thursday, June 6, 2019 |
| **Reply Brief** | Thursday, June 13, 2019 |
| **Hearing on Renewed Section 101 and 112 Motions** | TBD (at the Court's and parties' convenience) |

As shown above, Defendants propose that the existing schedule remain the same with respect to the final election of asserted claims (May 3) and prior art

(May 17). Shortly after those exchanges, Defendants can file a renewed Section 101 motion and any Section 112 motions. After the hearing on Defendants' motions, the Court and the parties will be better informed on which patents, claims, products, and Defendants remain at issue and thus, can work on setting an appropriate schedule for expert reports, close of fact and expert discovery, summary judgment, *Daubert* motions, motions *in limine*, pretrial disclosures, and trial. Setting those dates now will only result in undue burden and expense for the parties, third parties, and the Court.

### III. BlackBerry's Proposed Schedule is Completely Unrealistic.

BlackBerry's proposed schedule is deeply flawed, imposing completely unrealistic deadlines designed to create the greatest burden and expense on the Court, numerous third-parties (such as the named inventors in foreign countries and prior artists), and the parties. BlackBerry offers no justification and no legal support for its arbitrarily selected dates. Exemplary problems are highlighted below:

- BlackBerry proposes that the parties speed through fact and expert discovery, while eighteen petitions for *inter partes* review are pending before the Patent Office. BlackBerry asks the parties and the Court to do all of the work necessary to address all of the §§ 101, 102, 103, 112, non-infringement, and damages issues with this sprawling patent case in parallel to the Patent Office issuing institution decisions on pending petitions addressing all asserted claims.

- BlackBerry proposes that trial be prematurely scheduled for December 2019, so that Defendants and the Court will be denied any benefits from the Patent Office proceedings. *E.g.*, *Murata Mach. USA v. Daifuku*, 830 F.3d 1357, 1362 (Fed. Cir. 2016) (IPRs designed to "limit the burden of litigation on courts and parties").

- BlackBerry seeks to prejudice Defendants' defenses and deny Defendants a fair opportunity to prepare their case. For example, BlackBerry unreasonably proposes cutting off fact discovery on June 14. To date, BlackBerry has produced a meager 771 documents.[6] BlackBerry also listed nearly two dozen individuals on its initial disclosures, none of whom have been deposed.[7] BlackBerry also knows most of the named inventors are in foreign countries, requiring Hague procedures. Prior to the claim construction order, it would have been inefficient to take those foreign inventor depositions. Recently, BlackBerry also served new interrogatories, and is now threatening to bring unripe and harassing discovery disputes to the Magistrate Judge. BlackBerry's unrealistic proposal is designed to prejudice Defendants from fairly litigating and obtaining discovery needed for their cases.

- BlackBerry proposes an inequitably compressed schedule, giving themselves, for example, three weeks for final infringement contentions, but Defendants only seven days for final invalidity contentions.

- BlackBerry proposes that the parties incur the full expense and burden of preparing complete opening and rebuttal expert reports by June and August 2019,[8] even though resolving threshold §§ 101 and 112 issues would

---

[6] BlackBerry's positions are internally inconsistent and contradictory, arguing on the one hand, Defendants have been allegedly slow to propound discovery, but on the other hand, BlackBerry admits that the Facebook Defendants served 57 requests for production.

[7] The Facebook Defendants proposed several deposition dates – which BlackBerry declined – in favor of pursuing burdensome email discovery first.

[8] BlackBerry cherry-picks from Judge Guilford's rules only when convenient to it. For example, Judge Guilford does not require Defendants to serve invalidity reports at the same time as infringement reports. BlackBerry ignores this, proposing that both parties serve reports simultaneously for issues where they bear the burden of proof. As explained above, BlackBerry's unrealistic proposed expert report deadlines multiplies the burden and expense for the Court, third-parties, and parties.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

    significantly trim down or completely eliminate patents, products, and Defendants.

- BlackBerry proposes that the pre-trial conference be held a mere 10 days after the summary judgment hearing, ensuring that the Court and the parties will incur the full burden of preparing and analyzing pre-trial filings on patents that may be dismissed.
- BlackBerry does not address the agreed-upon need for separate trials against the Facebook Defendants and Snap, nor the length of such trials.

Accordingly, Defendants respectfully requests that the Court reject BlackBerry's unrealistic proposed schedule, and either: (1) grant Defendants' motion for a brief stay pending IPR, or (2) order Defendants' proposed schedule (identified above).

| | | |
|---|---|---|
| 1 | DATED: April 11, 2019 | Respectfully Submitted, |

By */s/ James R. Asperger*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
  James R. Asperger (Bar No. 83188)
  jamesasperger@quinnemanuel.com
  865 S. Figueroa St., 10th Floor
  Los Angeles, CA 90017
  Telephone: (213) 443-3000
  Facsimile: (213) 443-3100

  Kevin P.B. Johnson (Bar No. 177129)
  kevinjohnson@quinnemanuel.com
  Victoria F. Maroulis (Bar No. 202603)
  victoriamaroulis@quinnemanuel.com
  555 Twin Dolphin Drive, 5th Floor
  Redwood Shores, CA 94065
  Telephone: (650) 801-5000
  Facsimile: (650) 801-5100

BLACKBERRY CORPORATION
  Edward R. McGah, Jr (SBN 97719)
  Vice President, Deputy General Counsel
  41 Ticknor Place
  Laguna Niguel, California 92677
  Telephone: (+1) 650-581-4750
James R. Asperger (Bar No. 83188)
jamesasperger@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for BlackBerry Limited

Dated: April 11, 2019

COOLEY LLP

*/s/ Matthew J. Brigham*
Matthew J. Brigham (191428)

COOLEY LLP
HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
MARK R. WEINSTEIN (193043)
(mweinstein@cooley.com)
MATTHEW J. BRIGHAM (191428)
(mbrigham@cooley.com)
LOWELL D. MEAD (223989)
(lmead@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
101 California Street
5th Floor
San Francisco, CA 94111-5800
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

Attorneys for Defendants
FACEBOOK, INC., WHATSAPP INC., INSTAGRAM, INC., and INSTAGRAM, LLC

Dated: April 11, 2019

By */s/ Yar. R. Chaikovsky*

PAUL HASTINGS LLP
YAR R. CHAIKOVSKY (SB# 175421)
yarchaikovsky@paulhastings.com
PHILIP OU (SB# 259896)
philipou@paulhastings.com
ANTHONY J. TARTAGLIO (SB# 280286)
anthonytartaglio@paulhastings.com
1117 S. California Avenue
Palo Alto, California 94304
Telephone: 1(650) 320-1800
Facsimile: 1(650) 320-1900

CHAD J. PETERMAN (*Pro Hac Vice*)
chadpeterman@paulhastings.com
200 Park Avenue
New York, New York 10166
Telephone: (212) 319-6000
Facsimile: (212) 319-4090

THOMAS ZACCARO (SB# 183241)
thomaszaccaro@paulhastings.com
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, California 90071
Telephone: (213) 683-6000
Facsimile: (213) 996-3146

Attorneys for Defendant
Snap Inc.

**FILER'S ATTESTATION**

I, James Asperger, am the ECF user whose ID and password were used to file this Updated Joint Case Scheduling Report. Pursuant to L.R. 5-4.3.4.(a)(2), I hereby attest that counsel for Defendants concurred in the filing of this document.

By */s/ James R. Asperger*