*Counsel in Signature Block*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

BLACKBERRY LIMITED,

        Plaintiff,

   v.

FACEBOOK, INC., WHATSAPP INC., and INSTAGRAM LLC,

        Defendants.

SNAP INC.,

        Defendant.

Case Nos.  2:18-cv-01844; 2:18-cv-02693 GW(KSx)

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STAY PENDING *INTER PARTES* REVIEW**

The Hon. George H. Wu

Hearing Date:  May 16, 2019
Time:  8:30 A.M.
Place:  Courtroom 9D

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND ................................................................................................ 2

    A.      BlackBerry Waited Years Before Suing Defendants. ............................... 2

    B.      BlackBerry Refused to Identify a Reasonable Number of Asserted
        Claims and Failed to Provide Sufficient Infringement Contentions. ......... 3

    C.      Defendants Diligently Filed IPR Petitions on All Asserted Claims. ........ 3

    D.      Defendants' IPRs Will Likely Be Instituted and Successful. ................... 6

        1.      The '961 Patent Claims Known Technology. ................................. 6

        2.      The '351 and '929 (Ads) Patents Claim Known Technology. ....... 6

        3.      The '173 Patent Claims Known Technology. ................................. 8

        4.      The '120 Patent Claims Known Technology ................................. 8

        5.      The '236 Patent Claims Known Technology. ................................. 9

        6.      The '713 (Timestamp) Patent Claims Known Technology. ........... 9

        7.      The '634 Patent Claims Known Technology. ................................. 9

        8.      The '250 Patent Claims Known Technology. ............................... 10

        9.      The '327 and '084 (Action Spot) Patents Claim Known
            Technology ................................................................................... 10

    E.      Significant Fact Discovery in This Sizeable Patent Case Remains. ....... 11

        1.      BlackBerry's interrogatory responses remain
            substantively deficient. ................................................................. 12

        2.      No BlackBerry or inventor depositions have occurred. .............. 13

    F.      Additional Merits Work Lies Ahead ....................................................... 14

III.    LEGAL STANDARDS ..................................................................................... 15

IV.     ARGUMENT .................................................................................................... 16

    A.      The Stage of the Case Favors a Stay. ..................................................... 16

    B.      A Stay Pending IPR Would Simplify the Issues In This Case. .............. 18

    C.      BlackBerry Would Suffer No Undue Prejudice or Clear Tactical
        Disadvantage From a Stay. ..................................................................... 20

V.      CONCLUSION ................................................................................................. 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Autoalert v. Dominion Dealer Sols.*,
No. 12-1661, 2013 WL 8014977 (C.D. Cal. May 22, 2013) ................................. 21

*Black Hills Media v. Pioneer Elecs. (USA)*,
No. 14-00471, 2014 U.S. Dist. LEXIS 133664
(C.D. Cal. May 8, 2014) .................................................................................... 16

*BlackBerry v. Avaya*,
No. 3:16-cv-2185 (N.D. Tex. July 27, 2016) ........................................................ 2

*BlackBerry v. BLU Products*,
No. 1:16-cv-23535 (S.D. Fla. Aug. 16, 2016) ...................................................... 2

*The California Institute of Technology v. Broadcom, et al.*,
No. 2:16-cv-3714-GW-AGR, Dkt. 118 (C.D. Cal. Mar. 2, 2017) ......................... 17

*Core Optical Techs. v. Fujitsu Network Commc'ns*,
No. 16-00437, 2016 WL 7507760 (C.D. Cal. Sept. 12, 2016) ............................... 15

*Document Sec. Sys. v. Nichia, et al.*,
No. 2:17-cv-08849-JVS-JEM, Dkt. 61-1 (C.D. Cal. July 23, 2018) ...................... 15

*E.Digital v. Dropcam*,
No. 14-4922, 2016 WL 658033 (N.D. Cal. Feb. 18, 2016) .................................... 17

*Ethicon v. Intuitive Surgical*,
No. 17-871, 2019 WL 1276029 (D. Del. Mar. 20, 2019) ....................................... 17

*FastVDO v. AT&T Mobility*,
No. 16-385, 2017 WL 2323003 (S.D. Cal. Jan. 23, 2017) ..................................... 16

*Game & Tech. v. Riot Games*,
No. 16-6486, 2016 WL 9114147 (C.D. Cal. Nov. 4, 2016) .................................... 15

*General Elec. v. Vestas Wind Sys. A/S*,
No. 2:17-cv-05653, Dkt. 85 (C.D. Cal. June 7, 2018) .................................... 18, 20

*Hologram USA v. Vntana, 3D*,
    No. 14-9489, 2015 WL 12791513 (C.D. Cal. Dec. 7, 2015) ...................................20

*Inogen v. Inova Labs*,
    No. 11-1692, 2012 WL 4748803 (C.D. Cal. Mar. 20, 2012) ...............................21

*Karl Storz Endoscopy-Am. v. Stryker*,
    No. 14-876, 2015 WL 13727876 (N.D. Cal. Mar. 30, 2015) ................................. 18

*Limestone v. Micron Tech.*,
    No. 15-278, 2016 WL 3598109 (C.D. Cal. Jan. 12, 2016) ............................... 15, 20

*Lund Motion Prods. v. T-Max Hangzhou Tech. Co.*,
    No. 17-01914, 2019 WL 116784 (C.D. Cal. Jan. 2, 2019) ............................... 18, 20

*MasterObjects v. eBay*,
    No. 16-6824, 2017 WL 2181132 (N.D. Cal. May 5, 2017) ................................... 16

*McAfee Enters. v. Yamaha Corp. of Am.*,
    No. 16-2562, 2016 WL 10988792 (C.D. Cal. Dec. 19, 2016) ............................... 16

*MCM Portfolio v. Hewlett-Packard*,
    812 F.3d 1284 (Fed. Cir. 2015) ............................................................ 17

*Murata Mach. USA v. Daifuku*,
    830 F.3d 1357 (Fed. Cir. 2016) ............................................................ 17

*Nichia v. Vizio*,
    No. 18-362, 2018 WL 2448098 (C.D. Cal. May 21, 2018) ................................... 19

*PersonalWeb Techs. v. Facebook*,
    No. 13-1356, 2014 WL 116340 (N.D. Cal. Jan. 13, 2014) ................................... 17

*Pi-Net Int'l v. Hertz*,
    No. 12-10012, 2013 WL 7158011 (C.D. Cal. June 5, 2013) ................................. 19

*Polaris Innovations v. Kingston Tech. Co.*,
    No. 16-00300, 2017 WL 8220599 (C.D. Cal. June 27, 2017) ......................... 16, 19

*Polymer Tech. Sys. v. Jant Pharmacal*,
    No. 15-02585, 2015 WL 12860482 (C.D. Cal. Aug. 20, 2015) ............................. 16

*Prime Focus Creative Servs. Canada v. Legend3D*,
    No. 15-2340, 2015 WL 12746207 (C.D. Cal. Sept. 23, 2015) ......................... 15, 19

*Reversible Connections v. GBT*,
  No. 17-5383, 2018 WL 5116411 (C.D. Cal. Aug. 21, 2018) .................................. 16

*Rovi Guides v. Comcast*,
  No. 16-9278, 2017 WL 4876305 (S.D.N.Y. Oct. 27, 2017) ................................. 17

*SAS Inst. v. Iancu*,
  138 S. Ct. 1348 (2018).................................................................................. 19

*SCA Hygiene Prods. Aktiebolag v. Tarzana Enters.*,
  No. 17-4395, 2017 WL 5952166 (C.D. Cal. Sept. 27, 2017)........................... 15, 19

*Semiconductor Energy Lab. v. Chimei Innolux*,
  No. 12-21, 2012 WL 7170593 (C.D. Cal. Dec. 19, 2012) ...................................... 20

*Signal IP v. Am. Honda Motor Co.*,
  No. 14-02454, 2016 U.S. Dist. LEXIS 129182 (C.D. Cal. Mar. 4,
  2016) ................................................................................................................ 19

*Skip Hop v. Munchkin, et al.*,
  No. 15-6339, 2016 WL 7042093 (C.D. Cal. Mar. 15, 2016) .................................. 15

*Sleep Number v. Sizewise Rentals*,
  Nos. 18-356, 18-357, 2019 WL 1091335 (C.D. Cal. Feb. 12, 2019)..................... 15

*Smartflash v. Apple*,
  621 F. App'x 995 (Fed. Cir. 2015) .................................................................... 17

*SPEX Techs. v. Kingston Tech.*,
  Nos. 16-1790, 16-7349, 2018 WL 2446801 (C.D. Cal. May 16, 2018) ................ 16

*Spin Master v. Mattel*,
  No. 2:18-cv-03435-RSWL-GJS, Dkt. 39 (C.D. Cal. Nov. 21, 2018) .............. 15, 20

*Star Envirotech v. Redline Detection*,
  No. 12-1861, 2013 WL 1716068 (C.D. Cal. Apr. 3, 2013)................................... 15

*SZ DJI Tech. v. Yuneec Int'l*,
  No. 16-595, 2016 WL 9114148 (C.D. Cal. Dec. 1, 2016) ..................................... 20

*TAS Energy v. San Diego Gas & Elec. Co.*,
  No. 12-2777, 2014 WL 794215 (S.D. Cal. Feb. 26, 2014) ................................... 18

*TeleSign v. Twilio*,
 No. 15-3240, 2016 WL 6821111 (C.D. Cal. Mar. 9, 2016) .............................. 15, 21

*Tire Hanger v. My Car Guy Concierge Servs.*,
 No. 14-549, 2015 WL 857888 (C.D. Cal. Feb. 27, 2015)...................................... 16

*VirtualAgility v. Salesforce.com*,
 759 F.3d 1307 (Fed. Cir. 2014) ............................................................................. 18

*Universal Elecs. v. Universal Remote Control*,
 943 F. Supp. 2d 1028 (C.D. Cal. 2013).................................................................. 16

*Wonderland Nursery Goods v. Baby Trend*,
 No. 14-1153, 2015 WL 1809309 (C.D. Cal. Apr. 20, 2015)............................ 15, 20

*XR Commc'ns v. D-Link Sys.*,
 No. 17-596, 2018 WL 2734849 (C.D. Cal. Apr. 10, 2018).............................. 18, 19

**Statutes**

35 U.S.C. § 313............................................................................................................5

35 U.S.C. § 314............................................................................................................5

35 U.S.C. § 316............................................................................................................5

**Other Authorities**

37 C.F.R. § 42.100(b) ................................................................................................22

37 C.F.R. § 42.100(c) ..................................................................................................5

# I.   INTRODUCTION

Defendants have filed petitions for *inter partes* review (IPR) with the Patent Office against all asserted claims across all patents-in-suit.  The Court should stay this litigation pending IPR institution decisions.

BlackBerry is currently asserting eleven patents in this sprawling patent-infringement case, against a variety of Facebook, WhatsApp, Instagram, and Snap services—nine patents against the Facebook Defendants, six patents against Snap, with four patents asserted against both defendants.  It can hardly be questioned that this case will be substantially narrowed before it ever reaches a jury.  Because BlackBerry will not voluntarily narrow its case in any material way (and its current size and unmanageability was of BlackBerry's design), there are only two ways this case will be whittled down to the few issues (if any) that warrant trial.

First, the Court could allow the litigation to proceed, which will place a burden on the Court to narrow issues by eliminating (through dispositive motion practice) patents that are invalid under §§ 101 and/or 112, and eliminating claims that are not infringed by the accused products.  Second, the Court can stay the litigation to allow the IPR process to run its course.  The IPR petitions present compelling prior art grounds that were not presented previously to the Patent Office, and could eliminate entire chunks (or even the entirety) of this case.  Even if the IPR petitions do not fully dispose of this litigation, they could remove patents or claims from the case and otherwise substantially reduce the issues for trial.  If anything remains, the result of the IPR proceedings would place the parties in a better position to make informed decisions about potential resolution of a number of currently pending litigations around the world.

Although the Court has issued a claim construction ruling, some of the costliest and most burdensome work lies ahead – including dispositive motions, depositions of third-party named inventors in foreign countries, Rule 30(b)(6) depositions, and email production.  Defendants thus respectfully request that the Court briefly stay this multi-

party, multi-patent, multi-product case pending IPR institution decisions by the Patent Office. Defendants expect to receive all institution decisions by approximately November 2019.

## II.  BACKGROUND

### A.   BlackBerry Waited Years Before Suing Defendants.

The BlackBerry of today devotes most of its efforts towards filing patent lawsuits. BlackBerry stopped manufacturing and selling its own smartphones years ago,[1] and is currently engaged in patent-litigation campaigns across the world to enforce the patents it amassed during its long-forgotten period of productivity.

BlackBerry did not file this action in March 2018 because it received any new patents, or because Defendants released any new products, or because of any other recent event. The asserted patents issued long before the filing of the Complaint, in most cases, many years earlier.[2] By the time BlackBerry got around to filing suits in March and April 2018, the accused Facebook, WhatsApp, Instagram, and Snap products had been publicly available for many years. March 2018 was simply the time Blackberry chose to expand its litigation campaign to Defendants.

BlackBerry can hardly claim to be prejudiced by a stay of this litigation when it voluntarily delayed bringing this suit in the first instance. Moreover, this is not a competitor case, and BlackBerry has no reasonable likelihood of obtaining injunctive

---

[1]  Mike Masnick, *BlackBerry Continues its Shameful Descent into Patent Trolling By Suing Twitter*, <https://www.techdirt.com/articles/20190228/17170141697/ blackberry-continues-shameful-descent-into-patent-trolling-suing-twitter.shtml> (last visited April 15, 2019).

[2]  One of the issued patents against the Facebook Defendants (the '961 patent) issued in 2008; four in 2012 (the '634, '173, '351, and '713 patents), one in 2013 ('the 236 patent), two in 2014 (the '929 and '250 patents), and the one (the '120 patent) in 2016. Additionally, BlackBerry filed suit on the '961 patent in *BlackBerry v. Avaya*, No. 3:16-cv-2185 (N.D. Tex. July 27, 2016), and on a continuation of the '713 patent in *BlackBerry v. BLU Products*, No. 1:16-cv-23535 (S.D. Fla. Aug. 16, 2016). With respect to the two "action spot" patents asserted only against Snap, they issued in 2012 ('327 patent) and in 2014 ('084 patent).

relief with respect to any of the patents.  BlackBerry did not seek a preliminary injunction, and by its own admission, does not practice at least seven of the patents-in-suit.  (*Cf.* Brigham Ex. 20 at 11-13; Peterman Ex. 26 at 12-14, 16.)  This is a case about money, brought by a well-financed non-practicing patent enforcement entity who would suffer no prejudice from a short stay of these proceedings.

> ### B.    BlackBerry Refused to Identify a Reasonable Number of Asserted Claims and Failed to Provide Sufficient Infringement Contentions.

BlackBerry's litigation strategy from the outset was to make this case as complex and unwieldy as possible, presumably to maximize its leverage against Defendants.  Its original infringement contentions asserted 119 claims against the Facebook Defendants, and asserted 66 claims against Snap.  Even after Defendants identified material deficiencies in BlackBerry's contentions (*e.g.*, Brigham Ex. 2; Peterman Ex. 27), BlackBerry served "first supplemental" infringement contentions in December 2018, that continued to assert blunderbuss allegations against the "www.facebook.com website," Facebook Messenger, Instagram, WhatsApp, "Snapchat application," and other broadly defined categories of accused products.  Those "supplemental" contentions made every effort to conceal which claims BlackBerry truly intended to pursue in the case.  It was not until February 2019, in accordance with the Court's scheduling order, that BlackBerry served a narrowed list of 48 asserted claims against the Facebook Defendants, and 48 asserted claims against Snap.  (Brigham Ex. 1 at 3; Peterman Ex. 28 at 1-2.)

> ### C.    Defendants Diligently Filed IPR Petitions on All Asserted Claims.

After supplemental infringement contentions, Defendants diligently filed *inter partes* review petitions on the asserted patents.  Because BlackBerry's February 2019 list of asserted claims selected numerous dependent claims (in many cases without asserting its corresponding independent claim), Defendants' petitions covered the asserted dependent claims, and, where appropriate, relevant independent claims.

The Facebook Defendants filed IPR petitions challenging all asserted claims:

| Date Filed | IPR Review # | Patent & Challenged Claims |
|---|---|---|
| **12/14/2018 – BB's first supp. infringement contentions (Facebook) (119 claims)** | | |
| 12/31/2018 | IPR2019-00516 | '173 claims 1, 2, 4, 6, 7, 8, 10, 12, 13, 14, 16, 18 (Brigham Ex. 4 at 4-5) |
| 1/3/2019 | IPR2019-00528 | '173 claims 1, 2, 4, 6, 7, 8, 10, 12, 13, 14, 16, 18 (Brigham Ex. 6 at 4-5) |
| **2/7/2019 – BB identifies 48 asserted claims it intends to pursue (Facebook)[3]** | | |
| 2/19/2019 | IPR2019-00706 | '120 claims 1-3, 5, 7-8, 9, 10, 11, 13-15, 17, 19, 20, 21, 22, 24 (Brigham Ex. 8 at 4) |
| 3/5/2019 | IPR2019-00787 | '236 claims 1, 5, 10, 15, 17, 18 (Brigham Ex. 10 at 3) |
| 3/29/2019 | IPR2019-00899 | '713 claims 1, 2, 3, 4, 5, 6, 7, 8, 9-12 (Brigham Ex. 12 at 4)[4] |
| 4/3/2019 | IPR2019-00923 | '961 claims 1, 2, 5, 15, 16, 19, 23, 24, 27 (Brigham Ex. 13 at 4) |
| 4/4/2019 | IPR2019-00924 | '634 claims 1, 4, 5, 6, 7, 10-11, 12, 13, 16-17, 18 (Brigham Ex. 14 at 4) |
| 4/4/2019 | IPR2019-00925 | '634 claims 1, 4, 5, 6, 7, 10-11, 12, 13, 16-17, 18 (Brigham Ex. 15 at 4) |
| 4/5/2019 | IPR2019-00941 | '351 claims 1, 2, 9, 14, 15, 21 (Brigham Ex. 16 at 3-4) |
| 4/6/2019 | IPR2019-00942 | '250 claims 1, 4, 5, 6, 8, 9, 12, 13, 14 (Brigham Ex. 17 at 3) |
| 4/6/2019 | IPR2019-00940 | '929 claims 1, 5, 8, 9, 10, 13, 16 (Brigham Ex. 18 at 4) |

Snap also filed IPR petitions challenging all asserted claims:

---

[3]  BlackBerry dropped, for example, '173 claims 4, 7, 8, 10, 12, and 16.

[4] Google filed a petition for *inter partes* review of U.S. Patent No. 8,745,149, titled

| Date Filed | IPR Review # | Patent & Challenged Claims |
|---|---|---|
| **12/14/2018 – BB's first supp. infringement contentions (Snap) (119 claims)** **2/7/2019 BB identifies 48 asserted claims it intends to pursue (Snap)** | | |
| 2/22/2019 | IPR2019-00714 | '084 claims: 1, 2, 5, 6, 9, 10, 12, 13, 15 (Peterman Ex. 29 at 2-3) |
| 2/22/2019 | IPR2019-00715 | '327 claims: 1, 2, 3, 8, 9, 10, 11, 13, 14, 15, 20 (Peterman Ex. 30 at 2-3) |
| 3/25/2019 | IPR2019-00829 | '929 claims 1, 2, 3, 4, 5, 8, 9, 10, 11, 12, 13, 16 (Peterman Ex. 31 at 2) |
| 3/25/2019 | IPR2019-00830 | '351 claims 1, 2, 4, 5, 6, 8, 9, 11, 14, 15, 16, 17, 18, 20, 21, 23 (Peterman Ex. 32 at 2-3) |
| 4/5/2019 | IPR2019-00937 | '713 claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12 (Peterman Ex. 33 at 3) |
| 4/5/2019 | IPR2019-00938 | '634 claims 1, 4, 5, 6, 7, 10, 11, 12, 13, 16, 17, 18 (Peterman Ex. 34 at 4) |
| 4/5/2019 | IPR2019-00939 | '634 claims 1, 4, 5, 6, 7, 10, 11, 12, 13, 16, 17, 18 (Peterman Ex. 35 at 3) |

Based on the filing dates, all institution decisions should be received by approximately November 2019,[5] and all final determinations should be completed by approximately November 2020.[6]

---

"Handheld Electronic Device and Associated Method Providing Time Data in a Messaging Environment," in 2017.   The '149 patent is a continuation of the '713 patent asserted in this case.  In August 2018, the Patent Office issued two final written decisions finding all seventeen claims of the '149 patent unpatentable. (Brigham Ex. 23 at 36; Brigham Ex. 24 at 49.)

[5] Once an IPR petition has been filed, the Patent Office has six months to decide whether to institute proceedings.  35 U.S.C. §§ 313-314.

[6] The Patent Office must issue its final determinations within one year from the date review is granted, unless the Patent Office extends the one-year period by no more than six months based on good cause.  *See* 37 C.F.R. § 42.100(c); 35 U.S.C. § 316(a)(11).  The Patent Office has very sparingly invoked the six-month extension.

5

**D.     Defendants' IPRs Will Likely Be Instituted and Successful.**

Defendants' IPR petitions illustrate that all patents-in-suit claim basic technology that was well-known in the prior art.

### 1.     The '961 Patent Claims Known Technology.

The Facebook Defendants filed a petition challenging all asserted claims of the '961 patent.  (Brigham Ex. 13 at 18.)  As illustrated in the Facebook Defendants' petition, the process of generating a cryptographic key was well-known before the '961 patent.  (*Id*. at 19-21.)

### 2.     The '351 and '929 (Ads) Patents Claim Known Technology.

Snap and the Facebook Defendants separately filed petitions challenging all asserted claims of the '351 and '929 patents.  As illustrated in Defendants' IPR petitions, the ad server patents claim concepts that were widely known before their earliest possible priority date.

The ad server patents describe pushing targeted content and advertising information to mobile devices.  ('351 patent, Abstract.)  As the IPR petitions illustrate, this concept was widely known by July 2001.  For example, Int. Pub. No. WO 00/77978 A2 ("*Boyle*") (*see* Peterman Ex. 31 at 18-23; Peterman Ex. 32 at 15-20) states in its abstract:

> An advertiser can provision advertisements for receipt on subscribers' mobile wireless display devices. In accordance with the invention, the advertiser may identify desired recipients for its advertisements based upon demographic and geographic characterization of the subscribers.  Furthermore, the advertisers can select the days and times for delivery of their content, and the number of times that a subscriber should receive their advertisement in a unit time period.  Accordingly, the advertiser is provided with the power to precisely target advertising to mobile wireless display devices.



FIG. 5A

Another reference, U.S. Patent App. Pub. 2002/0052781 ("*Aufricht*"), describes "systems, methods, computer program products, and combinations and sub-combinations thereof for enabling advertisements (as well as other objects) to be loaded on mobile devices[.]" (*See* Peterman Ex. 31 at 10-14; Peterman Ex. 32 at 11-15.)

The ad server patents claim storing information in memory locations based on predefined categories. ('351 patent, Abstract, 2:59-63, 3:60-65.)  This concept was well-known in the art in July 2001.  For example, *Boyle* teaches a database that is "preferably relational, comprising tables, the tables comprising rows, in a manner known in the art."   (Peterman  Ex. 31 at 20; Peterman  Ex. 32 at 17.) One table "associates each ad with one or more categories" such as:

> apparel (clothing, accessories, etc.), automobiles, dining, electronics / computers / Internet, entertainment / movies / music/ books, gifts (flowers, chocolates, etc.), health & beauty, home & garden, and travel.

(Peterman Ex. 31 at 22-23; Peterman Ex. 32 at 19.)

Every element recited in the asserted claims was known.  Another example is shown through the Facebook Defendants' IPR petition on the '351 patent, which maps the limitations of the asserted claims to Int. Pub. No. WO 01/61559 A1 ("*Noble*"):

| '351 Patent, Fig. 1 | Prior Art (Brigham Ex. 16 at 21) |
|---|---|
|  | |

### 3.    The '173 Patent Claims Known Technology.

The Facebook Defendants filed two petitions, both challenging all asserted claims of the '173 patent.  The IPR petitions show that the purportedly inventive user interface technique claimed in the '173 patent – displaying photo tags, each having a tag type indicator (such as an icon) – was known.  As illustrated in the Facebook Defendants' petitions, user interfaces for displaying photo tags with tag type indicators was well-known before the '173 patent.

| Prior Art (Brigham Ex. 6 at 22) |
|---|
| |

### 4.    The '120 Patent Claims Known Technology.

The Facebook Defendants filed a petition challenging all asserted claims of the

'120 patent, which purports to disclose a technique for silencing notifications in message threads. As illustrated in the Facebook Defendants' petition, this feature was part of Collabra, a commercially-available messaging program that was described in a book that pre-dates the '120 patent by more than a decade:



**Prior Art (Brigham Ex. 8 at 18)**

### 5.  The '236 Patent Claims Known Technology.

The Facebook Defendants filed a petition challenging all asserted claims of the '236 patent. As illustrated in the Facebook Defendants' petition, tracking devices that included a GPS receiver for determining the location of the device and status information to a server – using two different message transmission modes – were known. (*E.g.*, Brigham Ex. 10 at 12.)

### 6.  The '713 (Timestamp) Patent Claims Known Technology.

The Facebook Defendants and Snap filed petitions challenging all asserted claims of the '713 patent.  As illustrated in the petitions, well-known instant messaging software, such as AOL's Instant Messenger (AIM) and Apple's iChat, were widely available before the '713 patent, and taught the claimed timestamping. (Brigham Ex. 12 at 12-21, 53-54, 59-63; Peterman Ex. 33 at 12-21, 53-54, 59-63.)

### 7.  The '634 Patent Claims Known Technology.

The Facebook Defendants and Snap filed petitions challenging all asserted claims of the '634 patent.  As illustrated in the petitions, counting the number of

distinct senders and displaying that number to the user was known.  For example:

**Prior Art (Brigham Ex. 15 at 39)**



### 8.    The '250 Patent Claims Known Technology.

The Facebook Defendants filed a petition challenging all asserted claims of the '250 patent.  As illustrated in the Facebook Defendants' petition, using a contact list for gaming was known.  For example:

**Prior Art (Brigham Ex. 17 at 24, 35)**



### 9.    The '327 and '084 (Action Spot) Patents Claim Known Technology.

Snap filed petitions challenging all asserted claims of the '327 and '084 patents (collectively, the "action spot patents").  As illustrated in Snap's IPR petitions, the action spot patents claim concepts which were widely known before their earliest possible priority date.

The action spot patents describe determining and displaying location of mobile device activity (i.e., "action spots").  ('084 patent, Abstract.)  As the references Snap relied upon in their IPRs illustrate, this concept was widely known by August 2010.  For example, U.S. Patent No 8,750,906 ("*Winkler*") (*see* Peterman Ex. 29 at 7-9; Peterman Ex. 30 at 7-9) states in its abstract:

> A system and method for providing information on a map displayed by a mobile device is described.  In some examples, the system facilitates user control of map elements, such as dynamically changing map elements based on events that occur at a user's mobile device or at locations associated with the map elements.  In some examples, the system enables communication between users via map elements.



*FIG. 7A*

**E.   Significant Fact Discovery in This Sizeable Patent Case Remains.**

Significant fact discovery remains.  For example:

- BlackBerry has produced a mere 771 documents to Facebook, and 731 documents to Snap.

- BlackBerry has not substantively responded to a number of Defendants' interrogatories.

- No named inventors of the patents-in-suit have been deposed.[7]

- No fact witnesses have been deposed in the Facebook Defendant case.

- No Rule 30(b)(6) depositions have occurred.[8]

- The parties are beginning email review and production.

- BlackBerry has not revealed the amount or form of damages sought in

---

[7] Prior to the claim construction order, it would have been inefficient to take inventor depositions.

[8] BlackBerry propounded a Rule 30(b)(6) notice of Facebook and Snap, but the parties are conferring over the topics and the production of emails.

this case, or the basis for any relief it seeks in this case.

### 1. BlackBerry's interrogatory responses remain substantively deficient.

BlackBerry has withheld substantive responses to a number of Defendants' interrogatories. Because BlackBerry's responses remain deficient, much work remains to be done before the parties can properly prepare for fact depositions and expert discovery.

For example, the Facebook Defendants' Interrogatory No. 5 (secondary considerations), asked BlackBerry to disclose in detail any contentions regarding secondary considerations of non-obviousness. (Brigham Ex. 19 at 6.) BlackBerry's response cited bald allegations from the First Amended Complaint – identifying no facts, no documents, and no witnesses with relevant knowledge. BlackBerry indicated it would "supplement its response," but four months later, it still has not supplemented its response. (*Id.* at 6-7.) The Facebook Defendants' Interrogatory No. 6 (prior art invalidity) requested that BlackBerry "identify with particularity all allegedly missing limitation(s) and explain in detail the complete factual and legal basis for Your contention that the prior art reference allegedly fails to disclose such limitation(s) and why one of ordinary skill in the art would not have been motivated to combine each prior art reference." (*Id.* at 8.) BlackBerry's response to Interrogatory No. 6 remains incomplete, failing to identify (and explain) any allegedly missing limitations from the prior art and failing to explain why one of ordinary skill in the art would not have been motivated to combine the asserted prior art references. (*See id.* at 8-11; *see also* Brigham Ex. 22 at 1-2.)

Another example is the Facebook Defendants' Interrogatory No. 4 and Snap's Interrogatory No. 6 (damages). Both requested that BlackBerry disclose the amount and form of reasonable royalty sought for the patents-in-suit, among other requested damages information. (Brigham Ex. 20 at 13; Peterman Ex. 26 at 18.) BlackBerry has not substantively responded to Defendants' interrogatories, stating only that

BlackBerry would respond at some unidentified "appropriate time" in the future. (Brigham Ex. 20 at 14; Peterman Ex. 26 at 19.)  To date, BlackBerry has not revealed the amount of damages it seeks, the basis for that amount, or the documents and theories it intends to rely upon in support of its requested relief.

Another example is Snap Interrogatory No. 11, which requested that BlackBerry disclose the portions of the specification it contends provides written description support and enablement for each of asserted claims of the patents-in-suit. (Peterman Ex. 36 at 11.)  BlackBerry has not substantively responded to this interrogatory, merely incorporating by reference "the patents and file histories of each Patent-in-Suit." (*Id.* at 11-12.)

Another example is Snap Interrogatory No. 9, which requested that BlackBerry describe all communications between BlackBerry and any Third Party regarding the patents-in-suit and provide documents relating to such communications. (*Id.* at 8-9.) BlackBerry has not substantively responded to Snap's interrogatory. (*Id.*)  To date, BlackBerry has not revealed these communications.

Because a number of BlackBerry's interrogatory responses remain substantively deficient, fact discovery is far from complete.

### 2.   No BlackBerry or inventor depositions have occurred.

In the Facebook case, BlackBerry has produced a mere 771 documents to date. (Brigham Decl. ¶ 27.)[9]  In the Snap case, BlackBerry has produced 731 documents. (Peterman Decl. ¶ 15.)  Email discovery of BlackBerry has yet to begin.  Because BlackBerry's document production remains far from complete, no BlackBerry depositions have occurred.[10]  Indeed, no fact depositions have occurred in the

---

[9] BlackBerry recently argued that the Facebook Defendants' requests for production were "premature as discovery has only recently reopened." (Brigham Ex. 25 at 10.)

[10] Defendants deposed BlackBerry's claim construction experts on their claim construction declarations (the only depositions that have occurred in the Facebook Defendant case).

Facebook Defendant case.[11]  Only two fact depositions have occurred in the Snap case.

BlackBerry listed in its supplemental initial disclosures sixteen individuals who allegedly possess knowledge regarding the Facebook patents-in-suit and nine individuals who allegedly possess knowledge regarding the Snap patents-in-suit. (Brigham Ex. 21 at 3-6; Peterman Ex. 38 at 4-6).  At least twelve named inventors are third parties residing or working in Canada (eight for patents asserted against Snap). (*Id.*; *id.*)  Now that claim construction is complete, and thus the scope of the claimed inventions is better defined, Defendants will begin the process of deposing these individuals and others, such as prior artists.  Depositions prior to claim construction would have led to great inefficiencies as the parties tried to cover every possible interpretation of the alleged inventions and even then, running the risk that it failed to predict how the Court would rule.

BlackBerry also indicated in its disclosures that at least three individuals possess knowledge regarding licensing by BlackBerry, BlackBerry Messenger, and marketing of BlackBerry's products.  (Brigham Ex. 21 at 8; Peterman Ex. 38 at 7.) The parties will need to work through document and deposition issues with these witnesses as well.

## F.    Additional Merits Work Lies Ahead.

A claim construction hearing occurred on April 1, and on April 5, the Court issued a claim construction order.  (Dkt. 156.)  The order saved for another day key patent-ineligibility issues.  No summary judgment, expert report, *Daubert*, motion *in limine*, or trial dates are currently scheduled.  Both sides have indicated that they wish to file early summary judgment motions.  (*E.g.*, Dkt. 158 at 7 (BlackBerry stating that it wishes to "move for early summary judgment of validity within the next two months"); *id.* at 12 (Defendants seeking to file renewed Section 101 motions and

---

[11] The Facebook Defendants proposed a number of dates, which were put on hold at BlackBerry's request so that it could pursue email discovery prior to depositions. Email discovery is currently scheduled to begin shortly.

1  Section 112 motions).)

2  **III.   LEGAL STANDARDS**

3      Courts in this District routinely stay complex patent cases pending *inter partes*

4  review, even before institution decisions, to conserve judicial and party resources.

5  *E.g.*, *SCA Hygiene Prods. Aktiebolag v. Tarzana Enters.*, No. 17-4395, 2017 WL

6  5952166, at *6 (C.D. Cal. Sept. 27, 2017) ("The Case is hereby STAYED pending the

7  Patent Office's decision of whether to institute proceedings based on Tarzana's IPR

8  applications."); *Sleep Number v. Sizewise Rentals*, Nos. 18-356, 18-357, 2019 WL

9  1091335, at *3-4 (C.D. Cal. Feb. 12, 2019) (granting stay pending IPR before

10 institution); *TeleSign v. Twilio*, No. 15-3240, 2016 WL 6821111, at *4 (C.D. Cal. Mar.

11 9, 2016) (granting stay pending IPR before institution); *Wonderland Nursery Goods*

12 *v. Baby Trend*, No. 14-1153, 2015 WL 1809309, at *3 (C.D. Cal. Apr. 20, 2015)

13 (granting stay pending IPR before institution, and stating "if an IPR is not instituted,

14 the stay will be relatively short and the action can continue with minimal delay");

15 *Prime Focus Creative Servs. Canada v. Legend3D*, No. 15-2340, 2015 WL 12746207,

16 at *4 (C.D. Cal. Sept. 23, 2015) (granting stay pending IPR before institution, and

17 stating "[t]he risk of delay attending a potentially unnecessary stay is rather minimal

18 relative to the risk of unnecessary expenditure of the Court and the parties' resources

19 should the stay be denied and a review subsequently commence").[12]

20  ────────────────

21 [12] *See also Spin Master v. Mattel*, No. 2:18-cv-03435-RSWL-GJS, Dkt. 39 at 5
    (C.D. Cal. Nov. 21, 2018) ("The Court is also satisfied that staying the case is

22  not premature, even though the PTO has yet to grant the petition and institute
    *inter partes* review proceedings …"); *Document Sec. Sys. v. Nichia, et al.*, No. 2:17-

23  cv-08849-JVS-JEM, Dkt. 61-1 at 4-5 (C.D. Cal. July 23, 2018) (granting pre-

24  institution stay); *Skip Hop v. Munchkin, et al.*, No. 15-6339, 2016 WL 7042093, at *4-
    5 (C.D. Cal. Mar. 15, 2016) (same); *Limestone v. Micron Tech.*, No. 15-278, 2016 WL

25  3598109, at *4 (C.D. Cal. Jan. 12, 2016) (same); *Core Optical Techs. v. Fujitsu*

26  *Network Commc'ns*, No. 16-00437, 2016 WL 7507760, at *2 (C.D. Cal. Sept. 12,
    2016) (same); *Star Envirotech v. Redline Detection*, No. 12-1861, 2013 WL 1716068,

27  at *2 (C.D. Cal. Apr. 3, 2013) (same); *Game & Tech. v. Riot Games*, No. 16-6486,

28

The factors for deciding whether to stay a case pending IPR are: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party." *Black Hills Media v. Pioneer Elecs. (USA)*, No. 14-00471, 2014 U.S. Dist. LEXIS 133664, at *13 (C.D. Cal. May 8, 2014) (quoting *Universal Elecs. v. Universal Remote Control*, 943 F. Supp. 2d 1028, 1030-31 (C.D. Cal. 2013)). These factors are not exhaustive; the "totality of the circumstances" governs. *Polaris Innovations v. Kingston Tech. Co.*, No. 16-00300, 2017 WL 8220599, at *1 (C.D. Cal. June 27, 2017).

## IV.  ARGUMENT

### A.    The Stage of the Case Favors a Stay.

Discovery is far from complete; and no trials have been scheduled. *E.g.*, *Polymer Tech. Sys. v. Jant Pharmacal*, No. 15-02585, 2015 WL 12860482, at *4 (C.D. Cal. Aug. 20, 2015) ("A brief stay of this action, *i.e.*, until the USPTO determines whether it will institute *inter partes* review proceedings, would be most efficient."); *SPEX Techs. v. Kingston Tech.*, Nos. 16-1790, 16-7349, 2018 WL 2446801, at *2-3 (C.D. Cal. May 16, 2018) (granting stay pending IPR, after a *Markman* hearing); *FastVDO v. AT&T Mobility*, No. 16-385, 2017 WL 2323003, at *3 (S.D. Cal. Jan. 23, 2017) (granting stay pending IPR, after a claim construction order and fact discovery was complete); *Reversible Connections v. GBT*, No. 17-5383, 2018 WL 5116411, at *2 (C.D. Cal. Aug. 21, 2018) (granting stay pending IPR,

---

2016 WL 9114147, at *3 (C.D. Cal. Nov. 4, 2016) (same); *McAfee Enters. v. Yamaha Corp. of Am.*, No. 16-2562, 2016 WL 10988792, at *2-3 (C.D. Cal. Dec. 19, 2016) (same); *MasterObjects v. eBay*, No. 16-6824, 2017 WL 2181132, at *3 (N.D. Cal. May 5, 2017) (same); *Tire Hanger v. My Car Guy Concierge Servs.*, No. 14-549, 2015 WL 857888, at *2 (C.D. Cal. Feb. 27, 2015) (same).

even though fact discovery was scheduled to close in a month).[13] BlackBerry's document production and interrogatory responses remain materially deficient; no fact depositions have occurred in the Facebook Defendant case; only two depositions have occurred in the Snap case; named inventors in Canada have not been deposed; and significant work lies ahead. Indeed, even BlackBerry concedes that this case is at the cusp of "entering its most active phase." (Dkt. 158 at 6.)[14]

If the Court stays this action now, then fact witnesses, such as named inventors in foreign countries and prior artists, would be spared from document and deposition discovery, while the Patent Office decides whether to find the asserted claims unpatentable. The parties and the Court would also be saved from upcoming work in this case, including briefing and deciding patent-ineligibility issues, validity and invalidity issues, discovery disputes, non-infringement issues, and more. *E.g.*, *Murata Mach. USA v. Daifuku*, 830 F.3d 1357, 1362 (Fed. Cir. 2016) (stating the legislative history confirmed that Congress desired to enhance the role of the Patent Office and "limit the burden of litigation on courts and parties"); *MCM Portfolio v. Hewlett-Packard*, 812 F.3d 1284, 1291–92 (Fed. Cir. 2015) (IPRs designed as an "effective and efficient alternative to often costly and protracted district court litigation"). Costly email discovery, including briefing discovery

---

[13] *See also Smartflash v. Apple*, 621 F. App'x 995, 998, 1005-06 (Fed. Cir. 2015) (finding abuse of discretion in denying a stay, where another defendant had proceeded to trial and a *Markman* order had issued); *Rovi Guides v. Comcast*, No. 16-9278, 2017 WL 4876305, at *5 (S.D.N.Y. Oct. 27, 2017) (granting stay, notwithstanding "extensive discovery"); *PersonalWeb Techs. v. Facebook*, No. 13-1356, 2014 WL 116340, at *3-4 (N.D. Cal. Jan. 13, 2014) (granting stay pending IPR, after a claim construction order); *E.Digital v. Dropcam*, No. 14-4922, 2016 WL 658033, at *3, *5 (N.D. Cal. Feb. 18, 2016) (same); *Ethicon v. Intuitive Surgical*, No. 17-871, 2019 WL 1276029, at *2-3 (D. Del. Mar. 20, 2019) (same).

[14] Unlike in the *Cal-Tech* case involving four patents, this case involves eleven patents, nine of which are unrelated. *The California Institute of Technology v. Broadcom, et al.*, No. 2:16-cv-3714-GW-AGR, Dkt. 118 at 1 (C.D. Cal. Mar. 2, 2017).

---

disputes, is also a considerable burden and expense that could be saved now, especially if the asserted claims are found invalid.[15]

Given the stage of the case, a stay pending IPR is appropriate.  *E.g.*, *Lund Motion Prods. v. T-Max Hangzhou Tech. Co.*, No. 17-01914, 2019 WL 116784, at *2-3 (C.D. Cal. Jan. 2, 2019) (granting a pre-institution stay, even when IPR petitions were filed 11 months after the complaint); *General Elec. v. Vestas Wind Sys. A/S*, No. 2:17-cv-05653, Dkt. 85 at 2 (C.D. Cal. June 7, 2018) (granting a pre-institution stay almost a year after the complaint was filed); *XR Commc'ns v. D-Link Sys.*, No. 17-596, 2018 WL 2734849, at *2-3 (C.D. Cal. Apr. 10, 2018) (same).

### B.    A Stay Pending IPR Would Simplify the Issues In This Case.

The IPRs have a high likelihood of disposing of all patents in this case. All asserted claims across all patents asserted against Defendants are subject to pending *inter partes* review petitions before the Patent Office.  A stay pending *inter partes* review would thus simplify the issues in this case, avoid parallel proceedings, and conserve scarce judicial resources.  As one court recognized, "[w]hatever the PTAB's decision, the case will be simplified for this Court." *TAS Energy v. San Diego Gas & Elec. Co.*, No. 12-2777, 2014 WL 794215, at *4 (S.D. Cal. Feb. 26, 2014).

The "ultimate simplification of issues" is complete disposition of this case. *VirtualAgility v. Salesforce.com*, 759 F.3d 1307, 1314 (Fed. Cir. 2014).  Here, there is a real likelihood of complete disposition through IPR.  As described above, the IPR petitions will likely result in cancellation of some or all challenged claims. Even beyond the strength of Defendants' IPR petitions, the general institution rate is high: as of June 2018, the PTAB's all-time institution rate for petitions related to "Electrical/Computer" technology patents was 68%.   (Peterman Ex. 37 at 8.)

---

[15] *See also Karl Storz Endoscopy-Am. v. Stryker*, No. 14-876, 2015 WL 13727876, at *2 (N.D. Cal. Mar. 30, 2015) (granting pre-institution stay pending IPR, where the parties had exchanged "more than 475,000 pages of discovery").

Across all instituted IPRs that received a final written decision, at least one claim has been found unpatentable in 81% of trials, and all claims were found unpatentable in 64% of trials.  (*Id*. at 11.)

In short, Defendants' IPRs will likely result in disposal of some or all asserted claims.  The expertise of the PTO is particularly helpful in a case such as this one, where "a party has requested PTO review of all the asserted claims of the patent in suit."  *Signal IP v. Am. Honda Motor Co.*, No. 14-02454, 2016 U.S. Dist. LEXIS 129182, at *7 (C.D. Cal. Mar. 4, 2016); *SCA Hygiene Prods. Aktiebolag*, 2017 WL 5952166, at *4-6 (finding the issues would be simplified with a stay pending IPR).  If all asserted claims are found unpatentable, then this case would be dismissed.  Even if a subset of asserted claims survive the Patent Office challenge, then the Court and the parties could focus their efforts on the subset of surviving claims.  The intrinsic record developed during the IPR will also inform issues pertinent to this litigation. *XR Commc'ns*, 2018 WL 2734849, at *3; *Pi-Net Int'l v. Hertz*, No. 12-10012, 2013 WL 7158011, at *3 (C.D. Cal. June 5, 2013) ("the Court will benefit from the expertise of the PTO with regard to assessing the prior art").  BlackBerry's statements— including pre-institution statements—become part of the asserted patents' prosecution histories and may affect noninfringement and invalidity issues.  *E.g.*, *Polaris*, 2017 WL 8220599, at *2 ("the record in this case will still be developed through the IPR proceedings").  Additionally, "[d]evelopment of the IPR record may … encourage settlement."  *Prime Focus Creative Servs.*, 2015 WL 12746207, at *3.

The Supreme Court's decision in *SAS* further favors the grant of pre-institution stays.  In *SAS*, the Supreme Court held that once the PTO institutes IPR, it is statutorily required to "address every claim" in the petition.  *SAS Inst. v. Iancu*, 138 S. Ct. 1348, 1354 (2018).   Previously, the PTAB could decline to review all grounds and challenged claims in an IPR petition.  Now, the PTAB must institute review on *all* challenged claims.  *E.g.*, *Nichia v. Vizio*, No. 18-362, 2018 WL 2448098, at *3 (C.D. Cal. May 21, 2018) ("with the PTAB taking the new all-or-nothing approach to

institution decisions, there's no concern about the PTAB picking and choosing certain claims or certain invalidity grounds from each petition") (citing *SAS*).  Post-*SAS*, courts in this District have granted pre-institution stays.  *E.g.*, *Lund Motion Prods.*, 2019 WL 116784, at *2-3) (granting a pre-institution stay, even when IPR petitions were filed 11 months after the complaint); *Spin Master*, No. 18-03435, Dkt. 39 at 5 ("staying the case is not premature, even though the PTO has yet to grant the petition and institute *inter partes* review proceedings"); *General Elec.*, No. 17-05653, Dkt. 85 at 2 (staying case pending "the outcome of the institution decisions").[16]

Because all asserted claims across all asserted patents are subject to pending *inter partes* review petitions, this factor weighs in favor of a stay.  *E.g.*, *Wonderland Nursery Goods*, 2015 WL 1809309, at *3 (even "if an IPR is not instituted, the stay will be relatively short and the action can continue with minimal delay").

## C. BlackBerry Would Suffer No Undue Prejudice or Clear Tactical Disadvantage From a Stay.

BlackBerry cannot identify any actual undue prejudice or clear tactical disadvantage from a brief stay pending *inter partes* review.  *E.g.*, *Limestone v. Micron Tech.*, No. 15-278, 2016 WL 3598109, at *5 (C.D. Cal. Jan. 12, 2016) (generalized harm such as the potential loss of evidence and witness availability is not sufficient); *Semiconductor Energy Lab. v. Chimei Innolux*, No. 12-21, 2012 WL 7170593, at *3 (C.D. Cal. Dec. 19, 2012) (plaintiff failed to "specifically identify how its revenue will be injured if the Court grants Moving Defendants' stay"); *Lund Motion Prods.*, 2019 WL 116784, at *2 ("Plaintiff's failure to file for a preliminary injunction in the seven months since it filed its Complaint further suggests that monetary damages will

---

[16] Any reliance by BlackBerry on *Hologram USA* and *SZ DJI Tech.* (Dkt. 158 at 6-7) is unavailing.  Neither of the IPR and post-grant review petitions there challenged all claims.  *SZ DJI Tech. v. Yuneec Int'l*, No. 16-595, 2016 WL 9114148, at *3 (C.D. Cal. Dec. 1, 2016) (petitions only challenged two of the seven patents); *Hologram USA v. Vntana, 3D*, No. 14-9489, 2015 WL 12791513, at *3 (C.D. Cal. Dec. 7, 2015) (petition did not challenge all asserted claims).

adequately compensate Plaintiff should Defendants be found liable for patent infringement.") (citation omitted); *Autoalert v. Dominion Dealer Sols.*, No. 12-1661, 2013 WL 8014977, at *3 (C.D. Cal. May 22, 2013) (several factors undermined plaintiff's assertion of undue prejudice).[17]   BlackBerry does not practice at least the '351, '929, '173, '236, '250, '327, and '084 patents, and BlackBerry never filed a motion for a preliminary injunction. (*Cf.* Brigham Ex. 20 at 12-13; Peterman Ex. 26 at 12-14, 16.)

Indeed, BlackBerry waited years before even filing suit against Defendants. *See supra* Section II(A).   BlackBerry then delayed another month in serving the Facebook Defendants, and refused to promptly identify a reasonable number of triable claims.  BlackBerry did not provide its election of 48 asserted claims until February 7, 2019.  Notwithstanding BlackBerry's delay, Defendants diligently prepared petitions for *inter partes* review, challenging all forty-eight asserted claims across all nine patents asserted against the Facebook Defendants, and all six patents asserted against Snap.  *See supra* Section II(C).  A brief stay while the Patent Office considers the pending *inter partes* review petitions will result in efficiencies and time-savings for the Court and numerous third parties.

Nor did Defendants gain any unfair tactical advantage in filing IPR petitions when they did.  Until February 2019 when BlackBerry served its narrowed list of 48 asserted claims, BlackBerry had asserted 119 claims against the Facebook Defendants and 66 claims against Snap – making IPR impracticable for all but one of the asserted patents.  By the time BlackBerry served its narrowed list of asserted claims, the parties had already begun exchanging claim construction positions and – in some cases – would later reach stipulated agreements on certain terms.  It was

---

[17] *See also Inogen v. Inova Labs*, No. 11-1692, 2012 WL 4748803, at *3 (C.D. Cal. Mar. 20, 2012) (several factors undermined plaintiff's assertion of undue prejudice); *TeleSign*, 2016 WL 6821111, at *4 (granting stay pending IPR, even though the parties were "direct competitors").

1   critical to understand, to the greatest extent possible, the claim construction disputes

2   and BlackBerry's positions on those issues before filing IPR petitions.  As the Court

3   is aware, BlackBerry's claim construction positions can most charitably be described

4   as "fluid," as BlackBerry continuously changed its positions (and its arguments) up to

5   and even at the April 1, 2019 hearing.  Because the Patent Office now requires the

6   PTAB to apply the same claim construction standard as this Court, *see* 37 C.F.R.

7   § 42.100(b) (revised October 11, 2018), it was important to gain as much

8   understanding as possible to account for the potential range of arguments BlackBerry

9   might make.  For many claims, Defendants were able to point to stipulations that had

10  been reached in this case as to certain terms including "channel," "static advertising

11  information," "dynamic advertising information," "recipient application," and

12  "resumption message."  The IPR petitions were also able to take into account

13  BlackBerry's positions and the Court's rulings as to certain terms including "meta

14  tag," "wireless communication device," "proxy content server," among others.

15  Had Defendants filed before the claim construction process here began, the IPR

16  petitions would have been less comprehensive and more subject to the whims of

17  BlackBerry's ever-changing claim construction positions.  The timing of Defendants'

18  IPR petitions thus provided no unfair tactical advantage, and no prejudice to

19  BlackBerry.  To the contrary, the timing of the IPR proceedings will allow the PTAB

20  to take into account the Court's view on claim construction, which will enable the

21  PTAB to avoid inconsistent or conflicting rulings.

22          Because BlackBerry cannot identify any undue prejudice or clear tactical

23  disadvantage from a brief stay, this factor weighs in favor of a stay.

24

25

26

27

28

## V. CONCLUSION

Given the *inter partes* review petitions covering all asserted claims pending before the Patent Office, and the costliest and most burdensome work lies ahead, Defendants respectfully request that the Court briefly stay this case pending *inter partes* review institution decisions by the Patent Office.

Dated: April 16, 2019                    RESPECTFULLY SUBMITTED,


                                         */s/ Heidi L. Keefe*


                                         COOLEY LLP
                                         HEIDI L. KEEFE (178960)
                                         (hkeefe@cooley.com)
                                         MARK R. WEINSTEIN (193043)
                                         (mweinstein@cooley.com)
                                         MATTHEW J. BRIGHAM (191428)
                                         (mbrigham@cooley.com)
                                         3175 Hanover Street
                                         Palo Alto, CA 94304-1130
                                         Telephone: (650) 843-5000
                                         Facsimile: (650) 849-7400

                                         COOLEY LLP
                                         MICHAEL G. RHODES (116127)
                                         (rhodesmg@cooley.com)
                                         101 California Street, 5th Floor
                                         San Francisco, CA 94111-5800
                                         Telephone: (415) 693-2000
                                         Facsimile: (415) 693-2222

                                         Attorneys for Defendants
                                         FACEBOOK, INC., WHATSAPP INC.,
                                         INSTAGRAM, INC., and
                                         INSTAGRAM, LLC

DATED:  April 16, 2019                    RESPECTFULLY SUBMITTED,


By  */s/ Yar R. Chaikovsky*
PAUL HASTINGS LLP
YAR R. CHAIKOVSKY (SB# 175421)
yarchaikovsky@paulhastings.com
PHILIP OU (SB# 259896)
philipou@paulhastings.com
DAVID OKANO (SB# 278485)
davidokano@paulhastings.com
1117 S. California Avenue
Palo Alto, California 94304
Telephone: 1(650) 320-1800
Facsimile: 1(650) 320-1900

CHAD J. PETERMAN (*Pro Hac Vice*)
chadpeterman@paulhastings.com
200 Park Avenue
New York, New York 10166
Telephone: (212) 319-6000
Facsimile: (212) 319-4090

THOMAS ZACCARO (SB# 183241)
thomaszaccaro@paulhastings.com
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, California 90071
Telephone: (213) 683-6000
Facsimile: (213) 996-3146

*Attorney for Defendant Snap Inc.*

# **FILER'S ATTESTATION**

I, Heidi L. Keefe, am the ECF user whose ID and password are being used to file this DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STAY PENDING *INTER PARTES* REVIEW. Pursuant to L.R. 5-4.3.4.(a)(2), I hereby attest that counsel for Snap concurred in the filing of this document.

*/s/ Heidi L. Keefe*
Heidi L. Keefe