COUNSEL LISTED
IN SIGNATURE BLOCK

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLACKBERRY LIMITED, a Canadian corporation,<br><br>   Plaintiffs,<br><br>   v.<br><br>FACEBOOK, INC., a Delaware corporation, WHATSAPP INC., a Delaware corporation, and INSTAGRAM, LLC, a Delaware limited liability company<br><br>   Defendants,<br><br>SNAP INC., a Delaware corporation<br><br>   Defendant. | Case No. 2:18-cv-01844-GW-KS<br>**LEAD CONSOLIDATED CASE**<br><br>Related Case: 2:18-cv-02693-GW-KS<br><br>**JOINT REPORT REGARDING FACEBOOK'S PRODUCTION OF CERTAIN ESI** |

Pursuant to the Court's order (Dkt. No. 201), the parties hereby provide a joint discovery status report of no more than ten (10) pages regarding their positions as to: (1) the results of the initial searches and review; (2) an appropriate format for production of responsive Zuckerberg materials; and (3) any proposed modifications to the existing Protective Order (Dkt. No. 91, the "PO").

The parties also provide the following three proposed dates and times for a further telephonic conference with the Court: May 30 at 9:00 a.m., 10:00 a.m., or 11:00 a.m.; May 31 at 1:00 p.m., 2:00 p.m., or 3:00 p.m.

**Defendants' Statement**

There is no dispute that Defendants complied with the Court's order and made the requested documents available for inspection. With respect to the photo-tagging documents, BlackBerry's inspection is on-going and any decisions about the protections afforded those documents is premature. BlackBerry should complete its review, identify whether any documents are relevant, and then the parties can discuss the security concerns with that much smaller subset of documents. With respect to the advertising documents, BlackBerry has acknowledged that none of the documents that resulted from its search terms discussed the value, importance, or implementation of the accused advertising technology, which was the alleged relevance BlackBerry used to justify the search. This is not surprising. BlackBerry chose Mark Zuckerberg as an email custodian because of his notoriety and his position as CEO of Facebook, and not because of the relevance of his emails to this patent infringement case. Rather than reward BlackBerry with additional search terms based on speculation of what might exist, and then remove the protections for those highly sensitive materials, the Court should limit BlackBerry to the terms in the Court's prior Order and keep reasonable security precautions in place.

**Topic 1:**

**I.    Compliance with the Court's Order**

Pursuant to the Court's May 9, 2019 order, Defendant Facebook, Inc.

1  ("Facebook") provided hit counts to Plaintiff BlackBerry ("BlackBerry") relating to ESI terms 1-7, 12, and 14 for Mr. Zuckerberg.  After further discussions about mutually agreeable narrowing of certain terms and the appropriate date range for terms 1-7, Facebook ultimately made available for inspection approximately 3,500 documents on May 16, 2019.

BlackBerry began its review on May 17, 2019 in Cooley's Palo Alto office, where the standalone computers for source code review are kept.  Cooley attorneys received oral requests via Cooley staff from BlackBerry's counsel on May 17 for certain software, which Cooley attempted to address in real time, despite BlackBerry not asking for any specific review environment or software in advance.  On both May 20 and 21, Cooley made available a computer for BlackBerry's review in Palo Alto with the requested software.  Rather than continue its review, BlackBerry did not return to review these documents.  Instead, BlackBerry provided written requests for the first time on May 21 regarding the already accommodated software and the location of the review and format of the production. Facebook accommodated each of these requests, including by making the review computer available at the location requested (Cooley's San Francisco office)[1] with approximately one day's notice and permitting reviewers to bring computers and phones into the review room. BlackBerry continued its review on May 23, 2019 in San Francisco.  Facebook has fully complied with the Court's May 9 Order and, in addition, has agreed to all subsequent reasonable requests from BlackBerry regarding the review environment.

**II.   Photo-Tagging Terms**

BlackBerry has not yet completed its review of the photo-tagging documents. As BlackBerry itself notes, these documents at best concern photo-tagging functionality from 2006-2008 (not the prior art patent on which Mr. Zuckerberg is an

---

[1] BlackBerry never mentioned a desire to review the documents in Washington DC until this joint statement.

inventor), which has little relevance to a case involving BlackBerry's patent that did not issue until October 2012. As a result, the vast majority of these documents have no relevance to the case and under normal circumstances would not be produced or made available for inspection.[2]

BlackBerry also has not yet requested any specific files to be made available outside of the review computer. As a result, the Court may need to resolve issues about relevance and, if relevant, the appropriate format of production of such files. As outlined below, however, Facebook believes that it would be more efficient to have this discussion after BlackBerry completes its review and identifies which documents it believes should be produced outside of the review computer. Until BlackBerry makes its requests, Facebook cannot guess what security requirements will be needed for those documents.

### III. Advertising Terms

BlackBerry has completed its review of the hits for the advertising search terms (terms 12 and 14) relating to Mr. Zuckerberg's op-ed. Today, BlackBerry informed Facebook that it wishes to greatly expand the scope of the search into advertising related ESI from Mr. Zuckerberg to include production of all hits for its search terms 8-11 and 13. These terms, which were discussed with the Court at the last hearing, are as follows:

> 8. (ad OR ads OR advertisement OR advertisements OR advertising) /5 (target OR targets OR targeted OR targeting)
>
> 9. (ad OR ads OR advertisement OR advertisements OR advertising) /5 (zip OR DMA)
>
> 10. (ad OR ads OR advertisement OR advertisements OR advertising) /5 (location OR locations)

---

[2] In view of the Court's May 9, 2019 Order requiring production of the search results for these terms, Facebook did not limit the documents to what it viewed to be relevant. Rather, Facebook only reviewed for true mis-hits – for example, the term "application" referring to something other than a patent application – and privilege.

> 11. (ad OR ads OR advertisement OR advertisements OR advertising) /10 (schedule OR schedules OR scheduled OR scheduling)
>
> 13. (ad OR ads OR advertisement OR advertisements OR advertising) /5 (interest OR interests)

These terms are excessively broad and appear directed at information about "advertising generally" at Facebook from Mr. Zuckerberg.[3] The Court agreed that such a scope was "a little broad generally in principle" on the May 9, 2019 telephonic hearing. (Tr. at 22:1-7.) BlackBerry's only reasoning for seeking information relating to these terms is that documents relating to the op-ed are somehow "insufficient," that it is entitled to documents relating to how advertising works at Facebook, and that it is entitled to "statements" regarding Facebook's advertising products.

But production of documents from Mr. Zuckerberg generally about advertising is overly broad, duplicative of other discovery, and threatens to pull into production highly sensitive documents with little to no relevance to this matter. Facebook has produced well over ten thousand documents showing how its advertising system works (as well as source code), the company's revenue from advertising, in addition to significant data about its advertising products and services. The only basis for seeking Mr. Zuckerberg's emails that BlackBerry has been able to identify that is even arguably relevant to this case is the WSJ op-ed. Yet BlackBerry now admits that the documents responsive to its requests regarding the drafting of the op-ed did not provide it with the silver bullet it was seeking on value, importance, or implementation of the advertising features. Rather, divorced entirely from the op-ed, BlackBerry seeks to engage in a fishing expedition by demanding any documents

---

[3] Contrary to BlackBerry's claim, Facebook provided initial hit counts for these terms, which did not include counts for attachments, to BlackBerry upon request on May 14, 2019. To date, initial hit counts have generally doubled when attachments are added to the count.

from Mr. Zuckerberg about advertising, regardless of their relevance to the issues here and based on BlackBerry's pure speculation that such documents exist. The Court should not grant this request.

**Topics 2 and 3:**

BlackBerry's review should proceed as the Court has ordered (on a computer at Cooley's office) with the modifications agreed to by the parties. Facebook will continue to accommodate BlackBerry on any reasonable requests relating to the review environment.

BlackBerry's new proposed procedure for handling of these documents puts the cart before the horse. As an initial matter, it is clear that the parties have vastly different understanding of what Facebook considers to be sensitive. Moreover, shifting the burden to Facebook to determine sensitivity of hundreds (or, if BlackBerry is permitted additional terms, thousands) of documents that it believes have limited to no relevance simply rewards BlackBerry for overbroad terms. The documents have been made available for inspection. BlackBerry should first complete that inspection, identify those documents it actually believes to be relevant (and meet and confer with Facebook on any relevance issues) and if so, what protections are appropriate for those documents.

The documents made available for inspection pursuant to the Court's May 9, 2019 Order, while all inherently sensitive because they involve Mr. Zuckerberg, comprise a range of sensitivity levels. Many documents also contain significant amounts of information irrelevant to this suit but sensitive in nature. Without knowing which documents BlackBerry will seek be formally produced, Facebook cannot provide a blanket description of the security needs for such documents. Facebook anticipates the production protocol could include a mix of providing a limited number of paper copies, producing documents via paper or electronically with redactions for irrelevant sensitive information, or, *potentially* in certain cases, normal electronic production as "Highly Confidential – Attorneys Eyes Only." Facebook did

not concede any documents necessarily could be produced under normal conditions, but that it was possible among the hundreds of documents provided to BlackBerry, some could be less sensitive than others.

Because BlackBerry has not yet completed its review of the documents and the parties are continuing to meet and confer, Facebook requests the Court set a status conference for fourteen days from today, with a further joint status update to be filed in advance of the conference.

**Plaintiff's Statement**

Particularly given Facebook's recent admission that "normal electronic production" is appropriate for some of Mr. Zuckerberg's ESI, there is no reason to continue to impose onerous review and production restrictions on the entire set. Instead, three conditions should govern further review: (1) responsive documents should be designated under the existing PO, with a possible limited exception for individual documents that the Court rules as warranting special protection; (2) Facebook should not impose on-site review or other nonstandard review conditions—save again for potential, very limited exceptions; (3) Facebook should be ordered to run the remaining five ESI terms from BlackBerry's original request to capture documents relating to Facebook's accused advertising technology.

***Status of BlackBerry's Initial Searches And Review***. On May 9, the Court ordered that Facebook allow BlackBerry to review the hits from nine ESI terms: term nos. 1-7 (the "prior art" terms) and nos. 12 and 14 (which quoted from Mr. Zuckerberg's *Wall Street Journal* editorial). Dkt. No. 201 at 2. The Court made this ruling without prejudice for BlackBerry to pursue terms 8-11 and 13 relating to the accused advertising technology. Following that order, Facebook notified BlackBerry that these nine terms created more than 12,000 hits. BlackBerry agreed to limit its full set of requested terms (term nos. 1-14) to 10,000 hits, but in order to do so, needed Facebook to provide the hit counts for *all* terms, not just the nine currently in issue. Facebook refused to provide hit counts for term nos. 8-11 or 13, leaving BlackBerry

Case No. 2:18-cv-01844 GW(KSx)
Case No. 2:18-cv-02693 GW(KSx)

JOINT REPORT REGARDING ESI PRODUCTION

unable to select a set of terms that would result in fewer than 10,000 hits. To ensure that *some* review would take place, BlackBerry agreed to narrow the time frame for the "prior art" term nos. 1-7 to 2006 to 2008, which lowered the hit count for the nine review terms to 3,961 hits. The hit counts for term nos. 8-11 and 13 remain unknown.

Facebook indicated it would review the hits for privilege and general responsiveness before making them available for review by BlackBerry. At 11:45 a.m. on Thursday, May 16 (the date of the Court-ordered production), Facebook notified BlackBerry that its review computer with responsive documents would be available beginning at 2:00 p.m. that afternoon at Cooley's offices in Palo Alto. Facebook had not previously provided BlackBerry with a specific time and location and given the short notice, BlackBerry could not commence its review until May 17.

The May 17 review conditions were unworkable. Even beyond the "source code" level protections such as on-site review and the prohibition of outside electronics, Facebook (1) did not provide a tool capable of searching the document collection; (2) did not provide software capable of opening a majority of the files made available; (3) did not de-duplicate the documents; and (4) provided no method other than pen-and-paper to mark documents for further review. In all, BlackBerry's attorney was able to review less than 10% of the available documents, and could not locate any of the "advertising" documents. After BlackBerry expressed these concerns, Facebook agreed to provide a Windows computer with functional review software.[4] Facebook also made a room available in San Francisco rather than Palo Alto, and removed duplicate documents. Facebook made that room available on Thursday, May 23, and on that day BlackBerry's attorney conducted a second review and marked approximately 35-40 documents for additional production, including "prior art" documents and documents related to the editorial.

---

[4] In a Dr. Strangelove-like twist, Facebook had evidently made this improved computer available on May 20—but did not inform BlackBerry of this fact until 10:44 p.m. on May 21, in response to BlackBerry's 11:50 a.m. email complaining of inadequate review conditions.

Over the two reviews, BlackBerry noted documents discussing the design of the Facebook user experience and interface and the importance of photo-tagging to driving user sign-up and engagement (as of more than a decade ago).  BlackBerry also reviewed each of the roughly two dozen documents that hit on the two "advertising" terms, nos. 12 and 14.  Each (aside from a single false hit) were emails within two threads between January 9 and 25, 2019:  one relating to the drafting of the editorial and another collecting public reactions to the editorial.  None discussed the value, importance, or implementation of the accused advertising technology beyond the statements in the editorial.

***Requested Format For Production of Responsive Zuckerberg Materials***.  Based on its initial review, BlackBerry requests that Facebook be ordered to produce the requested ESI materials under the terms of the existing PO.  None of the documents that BlackBerry reviewed contained information that would merit the additional protections sought by Facebook.  For example, every "prior art" document is more than eleven years old.  The limited "advertising" documents that BlackBerry has reviewed do not appear to warrant extraordinary protection either.

Facebook bears the burden to establish that the protections offered by the PO's existing designations are insufficient.  PO ¶ 6.3.  It has not done so, and to the contrary has admitted that the PO sufficiently covers some of the ESI at issue.  Accordingly, BlackBerry would propose that Facebook produce the responsive ESI under the terms of the existing PO, except documents that Facebook flags as unusually sensitive.  Blackberry proposes that the Court review those documents to determine whether any warrant special protection.  In making this determination the Court would apply the following standard:  whether the document, if presented at trial in this action, could not be published to the gallery but instead would require sealing the courtroom.  Any such documents would be produced to BlackBerry with a distinct designation such as HIGHLY CONFIDENTIAL – SPECIAL PROTECTION.  An amended protective order would provide that, to minimize the distribution of such documents, BlackBerry

would not load such documents into its review software, but instead maintain copies only on Quinn Emanuel's secure network drive. All other protections governing HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY would apply.

*Requested Review Conditions*. Facebook has failed to show that a specialized, on-site review procedure is warranted, particularly given Facebook's recent admission that not all documents qualify for any special protection. *See, e.g., Rosinbaum v. Flowers Foods, Inc.*, 238 F. Supp. 3d 738, 749 (E.D.N.C. 2017) ("In no case of which the court is aware has the apex doctrine successfully been invoked to shield an executive from a request for production of documents.") By forcing an on-site review, only a single attorney has access, only during business hours, and is effectively barred from effectively attending to other work. On-site review is also burdensome because frequently in litigation, there is a need (often with zero notice and on an urgent timeline) to re-review existing document sets, but Cooley is unlikely to make a review room available without some advance notice, particularly on nights or weekends (when the most urgent reviews are likely to be necessary). Moreover, the attorney primarily assigned to the "advertising" patents is located in Washington, D.C., thus would be forced into a lengthy trip (away from his newborn daughter) to review at Cooley's California offices. Finally, regardless of the review location, on-site review forces BlackBerry to reveal to Facebook the documents that BlackBerry finds important, raising significant work-product concerns. Such dramatic impediments to the ordinary litigation workflow require extraordinary justification, which Facebook has not provided and *concedes* does not exist for every document.

As a compromise, BlackBerry has offered to finish reviewing the hits for term nos. 1-7, 12, and 14 on-site, but only if that approach is more expedient than any alternative. BlackBerry estimates the total review time for these documents, including time already spent, at 4-5 days. For the remaining "advertising" terms BlackBerry requests that Facebook produce Mr. Zuckerberg's ESI the same way that Facebook has produced all other ESI, rather than force BlackBerry's attorneys to spend further

days in on-site review.  As with all other productions, BlackBerry would store the documents in trusted, secure document review software accessible only by Quinn Emanuel attorneys that have been assigned a secure user ID and password.

***Request for Remaining Search Terms***.  The Court initially ordered Facebook to run only two advertising terms, nos. 12 and 14, without prejudice to BlackBerry's request that Facebook run the rest of BlackBerry's initial term nos. 8-11 and 13.[5] BlackBerry's review has confirmed that terms 12 and 14 do not provide BlackBerry with its requested information.  The hits from those terms are limited to two email threads from January 2019 that discuss the editorial but do not otherwise discuss the importance, value, or implementation of the accused advertising technology.

Facebook's objections to term nos. 8-11 and 13 are unconvincing.  The terms present no undue burden because they are subject to the agreed-upon 10,000-hit limit.  The terms are also highly relevant.  The terms and their associated RFPs ask for documents concerning the implementation and value of the technology accused of infringement.  A relevance objection to such documents at the discovery stage is not well founded, and likely would not even be sustained at trial.  Notably, Facebook agreed to run the same or similar ESI terms when directed to other custodians.  These terms do not somehow become less relevant when directed to an individual who has made public comments about related subject matter.  Consistent with the ESI Order from which it has failed to justify its request for relief, Facebook should provide hit counts for these terms for January 1, 2016 through present, and produce the responsive ESI under the conditions and protocols described above.

---

[5] In pressing for these terms BlackBerry is not, as Facebook suggests, "greatly expand[ing] the scope of the search." These terms are *narrower* versions of the terms included in BlackBerry's initial March 11 ESI requests, and as Facebook concedes, "were discussed with the Court at the last hearing."

# APPENDIX:  ESI Search Terms At Issue

**Timeframe**:

    Terms 1-7 (January 1, 2006 through December 31, 2008)

    Terms 8-14 (January 1, 2016 through present)

    (Green indicates terms that Facebook has not yet provided)

| No. | Search Term |
|---|---|
| 1 | 653 w/10 (patent OR patents) |
| 2 | 210 AND (app OR apps OR appl*) |
| 3 | (Aaron OR Sittig) AND (Scott OR Marlette) AND patent* |
| 4 | (tag or tagged) w/10 ("digital media") |
| 5 | (patent OR patents) AND (tag OR tags OR tagg*) |
| 6 | (photo* OR pic OR pict*) w/10 (tag OR tags OR tagg*) |
| 7 | image* w/10 (tag OR tags OR tagg*) |
| 8 | (ad OR ads OR advertisement OR advertisements OR advertising) /5 (target OR targets OR targeted OR targeting) |
| 9 | (ad OR ads OR advertisement OR advertisements OR advertising) /5 (zip OR DMA) |
| 10 | (ad OR ads OR advertisement OR advertisements OR advertising) /5 (location OR locations) |
| 11 | (ad OR ads OR advertisement OR advertisements OR advertising) /10 (schedule OR schedules OR scheduled OR scheduling) |
| 12 | "we work separately with advertisers to show you relevant ads" |
| 13 | (ad OR ads OR advertisement OR advertisements OR advertising) /5 (interest OR interests) |
| 14 | "charge advertisers to show ads to that category" |

| | | |
|---|---|---|
| 1 | DATED: May 23, 2019 | Respectfully submitted, |
| 2 | | |
| 3 | | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 4 | | |
| 5 | By | */s/ James R. Aspberger* |
| | | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 6 | | |
| | | James R. Asperger (Bar No. 83188) |
| 7 | | jamesasperger@quinnemanuel.com |
| 8 | | 865 S. Figueroa St., 10th Floor |
| | | Los Angeles, CA 90017 |
| 9 | | Telephone: (213) 443-3000 |
| 10 | | Facsimile: (213) 443-3100 |
| 11 | | |
| | | Kevin P.B. Johnson (Bar No. 177129) |
| 12 | | kevinjohnson@quinnemanuel.com |
| | | Victoria F. Maroulis (Bar No. 202603) |
| 13 | | victoriamaroulis@quinnemanuel.com |
| 14 | | 555 Twin Dolphin Drive, 5th Floor |
| | | Redwood Shores, CA 94065 |
| 15 | | Telephone: (650) 801-5000 |
| 16 | | Facsimile: (650) 801-5100 |
| 17 | | |
| | | BLACKBERRY CORPORATION |
| 18 | | Edward R. McGah, Jr (SBN 97719) |
| | | Vice President, Deputy General Counsel |
| 19 | | 41 Ticknor Place |
| 20 | | Laguna Niguel, California 92677 |
| | | Telephone: (+1) 650-581-4750 |
| 21 | | |
| 22 | | *Attorneys for BlackBerry Limited* |

-12-

Case No. 2:18-cv-01844 GW(KSx)
Case No. 2:18-cv-02693 GW(KSx)
JOINT REPORT REGARDING ESI PRODUCTION

| | | |
|---|---|---|
| 1 | Dated: May 23, 2019 | COOLEY LLP |
| 2 | | |
| 3 | | */s/ Matthew J. Brigham* |
| 4 | | Matthew J. Brigham (191428) |
| 5 | | COOLEY LLP |
| 6 | | HEIDI L. KEEFE (178960) |
| 7 | | (hkeefe@cooley.com) |
| | | MARK R. WEINSTEIN (193043) |
| 8 | | (mweinstein@cooley.com) |
| 9 | | MATTHEW J. BRIGHAM (191428) |
| | | (mbrigham@cooley.com) |
| 10 | | LOWELL D. MEAD (223989) |
| 11 | | (lmead@cooley.com) |
| 12 | | 3175 Hanover Street |
| | | Palo Alto, CA  94304-1130 |
| 13 | | Telephone: (650) 843-5000 |
| | | Facsimile:  (650) 849-7400 |
| 14 | | |
| 15 | | COOLEY LLP |
| 16 | | MICHAEL G. RHODES (116127) |
| | | (rhodesmg@cooley.com) |
| 17 | | 101 California Street |
| | | 5th Floor |
| 18 | | San Francisco, CA  94111-5800 |
| 19 | | Telephone: (415) 693-2000 |
| | | Facsimile:  (415) 693-2222 |
| 20 | | |
| 21 | | Attorneys for Defendants |
| 22 | | FACEBOOK, INC., WHATSAPP INC., INSTAGRAM, INC., and INSTAGRAM, LLC |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

**FILER'S ATTESTATION**

I, Matthew J. Brigham, am the ECF user whose ID and password were used to file this Updated Joint Case Scheduling Report.  Pursuant to L.R. 5-4.3.4.(a)(2), I hereby attest that counsel for Plaintiff concurred in the filing of this document.

By */s/ Matthew J. Brigham*