QUINN EMANUEL URQUHART & SULLIVAN, LLP
James R. Asperger (Bar No. 83188)
jamesasperger@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

BLACKBERRY CORPORATION
Edward R. McGah, Jr (SBN 97719)
Vice President, Deputy General Counsel – Litigation
41 Ticknor Place
Laguna Niguel, California 92677
Telephone: (+1) 650-581-4750

Attorneys for Plaintiff, BlackBerry Limited

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLACKBERRY LIMITED, a Canadian corporation,<br><br>Plaintiff,<br>v.<br><br>FACEBOOK, INC., a Delaware corporation, WHATSAPP INC., a Delaware corporation, INSTAGRAM, INC., a Delaware corporation, and INSTAGRAM, LLC, a Delaware limited liability company,<br><br>Defendants,<br><br>SNAP, INC., a Delaware corporation,<br><br>Defendant. | Case No. 2:18-cv-01844-GW-KS<br>**LEAD CONSOLIDATED CASE**<br><br>Related Case: 2:18-cv-02693-GW-KS<br><br>**BLACKBERRY LIMITED'S MOTION FOR A MORE DEFINITE STATEMENT OF DEFENDANTS' PRIOR ART ELECTIONS**<br><br>Hearing Date: September 12, 2019<br>Time: 8:30 A.M.<br>Judge: Hon. George H. Wu<br>Ctrm: 9D |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on September 12, 2019, at 8:30 a.m., or as soon thereafter as the matter may be heard by the Honorable George H. Wu, Plaintiff BlackBerry Limited ("BlackBerry") shall and hereby does move the Court for an order for a more definite statement of elected prior art references identified by Defendants Facebook, Inc., WhatsApp, Inc., Instagram, Inc., and Instagram, LLC (collectively "Facebook Defendants") in their Final Elections of Prior Art ("Facebook Final Elections") and by Defendant Snap, Inc. ("Snap") (collectively with Facebook Defendants "Defendants") in their Final Elections of Prior Art ("Snap Final Elections") (collectively with Facebook Final Elections "Final Elections"). This motion is based on this notice of motion and supporting memorandum of points and authorities, the supporting declaration of Patrick Schmidt ("Schmidt Decl."), exhibits thereto, and other such written or oral argument as may be presented at or before the time this motion is deemed submitted by the Court.

## RELIEF REQUESTED

BlackBerry seeks an order requiring Defendants to submit a more definite statement of the Facebook Final Elections and Snap Final Elections to:

1.) Remove all references from the Facebook Final Elections for which a specific invalidity chart was never provided, including: iChat for the '250 Patent, Colburn for the '351 Patent, Colburn for the '929 Patent, and Meggido for the '929 Patent.

2.) In both Final Elections, clarify the invalidity theory associated with each elected reference for each patent to state whether the reference is (i) a single prior art reference that is asserted to anticipate a claim; (ii) a collection of prior art items asserted to reflect the operation of an allegedly anticipatory system; or (iii) a combination of prior art references asserted to render a claim obvious.

3.) Remove and/or clarify any vague election of references in the Snap

Final Elections that could encompass prior art beyond those that have been previously charted. This includes Snap removing and/or clarifying the following elections: (i) "Internet advertising including website banner ads and inline ads and related references and art" for the '351 Patent, (ii) "Internet advertising including website banner ads and inline ads and related references and art" for the '929 Patent, (iii) "Well-known and conventional activity tracking systems, including crime maps, traffic reports, military reports, and earthquake maps" for the '084 Patent, and (iv) "Well-known and conventional communication stamping methods and systems, such as letter stamping/dating and passport stamping" for the '713 Patent.

  4.) Remove all catch-all phrases at the end of the references in the Snap Final Elections reading, for example, "and related references and art" or "and related systems."

  5.) Remove all references beyond the 6 references per patent and 27 references total permitted by the Court's Order.

DATED: August 14, 2019

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By     */s/ James R. Asperger*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
  James R. Asperger (Bar No. 83188)
  jamesasperger@quinnemanuel.com
  865 S. Figueroa St., 10th Floor
  Los Angeles, CA 90017
  Telephone: (213) 443-3000
  Facsimile: (213) 443-3100

  Kevin P.B. Johnson (Bar No. 177129)
  kevinjohnson@quinnemanuel.com
  Victoria F. Maroulis (Bar No. 202603)
  victoriamaroulis@quinnemanuel.com
  555 Twin Dolphin Drive, 5th Floor
  Redwood Shores, CA 94065
  Telephone: (650) 801-5000
  Facsimile: (650) 801-5100

BLACKBERRY CORPORATION
  Edward R. McGah, Jr (SBN 97719)
  Vice President, Deputy General Counsel
  41 Ticknor Place
  Laguna Niguel, California 92677
  Telephone: (+1) 650-581-4750

*Attorneys for BlackBerry Limited*

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................. 1

II. BACKGROUND ................................................................................................... 1

III. ARGUMENT ........................................................................................................ 3

    A. The Facebook Defendants Improperly Elect Prior Art Not Previously Charted In The Invalidity Contentions ....................... 4

    B. All Defendants Improperly Fail to Identify the Corresponding Invalidity Theories of the Elected Prior Art ........ 5

    C. Snap Improperly Attempts to Elect Vague, Unidentifiable References ................................................................................ 6

    D. Defendants' Arguments Lack Merit, And They Will Suffer No Prejudice From Complying with the Court's Order ............... 7

IV. CONCLUSION ..................................................................................................... 9

# TABLE OF AUTHORITIES

**Page**

## Cases

*Biocell Tech. LLC v. Arthro-7*, No. 12-00516,
   2013 U.S. Dist. LEXIS 189647 (C.D. Cal. Apr. 16, 2013) ............................... 1

*CH2O, Inc. v. Meras Eng'g, Inc.*, No. 13-08418,
   2016 U.S. Dist. LEXIS 185565 (C.D. Cal. May 9, 2016) ............................... 3

*Cypress Lake Software, Inc. v. Samsung Electronics Am., Inc.*,
   No. 6:18-cv-30-JDK, slip op. (E.D. Tex. July 1, 2019) ................................... 4

*Finisar Corp. v. Directv Group, Inc.*,
   424 F. Supp. 2d 896 (E.D. Tex. 2006) .............................................................. 4

*Finjan, Inc. v. Proofpoint, Inc.*, No. 13-cv-05808,
   2015 U.S. Dist. LEXIS 163095 (N.D. Cal. December 4, 2015) ................... 5, 6

*IXYS Corp. v. Advanced Power Tech., Inc.*, No. 02-03942,
   2004 U.S. Dist. LEXIS 10934 (N.D. Cal. June 16, 2004) ............................... 1

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
   467 F.3d 1355 (Fed. Cir. 2006) ......................................................................... 3

*The California Institute of Technology v. Broadcom Limited et al.*,
   No. 2:16-cv-03714-GW-AGR, Dkt. 375
   (C.D. Cal. Dec. 18, 2017) (Wu, J.) ................................................................ 5, 6

*Verinata Health, Inc. v. Sequenom, Inc.*, No. C 12-00865,
   2014 U.S. Dist. LEXIS 116382 (N.D. Cal. Aug. 20, 2014) ........................... 5, 6

## Other Authorities

S.P.R. 2.5.3 ............................................................................................... 2, 4, 5

S.P.R. 4.2 ........................................................................................................ 4

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendants attempt to bypass the Court's requirement that Defendants elect no more than 6 prior art references per patent and no more than 27 references total in their final elections of prior art. Instead, in violation of the Court's orders and the Standing Patent Rules, Defendants "elect" prior art that was never previously charted in Defendants' Invalidity Contentions, that is too vague to put BlackBerry on notice of what prior art references and invalidity theories are being elected, and that exceed the maximum number of references permitted by the Court.

Based on Defendants' improper election of prior art, Defendants could potentially rely on over 40 references for a single patent, over 100 references total for Facebook Defendants, and nearly 250 references total for Snap, including hundreds of completely undisclosed invalidity theories and numerous references that are too vague to put BlackBerry on notice of what prior art is even being elected. This tactic goes directly against the purpose of the Patent Rules. "[T]he Patent Rules [are] to ensure 'full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases, not to create supposed loopholes through which parties may practice litigation by ambush.'" *Biocell Tech. LLC v. Arthro-7*, No. 12-00516, 2013 U.S. Dist. LEXIS 189647, at *26 (C.D. Cal. Apr. 16, 2013) (quoting *IXYS Corp. v. Advanced Power Tech., Inc*., No. 02-03942, 2004 U.S. Dist. LEXIS 10934, at *8 (N.D. Cal. June 16, 2004)).

Thus, the Facebook Defendants and Snap should each be required to submit a more definite statement of their final elections of prior art and to remove the portions of the Facebook Final Elections and Snap Final Elections that violate the Court's orders and the Standing Patent Rules.

## II. BACKGROUND

On September 10, 2018, the Court issued a Minute Order ("Court's Order") stating that each party "has an obligation over the course of discovery to submit

timely amended versions of their contentions if/when new information related to those contentions is discovered." Dkt. 84. This includes Defendants' Invalidity Contentions. The Court's Order further required that Defendants submit a narrowed election of prior art to include no more than "six asserted prior art references/patent and no more than 27 references total." *Id.*

On October 29, 2018, Defendants submitted their Invalidity Contentions, charting 316 different references for the Facebook Defendants and 169 references for Snap. On June 14, 2019, Defendants submitted their Final Elections, which Snap amended on July 16. Schmidt Decl. at ¶¶ 2, 3 (Exs. 1 and 2). The Facebook Defendants, to-date, have not attempted to supplement their Invalidity Contentions. Snap, on the other hand, served 10 additional charts as part of their amended Final Elections to comply with BlackBerry's request in exchange for permitting the amendment. Snap's amendment did not, however, cure all deficiencies in the Snap Final Elections, as explained in detail below. The Invalidity Contentions submitted by the Facebook Defendants in October of 2018 do not contain invalidity charts required under S.P.R. 2.5.3 for any of the following references "elected" by the Facebook Defendants in the Facebook Final Elections:

| Patent | Reference from Facebook Final Elections |
|---|---|
| For the '250 Patent | iChat |
| For the '351 Patent | Special Edition Using SQL ("Colburn") |
| For the '929 Patent | Colburn |
| For the '929 Patent | U.S. 6,892,181 ("Megiddo") for the '929 Patent |

On June 24, counsel for BlackBerry sent counsel for Defendants letters addressing the deficiencies in Defendants' Final Elections that are the subject of this Motion. Schmidt Decl. at ¶¶ 4, 5 (Exs. 3 and 4). On June 28, counsel for Facebook Defendants sent a responsive letter. *Id.* at ¶ 6 (Ex. 5). On July 1, counsel for Snap sent a responsive letter. *Id.* at ¶ 7 (Ex. 6). On July 12, counsel for BlackBerry sent

additional follow-up letters addressing the same deficiencies outlined in the June 24 letters. *Id.* at ¶¶ 8, 9 (Ex. 7 and 8).  On July 17, the parties met and conferred to discuss the issues raised in this Motion.  *Id.* at ¶ 11.  On July 23, BlackBerry requested Defendants' position by July 24, or BlackBerry would assume the parties were at an impasse. *Id.* at ¶ 10 (Ex. 9). On July 24, Defendants stated that they were still considering the issues. *Id.*  On the same day, BlackBerry replied informing Defendants that it had already been a week since the meet and confer and requested Defendants' proposal by the close of business on July 26. *Id.*  As of the filing of this Motion, Defendants have yet to respond to BlackBerry.

## III.    ARGUMENT

Striking certain prior art elections or requiring Defendants to submit a more definite statement of their prior art elections is warranted because Defendants violated the Court's Order (Dkt. 84) by (1) selecting prior art references in their Final Elections that were not previously charted (for Facebook Defendants), (2) failing to identify the specific invalidity theory for each elected reference, such that the elections could exceed the total number of references permitted by the Court's Order by hundreds of references (for all Defendants), and (3) listing vague descriptions instead of electing specific, identifiable references (for Snap).

The Patent Rules "are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365-66, 1366 n. 12 (Fed. Cir. 2006) (citing *Nova Measuring Instruments Ltd. v. Nanometrics, Inc.*, 417 F. Supp. 2d 1121, 1123 (N.D. Cal. 2006)).[1]  These rules exist to discourage "the natural desire of litigants to attain important tactical advantages

---

[1] *O2 Micro Int'l* refers to similar patent rules in the Northern District of California.  This District "requires the same of its patent litigants." *CH2O, Inc. v. Meras Eng'g, Inc.*, No. 13-08418, 2016 U.S. Dist. LEXIS 185565, at *27 (C.D. Cal. May 9, 2016).

by delaying disclosure of key elements of their case." *Finisar Corp. v. Directv Group, Inc.*, 424 F. Supp. 2d 896, 898 (E.D. Tex. 2006).

### A. The Facebook Defendants Improperly Elect Prior Art Not Previously Charted In The Invalidity Contentions

In accordance with the principles stated above, the Standing Patent Rules governing this case require that Invalidity Contentions contain "[a] chart identifying where specifically in each alleged item of prior art each limitation of each asserted claim is found . . . ." *See* S.P.R. 2.5.3. The Court's Order here requires that Defendants provide "timely amended versions of their contentions if/when new information related to those contentions is discovered." Dkt. 84; *see also* S.P.R. 4.2 (requiring Defendants to promptly supplement disclosures). The Court's Order also requires under the "*narrowing* procedures" that there be a final "election" of prior art references. Dkt. 84 (emphasis added). In other words, Defendants must **elect** a **narrowed** set of prior art references from those that were previously charted in the Invalidity Contentions. *See Cypress Lake Software, Inc. v. Samsung Electronics Am., Inc.*, No. 6:18-cv-30-JDK, slip op. at 2 (E.D. Tex. July 1, 2019) ("A party's final prior-art election narrows what it may assert going forward, but it does not—and cannot—create (or reserve) any new rights that the party does not already have under the law, the Federal Rules, or the Local Rules."). The Facebook Final Elections fail to elect a narrowed set of references from those previously charted.

Specifically, in the Facebook Final Elections, the Facebook Defendants elect iChat for the '250 patent, Colburn for the '351 and '929 patents, and Megiddo for the '929 patent, which were never charted for the corresponding patents and were, at most, only disclosed in the Invalidity Contentions within conclusory string cites, mapped to isolated claim terms, in the cover pleadings of Defendants' invalidity contentions. *See supra* Section II (table identifying the references not previously charted by Defendants). "It is insufficient that Defendants [previously] identified [one piece of prior art] as relevant prior art for other patents." *Finjan, Inc. v.*

*Proofpoint, Inc.*, No. 13-cv-05808, 2015 U.S. Dist. LEXIS 163095, at *11 (N.D. Cal. December 4, 2015); *see also Verinata Health, Inc. v. Sequenom, Inc.*, No. C 12-00865, 2014 U.S. Dist. LEXIS 116382, at *14-15 (N.D. Cal. Aug. 20, 2014) (striking invalidity theories on the basis that defendant's reference to prior art was a new invalidity theory where defendant had only listed the reference as relevant to a different patent). None of the references listed above were, or have been, charted for the corresponding patents in accordance with S.P.R. 2.5.3. Thus, the Facebook Defendants should be ordered to remove all of these uncharted references and theories from the Facebook Final Elections.

### B.  All Defendants Improperly Fail to Identify the Corresponding Invalidity Theories of the Elected Prior Art

Defendants have also attempted to dodge the Court's Order to elect a limited number of prior art references by failing to disclose the invalidity theory for each elected reference for each patent. This improper tactic leaves open the possibility for Facebook Defendants to later rely on over 100 different invalidity theories and for Snap to later rely on nearly 250 different invalidity theories based on those pieces of prior art disclosed in the Final Elections, including hundreds of undisclosed theories. As the Court has noted in a previous case, a reference is "a single prior art reference that is asserted to anticipate a claim," or it is "a combination of prior art references asserted to render a claim obvious." *The California Institute of Technology v. Broadcom Limited et al.*, No. 2:16-cv-03714-GW-AGR, Dkt. 375 at 1, 2, 6 (C.D. Cal. Dec. 18, 2017) (Wu, J.). As a hypothetical, references A, B, and C would each count as 3 separate anticipatory references for a single patent. But A+B in combination would be a 4th reference based on obviousness; B+C would be a 5th; A+C would be a 6th; and A+B+C would be a 7th. So what once looked like 3 references could actually turn into 7 different references for one patent.

Here, the Court has allowed 6 prior art "references" to be elected per patent.

Defendants election of 6 pieces of prior art, without identifying an invalidity theory associated with each reference, could turn into over 40 distinct invalidity theories for *each* patent. Also, as explained above in Section III.A., each time a reference is used for a different patent, it is a different invalidity theory and counts as a separate reference. *Proofpoint*, 2015 U.S. Dist. LEXIS 163095, at *11; *Verinata Health*, 2014 U.S. Dist. LEXIS 116382, at *14-15.

As the Court previously noted, "an identification of prior art references without an identification of corresponding invalidity theories leaves open the possibility for Defendants to ultimately assert an unduly burdensome number of invalidity theories . . . ." *The California Institute of Technology*, Case No. 2:16-cv-03714-GW-AGR, Dkt. 375 at 2 (C.D. Cal. Dec. 18, 2017) (J. Wu.). That is exactly what Defendants have done here: attempted to leave open the possibility to rely on over 100 invalidity theories total for the Facebook Final Elections, nearly 250 invalidity theories total for the Snap Final Elections, and 35 more per patent than that allowed by the Court's Order by electing prior art references "without an identification of corresponding invalidity theories."

Thus, Defendants should be ordered to clarify their election of prior art references to disclose whether each election is (i) "a single prior art reference that is asserted to anticipate a claim," (ii) a collection of prior art items asserted to reflect the operation of an allegedly anticipatory system, or (iii) "a combination of prior art references asserted to render a claim obvious." Defendants should also be ordered to adhere to the limit of 6 references per patent and 27 total references permitted under the Court's Order and should be precluded from relying on any combinations of individual pieces of prior art that are not explicitly disclosed in the Final Elections (and charted in the Invalidity Contentions).

### C. Snap Improperly Attempts to Elect Vague, Unidentifiable References

The Snap Final Elections violate the Court's Order by listing vague

descriptions of potential prior art that do not specifically enumerate or disclose any identifiable reference. For example, Snap purports to elect "[i]nternet advertising including website banner ads and inline ads and related references and art" for the '351 patent and for the '929 patent, "[w]ell-known and conventional activity tracking systems, including crime maps, traffic reports, military reports, and earthquake maps" for the '084 patent, and "[w]ell-known and conventional communication stamping methods and systems, such as letter stamping/dating and passport stamping" for the '713 patent. Such vague descriptions are not elections of specific references required by the Court's Order or the Patent Rules and do not provide any notice to BlackBerry of specific prior art references or invalidity theories that Snap intends to rely upon.

Additionally, the Snap Final Elections repeatedly list references along with the catch-all phrases "and related references and art" or "and related systems." This is improper to the extend Snap is attempting to elect additional, unnamed references besides those specifically listed in the Snap Final Elections and charted in Snap's invalidity contentions.

Thus, Snap should be ordered to clarify the specific prior art references being elected (to the extent such references were actually charted in Snap's invalidity contentions) and remove the ambiguous catch-all phrases after any specifically named reference.

### D. Defendants' Arguments Lack Merit, And They Will Suffer No Prejudice From Complying with the Court's Order

Defendants have been aware of BlackBerry's position on how to count references since the beginning of the case, including BlackBerry's position regarding identifying the corresponding invalidity theory for each elected reference. For example, in the parties' Joint Case Scheduling Report, BlackBerry made clear that its case narrowing proposal included Defendants narrowing the number of prior art references "with *each combination counting as one reference* in accordance

with standard practice in case narrowing proposals." Dkt. 82 at 10 (emphasis added).

Defendants suggested during the meet and confer process leading up to this Motion that BlackBerry waived any objections to the references listed in the Final Elections to the extent the references were also listed in Defendants' Preliminary Election of Asserted Prior Art served on February 21, 2019, including how the references were to be counted towards the total permitted by the Court. *See, e.g.*, Schmidt Decl. at ¶¶ 6, 7 (Ex. 5 and 6). But the Preliminary Elections were submitted early in the case, before claim construction and before most discovery had taken place. Thus, BlackBerry reasonably expected Defendants to exercise diligence in updating their invalidity contentions and crystallizing their invalidity theories in the intervening period between the Preliminary Election and the Final Election. In February, BlackBerry did not wish to waste the parties' and the Court's resources in an effort to prematurely pin down Defendants' specific prior art elections, particularly given that most of the February elections would be further narrowed as the case progressed. Thus, Defendants' argument that BlackBerry waived its objections to the Final Prior Art Elections is without merit.

Defendants' "waiver" argument also fails because Defendants suffered no prejudice as a result of BlackBerry not objecting to the Preliminary Election. If anything, BlackBerry's restraint with regards to the Preliminary Election *favored* Defendants by keeping potential invalidity theories alive for Final Election, pending further discovery and claim construction. During the meet and confer process, Defendants suggested that they might have taken a different approach with the Preliminary Election had they known BlackBerry's position about how references should be counted. But this argument is specious. As noted above, Defendants have known BlackBerry's position about counting references since the early stages of the case. Moreover, during the meet-and-confer discussions, BlackBerry invited Defendants to identify any specific prior art that was missing from their Preliminary

1 Election that they would have included in a revised/more narrow Preliminary
2 Election. Defendants were unable to do so. Because there is no conceivable
3 prejudice to Defendants, their "waiver" argument fails.

## IV. CONCLUSION

For the foregoing reasons, BlackBerry respectfully requests that the Court grant BlackBerry's requested relief for Defendants to submit a more definite statement of the Final Elections, as outlined in the Requested Relief section above.

| | |
|---|---|
| DATED: August 14, 2019 | Respectfully submitted,<br><br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br><br>By    */s/ James R. Asperger*<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>  James R. Asperger (Bar No. 83188)<br>  jamesasperger@quinnemanuel.com<br>  865 S. Figueroa St., 10th Floor<br>  Los Angeles, CA 90017<br>  Telephone: (213) 443-3000<br>  Facsimile: (213) 443-3100<br><br>  Kevin P.B. Johnson (Bar No. 177129)<br>  kevinjohnson@quinnemanuel.com<br>  Victoria F. Maroulis (Bar No. 202603)<br>  victoriamaroulis@quinnemanuel.com<br>  555 Twin Dolphin Drive, 5th Floor<br>  Redwood Shores, CA 94065<br>  Telephone: (650) 801-5000<br>  Facsimile: (650) 801-5100<br><br>BLACKBERRY CORPORATION<br>  Edward R. McGah, Jr (SBN 97719)<br>  Vice President, Deputy General Counsel<br>  41 Ticknor Place<br>  Laguna Niguel, California 92677<br>  Telephone: (+1) 650-581-4750<br><br>*Attorneys for BlackBerry Limited* |