UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No.   CV 18-1844-GW (KSx)                                            Date: August 19, 2019

Title      <u>BlackBerry Limited v. Facebook, Inc. et al.</u>

Present: The Honorable:    Karen L. Stevenson, United States Magistrate Judge

| Gay Roberson | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

Attorneys Present for Plaintiffs:              Attorneys Present for Defendants:

**Proceedings: (IN CHAMBERS) ORDER RE: PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF MATERIAL IN RESPONSE TO BLACKBERRY'S REQUESTS FOR ELECTRONICALLY STORED INFORMATION [DKT. NO. 236]**

### INTRODUCTION

Before the Court is Plaintiff BlackBerry Limited's ("BlackBerry" or "Plaintiff") Motion to Compel the Production of Material in Response to Blackberry's Requests for Electronically Stored Information filed in the joint stipulation format on July 61, 2019 (the "Motion"). (Dkt. No. 236.) On July 16, 2019, the parties also filed the Declaration of Jeff Nardinelli in Support of Motion to Compel ("Nardinelli Decl.") (Dkt No. 237) and a Declaration of Elizabeth L. Stameshkin ("Stameshkin Decl.") in Opposition to Motion to Compel (Dkt. No. 238).

On July 31, 2019, Facebook Defendants[1] filed a Supplemental Memorandum re Motion to Compel. ("Defts.' Supp. Mem.") (Dkt. No. 265) and Plaintiff BlackBerry filed a Supplemental Brief Regarding its Motion To Compel ("Pltf.'s Supp. Br.") along with a Declaration of Jeff Nardinelli in Support of BlackBerry's Supplemental Brief re: Motion to Compel ("Supp. Nardinelli Decl.") and related exhibits (Dkt. No. 266). On August 13, 2019, the Court, finding the matter suitable for decision without oral argument, vacated the hearing on the Motion and took the matter under submission. (Dkt. No. 298.)

---

[1]   In the Motion, "Facebook Defendants" refers collectively to Defendants Facebook, Inc., WhatsApp, Inc., and Instagram, Inc. (*See* Joint Stip. at 1.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   CV 18-1844-GW (KSx)                                                                  Date: August 19, 2019

Title          <u>BlackBerry Limited v. Facebook, Inc. et al.</u>

 

For the reasons outlined below, the Motion is DENIED.

**RELEVANT BACKGROUND**

Plaintiff commenced this patent infringement action against Defendants Facebook, Inc., WhatsApp Inc., and Instagram, Inc. on March 6, 2019. (Dkt. No. 1.) On April 4, 2018, Plaintiff filed the operative First Amended Complaint ("FAC") asserting claims for patent infringement against Defendants Facebook, Inc., WhatsApp Inc., Instagram, Inc., and Instagram, LLC (collectively, "Defendants").[2] The FAC alleges that through its BlackBerry Messenger technology, BlackBerry "helped pioneer modern mobile messaging." (FAC ¶ 2.) BlackBerry alleges that Defendants, as "relative late comers to the mobile messaging world . . . created mobile messaging applications that co-opt BlackBerry's innovations, using a number of the innovative security, user interface, and functionality enhancing features that made BlackBerry's products such a critical and commercial success in the first place." (FAC ¶4.) BlackBerry identifies nine patents at issue in the case, U.S. Patent Nos. 7,372,961 (the "'961 Patent"); No. 8,209,634 (the "'634 Patent"); No. 8,279,173 (the "'173 Patent")' No. 8,301,713 (the "'713 Patent"); No. 8,429,236 (the "'236 Patent"); No. 8,677,250 (the "'250 Patent"); No. 9,349,120 (the "'120 Patent"); No. 8,296,351 (the "'351 Patent"); and No. 8,676,929 (the "'929 Patent") (collectively, the "Patents-in Suit"). (FAC ¶¶46-81.)

As outlined in the FAC, the features covered by the Patents-in-Suit relate to, among other things: security improvements; user interface improvements for mobile devices; the ability to combine mobile gaming and mobile messaging; techniques to reduce power consumption and improve battery life in mobile devices; and techniques "of delivering targeted advertising and content to mobile devises based on user demographics and interest, as well as the location of the user's mobile device and time-based triggers." (FAC ¶5.) Plaintiff alleges that "Defendants have used BlackBerry's own intellectual property to compete with it in the mobile messaging space." (FAC ¶6.)

---

[2]   On April 15, 2019, the Honorable George H. Wu granted the parties' joint stipulation to dismiss Instagram, Inc. from the action, without prejudice, pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure. (Dkt. No. 160).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   CV 18-1844-GW (KSx)                                                  Date: August 19, 2019

Title   <u>BlackBerry Limited v. Facebook, Inc. et al.</u>

Plaintiff seeks preliminary and permanent injunctive relief, compensatory damages under 35 U.S.C. § 284, including:  an enhancement of damages as a result of Defendants' alleged willful infringement; a finding that this case is exceptional under 25 U.S.C § 285 such that Plaintiff be awarded its reasonable attorney's fees; costs and expenses; and prejudgment and post-judgment interest.  (FAC at  pp.157-158.)

On September 4, 2018, Defendants filed an Answer to the FAC and counterclaims.  (Dkt. No. 80.)  BlackBerry filed its Answer to Defendants' Counterclaims on September 25, 2018.  (Dkt. No. 89.)  On December 14, 2018, the District Court entered an Amended Stipulated Protective Order (Dkt No. 99) and a Stipulated Order Governing the Production of Electronically Stored Information (the "ESI Order").  (Dkt. No. 100.)  The ESI Order established protocols governing the parties' search for and production format of ESI in this lawsuit,

On May 10, 2019, the Court held a telephonic conference with the parties regarding Facebook's production of documents, including Plaintiff's demand for a search for ESI from the files of Facebook CEO, Mark Zuckerberg ("Zuckerberg") relating to an editorial authored by Zuckerberg that was published in the *Wall Street Journal* on January 24, 2019 (the "Zuckerberg Article").  (Dkt. No. 201.)  The Zuckerberg Article discussed aspects of Facebook's targeted advertising technology.  (*Id.*, *and see* Nardinelli Decl. ¶4, Ex. C.)  At the discovery conference, the Court ordered Facebook to conduct searches for "emails directly related to Mr. Zuckerberg's *Wall Street Journal* article and information identified using Plaintiff's two proposed search terms that quote from that article."  (Dkt. No. 201.)  The Court's May 9, 2019 Order was "without prejudice to Plaintiff's ability to seek further production of documents or defendant's right to object to any additional demands for production."  (*Id.*)

 On June 10, 2019, the Court held another telephonic conference with the parties regarding discovery disputes, including whether the Court should compel Facebook to run additional searches for advertising-related documents using the parties' agreed ESI search terms Nos. 8-11 and 13 "as identified in the parties' Joint Report Regarding Facebook's Production of Certain ESI."  (*See* Dkt. No. 216 (citing Dkt. No. 213).)  The Court concluded that briefing was necessary to resolve this dispute and authorized Plaintiff to file a motion to compel in the joint stipulation format under Local Rule 37-2.  (*Id.*)  This timely Motion followed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No.   CV 18-1844-GW (KSx)                                                   Date: August 19, 2019

Title      *BlackBerry Limited v. Facebook, Inc. et al.*


### THE DISPUTED DISCOVERY REQUESTS

BlackBerry propounded ESI Request No. 1 to custodian Mark Zuckerberg, initially listing 15 search terms. (Nardinelli Decl., ¶ 5, Ex. D.) In the meet and confer process, Blackberry modified ESI Terms 8-11 and 13, the terms at issue in the Motion, to the following:

| No. | Modified Search Term |
|---|---|
| 8 | (ad OR ads OR advertisement OR advertisements OR advertising) /5 (target OR targets OR targeted OR targeting) |
| 9 | (ad OR ads OR advertisement OR advertisements OR advertising) /5 (zip OR DMA) |
| 10 | (ad OR ads OR advertisement OR advertisements OR advertising) /5 (location OR locations) |
| 11 | (ad OR ads OR advertisement OR advertisements OR advertising)  /5 (location OR locations) |
| 13 | (ad OR ads OR advertisement OR advertisements OR advertising)  /5  (interest OR interests) |

(Joint Stip. at 3; *and see* Nardinelli Decl. ¶¶ 5-6, Exs. D, E.)

In addition, on February 9, 2019, Plaintiffs served a Fourth Set of Requests for Production of Documents ("RFPs") that sought the following documents related to the Zuckerberg Article:

RFP NO. 113:
All documents relating to the preparation of the Zuckerberg Article, including all drafts of same and all communications regarding same.

RFP No. 114:
All documents and communications relating to the statements from the Zuckerberg Article: "People consistently tell us that if they're going to see ads, they want them to be relevant. That means we need to understand their interests," including but not limited to the factual basis for these statements.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   CV 18-1844-GW (KSx)                                              Date: August 19, 2019

Title   _BlackBerry Limited v. Facebook, Inc. et al._

RFP No. 115:
All documents and communications relating to the statements from the Zuckerberg Article:  "Although advertising to specific groups existed well before the internet, online advertising allows much more precise targeting and therefore more relevant ads," including but not limited to the factual basis for these statements.

RFP NO. 116:
All documents and communications relating to the "categories" referred to in the Zuckerberg Article ("So based on what pages people like, what they click on, and other signals, we create *categories*—for example, people who like pages about gardening and live in Spain—and then charge advertisers to show ads to that category.") (emphasis added).

RFP No. 117:
Documents sufficient to show what comprises the "categories" in the Zuckerberg Article.

RFP No 118:
All documents and communications relating to charging advertisers to show advertisements "to a category," as referred to in the Zuckerberg Article ("That means we need to understand their interests.  So based on what pages people like, what they click on, and other signals, we create categories—for example, people who like pages about gardening and live in Spain—and then **charge advertisers to show ads to that category**.") (emphasis added).



(Nardinelli Decl. ¶7,  Ex. F. (emphasis in original).)[3]
//
//
//
//
//

---

[3]   The Court could not locate written responses/objections to Plaintiffs' Fourth Set of RFPs in either party's submissions with the Motion.  In any event, BlackBerry does not contend that Facebook failed to timely respond to Plaintiff's RFPs.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   CV 18-1844-GW (KSx)                                                                   Date: August 19, 2019

Title        *BlackBerry Limited v. Facebook, Inc. et al.*

**THE MOTION**

**A. Plaintiff's Position**

In Motion, Plaintiff presents two issues: (1) whether Facebook should be compelled to run ESI Search Terms 8-11, and 13 through Zuckerberg's email for a three year period to identify documents responsive to Plaintiff's Fourth Set of RFPs; and (2) whether the Court should modify Facebook's current document review procedures for the Zuckerberg documents, which require Plaintiff's counsel to review all potentially responsive documents, i.e., all of the "hits" identified as containing the ESI search terms, at a computer located at Facebook's offices.

**1. Zuckerberg Email Search with ESI Search Terms 8-11 and 13**

With respect to Issue No. 1, concerning the search of Zuckerberg email, Plaintiff seeks discovery concerning the alleged infringement of BlackBerry's patents relating to the delivery of targeted advertising and, specifically, the alleged infringement of the '351 Patent and '929 Patent. (Joint Stip. at 2.) Plaintiff states that both these patents "relate to a network-and-software architecture built to deliver ads and content in response to location- or time-based signals." (*Id.*) In connection with the claims relating to the accused '351 and '929 Patents, Blackberry argues that the Zuckerberg Article "discuss[ed] the patented technology" and in it Zuckerberg "emphasized that Facebook's accused ad platform serves ads based on predefined information categories and targets based on "signals" including location[.]" (*Id.*; *and see* Nardinelli Decl. ¶ 4, Ex. C.) Blackberry maintains that in response to statements in the Zuckerberg Article, "BlackBerry propounded RFPs and ESI requests to unearth further statements made by Facebook—including Mr. Zuckerberg—about the value and functionality of the accused ads technology, including ESI Terms 8-11 and 13." (Joint Stip. at 2-3.)

Blackberry argues that ESI Search Terms 8-11 and 13 are relevant "[b]ecause Facebook's ad-targeting systems are central to the case, BlackBerry issued the same terms to additional Facebook engineers . . [and] Facebook ran those terms without complaint." (Joint Stip. at 3.) Moreover, Blackberry emphasizes that although Facebook "issued the same terms—nearly verbatim—to four separate BlackBerry custodians," Facebook has refused to run these terms against Zuckerberg's documents. (*Id.* at 3-4.) BlackBerry argues, Facebook's objections to the ESI search against Zuckerberg's email, seeks to extend the "apex" doctrine, which can shield a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    CV 18-1844-GW (KSx)            Date: August 19, 2019

Title      *BlackBerry Limited v. Facebook, Inc. et al.*

corporation's highest level executives from deposition unless and until efforts have been made to obtain the relevant information from lower level personnel, to ESI production.[4] (*Id*. at 4.) BlackBerry urges that the discovery sought is proportionate to the needs of the case because Blackberry is not seeking "'advertising' documents generally, but rather only documents that hit on search terms relating specifically to location-and time-based targeting." (*Id.* at 10). Finally, BlackBerry argues that the discovery is not duplicative of information obtained from other custodians who "received the same advertising terms as Mr. Zuckerberg." (*Id.*)

       **2. Request to Modify the Current ESI Review Protocol**

With respect to Issue No. 2, Plaintiff argues that Facebook's on-site review requirement is unduly burdensome, creates additional delay in obtaining production of the relevant responsive documents, and is unnecessary to protect the security of the documents sought. (Joint Stip. at 4-5.) Plaintiff contends that Facebook's procedure forced "BlackBerry to review every hit at the offices of [Facebook's] counsel" and the "review set included documents that Facebook conceded are irrelevant and that Facebook conceded to not warrant any protections beyond those offered by the protective order." (Joint Stip. at 4.) BlackBerry notes that the review procedure "required four on-site visits by BlackBerry's counsel." (*Id.*) BlackBerry insists that it finished its review on June 11, 2019 and has repeatedly asked "Facebook to produce the documents marked as responsive, and to propose a protocol for handling any documents that Facebook contends to warrant extra protections," but as of July 2, 2019, Facebook had done neither. (*Id.*)

**B. Facebook's Position**

In opposition to the Motion, Facebook challenges both the relevance and proportionality of BlackBerry's requests that ESI Search Terms 8-11 and 13 be run against Zuckerberg's email. Facebook argues that ESI Search Terms 8-11 and 13 are not proportionate "when applied to Mr. Zuckerberg." (Joint Stip. at 13.) While Plaintiffs point to sentences in the Zuckerberg Article that may refer to the accused technology, according to Facebook, "[t]hese sentences say nothing about Mr. Zuckerberg's 'familiarity with the accused technology,' personal knowledge of the operation of Facebook's advertising system architecture, or any personal knowledge about 'value

---

[4]    *See, e.g., Google Inc. v. American Blind & Wallpaper Factory, Inc*., No. C 03-5340 JF (RS), 2006 WL 2578277, at * 3, n.3 (N.D. Cal. Sept. 6, 2006) ("Courts generally refuse to allow the immediate deposition of a high level executive, often given the sobriquet "apex deponent," before the testimony of lower level employees with more intimate knowledge of the case has been secured." (internal citation omitted)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   CV 18-1844-GW (KSx)                                                        Date: August 19, 2019

Title      <u>BlackBerry Limited v. Facebook, Inc. et al.</u>

or strategy' of the accused features." (Joint Stip. at 13.) Facebook further states that it "has provided for BlackBerry's review of emails about the drafting of [the Zuckerberg Article]." (*Id.*) Facebook claims that BlackBerry, frustrated by the fact that the documents it has reviewed thus far related to the drafting of the Zuckerberg Article do not discuss "the value, importance, or implementation of the accused advertising technology beyond the statement in the editorial," Blackberry now "seeks to dig through Mr. Zuckerberg's files indiscriminately[.]" (*Id.*)

Facebook argues that the ESI Search Terms 8-11and 13 are overbroad and "likely to generate a significant number of mis-hits." (Joint Stip. at 16.) Facebook also contends that BlackBerry has not demonstrated a need for this search of Zuckerberg's email because "Zuckerberg's email will not alter how the underlying source code of the product works and is thus irrelevant to infringement." (*Id.*) Facebook insists that even if BlackBerry is able to identify statements regarding "unique value" Zuckerberg places on the business model that relies upon the targeting advertising technology, "BlackBerry does not explain how it would plan to use any such statements that exist or how it would ensure that any such statements are tied to any allegedly patented features[.]" (*Id.* at 17.)

With respect to BlackBerry's request to modify the review protocol, Facebook argues that significant security concerns weigh against allowing the less stringent review protocols that BlackBerry seeks. (Joint Stip. at 20.) Facebook argues that notwithstanding the existence of a protective order, Zuckerberg's public role and the fact of a previous leak of his email warrants the heightened protections against inadvertent disclosure afforded by the present review protocol. (Joint Stip. at 21.)

**C.   The Parties' Supplemental Briefing**

In its Supplemental Memorandum, Facebook reemphasizes that ESI from Zuckerberg is unnecessary. Facebook argues that Plaintiff will have adequate opportunity to delve into the specifics regarding the operation of Facebook's advertising platform through depositions of Facebook Engineering Managers, Allen Lui and Ori Hanegby, who are scheduled to be deposed on August 2 and August 22, respectively. (Defts.' Supp. Mem. at 1.) Facebook also notes that BlackBerry recently deposed "Pratiti Raychoudhury, a Vice President and Head of Research, regarding user and advertiser studies" and on August 20 BlackBerry will depose another 30(b)(6)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   CV 18-1844-GW (KSx)                                          Date: August 19, 2019

Title         <u>BlackBerry Limited v. Facebook, Inc. et al.</u>

witness, Facebook's Finance Director, "on many topics relating to Facebook's financials, including advertising related data." (*Id.* at 1-2.)

Facebook argues that it has continued to "address any reasonable ESI Requests from BlackBerry" and continues to produce documents and ESI related to advertising. (*Id.* at 2.) Facebook reiterates its position that given this ongoing discovery relating to the specifics of Facebook's advertising platform and operations, any "high level" discussions by or with Zuckerberg about the company's advertising strategy are simply not relevant to the patent infringement claims at issue here. (*Id.* at 2.) Finally, Facebook, asserts that the initial review of Zuckerberg's ESI "from the first set of search terms" has confirmed the need for the stringent review protocols. (*Id.*)

BlackBerry, in its Supplemental Brief, rejects Facebook's contention that ESI Search Terms 8-11 and 13 are over broad as to Zuckerberg's email, noting that the same terms were run against Facebooks' own engineers and Facebook requested "that BlackBerry run them against the inventors of the patents as issue." (Pltf.'s Supp. Br. at 1.) Blackberry maintains that the "terms are aimed specifically at Facebook's accused system, which enables time- and location-based advertising delivery." (*Id.* at 1.) Blackberry argues that it seeks Zuckerberg's "insight" and "understanding of the way this technology works, as well as the unique value he placed on this business model in relation to company strategy." (*Id.* at 3 (internal quotation marks omitted).) On that basis, Blackberry contends that the information sought is relevant because Zuckerberg "is involved in highest-level discussions regarding the accused advertising systems." (*Id.*) Further, BlackBerry argues that a single incident where confidential Facebook documents were leaked to a foreign government does not justify Facebook's insistence on a heightened review protocol for Zuckerberg's email in this case because Facebook has no evidence to "suggest that BlackBerry has or will deliberately leak Mr. Zuckerberg's emails." (*Id.* at 4.)

**LEGAL STANDARD**

Under Rule 26 of the Federal Rules of Civil Procedure, a party may obtain discovery concerning any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. FED. R. CIV. P. 26(b)(1). As amended in December 2015, Rule 26(b)(1) identifies six factors to be considered when determining if the proportionality

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   CV 18-1844-GW (KSx)                                              Date: August 19, 2019

Title   *BlackBerry Limited v. Facebook, Inc. et al.*

requirement has been met, namely, the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id.* Relevant information need not be admissible to be discoverable. *Id.*

Rule 37 provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection." FED. R. CIV. P. 37(a)(3). The party seeking to compel production of documents under Rule 34 has the "burden of informing the court why the opposing party's objections are not justified or why the opposing party's responses are deficient." *Best Lockers, LLC v. American Locker Group, Inc.,* Case. No. SACV 12-00403 CJC (ANx), 2013 WL 12131586, at *4 (C.D. Cal. Mar. 27, 2013).

District courts have broad discretion in controlling discovery. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). When considering a motion to compel, the Court has similarly broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallet,* 296 F.3d at 751).

**DISCUSSION**

While the scope of discovery permitted under Rule 26(b) is broad, it is not without limits. *See* FED. R. CIV. P. 26(b)(1). Following the 2015 amendments to Rule 26, the Court must consider both relevance and proportionality in determining whether the scope of discovery that a party seeks is appropriate. Further, the court must limit the frequency or extent of discovery if it determines that the "discovery sought is unreasonably cumulative, or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b). As discussed below, the Court finds that BlackBerry's request to apply ESI Search Terms 8-11 and 13 to Zuckerberg's emails, after having already searched for documents using search terms specifically targeted to the statements made in the Zuckerberg Article, seeks discovery that is neither relevant nor proportionate to the claims and defenses at issue in this patent infringement action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   CV 18-1844-GW (KSx)                                                            Date: August 19, 2019

Title         <u>BlackBerry Limited v. Facebook, Inc. et al.</u>

**A.  The Discovery Sought is Not Proportionate to the Needs of the Case**

One of the enumerated proportionality factors on Rule 26(b), as amended, is "the importance of the discovery in resolving the issues." FED. R. CIV. P. 26(b)(1). Here, the adjudication of the infringement claims in this action will turn on the specifics of the Patents-in-Suit and the implementing source code for those accused patents. To the extent BlackBerry's discovery demand arises from the Zuckerberg Article, a very generic statement for public consumption regarding the company's advertising methods, there is nothing in that editorial to suggest Zuckerberg has "personal knowledge" that is relevant to the Patents-in-Suit at issue in this case. Therefore, the Court is not persuaded that the searches of Zuckerberg's email with ESI Search Terms 8-11 and 13 will be of importance in resolving the issues in this case.

The fact that Facebook used the same ESI Search Terms 8-11 and 13 in seeking discovery from BlackBerry personnel does not alter the Court's conclusion. The fact that the same search terms were used against other custodians, including opposing witnesses, is not sufficient to establish the relevance or proportionality of running searches using those terms against *Zuckerberg's* email. The Court rejects BlackBerry's contention that in resisting this discovery, Facebook attempts to extend the "apex" doctrine to document production. Not so. The issue here is grounded in relevance.

Facebook cites several decisions from district courts in Delaware, Missouri, and Nebraska that have limited production of a CEO's email when there was insufficient connection to the actual issues in dispute. (*See* Joint Stip. at 18.) While these authorities are not binding on this Court, they are nonetheless persuasive in these circumstances where BlackBerry has not shown that Zuckerberg has "unique or personal knowledge of the subject matter that warrants [his email] information." *Lutzeier v. Citigroup Inc.*, Case No. 4:14-cv-00183-RLW, 2015 WL 430196, at *7 (E.D. Mo. Feb. 2, 2015).

Indeed, in a pre-motion discovery conference before this Court, counsel for Blackberry acknowledged that "Zuckerberg is probably far afield of the specific implementation." (Stameshkin Decl. ¶3, Ex. R.) But in patent litigation, "specific implementation" of the accused technology is a core issue in the case. The Zuckerberg Article does not provide an adequate nexus with any of the accused technology to assume that Zuckerberg may have personal knowledge regarding any specific implementation or source code sufficient to justify the broad ranging email search that Plaintiff seeks in the Motion. BlackBerry urges that running ESI

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   CV 18-1844-GW (KSx)                                           Date: August 19, 2019

Title   <u>BlackBerry Limited v. Facebook, Inc. et al.</u>

Search Terms 8-11 and 13 on Zuckerberg's email is warranted because of Zuckerberg's "unique knowledge of the accused technology."  (Pltf.'s Supp. Br., at 4.)  But nothing in the Zuckerberg Article indicates or suggests that Zuckerberg has personal knowledge regarding the accused technology and the Zuckerberg Article is the singular basis on which Blackberry posits the relevance of the discovery sought by the Motion.

**B. Applying the ESI Search Terms re: Advertising to Zuckerberg's Email is Not Equivalent to Applying Those Terms to Emails of Engineers Directly Involved in Development and Implementation of the Accused Patents**

The Court is also unpersuaded by Blackberry's argument that simply because the same search terms were run against the emails of Facebook's engineers and used to search for emails from Blackberry's inventors, that necessarily means that discovery sought by running ESI Search Terms 8-11 and 13 against Zuckerberg's emails is de facto relevant and proportionate.  Running these ESI search terms against the email of personnel directly involved in the technical development, implementation, and operation of the accused technology is not the same as running those search terms against the emails of the CEO of a global technology company whose primary business model is "advertising" writ large.  The search terms themselves, even as agreed by the parties, do not define proportionality.  Nor does the ESI Order.  Rather, proportionality must be assessed by considering the specific context of the custodian and/or repository against which the search terms will be applied.  On the record presented here, the Court concludes that BlackBerry's inquiry into Zuckerberg discussions at "the highest level" about its advertising functionality and business strategy is too attenuated from the infringement issues to be established – or refuted—in this lawsuit to warrant running ESI Search Terms 8-11 and 13 through the entirety of Zuckerberg's email for a three-year period.

Consequently, Facebook is not required to conduct a search of the Zuckerberg emails using Search Terms 8-11 and 13.  Because the Court denies the request for searches of Zuckerberg's email, the Court need not reach Plaintiff's request that the Court modify the review protocol for the Zuckerberg email.

**CONCLUSION**

Accordingly,   the Motion is DENIED in its entirety. In the Joint Stipulation and Supplemental Memoranda, the parties did not address any award of expenses, including

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  CV 18-1844-GW (KSx)                                              Date: August 19, 2019

Title       *BlackBerry Limited v. Facebook, Inc. et al.*

attorneys' fees, under Rule 37(a)(5). Nevertheless, the Court finds that Motion was substantially justified given the significance of the issues in dispute for both parties, and, therefore, declines to make an award of costs.

**IT IS SO ORDERED.**

                                                                                          :
                                                               **Initials of Preparer**   gr