1  QUINN EMANUEL URQUHART &
   SULLIVAN, LLP
2    James R. Asperger (Bar No. 83188)
     jamesasperger@quinnemanuel.com
3    865 S. Figueroa St., 10th Floor
     Los Angeles, CA 90017
4    Telephone: (213) 443-3000
     Facsimile: (213) 443-3100
5
     Kevin P.B. Johnson (Bar No. 177129)
6    kevinjohnson@quinnemanuel.com
     555 Twin Dolphin Drive, 5th Floor
7    Redwood Shores, CA 94065
     Telephone: (650) 801-5000
8    Facsimile: (650) 801-5100

9  BLACKBERRY CORPORATION
     Edward R. McGah, Jr (SBN 97719)
10   Vice President, Deputy General Counsel
   – Litigation
11   41 Ticknor Place
     Laguna Niguel, California 92677
12   Telephone: (+1) 650-581-4750

13 Attorneys for Plaintiff,
   BlackBerry Limited

14

15             IN THE UNITED STATES DISTRICT COURT

16             FOR THE CENTRAL DISTRICT OF CALIFORNIA

17

18 | BLACKBERRY LIMITED, a          )
19 | Canadian corporation,           )
                                     )
20 |                  Plaintiff,     )  Case No. 2:18-cv-01844-GW-KS
                                     )  **LEAD CONSOLIDATED CASE**
21 |        v.                       )
                                     )  Related Case: 2:18-cv-02693-GW-KS
22 | FACEBOOK, INC., a Delaware      )
23 | corporation, WHATSAPP INC., a   )  **BLACKBERRY'S REPLY IN
   | Delaware corporation, and      )  SUPPORT OF ITS MOTION FOR
24 | INSTAGRAM, INC., a Delaware    )  A MORE DEFINITE
   | corporation, and INSTAGRAM,    )  STATEMENT OF
25 | LLC, a Delaware limited liability )  DEFENDANTS' PRIOR ART
   | company,                       )  ELECTIONS**
26 |                                 )
27 |                  Defendants.    )

28

# TABLE OF CONTENTS

I. THE FACEBOOK DEFENDANTS ADMIT THAT THEY HAVE NEVER DISCLOSED INVALIDITY THEORIES FOR COLBURN, MEGIDDO, OR ICHAT ................................................................................ 2

II. SNAP HAS LIKEWISE FAILED TO COMPLY WITH THE STANDING PATENT RULES AND ITS UNDISCLOSED THEORIES ARE CONTRARY TO LAW ....................................................... 5

III. DEFENDANTS' INTERPRETATION OF THE COURT'S ORDER ON PRIOR ART LIMITS IS UNREASONABLE AND WILL LEAD TO TRIAL BY AMBUSH ................................................................... 6

IV. DEFENDANTS' ARGUMENTS REGARDING PREJUDICE SHOULD BE IGNORED ............................................................................ 7

# TABLE OF AUTHORITIES

**Page**

**Cases**

*ASUS Computer Int'l v. Round Rock Research, LLC*,
  No. 12-cv-2099, 2014 WL 1463609 (N.D. Cal. Apr. 11, 2014) ....................... 5

*California Institute of Technology v. Broadcom Limited*,
  No. 2:16-cv-3714, Dkt. 375 (C.D. Cal. Dec. 18, 2017) .............................. 2, 7

*Finjan, Inc. v. Sophos, Inc.*,
  No. 3:14-cv-1197, 2016 WL 2988834 (N.D. Cal. May 24, 2016) ................... 5

*Munchkin, Inc. v. Luv N' Care, Ltd.*,
  No. 2:13-cv-7228, 2015 WL 847391 (C.D. Cal. Feb. 26, 2015) ................ 3, 5

*Server Tech., Inc. v. Am. Power Conversion Corp.*,
  No. 3:06-cv-698, 2014 WL 1308617 (D. Nev. Mar. 31, 2014) ....................... 3

*Seymour v. Osborne*,
  78 U.S. 516 (1870) ................................................................................. 2, 6

Defendants' Invalidity Contentions were due nearly a year ago on October 29, 2018. Under Standing Patent Rule 2.5.3, Defendants were required to include therein "A chart identifying where specifically in each alleged item of prior art each limitation of each asserted claim is found." Defendants' Opposition concedes, as it must, that this was not done and Defendants' arguments against granting BlackBerry's motion will simply encourage future gamesmanship with respect to patent rules contentions.

With respect to the Facebook Defendants, the Opposition admits that none of the charts served to date even mention (let alone disclose theories for) the Colburn and Meggido references. The Facebook Defendants argue that these references were mentioned in passing as secondary references in an omnibus document discussing potential obviousness combinations. But, these passing references provided no detail as to the particular combinations that these so-called "secondary references" would be used for or why anyone would be motivated to combine them. If the Facebook Defendants' position were correct, then a defendant could easily conceal their lead prior art references by electing not to chart them and instead burying them in some ancillary document related to obviousness before later ambushing a plaintiff with them at trial, thus eviscerating the requirements of Standing Patent Rule 2.5.3.

The Facebook Defendants' arguments with respect to iChat fare little better. Like Colburn and Meggido, the Facebook Defendants have never charted "iChat" against any of the Patents. Recognizing this, they attempt a sleight-of-hand and argue that because they charted an application (SubEditEtha) that ran *on top of iChat*, they somehow gave notice that iChat itself was the anticipating reference. But if the Facebook Defendants were correct, then a defendant who charted a specific application that runs on top of the Windows operating system could show up at trial with an invalidity theory premised on the operation of Microsoft Windows itself. As the Standing Patent Rules make clear, a plaintiff should not have to guess or speculate as to which specific references are being asserted as allegedly invalidating prior art.

As to Snap, it takes the position that general references to vague techniques and "related systems" that were supposedly "known in the art" are sufficient to comply with the Standing Patent Rules. But not only is that argument incorrect as a procedural matter, it is also wrong on the merits as well. For more than a century, it has been the law that "[m]ere vague and general representations [in the prior art] will not support such a defense, as the knowledge supposed to be derived from the publication must be sufficient to enable those skilled in the art of science to understand the nature and operation of the invention, and to carry it into practical use." *Seymour v. Osborne*, 78 U.S. 516, 555 (1870). Snap's claim that it may rely on as-yet unidentified documents or systems is contrary to the Patent Rules and established law and should be rejected.

Finally, both Defendants fail to offer any reason why they should be allowed to proceed to trial on hundreds of potential invalidity theories involving dozens of undisclosed obviousness combinations. As the Court noted in *California Institute of Technology v. Broadcom Limited*, "[a]n identification of prior art references without an identification of corresponding invalidity theories leaves open the possibility for Defendants to ultimately assert an unduly burdensome number of invalidity theories in this litigation." That burden is plainly present here and given that the parties are roughly six months away from trial and fact discovery closes tomorrow, there is no reason that Defendants cannot identify their theories (which they presumably already know) now. BlackBerry's Motion should be granted.

**I. THE FACEBOOK DEFENDANTS ADMIT THAT THEY HAVE NEVER DISCLOSED INVALIDITY THEORIES FOR COLBURN, MEGIDDO, OR ICHAT**

The Facebook Defendants readily acknowledge that they have not provided charts for Colburn, Megiddo, or iChat as they were required to do under Standing Patent Rule 2.5.3. Opp. at 3 ("BlackBerry's complaint amounts to little more than

quibbling that Defendants did not provide a physically separate 'claim chart' devoted to Colburn and Megiddo."); *id.* ("[BlackBerry's] argument elevates form over substance."); *id.* at 2 (arguing only that Facebook served a chart "describ[ing] an obviousness combination based on primary reference SubEthaEdit [] combined with two references that describe iChat"). Accordingly, for this reason alone, these references should be stricken from the Final Election. *See Server Tech., Inc. v. Am. Power Conversion Corp.,* No. 3:06-cv-698, 2014 WL 1308617, at *5 (D. Nev. Mar. 31, 2014) (excluding prior art references that lacked claim charts in invalidity contentions because general citations to those references elsewhere "were wholly inadequate to provide notice to [plaintiff] that they would be used at trial"); *Munchkin, Inc. v. Luv N' Care, Ltd.*, No. 2:13-cv-7228, 2015 WL 847391, at *2 (C.D. Cal. Feb. 26, 2015) (excluding prior art not properly disclosed in invalidity contentions).

With respect to Colburn and Meggido, the Facebook Defendants argue that their failure to comply with Standing Patent Rule 2.5.3 should be overlooked because these references were included in a document "identifying secondary references into groups based on their subject matter" (Opp. at 3), but that argument is unavailing. In that "identification of secondary references" (which spans more than 150 pages) the Facebook Defendants mention each of these references a mere ***one*** time for their respective patents. *See* Brigham Ex. 3 at 34-35 ("In addition, 'channels' are also disclosed and described in . . . Rafe Colburn, 'Special Edition Using SQL' ('Colburn') (*e.g.*, pp.8-148, 510-529) . . ."); *id.* at 38-39 ("In addition to the relevant teachings cited in each of the references charted, meta tags are also described and disclosed in . . . U.S. Patent 6,892,181 ('Megiddo'), which provides example tags for identifying an advertisement and display requirements (such as a banner ad for a web page) . . ."). No specific combinations of these so-called "secondary" references with primary references are disclosed nor do the Facebook Defendants identify any motivations to combine these specific references with any other reference. It is thus unclear how the

Facebook Defendants can credibly claim that these one sentence identifications, buried among thousands of pages of invalidity contentions, can possibly provide "fair notice of Facebook's invalidity theories." Opp. at 5. To the contrary, with fact discovery set to close tomorrow, BlackBerry has no notice at all as to where the Facebook Defendants contends "each limitation of each asserted claim" is found within these references or how/why either reference would be combined with another to form an obviousness challenge. The Facebook Defendants easily could have (and should have) disclosed these theories nearly a year ago and their failure to do so is inexcusable.

With respect to iChat, the Facebook Defendants fare little better. The Facebook Defendants do not allege (nor could they allege) that they have ever served a chart for iChat. Instead, Defendants attempt a sleight-of-hand by pointing to their chart for SubEditEtha, an application that ran *on top of* iChat.[1] Opp. at 2. But here again, the Facebook Defendants simply seek an end-run around the unambiguous requirements of Standing Patent Rule 2.5.3. The Facebook Defendants openly admit that their chart for SubEthaEdit included **no disclosure** at all related to iChat for at least claim elements 1[p], 1[b], and 1[e] (and their claim 9 counterparts), or claim 6, claim 8, and claim 14. *See* Opp. at 2-3. Indeed, at its core, the argument advanced by the Facebook Defendants here would allow a defendant to identify a third-party application that ran on the Windows operating system in its Invalidity Contentions and then, at trial, use

---

[1] The Facebook Defendants also argue that the chart for this third-party application disclosed a "combin[ation] with two references that describe iChat ('Pogue' and 'Williams')" (Opp. at 2) but this argument is disingenuous at best. Initially, the Facebook Defendants do not claim that they disclosed a combination with iChat itself, only with "references that *describe* iChat." Opp. at 2 (emphasis added). Moreover, it is clear from even a cursory review of the chart that SubEthaEdit (and not Pogue and Williams) was the clear focus of the Facebook Defendants' original invalidity theory. *See* Brigham Ex. 1.

that disclosure to argue that Windows *itself* would invalidate the claims. That cannot be the law.

## II. SNAP HAS LIKEWISE FAILED TO COMPLY WITH THE STANDING PATENT RULES AND ITS UNDISCLOSED THEORIES ARE CONTRARY TO LAW

Snap has also failed to comply with Standing Patent Rule 2.5.3 by providing only vague references to general concepts that it alleges were known in the prior art such as "Internet advertising," "letter stamping/dating and passport stamping," and "crime maps, traffic reports, military reports, and earthquake maps." *See* Mot. at 7. With respect to "Internet advertising," Snap openly admits that, nearly a year after the deadline for Invalidity Contentions, it has yet to even serve a chart for that concept. Opp. at 10 ("While Snap has yet to provide a claim chart for Internet Advertising . . ."). Snap promises to provide this chart sometime "before the deadline for final invalidity contentions on September 13, 2019." In other words, Snap's only promise is that it will disclose this new theory mere days before opening expert reports are due and months after making its Final Election of prior art. As other courts have held, that is plainly improper. *See, e.g., Munchkin*, 2015 WL 847391, at *2 (excluding prior art not properly disclosed in invalidity contentions); *ASUS Computer Int'l v. Round Rock Research, LLC*, No. 12-cv-2099, 2014 WL 1463609, at *8 (N.D. Cal. Apr. 11, 2014) (striking portions of expert report analyzing prior art references not disclosed in invalidity contentions).

As to Snap's general "concept" charts more broadly, the law is likewise clear that a defendant cannot simply identify broad concepts that were allegedly known in the prior art. As a procedural matter, such disclosures plainly fail to comply with local patent rules (such as Standing Patent Rule 2.5.3) that require limitation-by-limitation charts. *See e.g., Finjan, Inc. v. Sophos, Inc.*, No. 14-cv-1197, 2016 WL 2988834, at *7 (N.D. Cal. May 24, 2016) (holding disclosure of "Sophos SWEEP-

InterCheck Product & Software, 1994-2005" in Invalidity Contentions to be impermissibly vague and limiting expert report to specific versions actually disclosed in discovery). Here, Snap has disclosed only general concepts, not specific documents, systems, or other evidence that is admissible or appropriate to show invalidity under Section 102 or Section 103. As the Supreme Court held more than a century ago, "[m]ere vague and general representations [in the prior art] will not support such a defense, as the knowledge supposed to be derived from the publication must be sufficient to enable those skilled in the art of science to understand the nature and operation of the invention, and to carry it into practical use." *Seymour v. Osborne*, 78 U.S. 516, 555 (1870). Thus, not only has Snap failed to comply with Standing Patent Rule 2.5.3, it has also failed to present any cognizable theory that could be presented at trial for these vague "concepts."[2]

### III. DEFENDANTS' INTERPRETATION OF THE COURT'S ORDER ON PRIOR ART LIMITS IS UNREASONABLE AND WILL LEAD TO TRIAL BY AMBUSH

Defendants claim that they have "complied with the Court's order regarding narrowed prior art elections" (Opp. at 5) but they can only make that claim by misinterpreting the Court's order. Under Defendants' interpretation, they are permitted to go to trial on as many theories of invalidity as they want, so long as they do so with only 6 references per patent and 27 references in total. If this interpretation is correct, then Defendants would be permitted to have 63 prior art invalidity theories *per patent*. This would mean that the Facebook Defendants could present ***567*** prior art theories in total while Snap would be entitled to present its own ***378*** prior art theories in its case. Thus, Defendants' interpretation of the Court's disclosure

---

[2] Snap claims in its Opposition that its use of the phrase "related references and art" is intended only to encompass already disclosed prior art systems. Opp. at 8. Given that Snap has not disclosed those "related references and art" to BlackBerry, it is impossible to know what Snap means and BlackBerry reserves all rights.

requirements is to have, in effect, no disclosure at all and instead to leave BlackBerry guessing until the first day of trial as to which invalidity theories it will need to rebut. As the Court recognized in *California Institute of Technology*, "[a]n identification of prior art references without an identification of corresponding invalidity theories leaves open the possibility for Defendants to ultimately assert an unduly burdensome number of invalidity theories in this litigation." No. 2:16-cv-3714, Dkt. 375 at 1-2 (C.D. Cal. Dec. 18, 2017). That burden is plainly present here and given that the parties are roughly six months away from trial and fact discovery closes tomorrow, there is no reason that Defendants cannot identify their theories (which they presumably already know) now.

### IV. DEFENDANTS' ARGUMENTS REGARDING PREJUDICE SHOULD BE IGNORED

Finally, none of Defendants' arguments regarding prejudice are persuasive. Initially, Defendants make no attempt to argue that they will be prejudiced by the exclusion of their undisclosed invalidity theories, focusing instead solely on the question of whether Defendants should be required to disclose their specific prior art invalidity theories at this stage. *See* Opp. at 12-13. Thus, there is no prejudice to requiring Defendants to drop their untimely disclosed prior art references.

With respect to whether Defendants would be prejudiced by being required to disclose their theories of prior art invalidity now as the Court's order intended, Defendants offer no good arguments. First, Defendants complain that BlackBerry's selection of dependent claims in its Final Election is somehow unfair. Opp. at 12. But that argument does not follow. Nothing in the patent statutes or case law precludes BlackBerry from asserting narrower dependent claims just as nothing precludes Defendants from arguing that their systems do not infringe these narrower claims (assuming Defendants have the facts to support that claim). BlackBerry's assertion of dependent claims, without the independent claims from which they

-7-  Case No. 2:18-cv-01844 GW(KSx)
BLACKBERRY'S REPLY IN SUPPORT OF ITS MOTION FOR A
MORE DEFINITE STATEMENT OF DEFENDANTS' PRIOR ART ELECTIONS

depend, does not "circumvent" the Court's order as Defendants claim.  Opp. at 12.  The selection of a dependent claim narrows the possible infringement theories that BlackBerry is able to assert, providing the requisite notice to Defendants.  For example, Defendants' assertion that the elected claim 14 of the '250 Patent gives BlackBerry "four elected claims for the price of just one" (Opp. at 12) is categorically false—BlackBerry's ability to assert infringement is limited to the elected claim and not to the broader claims from which it depends.  The same principle will apply to Defendants' prior art election.  Should Defendants elect, as one of their 27 references, a combination of prior art documents A, B, C, that will count as a single election (*i.e.*, an election to the combination) despite the involvement of three separate documents.  Of course, the election of a three reference combination would not give Defendants "three references for the price of one."

Second, Defendants argue that the timing of BlackBerry's Motion is somehow prejudicial but that argument is a red herring.  Throughout fact discovery, BlackBerry has taken great pains to supplement its Infringement Contentions to provide increasingly more specific disclosures regarding its infringement theories.  BlackBerry undertook this effort in response to the Court's directive that "each party [] has an obligation over the course of discovery to submit timely amended versions of their contentions if/when new information related to those contentions is discovered."  Dkt. 84 at 2.  BlackBerry expected that, as it had done with Infringement Contentions, Defendants would also "timely amend" their Invalidity Contentions to better disclose their theories as the case progressed.  Despite this expectation, Defendants have done nothing to provide more granularity with respect to their invalidity theories, instead choosing to "hide the ball" by waiting until expert reports or even trial to disclose their theories.  With roughly six months to go until trial and less than a month before their invalidity expert reports are due, Defendants

presumably know the theories they intend to present at trial. Their refusal to disclose these is simply gamesmanship.

Defendants' claim that "[h]ad Defendants been ordered to narrow . . . at the beginning of the case, Defendants would have elected additional or different prior art" rings hollow. Opp. at 12. Defendants have identified no "additional" or "different" prior art that they would have elected had they complied with the Court's limits on electing references from the start. Nor could they—Defendants' overbroad preliminary election resulted in the inclusion of *more* possible invalidity theories, which means there cannot have been any conceivable prejudice. For the same reason, Defendants' alternative request to "re-do" their Final Elections should likewise be rejected.

Defendants have known, for nearly a year, that they would need to narrow and disclose their theories for trial. Having failed to do so, they have prejudiced BlackBerry's ability to conduct fact discovery on those theories and prepare for trial and now have only themselves to blame. Accordingly, BlackBerry respectfully requests that its Motion be granted.

DATED: August 29, 2019

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ James R. Asperger*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
James R. Asperger (Bar No. 83188)
jamesasperger@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

BLACKBERRY CORPORATION
Edward R. McGah, Jr (SBN 97719)
Vice President, Deputy General Counsel
41 Ticknor Place
Laguna Niguel, California 92677
Telephone: (+1) 650-581-4750

*Attorneys for BlackBerry Limited*