COOLEY LLP
HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
MARK R. WEINSTEIN (193043)
(mweinstein@cooley.com)
MATTHEW J. BRIGHAM (191428)
(mbrigham@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

Attorneys for Defendants
FACEBOOK, INC., WHATSAPP INC.,
and INSTAGRAM, LLC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLACKBERRY LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC., WHATSAPP INC., and INSTAGRAM LLC,<br><br>Defendants. | Case No. 2:18-cv-01844<br><br>**DEFENDANT FACEBOOK'S MOTION TO STRIKE PORTIONS OF PLAINTIFF'S SECOND SUPPLEMENTAL INFRINGEMENT CONTENTIONS**<br><br>The Hon. George H. Wu<br><br>Hearing Date: September 30, 2019<br>Time: 8:30 AM<br>Place: Courtroom 9D |

## I. INTRODUCTION

BlackBerry chose to wait until approximately six weeks before the close of discovery, and less than one week before the deposition of Defendant Facebook, Inc.'s ("Facebook's") 30(b)(6) witness on the relevant issue, to serve its Second Supplemental Infringement Contentions ("SSICs"), which dramatically multiplied the accused products for U.S. Patent No. 7,372,961 ("the '961 patent"). BlackBerry's SSICs were made without the Court's permission, which is unsurprising given BlackBerry cannot satisfy the Court's exacting "good cause" standard—requiring BlackBerry to act diligently in making any amendment. *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1363 (Fed. Cir. 2006) (discussing Northern District of California Patent Local Rules); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).[1] The "good cause" standard, which was derived from Rule 16(b), "primarily considers the diligence of the party seeking the amendment," and requires that BlackBerry show that it could not have amended earlier despite the exercise of diligence. *Id.*

BlackBerry falls markedly short of showing that it exercised diligence in seeking amendment of its infringement contentions for the '961 patent. Facebook made its source code available for inspection by BlackBerry in September 2018—and that code furnished all of the information BlackBerry needed to ascertain what products, if any, could potentially be accused of infringement of the '961 patent. Blackberry's Preliminary and First Supplemental Infringement Contentions ("FSICs"), served in September 2018 and December 2018, took the position that the only accused '961 product was Facebook Messenger.

It was not until July 2019 that BlackBerry served its Second Supplemental

---

[1] The Court adopted Judge Guilford's Standing Patent Rules but instructed the parties that they "may rely on legal authority developed based on the Northern District of California's Patent Local Rules to support arguments relating to, for instance, *whether a party has demonstrated good cause sufficient to support amending its contentions*." (Dkt. 77, at 3 (italics added).)

Case Nos. 2:18-cv-01844  1  MOTION TO STRIKE PORTIONS OF PLAINTIFF'S SECOND SUPPLEMENTAL INFRINGEMENT CONTENTIONS

Infringement Contentions. That amendment identified—for the first time—several new categories of products, which were never previously accused, never mentioned in any discovery request, and never a part of this case. Facebook respectfully submits that these facts demonstrate that BlackBerry failed to act diligently in amending its contentions, and the Court should strike the newly-added accused products in BlackBerry's SSICs.

## II. BACKGROUND

On April 15, 2018, BlackBerry filed its First Amended Complaint ("FAC") alleging that Facebook infringed the '961 patent, among others. The FAC only specifically accused the "Facebook Messenger application," along with "related Facebook backend servers and systems," of infringing the '961 patent. (FAC, Dkt. 15, ¶118.)

Shortly after discovery opened on July 12, 2018, Facebook made its source code available for inspection on September 7, 2018. (Declaration of Heidi L. Keefe, Ex. 1.)[2] This code included all of the information BlackBerry needed to determine what products, if any, could possibly be relevant to the '961 patent.

On September 15, 2018, BlackBerry served its Preliminary Infringement Contentions, and, consistent with the FAC, only specifically identified "**the Facebook Messenger ("FBM") application,**" and other unidentified "related Facebook backend servers and systems," of infringing the '961 patent. (Ex. 2 at 1.) BlackBerry's '961 infringement allegations remained unchanged when it supplemented its contentions on December 14, 2018. (Ex. 3 at 1.)

Despite Facebook having made its source code available as early as September 7, 2018, BlackBerry did not have its expert review the code until March 26, 2019— six months later. (*See* Ex. 4 (source code review log showing BlackBerry's expert first reviewed the source code on March 26, 2019).) Even after its expert had a chance

---

[2] Unless otherwise specified, all exhibits refer to exhibits to the Declaration of Heidi L. Keefe.

to review the relevant code, BlackBerry chose not to supplement its '961 infringement contentions. Instead, it waited. Meanwhile, Facebook continued preparing its defensive case (relying on the Preliminary and FSICs)—including producing documents, responding to discovery requests, investigating non-infringement arguments and defenses, and preparing witnesses for depositions.[3]

On July 12, 2019—ten months after service of BlackBerry's Preliminary Infringement Contentions and ten months after BlackBerry received access to Facebook's source code—BlackBerry served its SSICs. And for the first time BlackBerry purported to accuse all "Facebook products and services that utilize ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████." (Ex. 5 at 1.) (collectively, the "newly-added products"). *None* of the newly-added products were included in BlackBerry's Preliminary or FSICs, yet *all* of the information BlackBerry relied on was available since at least September 2018.

On July 18, 2019, less than a week after serving its SSICs, BlackBerry took the Rule 30(b)(6) deposition of ███████, Facebook's witness relating the Facebook Messenger functionalities accused of infringing the '961 patent. BlackBerry's counsel attempted to use the just-served SSICs to justify questions far beyond the scope of Facebook Messenger, to which Facebook objected. (*E.g.*, Ex. 6, at 168-179 (regarding ████████████████████).) On August 7, 2019, Facebook sent BlackBerry a letter reiterating its position that the addition of the newly-added products was untimely and improper. (Ex. 7.)

On August 15, 2019, Facebook and BlackBerry met and conferred regarding

---

[3] Facebook focused its discovery and document production on that functionality – without objection from BlackBerry until July 2019. For example, BlackBerry failed to raise any objection to Facebook's response to Interrogatory No. 9 relating to products that "perform, implement, or enable any [sic] the Accused Features," even though Facebook identified no "Accused Feature" outside of Facebook Messenger with respect to the '961 patent.

those objections. Reaching an impasse, Facebook sought a pre-motion conference with Magistrate Judge Stevenson seeking leave to file a motion to strike BlackBerry's belated addition of accused products. (Ex. 8.) At the August 27, 2019 conference, Magistrate Judge Stevenson advised Facebook that the motion to strike should be filed before the district judge, as it deals with the scope of allegations in the underlying matter. Facebook has thus filed the present motion with this Court.

### III.  ARGUMENT

"Litigation should not be a constantly moving target." *Farstone Tech., Inc. v. Apple, Inc.,* No. 8:13-cv-1537-ODW (JEMx), 2015 WL 3901708, at *2 (C.D. Cal. Jun. 24, 2015) (citing *Catch a Wave Techs. v. Sirius XM Radio*, No. C 12-05791 WHA, 2014 WL 186405, at *1 (N.D. Cal. Jan. 16, 2014)). Accordingly, BlackBerry had a duty to "submit timely amended versions" of its infringement contentions "if/when new information is discovered," and must meet the "good cause" standard for amending contentions. (Dkt. 84, at 2; Dkt. 77, at 3). The good cause inquiry considers (1) whether a party was diligent in seeking amendment and (2) whether the amendment would prejudice the non-moving party. *Pavo Solutions LLC v. Kingston Tech.*, No. 8:14-cv-1352-JLS-KES, 2018 WL 5099294, at *1 (C.D. Cal. Jul. 18, 2018); *O2 Micro Int'l*, 467 F.3d at 1363.

### A.  BlackBerry Exercised No Diligence in Amending its Contentions Nearly 10 Months After its Preliminary Contentions

BlackBerry's ten-month delay between its Preliminary Infringement Contentions and its SSICs confirms that it did not exercise diligence in amending its contentions with respect to the '961 patent. *See* Section II *supra*. The Ninth Circuit has long held that the touchstone of the "good cause" standard is the diligence of the party seeking the amendment. *See Johnson*, 975 F.2d at 609 ("Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment."); *O2 Micro Int'l*, 467 F.3d at 1366 (applying the "good cause" standard of *Johnson* to whether patentee had "good cause" for amending infringement

contentions under N.D. Cal. Patent Local rules). "Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson*, 975 F.2d at 609. "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." *Id.* (citation omitted).

The Court has advised the parties that they may "rely on legal authority developed based on the Northern District of California's Patent Local Rules to support arguments relating to, for instance, whether a party has demonstrated good cause sufficient to support amending its contentions." (Dkt. 77, at 2.) District courts in the Northern District of California, and this district, have repeatedly found that patentees failed to show "good cause" and diligence when, as here, they delayed in seeking amendment of their contentions. In fact, these courts have found a lack of diligence based on similar—and in some cases much shorter—delays than BlackBerry's delay here. *See, e.g.*, *O2 Micro Int'l*, 467 F.3d at 1367-68 (applying Northern District of California rules and affirming district court finding that three-month delay showed lack of diligence); *Diagnostic Sys. Corp. v. Symantec Corp.*, No. SACV 06-1211 DOC (ANx), 2009 WL 10675178, at *2 (C.D. Cal. Dec. 15, 2009) ("The updated claim charts at issue do not supplement or clarify [plaintiff's] allegations; they simply substitute in new products that [plaintiff] could have and should have discovered earlier.…The source code for these products was delivered [11 months ago]."); *Pavo*, 2018 WL 5099294, at *2 (two-month delay showed lack of diligence); *Par Pharm., Inc. v. Takeda Pharm. Co., Ltd.*, Nos. 5:13-cv-01927-LHK-PSG, 5:13-cv-02416-LHK-PSG, 5:13-cv-02420-LHK-PSG, 2014 WL 3704819, at *2 (N.D. Cal. Jul. 23, 2014) (same; four-month delay); *Trans Video Elecs. v. Sony Elecs., Inc.*, 278 F.R.D. 505, 509 (N.D. Cal. 2011) (same; four-month delay); *see also, e.g.*, *Acer v. Tech. Properties.*, Nos. 5:08-cv-00877JF/HRL, 5:08-cv-00882JF/HRL, 5:08-cv-05398JF/HRL, 2010 WL 3618687, at *4-5 (N.D. Cal. Sep. 10, 2010) (no diligence

where patentee waited until "three months after it began its review and three weeks after that review was completed" to seek amendment of its infringement contentions).

BlackBerry has no explanation for the ten months that passed between Facebook's source code production and BlackBerry's service of its SSICs. More than half of that period passed without BlackBerry even once sending an expert to review the source code allegedly relating to the '961 patent. *See Google, Inc. v. Netlist, Inc.*, Nos. C 08-4144 SBA, C 09-5718 SBA, 2010 WL 1838693, at *2 (N.D. Cal. May 5, 2010) ("The critical issue is not *when* [amending party] discovered this information, but rather, whether they *could have* discovered it earlier had it acted with the requisite diligence.") (emphasis in original). Additionally, BlackBerry's allegations for the newly-added products rely on the same public open source OpenSSL library and the same Facebook documents cited in BlackBerry's Preliminary Infringement Contentions. *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 5:13-cv-03999-BLF, 2014 WL 5305906, at *2 ("[I]nherent in the reference to 'recent' discovery is the notion that the same information was not available in some other form at an earlier time."). Further, BlackBerry amended its contentions only weeks before the close of fact discovery, providing an additional factor justifying an order striking the newly-accused products from SSICs. *Nomadix, Inc. v. Hewlett-Packard Co.*, No. CV 09-08441 DDP (VBKx), 2012 WL 994324, at *3 (C.D. Cal. Mar. 22, 2012) (no diligence where moving party "waited until the eve of the close of fact discovery" to supplement contentions).

In light of BlackBerry's lengthy and inexcusable delay in investigating and supplementing its Infringement Contentions for the '961 patent, this Court should find that BlackBerry failed to exercise diligence in amending its contentions and strike the newly-accused products from the SSICs.

**B. BlackBerry's Vague References to "Products and Services That Generate and Share a Public Key" and "Related…Servers and Systems" in its Preliminary Infringement Contentions Failed to Give Facebook Notice of its New Infringement Theories**

Rather than justify its dilatory SSICs, which it cannot, BlackBerry instead has argued that these newly added products were in fact included in its original contentions. But until service of the SSICs, the only products specifically identified as allegedly infringing the '961 patent were "the Facebook Messenger ('FBM') application and related Facebook backend servers and systems." Now, attempting to justify its late additions, BlackBerry argues that the newly-added products were identified by a vague catch-all sentence accusing: "Facebook's products and services that generate and share a public key (and including, but not limited to, encrypting messages sent to Facebook servers using Transport Layer Security) that include or support OpenSSL and the OpenSSL elliptic curve cryptography ('EC') library." (Ex. 2 at 1.)

As a threshold matter, BlackBerry's service of its SSICs—now specifically identifying the newly-added products—contradicts any argument that they were already included in the original contentions. Setting that aside, neither BlackBerry's Preliminary Infringement Contentions nor FSICs specified the "products and services" or provided an infringement chart illustrating how these "products and services" purportedly infringed. *See Sung v. Shinhan Diamond Am.*, No. CV 14-00530 MWF (Ex), 2015 WL 12681306, at *6 (C.D. Cal. Jun. 9, 2015) (striking infringement contentions where plaintiff charted only one of many accused products against asserted patents). Thus, not only is BlackBerry's argument disingenuous, but it fails as a matter of law.

The patent rules adopted by judges in this district and the Northern District of California consistently require that an identification of accused products "be as specific as reasonably possible." Guilford Standing Patent Rules 2.1.2. District courts have repeatedly held that a patentee cannot satisfy this burden by identifying accused

products based on broad and functional categories. *See, e.g., Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2011 WL 4479305, at *2 (N.D. Cal. Sep. 26, 2011) ("Even if it would have been easy for [defendant] to compile an accurate list of all the devices Oracle considered to be Android devices, Rule 3–1(b) required Oracle to provide such a list in its disclosure of infringement contentions."); *Uniloc USA, Inc. v. Apple Inc.*, Nos. C 18-00360 WHA, C 18-00363 WHA, C 18-00365 WHA, C 18-00572 WHA, 2018 WL 3219486, at *3 (N.D. Cal. Jul. 2, 2018) ("Such use of strategic open-ended language is improper under PLR 3-1."); *Geovector, Corp. v. Samsung Elecs. Co. Ltd.*, No. 16-cv-02463-WHO, 2017 WL 76950, at *4 (N.D. Cal. Jan. 9, 2017) ("Rule 3-1(b) does not permit parties to identify accused products by using categorical or functional identifications, or limited, representative examples.") (internal citations omitted); *ASUS Comput. Int'l v. Round Rock Research, LLC*, No. 12–cv–02099 JST (NC), 2014 WL 1463609, at *6 (N.D. Cal. Apr. 11, 2014) ("Although identifying that a component practices a standard may be useful for proving an infringement theory across several products that contain that component, identifying a standard is not sufficient to specifically name an accused product."). BlackBerry's vague identification of "products and services that generate and share a public key… that include or support OpenSSL and the OpenSSL elliptic curve cryptography ('EC') library" did not satisfy BlackBerry's burden of specifically identifying the accused products, and did not provide fair notice of the multitude of other products it would later seek to accuse through its SSICs.

### C. BlackBerry's New Infringement Theories Would Prejudice Facebook

The law is clear that Facebook does not have to show prejudice for the Court to strike BlackBerry's untimely allegations. "Although the existence or degree of prejudice to [Facebook] might supply additional reasons to deny a motion [to amend], the focus of the inquiry is upon [BlackBerry's] reasons for seeking modification." *Johnson*, 975 F.2d at 609. "If that party was not diligent, the inquiry should end." *Id.*

Nonetheless, the prejudice that the SSICs would impose on Facebook provides an additional basis to strike the newly-added products.

The addition of the newly-added products could require Facebook to provide additional discovery and conduct additional investigation that should have been done months earlier. In fact, BlackBerry has indicated that it intends to file a motion before Magistrate Judge Stevenson to compel further document production relating to the '961 patent, based on the assumption that the belatedly accused products in the SSICs are properly part of this case. *See HID Global Corp. v. Farpointe Data, Inc.*, No. SACV 10-01954-JVS (AJWx), 2012 WL 13018379, at *4 (C.D. Cal. Feb. 6, 2012) ("[T]he volume and type of proposed amendments, as well as the untimeliness of the Motion, unduly prejudice [the non-moving party]"); *Fontem Ventures, B. V. v. NJOY, Inc.*, No. CV 14-1645-GW(MRWx), 2015 WL 12720308, at *4 (C.D. Cal. Jul. 20, 2015) (finding unfair prejudice based on "lack of notice"). Despite the close of fact discovery on August 30, 2019, Facebook might be faced with providing possible additional depositions, and producing additional materials related to the newly accused products. This would result in a schedule for the '961 patent that trails the other eight patents-in-suit, potentially jeopardizing the existing schedule and current trial date. *HID Global Corp. v. Farpointe Data, Inc.*, No. SACV 10-01954-JVS (AJWx) 2012 WL 13018379, at *3 (C.D. Cal. Feb. 6, 2012) (finding prejudice where reopening fact discovery after amendment of contentions "would require more than a short extension and would likely impact the trial date"). Further, Facebook would have to manage its significant new discovery obligations at the same time as expert discovery. Allowing BlackBerry to amend its Infringement Contentions now would impose significant and unexpected discovery obligations on Facebook at a labor-intensive stage of the case. Undue prejudice to Facebook is certain. *ASUS Comput. Int'l v. Round Rock Research, LLC*, No. 12-cv-02099 JST (NC), 2014 WL 554561, at *3 (N.D. Cal. Feb. 7, 2014) ("Round Rock's proposed amendments represent a

significant change in the scope of the claims. To bring this change at such a late stage would unduly prejudice ASUS.").

BlackBerry's SSICs are also prejudicial because BlackBerry's amended disclosures are inadequate. In the portions of its SSICs relating to the '961 patent, BlackBerry fails to disclose any of Facebook's code—instead opting to point only to open source libraries. Moreover, for each accused functionality, BlackBerry fails to provide any disclosure in its contentions of how the generated key meets the limitation of being "use[d] in performing said cryptographic function" for each accused product. *Cisco Sys., Inc. v. Teleconference Sys., LLC*, Nos. 09-cv-01550 JSW (NC), 10-cv-01325 JSW (NC), 10-cv-05740 JSW (NC), 2012 WL 9337627, at *4 (N.D. Cal. Jun. 11, 2012) (defendant "will suffer undue prejudice if the motion is granted because [the moving party's]…proposed amendments lack the specificity required by the patent local rules").

## IV. CONCLUSION

Given BlackBerry's expansion of its infringement theories, its lack of diligence in amending its Infringement Contentions, and the prejudice that would result to Facebook if BlackBerry were allowed to amend its infringement contentions, this Court should strike the portions of BlackBerry's SSICs adding accused products for the '961 patent, including the following language:



Facebook products and services that utilize ███████████████████████████████████████████, and other products and services with the same or substantially similar features (collectively, the "Accused Instrumentalities").

(Ex. 5, at 1.)

Dated: August 30, 2019

RESPECTFULLY SUBMITTED,

*/s/ Heidi L. Keefe*

COOLEY LLP
HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
MARK R. WEINSTEIN (193043)
(mweinstein@cooley.com)
MATTHEW J. BRIGHAM (191428)
(mbrigham@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

Attorneys for Defendants
FACEBOOK, INC., WHATSAPP INC.,
and INSTAGRAM, LLC