PAUL HASTINGS LLP
Yar R. Chaikovsky (SB# 175421)
yarchaikovsky@paulhastings.com
Philip Ou (SB# 259896)
philipou@paulhastings.com
David Okano (SB# 278485)
davidokano@paulhastings.com
1117 S. California Ave.
Palo Alto, CA 94304
Phone:  (650) 320-1800
Fax:      (650) 320-1900

Thomas Zaccaro  (SB# 183241)
thomaszaccaro@paulhastings.com
515 S. Flower St., Floor 25
Los Angeles, CA 90071-2228
Phone:  (213) 683-6000
Fax:      (213) 996-3146

Chad J. Peterman (*pro hac vice*)
chadpeterman@paulhastings.com
200 Park Avenue
New York, NY  10166
Phone:  (212) 318-6000
Fax:      (212) 319-4090

Attorneys for Snap Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DISTRICT

| | |
|---|---|
| BLACKBERRY LIMITED, a Canadian corporation,<br><br>Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC., a Delaware corporation, WHATSAPP INC., a Delaware corporation, and INSTAGRAM, INC., a Delaware corporation, and INSTAGRAM, LLC, a Delaware limited liability company<br><br>Defendants,<br><br>SNAP INC., a Delaware corporation<br><br>Defendant. | CASE NO. 2:18-cv-01844 GW(KSx)<br>CASE NO. 2:18-cv-02693 GW(KSx)<br><br>**DEFENDANT SNAP INC.'S OPPOSITION TO BLACKBERRY'S OBJECTIONS AND MOTION FOR REVIEW OF NONDISPOSITIVE ORDER FROM THE MAGISTRATE JUDGE**<br><br>Hearing Date: Sept. 12, 2019<br>Time: 8:30 A.M.<br>Judge: Hon. George H. Wu<br>Ctrm: 9D |

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | LEGAL STANDARD | 2 |
| III. | DISCUSSION | 2 |
| | A. The Magistrate specifically considered and rejected each of BlackBerry's repeated rearguments. | 2 |
| | B. The Court Order was based on relevant caselaw, which BlackBerry has failed to refute. | 5 |
| | C. BlackBerry's attempt to shift blame to Snap for not providing "basic damages discovery" is unsupported by the evidence. | 7 |
| | D. BlackBerry made the deliberate tactical decision to disobey the Court Order. | 8 |
| IV. | CONCLUSION | 10 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ahmed v. HSBC Bank USA*,
  No. EDCV152057FMOSPX, 2018 WL 504672 (C.D. Cal. Jan. 12, 2018) ................................................................................................................. 9

*Brandywine Comm'ns Techs. LLC v. Cisco Sys., Inc.*,
  No. C 12-01669-WHA, 2012 WL 5504036, . (N.D. Cal. Nov. 13, 2012) ......................................................................................................... 5, 6, 7

*Eon Corp IP Holding LLC v. Sensus USA Inc.*,
  No. C-12-01011 EMC (EDL), 2013 WL 3982994 (N.D. Cal. Mar. 8, 2013) ............................................................................................................. 6, 7

*Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*,
  2017 WL 5137401 (E.D. Tex. Nov. 4, 2017) ........................................................ 6

*Evox v. Kayak Software Corp.*,
  No. CV155053PSGAGRX, 2016 WL 10586303 (C.D. Cal. June 14, 2016) ................................................................................................................. 5

*Hoffman v. Constr. Protective Servs.*,
  541 F.3d 1175 (9th Cir. 2008) ............................................................................ 10

*Hullinger v. Anand*,
  No. CV1507185SJOFFMX, 2016 WL 7444623 (C.D. Cal. Oct. 12, 2016) ......................................................................................................... 2, 5, 7

*Innovation Ventures, LLC v. N2G Distrib., Inc.*,
  No. SA CV 12-00717-AB (Ex), 2014 U.S. Dist. LEXIS 184735 (C.D. Cal. Nov. 4, 2014) ................................................................................... 9

*Oculu, LLC v. Oculus VR, Inc.*, No. SACV 14-0196-DOC (JPRx), 2015 U.S. Dist. LEXIS 186557 (C.D. Cal. May 8, 2015) ............................................. 10

*Sanofi-Aventis U.S. LLC v. Genentech, Inc.*,
  No. CV 15-5685-GW(AGRX), 2016 WL 7444675 (C.D. Cal. Apr. 14, 2016) (Wu, J.) ................................................................................................. 2, 9

*Seven For All Mankind, LLC v. GenX Clothing, Inc.*,
   No. CV05-5563-GAF (RZX), 2006 WL 5720346 (C.D. Cal. May
   10, 2006) .................................................................................................... 4, 5

*Spin Master, Ltd. v. Zobmondo Entm't, LLC*, No. CV 06-3459 ABC
   (PLAx), 2011 U.S. Dist. LEXIS 166040, at *11 (C.D. Cal. Sep. 15,
   2011) ............................................................................................................ 10

*THX, Ltd. v Apple, Inc.*,
   Case No. 13-cv-001161-HSB (DMR), 2016 WL 2899506 (N.D. Cal.
   May 13, 2016) ........................................................................................ 5, 6, 7

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
   259 F.3d 1101 (9th Cir. 2001) ..................................................................... 10

**Other Authorities**

FED. R. CIV. P. 26(b)(4)(B) ..................................................................................... 4

## I. INTRODUCTION

The Magistrate ordered BlackBerry to comply with Rule 26(a)(1)(A)(iii) requiring a computation of each category of damages and the evidentiary materials on which each calculation is based. BlackBerry was clear from the outset: providing such a computation was "something that we just cannot agree to." (Ex. A at 11:21.) The Magistrate responded:

> **THE COURT**: Well, I'm not asking you to agree to, I'm going to write an Order and it will clearly outline what every -- all parties' obligations are consistent with the case law as I've indicated and on the Brandywine and THX and you may go forward.

(Ex. A at 11:22-12:1.) The Magistrate then warned that any party withholding information risks preclusion going forward, (Ex. A at 12:2-12), and issued a Court Order requiring both compliance with Rule 26 disclosures, and also further responses to Snap's damages interrogatory. Despite the Court Order and the Magistrate's warning of preclusion, the deadline to comply came and went. BlackBerry provided neither computations of each category of damages nor evidence on which each computation was based. BlackBerry knew that four of its six patents could be invalidated at the motions hearing on September 5, and that assigning value to soon-to-be invalidated patents would weaken its damages case. Simply put, BlackBerry stood to benefit from defying the Court Order so it did.

In addition to not providing the required Rule 26 disclosure, BlackBerry also failed to provide the evidentiary facts responsive to Snap's Interrogatory No. 6. The Magistrate found that BlackBerry's responses had been "wholly deficient" and comprised of attorney argument reciting the *Georgia-Pacific* factors with no citations to evidence supporting those factors. BlackBerry responded to the Court Order compelling further responses with a page and a half of argument of why the Magistrate was wrong, and padded its deficient responses with still more attorney argument regarding **theories** BlackBerry "might" pursue, while ignoring the Court Order that BlackBerry actually identify the evidence responsive to the interrogatory.

BlackBerry's effort to characterize this entire dispute as one requiring a premature disclosure of expert opinion is a straw man argument. First, there is no exception in Rule 26 for parties that hire experts. Second, the Magistrate was clear she was not asking for expert opinions. In short, as the Magistrate said: "BlackBerry cannot 'hide the ball' with respect to its alleged damages by contending that all of the factual bases relating to its damage claims are solely within the province of its expert analyses to be revealed at a later date." (Dkt. 336 at 10.)

## II. LEGAL STANDARD

Blackberry's cites 11 cases across 4 pages under "Legal Standard," (Mot. at 5-8) but fails to identify the correct legal standard: "The Ninth Circuit has emphasized that <u>the clearly erroneous standard requires the magistrate judge's decision to be 'dead wrong</u>,' for the standard aims to 'protect both [the] court and parties against the burdens of repeated reargument by indefatigable diehards.'" *Hullinger v. Anand*, No. CV1507185SJOFFMX, 2016 WL 7444623, at *6 (C.D. Cal. Oct. 12, 2016) (citing *Alaimalo v. United States*, 645 F.3d 1042, 1060 (9th Cir. 2011)) (emphasis added). *See also Sanofi-Aventis U.S. LLC v. Genentech, Inc.*, No. CV 15-5685-GW(AGRX), 2016 WL 7444675, at *1 (C.D. Cal. Apr. 14, 2016) (Wu, J.) ("Thus, a magistrate judge's ruling can only be overturned when the Court has 'a definite and firm conviction that a mistake has been committed.'").

## III. DISCUSSION

### A. The Magistrate specifically considered and rejected each of BlackBerry's repeated rearguments.

Despite the Magistrate's consideration and rejection of BlackBerry's arguments, BlackBerry is recycling those arguments for this Court. BlackBerry reargues the adequacy of its lengthy supplemental responses, (Mot. at 2-3), but the Magistrate has already analyzed these responses, (Dkt. 336 at 5-7), and found them to be "wholly deficient." (Dkt. 336 at 11.) Although the details of BlackBerry's evasive responses are too lengthy to repeat, the Magistrate recognized the most

egregious instances. For example, BlackBerry identified thousands of documents that "it may rely on" while reserving the right to rely on unidentified documents produced in discovery. (Dkt. 336 at 6.) Thus, BlackBerry "may rely on" approximately 1,397,418 pages of documents disclosed thus far with no indication of what issue or fact any of these documents may support. The Magistrate closely examined BlackBerry's "facts" in support of its reasonable royalty analysis, and discerned that they were "simply a recitation of the *Georgia Pacific* factors." (Dkt. 336 at 7.) As the Magistrate explained: "Neither the number of supplementations nor the number of pages in BlackBerry's supplemental interrogatory response is dispositive here. It is the *substance* of the response that matters." (Dkt. 336 at 11.) BlackBerry's disclosures were and continue to be severely lacking in substance.

> Indeed, the Court's review of BlackBerry's supplemental disclosures and its most recent supplemental response to Interrogatory No. 6 reveals that BlackBerry has provided <u>no computations whatsoever of its damages</u>, has not identified a single product on which it intends to base its lost profits damages, and has not specifically identified a single of its own license agreements on which it may base its reasonable royalty claim for any of the Patent-in-Suit.

(Dkt. 336 at 10) (emphasis added). Despite its voluminous responses, BlackBerry has assiduously avoided revealing what evidence supports its damages case as required by both Snap's interrogatory and Rule 26(a)(1)(A)(iii). Instead, BlackBerry's responses speak only in terms of theories and possibilities. In short, Snap has obtained from BlackBerry's responses no more information than could have been found in a damages treatise. Blackberry fails to carry its high burden of proving the Magistrate's ruling was clearly erroneous.

Finally, BlackBerry reargues the straw man argument that the Magistrate "improperly commanded BlackBerry to disclose unfinished expert analyses weeks before the date for opening reports." (Mot. at 1.) On the telephone conference on August 14, the Magistrate specifically explained that BlackBerry was not being asked "to go down that path." (Ex. B at 38:4-39:7). The Court Order was clear:

> Blackberry also objects that it cannot disclose any more detail about its alleged damages without providing portions of its yet incomplete expert analyses. (BlackBerry Letter Br. at 3.) But Blackberry must have *some* factual information that it is providing to its expert in order for the expert to make his or her damages analyses. It is the expert's draft opinion is protected from disclosure, not underlying factual information on which that opinion may be based. FED. R. CIV. P. 26(b)(4)(B).

(Dkt. 336 at 10) (emphasis in original).[1] Even if BlackBerry failed to provide this "underlying factual information" to its experts in a timely manner, that does not somehow protect such facts and evidence from being disclosed in discovery.

BlackBerry now argues that it would be wholly impossible for BlackBerry to conduct a damages computation. (Mot. at 9-10.) As a preliminary matter, this argument is improper to even consider: "The district judge will normally not consider arguments, case law, or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance." *Seven For All Mankind, LLC v. GenX Clothing, Inc.*, No. CV05-5563-GAF (RZX), 2006 WL 5720346, at *3 (C.D. Cal. May 10, 2006) (citations omitted). But assuming *arguendo* the propriety of raising new arguments, BlackBerry's impossibility argument makes no sense. BlackBerry was ordered only to provide the facts supporting a damages computation required in many districts by the initial case management conference. *See* N.D. Cal. Patent L.R. 2-1(b)(5). *See also* W.D. Penn. LPR 3.6. If such a calculation were truly impossible, then BlackBerry will suffer no prejudice from an order precluding BlackBerry from introducing any facts supporting a damages calculation that were available to Blackberry as of the date the Order on motion to compel called for compliance.

---

[1] For months, BlackBerry made the same argument about lost profits—that it could not identify the products lost profits was going to be based on because BlackBerry's experts had not yet completed that analysis. (*See* Ex. B at 38:4-16.) Only three days before the close of fact discovery did BlackBerry finally admit that it did not intend to seek lost profits in its Eighth Supplemental Responses. *See* Dkt. 394-3.

-4-    2:18-cv-1844 GW (KSx)/2:18-cv-02693 GW (KSx)
SNAP'S OPPOSITION TO BLACKBERRY'S MOTION FOR REVIEW OF MAGISTRATE JUDGE ORDER

In short, the Magistrate painstakingly analyzed BlackBerry's responses, considered relevant caselaw, and concluded BlackBerry was "hid[ing] the ball." (Dkt. 336 at 10.) The Magistrate's conclusion was not "contrary to law," and does not come even close to being "dead wrong." *Hullinger*, 2016 WL 7444623, at *6.

### B. The Court Order was based on relevant caselaw, which BlackBerry has failed to refute.

The Magistrate relied on two cases in particular: *Brandywine Comm'ns Techs. LLC v. Cisco Sys., Inc.*, No. C 12-01669-WHA, 2012 WL 5504036, at *1. (N.D. Cal. Nov. 13, 2012) and *THX, Ltd. v Apple, Inc.*, Case No. 13-cv-001161-HSB (DMR), 2016 WL 2899506, at *6 (N.D. Cal. May 13, 2016). The Magistrate conducted a detailed analysis of *Brandywine* identifying particular language for the proposition that a plaintiff should at least be familiar with "its own products" to begin the damages calculation. (*See* Dkt. 336 at 8-9.) The Magistrate also emphasized that just because facts may be learned in the future does not excuse non-disclosure of what should be known now. (Dkt. 336 at 9.) BlackBerry claims that *Brandywine* is "incorrect" because it presumes that a plaintiff cannot compute a damages estimate before the expert phase. (Mot. at 9.). But BlackBerry misses the language emphasized by the Magistrate that a damages disclosure "can and should [be] done now" even though damages calculations may change. (Dkt. 336 at 9.)

BlackBerry criticizes *Brandywine* as "aberrant," (Mot. at 8), and provides a long string citation of many cases with disparate facts at varying points in litigation. As with new arguments, these new cases were never raised before the Magistrate and should not now be considered. *Seven For All Mankind*, 2006 WL 5720346, at *3. But assuming *arguendo* that BlackBerry may introduce new cases for the first time on review, BlackBerry's cases are as deficient as its discovery responses.[2]

---

[2] If the Court is inclined to consider new cases on review, Snap asks that the Court consider *Evox v. Kayak Software Corp.*, No. CV155053PSGAGRX, 2016 WL

BlackBerry cites *Eon Corp IP Holding LLC v. Sensus USA Inc.*, No. C-12-01011 EMC (EDL), 2013 WL 3982994 at *1 (N.D. Cal. Mar. 8, 2013) twice in one string cite, (Mot. at 7), but misses the fact that unlike in *Eon*, the present case does not involve information outside of plaintiff's possession. BlackBerry cites *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, 2017 WL 5137401, at *13 (E.D. Tex. Nov. 4, 2017), but failed to read the whole opinion. In *Ericsson*, defendants failed to disclose noninfringing alternatives, and when plaintiffs moved to strike these new theories from defendants' expert reports, defendants argued that they were not required to disclose expert theories. Although the court in *Ericsson* agreed generally that an expert's theories need not be prematurely disclosed, the court explained that since defendants were investigating noninfringing alternatives during fact discovery, the facts underlying such investigation were discoverable. "Consequently, a discovery violation occurred." *Ericsson*, 2017 WL 5137401, at *13. Thus, *Ericsson* stands for the precise opposite of what BlackBerry cites it for.

BlackBerry cites three cases regarding the need for *precise* calculations forgetting it failed to provide a court-ordered *estimate* of its damages (Dkt. 336 at 11). Finally, BlackBerry cites two cases for the simple proposition that calculating damages is difficult, (Mot. at 7-8.), implying that this excuses a willful violation of the Court Order. Despite citing 16 cases, BlackBerry cited no cases indicating that *Brandywine* had been overturned or questioned.

BlackBerry's position is even weaker with respect to the Magistrate's reliance on *THX*, 2016 WL 2899506, at * 6, which BlackBerry summarily calls "aberrant" but otherwise fails to address. (Mot. at 8.) As noted by the Magistrate, there are striking similarities between this case and *THX*. Not only is the interrogatory language "nearly identical," but so too are the responses. (Dkt. 336 at 9.) As the

---

10586303, at *3 (C.D. Cal. June 14, 2016) (citing *THX*, court rejected plaintiff's argument that defendant should wait until expert reports for damages calculations and mandated disclosure one month before discovery cut-off).

Magistrate explained:

> Also, like BlackBerry's disclosures, THX's response made "additional statements about factors or information THX may consider relating to the calculation of damages, but [did] not provide clear answers about the basis, measure and proper calculation of damages it seeks in this litigation."

(Dkt. 336 at 9) (citing *THX*, 2016 WL 2899506, at *6). Thus, the Magistrate concluded that the reasoning in *THX* required a similar result in this case. (Dkt. 336 at 9.) As with *Brandywine*, BlackBerry found no cases indicating that *THX* had been overturned or questioned. Nor did BlackBerry distinguish the current case from the facts of *Brandywine* or the nearly identical *THX*.

In short, the Court Order contained a well-reasoned analysis of cases factually similar to the current case. Missing from BlackBerry's motion is a similarly well-reasoned analysis of how and why the Magistrate's comparison of those cases to the present facts was legally flawed, such that the Magistrate would be "dead wrong." *Hullinger*, 2016 WL 7444623, at *6.

### C. BlackBerry's attempt to shift blame to Snap for not providing "basic damages discovery" is unsupported by the evidence.

The Magistrate has already considered and flatly rejected this argument:

> "Blackberry also complains that it cannot provide the required disclosure information because "Blackberry is waiting for Snap to produce damages-related documents." (Id. at 2.) Blackberry doth protest too much. Blackberry does not need Snap to provide information about BlackBerry's *own* products that are the source of alleged lost profits or Blackberry's *own* licensing agreements that may form the basis for its reasonable royalty analyses."

(Dkt. 336 at 10.) BlackBerry cites the advisory committee notes to Rule 26(a)(1)(C) and *Eon*, 2013 WL 3982994 at *1, for the proposition that information needed to calculate damages may be the possession of another party. (Mot. at 6-7.) Although true in some cases, this is not true in this case, where BlackBerry has received ample discovery. Snap not only has publicly available financial filings on its website, but has also produced non-public income and expenses for every month from December

2012 to June 2019. Snap has even disclosed revenue *on a weekly basis*, including approximately 209 weekly revenue reports. When BlackBerry demanded production of financial data in certain specified categories, Snap wrote custom database queries to create 14 spreadsheets organized into BlackBerry's requested categories, which included monthly advertisement impressions and gross revenues for different advertisement types. Snap went above and beyond by producing metrics *on a daily basis* for 2017 to 2019. Finally, BlackBerry deposed Snap's financial matters designee under Rule 30(b)(6). Despite receiving approximately 12,567 documents of this designee's ESI, BlackBerry chose to depose him for only 4 hours and 8 minutes of the 7 hours permitted under Rule 30(d)(1). Absent from the docket is any motion to compel filed by BlackBerry against Snap arising out of even one of BlackBerry's 288 requests for production.

In addition to being diligent in discovery, Snap has been diligent in seeking relief. Snap engaged in meet-and-confer emails, letters, and phone calls with BlackBerry throughout May, June, and July. (Dkt. 291 at 3.) When Snap was prepared to proceed with a pre-motions conference, it was BlackBerry that demanded yet another meet-and-confer call. *Id.* In August, Snap engaged in no fewer than four telephonic conferences with the Magistrate regarding BlackBerry's continued non-disclosure.

### D. **BlackBerry made the deliberate tactical decision to disobey the Court Order.**

BlackBerry was well aware that four motions for summary judgment were scheduled to be heard on September 5, and could potentially eliminate up to four of the patents-in-suit. BlackBerry knew that if it assigned specific dollar amounts to particular patents that were then eliminated, then BlackBerry's damages case would be weakened at trial. Thus, BlackBerry adopted a strategy of delay and obfuscation to avoid disclosing even a ballpark estimate or the evidentiary basis for the estimate. The fact that the Magistrate was expressly ordering BlackBerry to comply was

merely inconvenient—BlackBerry calculated that the strategic cost of compliance outweighed any possible sanction from the court for non-compliance. Notably, BlackBerry did not seek review of the Court Order before expiration the seven-day deadline to comply. Even when BlackBerry eventually filed for review, it ignored the rule that "[a] magistrate judge's ruling remains in effect unless the ruling is stayed or modified, regardless of whether a motion for review has been filed." *Sanofi-Aventis*, 2016 WL 7444675, at n.1 (citing L.R. 72-2.2). The law is clear:

> "[A]ll orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk [] contempt even if the order is ultimately ruled incorrect."

*Innovation Ventures, LLC v. N2G Distrib., Inc.*, No. SA CV 12-00717-AB (Ex), 2014 U.S. Dist. LEXIS 184735, at *48 (C.D. Cal. Nov. 4, 2014) (quoting Maness v. Meyers, 419 U.S. 449, 458 (1975)). "[B]y refusing to comply with discovery merely because a motion to stay is pending, a party effectively is granting its own motion to stay—even before the court has ruled. Such a phenomenon would reduce a court's orders to useless and senseless formalities." *Ahmed v. HSBC Bank USA*, No. EDCV152057FMOSPX, 2018 WL 504672, at *5 (C.D. Cal. Jan. 12, 2018) (citations omitted). Here, BlackBerry made a private determination that compliance with the Court Order was not required, and chose to simply defy the order assuming that the benefit of not complying outweighed any possible consequences.

This case stands out from others because BlackBerry announced even before the written ruling that complying with Rule 26 is "something that we just cannot agree to." (Ex. A at 11:21.) This case is atypical because BlackBerry was warned by the Magistrate that any party withholding information risks preclusion going forward. (Ex. A at 12:2-12.) Finally, this case is unique because even now after the fact of BlackBerry's willful non-compliance, BlackBerry remains unrepentant

calling the Magistrate's cases "incorrect" and "aberrant" and calling the Magistrate's order "wrong." (Mot. at 9.) To deter future calculated non-disclosure, BlackBerry should be sanctioned:

> Rule 37(c)(1) "gives teeth" to Rule 26(a) and (e)'s requirements "by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). The Ninth Circuit considers Rule 37 "<u>a self-executing, automatic sanction</u> to provide a strong inducement for disclosure of material,'" and therefore a finding of willfulness or bad faith is not required. *Hoffman v. Constr. Protective Servs.*, 541 F.3d 1175, 1180 (9th Cir. 2008) (quoting *Yeti by Molly*, 259 F.3d at 1106). That is true "'even when a litigant's entire cause of action . . . [will be] precluded'" and it applies with equal force to the failure to disclose <u>categories and computations of damages</u> as required by Rule 26(a) and (e). *Id*. at 1179-80 (alterations in original).

*Spin Master, Ltd. v. Zobmondo Entm't, LLC*, No. CV 06-3459 ABC (PLAx), 2011 U.S. Dist. LEXIS 166040, at *11 (C.D. Cal. Sep. 15, 2011) (emphasis added). In short, BlackBerry has not carried its burden of explaining its failure to comply with the Court Order: "The party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless." *Oculu, LLC v. Oculus VR, Inc.*, No. SACV 14-0196-DOC (JPRx), 2015 U.S. Dist. LEXIS 186557, at *6-7 (C.D. Cal. May 8, 2015) (citing *R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1246 (9th Cir. 2012)).

### IV. CONCLUSION

BlackBerry's motion should be denied, and Snap respectfully requests that this Court take up the issue of sanctions against Blackberry (or, in the alternative, refer the issue back to the Magistrate Judge with the express authority to decide appropriate sanctions under Rule 37(b)). Snap submits that the appropriate sanction in response to Blackberry's willful and wanton disregard of the Court Order is preclusion from offering a damages calculation at trial and monetary sanctions based on attorney's fees spent by Snap litigating this issue.

| | | |
|---|---|---|
| 1 | DATED:  September 6, 2019 | PAUL HASTINGS LLP |
| 2 | | |
| 3 | | By: */s/ Yar R. Chaikovsky*<br>     Yar R. Chaikovsky |
| 4 | | Attorney for Snap Inc. |