**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

QUINN EMANUEL URQUHART & SULLIVAN, LLP
James R. Asperger (Bar No. 83188)
jamesasperger@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

BLACKBERRY CORPORATION
Edward R. McGah, Jr (SBN 97719)
Vice President, Deputy General Counsel – Litigation
41 Ticknor Place
Laguna Niguel, California 92677
Telephone: (+1) 650-581-4750

Attorneys for Plaintiff,
BlackBerry Limited

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLACKBERRY LIMITED, a Canadian corporation,<br><br>Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC., a Delaware corporation, WHATSAPP INC., a Delaware corporation, and INSTAGRAM, INC., a Delaware corporation, and INSTAGRAM, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 2:18-cv-01844 GW(KSx)<br><br>**PLAINTIFF BLACKBERRY LIMITED'S OPPOSITION TO DEFENDANT FACEBOOK'S MOTION TO STRIKE PORTIONS OF PLAINTIFF'S SECOND SUPPLEMENTAL INFRINGEMENT CONTENTIONS (DKT. 376)**<br><br>Hon. George H. Wu<br><br>Hearing Date: September 30, 2019<br>Time: 8:30 AM<br>Place: Courtroom 9D |

**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................................................1

II.  FACTUAL BACKGROUND ...............................................................................3

    A.   BlackBerry's Complaint And Contentions Accused Facebook Of Using OpenSSL To Generate Cryptographic Keys. ...............................3

    B.   BlackBerry Served Discovery Seeking Information Regarding Facebook's Use of the Accused Instrumentalities. ................................4

    C.   BlackBerry's Investigation Of The Extent Of Facebook's Use Of The Features Accused Of Infringement Under The '961 Patent ............4

    D.   Facebook Discloses For The First Time That It Had Unilaterally Limited The Scope of Discovery Regarding The '961 Patent To Only One Facebook Product Or Service—Facebook Messenger...........5

III. ARGUMENT ........................................................................................................6

    A.   BlackBerry's Supplemental Contentions Do Not Identify Any New Infringement Theories. ...................................................................6

    B.   There Is Good Cause For BlackBerry's Supplemental Contentions. ................................................................................................9

    C.   Any Prejudice To Facebook Is Of Its Own Making. ..........................10

**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

## I. INTRODUCTION

Facebook's Motion ("Mot.") to Strike Portions of BlackBerry's Supplemental Infringement Contentions – which BlackBerry served a month before the deadline for Final Contentions under S.P.R. 4.1 – is based on at least two flawed premises. First, contrary to Facebook's assertions, the instrumentalities BlackBerry accused of infringing U.S. Pat. No. 7,372,961 (the "'961 patent") were ***never*** limited to "Facebook Messenger." Mot. at 1. Rather, BlackBerry made clear from the outset that Facebook's products' and services' use of a specific set of open source software code for generating cryptographic keys – called "OpenSSL" – is what is accused of infringing the '961 patent. Indeed, as early as the First Amended Complaint ("FAC"), BlackBerry accused Facebook "products that support (i) 'private key generation' for generating and sharing a public key … ***that includes or supports OpenSSL and the OpenSSL elliptic curve cryptography ('EC') library***." Dkt. 15 at 31. Likewise, BlackBerry's initial and supplemental infringement contentions ("ICs") defined the Accused Instrumentalities as "Facebook's products and services that generate and share a public key" that "***include[] or support OpenSSL*** and the OpenSSL elliptic curve cryptography ('EC') library." Exs. 1-3. BlackBerry's FAC and ICs further provided a detailed mapping of the asserted limitations to source code from the specific OpenSSL cryptographic key generation process accused of infringement. *Id.*

Second, as explained in BlackBerry's pending Motion to Compel (Dkt. 388)[1], which Facebook ignores in its Motion, Facebook deliberately withheld the discovery BlackBerry needed to determine the extent and scope of Facebook's use of the infringing OpenSSL code. Specifically, from its first discovery responses, Facebook surreptitiously adopted an unreasonably narrow view of what is at issue, limiting its document production, interrogatory responses, and 30(b)(6) deposition testimony to Facebook Messenger, despite the scope of BlackBerry's ICs – thereby withholding

---

[1] Notably, the Court specifically permitted briefing on BlackBerry's Motion to Compel after the close of fact discovery. Dkt. 360.

**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

1  information related to the full scope of Facebook's use of OpenSSL without even
2  informing BlackBerry of this discovery position.

3　　Despite Facebook's obstructionism and deliberate withholding of the extent of
4  its use of the infringing OpenSSL code, BlackBerry's review of ▮▮▮▮▮▮▮▮▮▮
5  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
7  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
8  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Having realized that Facebook was
9  improperly withholding discovery on these functionalities, BlackBerry explicitly
10 identified them in its July 12, 2019 Second Supplemental Infringement Contentions.

11　　These were not "newly-added accused products," nor did they "dramatically
12 multipl[y] the accused products." Mot. at 1. The accused instrumentalities were and
13 are the charted OpenSSL processes used by Facebook to generate cryptographic keys.
14 The identified libraries are simply areas that call and use the infringing OpenSSL code
15 that BlackBerry charted in detail. Facebook knew or should have known these were
16 already at issue, since BlackBerry's contentions were never limited to just Facebook
17 Messenger, but specifically referred to any such use of OpenSSL as charted.

18　　Thus, Facebook's argument that good cause was required to "amend" the
19 contentions is inapposite, as the supplemental contentions simply clarified the scope
20 of Facebook's use of the infringing OpenSSL code. *See, e.g.*, *Genes Indus., Inc. v.*
21 *Custom Blinds & Components, Inc.*, No. SACV1500476AGEX, 2016 WL 6139937,
22 at *3 (C.D. Cal. July 8, 2016) (denying motion to strike contentions that provided a
23 clarification but did not materially change the underlying infringement theory).
24 Regardless, there is good cause here, as BlackBerry diligently worked to identify
25 Facebook's uses of the accused OpenSSL key generation process despite Facebook's
26 deliberate hindrance and withholding of relevant information regarding its use of
27 OpenSSL. Had Facebook met its discovery obligations, BlackBerry could have
28 supplemented the contentions sooner. Thus any purported delay or prejudice is of

**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

Facebook's own making. Facebook's Motion should be denied.

## II. FACTUAL BACKGROUND

The '961 patent is directed to a method of generating a cryptographic key for use in cryptographic functions, such as securing a data connection between devices, encrypting data for security and privacy, and other data security applications. Given the complexity inherent in cryptography, many companies – including Facebook – rely on publicly-vetted, open-source libraries that contain functions and source code used to implement cryptography. OpenSSL is one of the most widely-used cryptographic source code libraries. Ex. 4 at 24:10-18, 25:18-21, 26:2-15. As noted in BlackBerry's complaint and contentions, Facebook uses OpenSSL and, specifically, the key generation process/method contained within a specific library within OpenSSL called the "elliptical curve" cryptography library. Dkt. 15 at 31.

### A. BlackBerry's Complaint And Contentions Accused Facebook Of Using OpenSSL To Generate Cryptographic Keys.

On April 4, 2018, BlackBerry filed its FAC alleging infringement of the '961 patent by "products that support(i) 'private key generation' for generating and sharing a public key (and including, but not limited to, encrypting messages sent to Facebook servers using Transport Layer Security) that includes or supports OpenSSL and the OpenSSL elliptic curve cryptography ('EC') library, including [as an example] the Facebook Messenger application, and related Facebook backend servers and systems (hereinafter 'the '961 Accused Products')." Dkt. 15 at 31. The FAC also mapped each limitation of claim 1 against the OpenSSL source code. *Id*. at 32-36. Thus Facebook's use of OpenSSL to generate cryptographic keys was accused under the '961 patent.

On September 14, 2018, BlackBerry served its Disclosure of Asserted Claims and Preliminary Infringement Contentions pursuant to S.P.R. 2.1, including a detailed claim-by-claim chart of BlackBerry's contentions for the '961 patent and an identification of charted OpenSSL processes as the "Accused Instrumentalities" – consistent with the FAC. Ex. 1. The contentions again mapped the accused OpenSSL

**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

source code to each of the asserted claims. *Id*. All supplemental contentions similarly accuse the charted OpenSSL processes as Accused Instrumentalities. Exs. 1-3.

### B. BlackBerry Served Discovery Seeking Information Regarding Facebook's Use of the Accused Instrumentalities.

On November 9, 2018, BlackBerry served Requests for Production specifically seeking documents regarding the scope of Facebook's implementation of the Accused Instrumentalities. Ex. 5 at 14 (Nos. 53-56). On December 10, 2019, Facebook agreed to produce responsive documents. Ex. 6 at 36-41. Facebook did not identify any responsive documents it intended to withhold, nor did it indicate that it believed the requests were only applicable to the use of OpenSSL for Facebook Messenger ("FBM"). Facebook did not produce or identify non-source code documents evidencing the extent of its use of the accused OpenSSL code.

On April 9, 2019, BlackBerry served Interrogatory No. 5, seeking an identification of Facebook's use of the accused features set forth in BlackBerry's infringement contentions. Ex. 7 at 2, 4, 12. On May 9, 2019, Facebook provided a generic response that failed to identify or describe any specific uses of OpenSSL to generate cryptographic keys as accused in BlackBerry's contentions. Ex. 8 at 6.

### C. BlackBerry's Investigation Of The Extent Of Facebook's Use Of The Features Accused Of Infringement Under The '961 Patent

Despite Facebook's failure to provide relevant discovery, BlackBerry continued to review Facebook's document production and ▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓. Notably, there are eight other asserted patents in this case, all of which required extensive source code review by BlackBerry's experts. Indeed, from September 2018 through June 2019, there were few days (other than holidays) that BlackBerry's experts did not access and review Facebook's source code. Mot. at Ex. 4. In June 2019, BlackBerry's review uncovered evidence that ▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓

1. ▉
2. ▉
3. ▉
4. ▉
5. ▉
6. ▉.
7.     On June 25, 2019, BlackBerry served additional requests specifically targeted
8. to Facebook's use of the accused OpenSSL source code. Ex. 9 at 31 (seeking
9. documents relating to cryptographic key generation, ▉
10. ▉. Also, on July 3, 2019, BlackBerry served Interrogatory No. 8 seeking
11. a detailed description of Facebook's precise use of cryptographic key generation using
12. OpenSSL. Ex. 10 at 12. As described in further detail in BlackBerry's Motion to
13. Compel (Dkt. 388), Facebook's response did not provide the requested identification
14. of Facebook's uses of the OpenSSL source code; rather, ▉
15. ▉, for the first time providing any indication of its one-
16. sided and unjustified determination of the scope of discovery. On July 12, 2019,
17. BlackBerry served its Second Supplemental Infringement Contentions, identifying
18. the added functionalities, which appear to utilize the accused OpenSSL code.
19.     **D.   Facebook Discloses For The First Time That It Had Unilaterally
20.     Limited The Scope of Discovery Regarding The '961 Patent To Only One Facebook Product Or Service—Facebook Messenger.**
21.     On July 18, 2019 – five months after BlackBerry served its 30(b)(6) Deposition
22. Notice – Facebook finally offered, and BlackBerry deposed, Facebook's corporate
23. designee on topics relating to the '961 Accused Products and accused OpenSSL code.
24. During the deposition, Facebook's counsel informed BlackBerry for the first time that
25. Facebook objected to the added functionalities identified in BlackBerry's contentions.
26. Ex. 11 at 144:22-145:4, 149:10-16, 168:11-23. Also, throughout the deposition,
27. Facebook's counsel objected to non-FBM questions as outside the scope of the topics
28. for which the witness was presented. The witness also lacked knowledge regarding

the use of the accused OpenSSL source code outside of the context of FBM. *See, e.g.*, *id*. at 30:2-15, 31:21-32:17, 151:7-17, 168:11-14, 212:8-25. Notwithstanding the witness's lack of knowledge regarding the full scope and extent of Facebook's use of the accused OpenSSL source code, he did have knowledge regarding relevant evidence of Facebook's use that Facebook had neither produced **nor even preserved for production**. Dkt. 388 at 7-8, 14-16. The parties have since been engaged in a dispute relating to Facebook's failure to comply with its discovery obligations.

## III. ARGUMENT

### A. BlackBerry's Supplemental Contentions Do Not Identify Any New Infringement Theories.

This is not a case where BlackBerry's initial infringement contentions left any ambiguity as to BlackBerry's theories or what is accused of infringement. Indeed, the Standing Patent Rules here (Dkt. 77) require infringement contentions to identify, for each claim, "the accused apparatus, product, device, ***process, method***, act, or other instrumentality." S.P.R. 1.6 (defining "Accused Instrumentality") (emphasis added); S.P.R. 2.1.2. BlackBerry did just that by accusing a specific process and method of generating cryptographic keys via specific source code operations used by Facebook:

> Facebook's products and services that ***generate and share a public key (and including, but not limited to, encrypting messages sent to Facebook servers using Transport Layer Security) that include or support OpenSSL and the OpenSSL elliptic curve cryptography ("EC") library***, including the Facebook Messenger ("FBM") application and related Facebook backend servers and systems, and other products and services with the same or substantially similar features

Ex. 1 at 1 (emphasis added). BlackBerry then charted how the source code practices the asserted claims. The same OpenSSL source code charted in BlackBerry's initial contentions remained charted in BlackBerry's second supplemental contentions. *Compare* Ex. 1, *with* Ex. 3. Thus BlackBerry's infringement theory was and continues to be that Facebook infringes through use of the accused OpenSSL source code to generate cryptographic keys—hardly a "moving target." And while BlackBerry identified FBM as a representative example of one such use, nothing in the

contentions was specific or limited to FBM. Facebook's purported understanding of BlackBerry's contentions as limited solely to FBM was, thus, unjustifiable.

"Patent rules, such as the Court's Standing Patent Rules, seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories." *Genes Indus.*, 2016 WL 6139937, at *1 (internal quotations omitted). BlackBerry did precisely that by identifying and charting, in its initial and all subsequent contentions, specific OpenSSL source code. Indeed, Facebook understood the contentions enough to engage in claim construction and ███████████ ███████████████████████████████████████████████████████. Thus, despite its willful misreading of the accused instrumentalities as limited to FBM, Facebook has been on notice of BlackBerry's theory of infringement that the use of the accused OpenSSL source code to generate cryptographic keys is infringing. Since the full scope and extent of Facebook's use of the accused OpenSSL source code required discovery to ascertain, BlackBerry's identification of the accused instrumentality was "as specific as reasonably possible." *See* Mot. at 7 (quoting S.P.R. 2.1.2). As explained *infra*, § III.B, despite Facebook's failure to meet its discovery obligations, BlackBerry diligently investigated Facebook's uses of the accused instrumentalities and identified the added functionalities shortly after locating them and determining that they appear to use the accused OpenSSL code.

The cases cited in Facebook's Motion at p. 8 are inapposite. As an initial matter, each of those cases was under the N.D. Cal. Patent Local Rules, which specifically require "[e]ach product, device, and apparatus shall be identified by name or model number, if known" and "[e]ach method or process shall be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process." The Standing Patent Rules here do not have the same requirements and, even if they did, BlackBerry's contentions comply because they identify the accused process by name (i.e., the key generation process in the OpenSSL EC library). Nevertheless, the cited cases are also inapposite

**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

because the contentions there were directed to specific products the plaintiffs could have reasonably identified with more specificity. For example, in *Oracle Am., Inc. v. Google Inc.*, 2011 WL 4479305, at *2 (N.D. Cal. Sep. 26, 2011) and *ASUS Computer Int'l v. Round Rock Research, LLC*, 2014 WL 1463609, at *6 (N.D. Cal. Apr. 11, 2014), the courts struck certain accused products not identified in plaintiffs' contentions "by name or model number, if known," noting that the plaintiffs did not allege the names of those products were unknown to them at the time of the contentions. *Id*. Here, the added functionalities were not known to BlackBerry when it served its initial contentions. To the extent BlackBerry was required to identify the added functionalities, it diligently did so shortly after it learned of them.

In *Uniloc USA, Inc. v. Apple Inc.*, 2018 WL 3219486, at *3 (N.D. Cal. July 2, 2018), the court struck plaintiff's identification of "Apple tablets" and use of "e.g." as identifying exemplary tablets. Similarly, in *Geovector, Corp. v. Samsung Elecs. Co. Ltd.*, 2017 WL 76950, at *4 (N.D. Cal. Jan. 9, 2017), the court struck plaintiff's contentions because they accused broad categories of devices and applications (e.g., all "phablets," "all Augmented Reality applications"). Here, however, BlackBerry accuses a specific OpenSSL process of infringement—Facebook's products and services that use the accused process go to the scope and extent of Facebook's use.

The *Sung v. Shinhan Diamond Am.* case cited by Facebook is also inapposite. Mot. at 7. There, the court struck the contentions because the plaintiff had only charted one of forty accused products and failed to establish that all of the products infringed in the same way. *Sung v. Shinhan Diamond Am.*, No. CV 14-00530 MWF (Ex), 2015 WL 12681306, at *4-6 (C.D. Cal. Jun. 9, 2015). That is not the case here, as the Facebook products and services that utilize the accused OpenSSL code to generate cryptographic keys ███████████████████████████████████████████

███████████████████████████████████████████

███████. *Id*. at *4 (recognizing "a separate claim chart for each accused product is not mandatory" and "[c]ombination claim charts (whereby the party asserting

**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

infringement describes how multiple products infringe the asserted patent(s) in a single chart) can provide the required specificity under Patent Local Rule 3-1(c), if each accused product allegedly infringes in the same way").

Moreover, unlike Facebook, defendants in the cited cases promptly raised perceived deficiencies in the contentions. By contrast, Facebook here elected to withhold production of relevant information and, only at the end of discovery, made clear the scope of the information it was withholding. If Facebook was concerned that the identification of all Facebook products and services that utilize the accused OpenSSL source code was "vague" or insufficient, it should have raised its concerns last year when BlackBerry served the contentions.

### B. There Is Good Cause For BlackBerry's Supplemental Contentions.

To the extent BlackBerry was required to "amend" its contentions, it did so diligently. Facebook argues that the ten months between initial and supplemental ICs shows lack of diligence, but it fails to consider the specific circumstances facing BlackBerry's investigation in this case. First, as explained in the Factual Background above and in BlackBerry's Motion to Compel (Dkt. 388), Facebook was not forthcoming with discovery requests asking it to identify its use of the accused instrumentality. *See id*. Facebook also ignores that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, and that there are eight other asserted patents in this case that required review of the source code. Indeed, Facebook's source code log shows BlackBerry and its experts conducted extensive review of Facebook's source code throughout 2018-19. Mot. at Ex. 4. None of the plaintiffs in Facebook's cited cases faced these circumstances. Conversely, courts have found good cause to amend infringement contentions where plaintiff faced obstacles to obtaining non-public discovery about the specific identity of infringing products. *MLC Intellectual Prop., LLC v. Micron Tech., Inc.,* No. 14-CV-03657-SI, 2019 WL 978766, at *3 (N.D. Cal. Feb. 28, 2019) (granting leave to add accused products where defendant withheld material discovery regarding scope of infringement); *Thermapure, Inc. v. Giertsen*

**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

*Co. of Illinois*, 2012 WL 6196912, at *3 (N.D. Ill. Dec. 11, 2012) (same).

Moreover, BlackBerry's supplemental contentions were also proper at least because they were necessary to correct Facebook's (unreasonable) interpretation of the initial contentions and did not materially affect BlackBerry's underlying infringement theory. In *Genes Indus.*, Judge Guilford applied the patent rules adopted here to find that amendments to *final* infringement contentions were supported by good cause where plaintiff promptly amended "when it discovered that Defendants had misunderstood them" and where the amendments did "not materially change the infringement theory." 2016 WL 6139937, at *3. The only differences here are that Facebook's "misunderstanding" of the initial contentions was unreasonable and the supplemental contentions were served well in advance of the *final* contentions.

### C. Any Prejudice To Facebook Is Of Its Own Making.

Facebook cannot reasonably take the position that it first learned that the added functionalities use the accused OpenSSL source code when BlackBerry listed them in its supplemental contentions, or that it would be prejudiced if it had to now provide discovery on the added functionalities. Facebook was required to provide discovery on the added functionalities long ago, yet it chose not to. Dkt. 388. Accordingly, any prejudice from having to provide discovery now is due to Facebook's own failure to comply with existing discovery obligations. Moreover, the supplemental contentions did not change the infringement theories. *Brandywine Commc'ns Techs., LLC v. AT&T Corp.*, 2014 WL 1569544, at *16 (N.D. Cal. Apr. 18, 2014). Nor are the supplemental contentions "inadequate." The contentions chart the *same* OpenSSL processes used by Facebook, thus providing full clarity regarding BlackBerry's infringement theories. Facebook also argues that the contentions do not show how the generated key is used by the cryptographic function (Mot. at 10), but claim 1 does not require performing the cryptographic function, it only requires "*providing* said key K *for use* in performing said cryptographic function." BlackBerry's contentions cite specific source code for this "providing" step. Ex. 3 at 23-27.

**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

DATED: September 9, 2019    Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By    */s/ James R. Asperger*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
James R. Asperger (Bar No. 83188)
jamesasperger@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

BLACKBERRY CORPORATION
Edward R. McGah, Jr (SBN 97719)
Vice President, Deputy General Counsel
41 Ticknor Place
Laguna Niguel, California 92677
Telephone: (+1) 650-581-4750

*Attorneys for BlackBerry Limited*