COOLEY LLP
HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
MARK R. WEINSTEIN (193043)
(mweinstein@cooley.com)
MATTHEW J. BRIGHAM (191428)
(mbrigham@cooley.com)
LOWELL D. MEAD (223989)
(lmead@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone: (650) 843-5000
Facsimile:  (650) 849-7400

COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
101 California Street
5th Floor
San Francisco, CA  94111-5800
Telephone: (415) 693-2000
Facsimile:  (415) 693-2222

Attorneys for Defendants
FACEBOOK, INC., WHATSAPP
INC., and INSTAGRAM, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| BLACKBERRY LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK INC., WHATSAPP INC., and INSTAGRAM, LLC,<br><br>Defendants. | Case No.  2:18-cv-01844-GW-KS<br><br>**FACEBOOK, INC.'S RESPONSE TO BLACKBERRY LIMITED'S OPENING BRIEF REGARDING INADEQUACY OF FACEBOOK'S DISCOVERY RELATING TO U.S. PATENT NO. 7,372,961**<br><br>Hearing Date: September 17, 2019<br>Judge: Karen L. Stevenson<br>Ctrm: 580 |

Case No.  2:18-cv-01844-GW-KS

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

**FACEBOOK'S RESP. TO BLACKBERRY'S BRIEF RE
INADEQUACY OF DISCOVERY RE '961 PATENT**

**Table of Contents**

**Page**

I. THE SCOPE OF ACCUSED PRODUCTS AND RELATED DISCOVERY ................................................................................................ 1
    A. Facebook Has Provided Fulsome Discovery Responses ........................ 1
    B. BlackBerry Is Not Entitled To Discovery Beyond Facebook Messenger ................................................................................................ 3

II. BLACKBERRY'S ALLEGATIONS OF SPOLIATION FAILS ....................... 6
    A. Facebook Took Reasonable Steps To Preserve And Produce Data ......... 7
    B. Any Allegedly Lost Information Has Been Replaced .............................. 7
    C. BlackBerry Has Not Been Prejudiced By Any Allegedly Lost Data ....... 8
    D. Facebook Did Not Act With Intent To Deprive BlackBerry of Data ....... 9

III. CONCLUSION ................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. GNC Corp. v. LG Elecs. U.S.A., Inc.*,
  Case No. 17CV1090-BAS(BLM), 2017 WL 6507757 (S.D. Cal. Dec. 18, 2017) ........................................................................................................ 6

*ASUS Comp. Int'l v. Round Rock Res., LLC*,
  Case No. 12-cv-02099 JST (NC), 2014 WL 1463609 (N.D. Cal. Apr. 11, 2014) ........................................................................................................ 4

*Enplas Display Device Corp. v. Seoul Semiconductor Co.*,
  3:13-cv-05038-NC, Dkt. 90 (N.D. Cal. Mar. 20, 2015) ............................................. 5

*LG Elecs., Inc. v. Hitachi, Ltd.*,
  No. 5:07CV90, 2009 WL 10677426 (E.D. Tex. Mar. 2, 2009) ............................... 5

*Mediatek, Inc. v. Freescale Semiconductor, Inc.*,
  No. 11-5341 YGR (JSC), 2013 WL 588760 (N.D. Cal. Feb. 13, 2013) ................... 4

*Microunity Systems Engineering, Inc. v. Advanced Micro Devices, Inc.*,
  2:06-cv-00486-TJW, Dkt. 38 (E.D. Tex. May 23, 2007) ......................................... 6

*Panavision Imaging, LLC v. OmniVision Techs., Inc.*,
  Case No. CV09-1577 DMG, 2010 WL 11507883 (C.D. Cal. June 7, 2010) ........................................................................................................ 5

*Uniloc USA, Inc. v. Apple Inc.*,
  Nos. C 18-00360, -00363, -00365, -00572 WHA, 2018 WL 3219486 (N.D. Cal. July 2, 2018) .......................................................................................... 4

**Other Authorities**

Fed. R. Civ. P. 37(e) ........................................................................................ 6, 8, 9

Facebook hereby responds to BlackBerry's Opening Brief Regarding Inadequacy of Facebook's Discovery Relating to U.S. Patent No. 7,372,961. (Dkt. 387.)

## I. THE SCOPE OF ACCUSED PRODUCTS AND RELATED DISCOVERY

With fewer than six weeks left in discovery, BlackBerry, for the first time claimed that Facebook failed to provide fulsome discovery for the '961 patent. BlackBerry's motion should be denied for at least two independent reasons. *First,* Facebook provided a fulsome response to each and every one of BlackBerry's discovery requests. Throughout this litigation Facebook has produced over ███████████ ████████████████████████████████████████ And specifically, with respect to the '961 patent, Facebook has provided two witnesses for deposition, who provided over six hours of testimony each. *Second,* BlackBerry is not entitled to discovery beyond Facebook Messenger—what *it* defined as the accused product and what thus governs the scope of discovery. BlackBerry is not entitled to shift the scope of its infringement theories now.

### A. Facebook Has Provided Fulsome Discovery Responses

It is well understood that in a patent case, the infringement contentions provide the bounds of discovery. For example, Judge Guilford's patent rules (which govern this case) require an identification of "each Accused Instrumentality" and the "identification shall be as specific as reasonably possible." S.P.R. 2.1.2. The Plaintiff also has to provide "[a] chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality." S.P.R. 2.1.3. Defendants then have an obligation to produce documentation "sufficient to show the operation of any aspects or elements *of an Accused Instrumentality identified by the patent claimant's S.P.R. 2.1.3 chart*." *See* S.P.R. 2.6.1.

BlackBerry's infringement contentions for the '961 patent specifically accused and only charted the "Facebook Messenger ('FBM') application and related Facebook

backend servers and systems."[1] (Dkt. 386-2, Ex. 2, Pl.'s Prelim. Inf. Cont. at Ex. 961-1.) And it is this identification that shaped Facebook's discovery responses. For example, BlackBerry's November 9, 2018 Requests for Production sought "Documents sufficient to show any Facebook product or service that uses OpenSSL for encryption" (Dkt. 386-6, Ex. 5, Pl.'s Second Set of Req. for Prod. No. 53); "Documents sufficient to show each version of OpenSSL used by any Facebook product or service" (*Id.*, Req. for Prod. No. 54); and "Documents sufficient to show Facebook's use of the Elliptic Curve Diffie-Helman Exchange (ECDHE) protocol for key exchange in any Facebook product or service." (*Id.*, Req. for Prod. No. 56.) As noted in BlackBerry's motion, Facebook agreed to produce documents responsive to each of these requests. But what BlackBerry fails to mention is that Facebook's agreement to produce documents was limited to uses by "***Facebook products or services identified in the First Amended Complaint or Plaintiff's Supplemental Infringement Contentions***" and that Facebook further specifically stated that it "will not produce documents relating to any product or service ***not identified in Plaintiff's Infringement Contentions or any supplementation thereto***."[2] (Ex. 1, Def.'s Rsp to Pl.'s Second Set of Req. for Prod. Nos. 53, 54, 56.) At the time of Facebook's response, it had already made available its source code relating to Facebook Messenger, which was the only identified accused product.[3] Thus, Facebook provided fulsome answers to each of these requests for production. And, importantly, BlackBerry did not object.

Similarly, with respect to its responses to the discovery served in June and July,

---

[1] The plain language of BlackBerry's infringement contentions shows that the "backend servers and systems" are accused only to the extent that they serve the Facebook Messenger Application, as it has accused. That is, only those backend servers and systems used for the transmission/receipt of FBM messages are properly included.

[2] In addition to this specific objection, Facebook noted in its General Objection that it is "willing to meet and confer to clarify BlackBerry's understanding of the Accused Products when BlackBerry provides its Infringement Supplemental Contentions." BlackBerry never asked to meet and confer.

[3] In July of 2019, BlackBerry purported to serve Second Supplemental Infringement Contentions specifically naming products beyond Facebook Messenger. Facebook has moved to strike these contentions. (Dkt. 376.) Facebook will supplement its discovery responses if BlackBerry is allowed to expand its infringement contentions.

1    2019, Facebook's response to Interrogatory No. 8 specifically noted that "█████
2    ████████████████████████████████████████████████████████████████
3    ████████████████████████" (Dkt. 387, Ex. 12, Def.'s Resp. to Pl.'s Fourth Set of
4    Interrogs. at 6) and its responses to Requests for Production Nos. 180-182 stated, *inter*
5    *alia,* that Facebook "further object to this Request to the extent that it seeks information
6    not relevant to the Accused Features and beyond the scope of the current litigation."
7    (*See, e.g.* Ex. 2, Def.'s Resp. to Pl.'s Fifth Set of Req. for Prod. No. 182.)

8        BlackBerry's sole argument for why Facebook's discovery responses are
9    insufficient is that Facebook improperly limited the scope of the case to Facebook
10   Messenger. But BlackBerry's behavior at each stage of the litigation confirms
11   Facebook's understanding—beginning with its April 2018 Amended Complaint
12   alleging that its improved cryptographic techniques "provide the trust necessary for user
13   adoption of a messaging platform for their communication needs", *see* Dkt. 15,
14   BlackBerry's First Amended Complaint, ¶¶ 2-8 (describing BlackBerry's alleged
15   innovations and intellectual property in messaging), ¶ 5 (alleging innovations in
16   cryptographic techniques allowed for adoption of messaging), to BlackBerry only
17   including—and charting—Messenger in its infringement contentions, to BlackBerry
18   seeking only Messenger usage data for the '961 patent. (Ex. 2, Pl.'s Req. for Prod. Nos.
19   125-126.) It was not until July 2019—more than a year after the case was filed and less
20   than two months before discovery closed—that BlackBerry murmured for the first time
21   that other products were in the case. In light of BlackBerry's behavior, its allegation
22   that "Facebook has hid the ball regarding the scope and extent of its use of the accused
23   instrumentalities under BlackBerry's '961 Patent" is troubling. If anyone "hid the ball,"
24   it is BlackBerry.

25       **B.**    **BlackBerry Is Not Entitled To Discovery Beyond Facebook Messenger**
26       BlackBerry's argument that it is entitled to discovery beyond Facebook

Messenger should be rejected for at least three reasons.[4] *First,* as discussed above, BlackBerry's infringement contentions only specifically identified Facebook Messenger as the accused product, and Facebook was entitled to rely on this identification. *See, ASUS Comp. Int'l v. Round Rock Res., LLC*, Case No. 12-cv-02099 JST (NC), 2014 WL 1463609, at *7 (N.D. Cal. Apr. 11, 2014) ("It was not unreasonable for ASUS to believe that only those products specifically identified in parentheticals by model number, organized by series, were the accused products. ASUS would be prejudiced by adding new products into the case at this late stage, and RR has not demonstrated that its failure to name the products was justified."); *Mediatek, Inc. v. Freescale Semiconductor, Inc.*, No. 11-5341 YGR (JSC), 2013 WL 588760, at *1-2 (N.D. Cal. Feb. 13, 2013) (denying plaintiff's request for discovery on products not specifically identified in its infringement contentions, but instead were defined in terms of "infringing features"). *Second,* BlackBerry should not be allowed to shift the burden onto Facebook to guess as to scope of discovery simply because BlackBerry improperly used open-ended language in its contentions. *Uniloc USA, Inc. v. Apple Inc.*, Nos. C 18-00360, -00363, -00365, -00572 WHA, 2018 WL 3219486, at *3 (N.D. Cal. July 2, 2018). *Third,* to the extent BlackBerry was entitled to discovery on reasonably similar products, BlackBerry failed to act diligently in seeking this discovery. Many of the responses that BlackBerry seeks to compel were served more than 10 months ago, yet BlackBerry never alleged any deficiency, and never sought to compel. The remaining discovery, which seeks *inter alia,* an identification of the use of OpenSSL cryptographic libraries and appears to be the crux of BlackBerry's motion, was not served until June 25, 2019 (Ex. 2, Pl.'s Req. for Prod. Nos. 180-182) and July 3, 2019 (Dkt. 386-11, Ex. 10, Interrog. No. 8)—more than 15 months after this case was filed and shortly before

---

[4] While BlackBerry was not entitled to discovery beyond Facebook Messenger, due to BlackBerry's sweeping infringement allegations across nine patents, Facebook produced ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Thus, BlackBerry had every opportunity to review and timely accuse new products.

the close of fact discovery. Facebook collected and produced information responsive to these requests at that time. (*See, infra* at 1-3.)

To be clear, Facebook provided broad discovery beyond Facebook Messenger regarding the extent of Facebook's ██████████████████████████████ ████████████████████████████████████████████████████████████████████ ████ and waited a year before taking the deposition of Facebook's 30(b)(6) witness. *See, e.g., Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 3:13-cv-05038-NC, Dkt. 90 (N.D. Cal. Mar. 20, 2015) (denying discovery into similar products that were not publicly available when patentee failed to exercise diligence in ascertaining the scope of the products.) This delay is critical and fatal to BlackBerry's argument. ██ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ███-█████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████

The cases cited by BlackBerry are inapposite. None of them involve facts in which a Defendant provided ████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████ and none of them involved a plaintiff failing to timely seek to amend its infringement contentions. For example, in both *Panavision Imaging, LLC v. OmniVision Technologies, Inc.* and *LG Electronics, Inc. v. Hitachi, Ltd.* the defendants provided ***no discovery*** regarding products not specifically accused, and the plaintiffs promptly brought discovery deficiencies to the Court's attention. *Panavision Imaging, LLC v. OmniVision Techs., Inc.*, Case No. CV09-1577 DMG (CTx), 2010 WL 11507883, at *4-5 (C.D. Cal. June 7, 2010); *LG Elecs., Inc. v. Hitachi, Ltd.*, No. 5:07CV90, 2009 WL 10677426, at *1-3 (E.D. Tex. Mar. 2, 2009). In *American GNC*,

---

[5] BlackBerry admits in its opposition to Facebook's motion to strike that when it ████████████████████████████████████████████████████████████ (Dkt. 414 at 2.)

1  the defendant only provided information for a handful of the fifty-plus accused products
2  and claimed it did not possess the technical documents requested. *Am. GNC Corp. v.*
3  *LG Elecs. U.S.A., Inc.*, Case No. 17CV1090-BAS(BLM), 2017 WL 6507757, at *5
4  (S.D. Cal. Dec. 18, 2017). Here, Facebook provided ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
5  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮s,
6  and then failed to timely identify those additional accused products to
7  Facebook. Further, BlackBerry's reliance on *Microunity Systems Engineering, Inc. v.*
8  *Advanced Micro Devices, Inc.*, 2:06-cv-00486-TJW, Dkt. 38 (E.D. Tex. May 23,
9  2007)—a *sua sponte* order from another circuit regarding discovery generally—is
10 misplaced because there the order was issued at the start of the case—before the parties
11 were even close to the end of discovery. Indeed, the discovery deadline in *Microunity*
12 was nearly ***two years*** from the date of the cited order, a far cry from the present situation
13 where Facebook ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Microunity*, 2:06-cv-00486-TJW, Dkt. 70 (E.D. Tex. Nov.
16 19, 2007).

17 **II.    BLACKBERRY'S ALLEGATIONS OF SPOLIATION FAILS**

18     BlackBerry's motion also cavalierly accuses Facebook of spoliation and seeks
19 the extreme remedy of sanctions without any factual basis. (Dkt. 387 at 14-16.) And
20 the only legal authority BlackBerry relies on is outdated. The current Federal Rule of
21 Civil Procedure 37(e) provides "upon finding prejudice to another party from loss of
22 the information, [the court] may order measures no greater than necessary to cure the
23 prejudice" and the court may provide evidentiary sanctions "only upon finding that the
24 party acted with the intent to deprive another party of the information's use in the
25 litigation[,]" but most importantly, neither of these remedies come into play unless "a
26 party failed to take reasonable steps to preserve it, and it cannot be restored or replaced
27 through additional discovery."  (Fed. R. Civ. P. 37(e) (Dec. 1, 2015).)  BlackBerry
28 cannot show that Facebook failed to take reasonable steps to preserve the data, that it is

prejudiced by any loss of data, or that Facebook "acted with the intent to deprive" BlackBerry of information. As such, BlackBerry's extraordinary relief should be denied.

### A. Facebook Took Reasonable Steps To Preserve And Produce Data

BlackBerry's first request for non-technical data related to the '961 patent came on June 25, 2019—more than a year after the litigation was commenced. And even then, BlackBerry sought only ███████████████████████████████████ ██████████████████████████████████████████████████████████████████ ████████████████████████████████████ (Ex. 2, Pl.'s Req. for Prod. Nos. 125-126.) Facebook only became aware that BlackBerry was seeking this ████████████████ during the July 18, 2019 deposition of Kyle Nekritz. Once Facebook was put on notice that BlackBerry was seeking █████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ████████████████████████ ██████████████

### B. Any Allegedly Lost Information Has Been Replaced

As discussed above, upon learning of BlackBerry's requests, Facebook took reasonable steps to preserve the requested data. But nonetheless, in attempts to resolve the dispute and preserve the Court's resources, Facebook has worked to locate and

---

[6] Because of the dispute about accused products (Dkt. 376), ████████████████ ██████████████████████████████████████████████████████████████████

1  produce other data that would capture the information sought by BlackBerry. On
2  September 5, 2019, ███████████████████████████████████████
3  ████████████████████████████████████████████████████████
4  ████████████████████████████████████████████████████████
5  ████████████████████████████████████████████████████████
6  ████████████████████████████████████████████████████████
7  ████████████████████████████████████████████████████████
8  ████████████████████████████████████████████████████████
9  ████████████████████████████████████████████████████████
10 ████████████████████████████████████████████████████████
11 ████████████████████████████████████████████████████████
12 ████████████████████████████████████████████████████████
13 ████████████████████████████████████████████████████████
14 ████████████████████████████████████████████████████████
15 ████████████████████████████████████████████████████████
16 ████████████████████████████████████████████████████████
17 BlackBerry thus already has access to the information it alleges was lost and sanctions
18 are not warranted.

### C. BlackBerry Has Not Been Prejudiced By Any Allegedly Lost Data

Because BlackBerry cannot satisfy the preamble of Rule 37(e) the Court need not address the alleged prejudice to BlackBerry. (Fed. R. Civ. P. 37(e)(1).) But even if the Court was to address this prong, BlackBerry's argument fails. Here, BlackBerry's sole argument is that Facebook may argue that it has ███████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████ such, BlackBerry will not suffer any prejudice.

### D. Facebook Did Not Act With Intent To Deprive BlackBerry of Data

Again, because BlackBerry cannot satisfy the preamble of Rule 37(e) the Court need not address Facebook's intent. (Fed. R. Civ. P. 37(e)(2).) But even if the Court was to address this prong, BlackBerry's argument again fails.

BlackBerry does not, and cannot, make any attempt to show that Facebook acted with the requisite intent to deprive BlackBerry of data. As set forth herein, prior to BlackBerry's explicit request, Facebook did not believe that the data that BlackBerry now seeks was relevant. As discussed above, BlackBerry's first request for any information beyond mere technical details came in June 2019. In its motion, BlackBerry contends that it has long sought usage data, pointing to document requests 53-56. This is a misreading of those requests. Those requests sought technical information, not usage data. (Dkt. 386-6, Ex. 5, Pl.'s Second Set of Req. for Prod. Nos. 53-56.) *If* BlackBerry's earlier discovery requests had called for the type of detailed data BlackBerry now seeks, the parties would have met and conferred pursuant to the ESI order. (Dkt. 100 at 14 (stating the parties "**shall meet and confer regarding the** production format and **scope of data contained in databases in order to ensure** that any information produced is reasonably usable by the receiving party and **that its production does not impose an undue burden on the producing party**[.]") (emphasis added). That no such meet and confer occurred, and that BlackBerry never made any attempt to discuss or request ██████ prior to July 18, 2019, shows that BlackBerry's attempt to shoehorn these new data requests into vague older requests (Dkt. 386-6, Ex. 5, Pl.'s Second Set of Req. for Prod. Nos. 53-56) is based purely on hindsight. Facebook did not and could not have known BlackBerry desired this granular, voluminous information for every Facebook product until July 2019.

The focus of BlackBerry's motion appears to be that Facebook should have retained and produced voluminous historical data ████████████████████

1
2
3
4
5
6
7
8 ███████████████████████████████████ In sum, Facebook's retention
9 policy is implemented consistently and on a routine basis, and certainly is not designed
10 with the intent to deprive BlackBerry of necessary information in this litigation.

11 **III. CONCLUSION**

12 For the foregoing reasons, Facebook respectfully requests the court deny
13 BlackBerry's motion to compel and for evidentiary sanctions.

| | | |
|---|---|---|
| 1 | Dated: September 10, 2019 | COOLEY LLP |
| 2 | | |
| 3 | | */s/ Heidi L. Keefe* |
| 4 | | COOLEY LLP |
| | | HEIDI L. KEEFE (178960) |
| 5 | | (hkeefe@cooley.com) |
| 6 | | MARK R. WEINSTEIN (193043) |
| | | (mweinstein@cooley.com) |
| 7 | | MATTHEW J. BRIGHAM (191428) |
| 8 | | (mbrigham@cooley.com) |
| | | LOWELL D. MEAD (223989) |
| 9 | | (lmead@cooley.com) |
| 10 | | 3175 Hanover Street |
| | | Palo Alto, CA 94304-1130 |
| 11 | | Telephone: (650) 843-5000 |
| 12 | | Facsimile: (650) 849-7400 |
| 13 | | |
| | | COOLEY LLP |
| 14 | | MICHAEL G. RHODES (116127) |
| 15 | | (rhodesmg@cooley.com) |
| | | 101 California Street |
| 16 | | 5th Floor |
| 17 | | San Francisco, CA 94111-5800 |
| | | Telephone: (415) 693-2000 |
| 18 | | Facsimile: (415) 693-2222 |
| 19 | | |
| | | Attorneys for Defendants |
| 20 | | FACEBOOK, INC., WHATSAPP INC., |
| 21 | | and INSTAGRAM, LLC |