QUINN EMANUEL URQUHART & SULLIVAN, LLP
James R. Asperger (SBN 83188)
jamesasperger@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Kevin P.B. Johnson (SBN 177129)
kevinjohnson@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

BLACKBERRY CORPORATION
Edward R. McGah, Jr (SBN 97719)
Vice President, Deputy General Counsel – Litigation
41 Ticknor Place
Laguna Niguel, California 92677
Telephone: (+1) 650-581-4750

Attorneys for Plaintiff BlackBerry Limited

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLACKBERRY LIMITED, a Canadian corporation, <br><br> Plaintiffs, <br><br> v. <br><br> FACEBOOK, INC., a Delaware corporation, WHATSAPP INC., a Delaware corporation, and INSTAGRAM, LLC, a Delaware limited liability company <br><br> Defendants. | CASE NO. 2:18-cv-01844 GW(KSx) <br><br> **BLACKBERRY LIMITED'S OPPOSITION TO DEFENDANTS' MOTION TO STAY PENDING *INTER PARTES* REVIEW** <br><br> Hearing Date:  January 30, 2020 <br> Time: 8:30 A.M. <br> Judge: Hon. George H. Wu <br> Courtroom: 9D |

Given the late stage of litigation—which stems from Defendants' decision to let the action proceed significantly before filing its petitions—combined with the unlikelihood that a stay will promote efficiency and the prejudice that a stay would impose upon BlackBerry, the Court should deny Defendants' motion.

***Stage of Litigation.***  Courts consider three factors in deciding whether to stay litigation pending IPR.  *Universal Electronics, Inc. v. Universal Remote Control, Inc.,* 943 F.Supp.2d 1028, 1030-31 (C.D. Cal. 2013).[1]  Here, the first factor—the stage of the litigation—counsels strongly against a stay.  Defendants waited until the eleventh hour to file the vast majority of their IPR petitions, and as a result, by the time the PTAB issued institution decisions, the case had progressed significantly and is now primed for trial.  Though Defendants briefly argue (Mot. at 3-4) that the "stage of the case favors a stay," the case is clearly in its final stages.  Claim construction is long complete.  Fact and expert discovery is over—comprising more than 80 depositions, millions of pages of documents produced, thousands of hours spent by BlackBerry (at great cost) reviewing Defendants' source code leading to four rounds of infringement contentions, and expert reports from 11 different experts.  The Court has already resolved one round of summary judgment motions, and the parties have filed their final dispositive motions.  Most importantly, trial is mere weeks away.

Courts routinely find that the first factor weighs strongly against a stay in cases even far less advanced than this one.  *See e.g., Carl Zeiss A.G. v. Nikon Corp.*, No. 17-7083, 2018 WL 5081479, at *4 (C.D. Cal. Oct. 16, 2018) ("The Court has now expended considerable judicial resources on this case, deciding two motions for summary judgment and engaging in claim construction. It would not be in the interest of justice to partially stay this case on the eve of trial pending IPR, and it would not

---

[1]  The factors are: "(1) whether discovery is complete and whether a trial date has been set, (2) whether a stay will simplify the issues and trial, and (3) whether a stay would prejudice the nonmovant."  *Id.*

secure the speedy or inexpensive determination of this action to sever this case in two."); *Asetek Holdings, Inc. v. Cooler Master Co., Ltd.,* No. 13-457, 2014 WL 1350813, at *4 (N.D. Cal. Apr. 3, 2014) ("[M]uch, if any of the effort that could have been saved has already been expended:  claim construction is complete, fact discovery is nearly complete, and only expert discovery, dispositive motions, and trial remain."); *Space Data Corp. v. Alphabet Inc.*, No. 16-3260, 2019 WL 1131420, at *2 (N.D. Cal. Mar. 12, 2019) (denying stay where summary judgment motions were briefed and trial was a few months away); *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, No. 12-5501, 2014 WL 121640, at *2 (N.D. Cal., Jan. 13, 2014); *Siemens Indus., Inc. v. Westinghouse Air Brake Technologies Corp.,* No. 16-284, 2018 WL 3046511, at *2 (D. Del. June 20, 2018).

Indeed, Defendants fail to cite any case of this complexity and at this stage in which a court granted a stay due to pending IPRs.  The best cases Defendants muster were far less advanced than here.  *See* Mot. at 4 (citing *SPEX Techs. v. Kingston Tech.*, No. 16-1790, 2018 WL 2446801, at *2 (C.D. Cal. May 16, 2018) (discovery still open and trial 4-5 months away); *Huawei Techs. v. Samsung Elecs.*, No. 16-2787, 2018 WL 2971159, at *3-4 (N.D. Cal. Jun. 13, 2018) (expert discovery ongoing and claim construction incomplete); *Contour IP Holding v. GoPro*, No. 17-4738, 2018 WL 6574188, at *3 (N.D. Cal. Dec. 12, 2018) (fact discovery open, no trial date set); *FastVDO v. AT&T Mobility*, No. 16-385, 2017 WL 2323003, at *3 (S.D. Cal. Jan. 23, 2017) (expert discovery open and dispositive motions not yet briefed); *Ricoh v. Aeroflex*, No. 3-4669, 2006 WL 3708069, at *5-6 (N.D. Cal. Dec. 14, 2006) (the only patent at issue had been subject to a non-final rejection during reexamination).

Further, a stay at a late stage of litigation is particularly unwarranted where, as here, a party chose to delay filing IPR petitions for tactical advantage.  Defendants argue that they did not "dally" in filing (Mot. at 4), but BlackBerry does not contend that Defendants spent their year passively.  Rather, Defendants pressed to obtain information regarding BlackBerry's litigation strategy and then used that information

to inform their IPR petitions.  Before filing their petitions, Defendants filed motions to dismiss, extracted several rounds of infringement contentions, and went through claim construction—each process forcing BlackBerry to stake out litigation positions that Defendants then used to tailor their petitions.  Defendants openly acknowledge these tactical benefits, admitting that claim narrowing and claim construction "guided" their IPR filings and allowed them to file "targeted IPR petitions that took into account claim construction rulings and stipulated constructions."  Mot. at 4.  Defendants' strategic gain, however, came at great cost to the parties and the Court, who put enormous resources into the litigation that served to help crystallize Defendants' IPR strategy.  This further counsels a denial of the stay.[2]  *See Universal Electronics*, 943 F.Supp.2d at 1031 ("The Court's expenditure of resources is an important factor in evaluating the stage of the proceedings.").

**Benefits of a Stay are Speculative.**  Defendants focus on the second factor— whether a stay will simplify the issues and trial.  But Defendants' IPR petitions have already failed as to two of the seven patents-in-suit (the '236 and '961).  Trial, at least on these patents, is therefore inevitable.  Additionally, any purported streamlining as a result of the IPR petitions that have been instituted is entirely speculative.  For example, by Defendants' own figures, even after IPR is instituted, one or more claims survive in at least 37% of cases,[3] meaning additional patents are highly likely to survive.  Mot. at 2 n. 4.  Moreover, should BlackBerry prevail with the jury in demonstrating that the IPR patents are not invalid, the chances that all patents survive is even greater.  Mot. at 5 (citing the PTAB's tendency to defer to the Court's rulings).

---

[2]   Defendants attempt to lay blame on the timing of the IPR Petitions with BlackBerry, suggesting delay in case narrowing.  Mot. at 4.  But, BlackBerry fully complied with the Court's case narrowing guidance.  *See* Dkts. 84 & 88.

[3]   BlackBerry believes strongly that the chances of complete invalidation of the patents for which IPR has been instituted is well below the historical average.  Indeed, as the Court is well aware, Defendants' primary invalidity strategy in this case has focused not on prior art, but on Section 101, which may not be raised through IPR.

On the other hand, a stay this late in the case is certain to increase costs and decrease efficiency. This case will remain on the Court's docket for months or more, while evidence, witnesses, and attorney familiarity grow stale.

Defendants further argue that a stay will prevent multiple trials. Mot. at 1. But, this purported concern is in direct tension with Defendants' alternative suggestion that the Court ought to stay the case only as to the five patents before the PTAB and try the two patents for which the PTAB denied institution. *Id.* at 5. Besides, the prospect of multiple trials is not a result of the IPRs, but rather of Defendants' seeking and obtaining early summary judgment as to the '351 and '929 patents. And, because there is no guarantee that an appeal will resolve within the timeframe of the IPR decisions, it is not even clear whether a stay pending IPR would avoid multiple trials.

Defendants also argue that the case should be stayed because of the potential for inconsistent rulings. Mot. at 2-3. This argument holds no water. As to the '120 Patent, Defendants claim that BlackBerry is taking "inconsistent" claim construction positions at the PTAB. Mot. at 2-3. But, not only is this inaccurate, it is also irrelevant to the issue of whether this case should be stayed. As Defendants themselves acknowledge, the Court has already construed, for example, the term "notification" in the '120 Patent. *Id.* at 3. That claim construction controls, and will continue to control, the infringement and invalidity questions at issue in this litigation, no matter what happens at the PTAB. To the extent that Defendants believe that BlackBerry's positions between the parallel proceedings are inconsistent (and they are not),[4] they are free to raise that argument before the PTAB as supporting their constructions.[5]

---

[4] With respect to the term "notification," the PTAB expressly ***adopted*** this Court's construction of that term and invited the parties to expound further upon how one might apply the Court's construction to the prior art-at-issue. *See* Mot. Ex. 11 ('120 Institution Decision) at 9. BlackBerry has simply responded to the PTAB's request for further argument regarding the impact of the Court's construction.

[5] Also, Defendants' argument that the *proposed* amendments to the '173 Patent will affect damages in this case are speculative.

It bears mentioning that Defendants have twice before advanced the counterintuitive idea that freezing this case is the most expedient way to resolve it.  In both prior instances, the efficiencies promised by Defendants failed to materialize.  At the outset, Defendants urged the Court to stay discovery pending their motion to dismiss, arguing that if the motion succeeded the parties could avoid discovery into any patents ruled invalid.  Dkt. 43-1 at 2-3.  But the Court did not invalidate any patents at that time.  Later, Defendants moved to stay after filing their IPRs, contending that their petitions would "eliminate entire chunks (or even the entirety) of this case," Dkt. 161-1 at 1, only to withdraw their motion.  Then, as now, the best way to resolve this case is to press forward toward a resolution.

*Prejudice to BlackBerry*.  Under the third factor, courts consider whether a stay would unduly prejudice the opposing party.  A stay against a plaintiff—particularly one which, like BlackBerry, practices or has practiced some of the patents-in-suit and has spent enormous resources in prosecuting its case for nearly two years—is inherently prejudicial and obstructs a plaintiff's entitlement to the "just, speedy, and inexpensive determination" of its action.  FED. R. CIV. P. 1; *Realtime Data, LLC v. Rackspace US, Inc.,* No. 6:16-cv-961, 2017 WL 772654, at *4 (E.D. Tex. Feb. 28, 2017) (holding that patentees have "an interest in the timely enforcement of [their] patent rights.").  Both cases cited by Facebook (Mot. at 5) were in early stages, before the patentee had expended any money on depositions or expert discovery.  *Lund Motion Prod., Inc. v. T-Max Hangzhou Tech. Co.*, No. 17-01914, 2019 WL 116784, at *2 (C.D. Cal. Jan. 2, 2019); *XR Commc'ns, LLC v. D-Link Sys., Inc.*, No. 17-0059, 2018 WL 2734849, at *2 (C.D. Cal. Apr. 10, 2018).  Finally, to grant a stay would prejudice BlackBerry by rewarding Facebook for using the litigation proceedings to crystallize its petition.  *See Athena Feminine Technologies Inc. v. Wilkes,* No. 10-4868, 2012 WL 1424988, at *3 (N.D. Cal. Apr. 24, 2012) (finding prejudice in the defendant's "tactically-motivated" delay).

1   DATED: January 9, 2020     Respectfully submitted,

2

3      QUINN EMANUEL URQUHART & SULLIVAN, LLP

4      By    */s/ James R. Asperger*

5      QUINN EMANUEL URQUHART & SULLIVAN, LLP

6      James R. Asperger (Bar No. 83188)

7      jamesasperger@quinnemanuel.com

8      865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017

9      Telephone: (213) 443-3000

10      Facsimile: (213) 443-3100

11      Kevin P.B. Johnson (Bar No. 177129)

12      kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)

13      victoriamaroulis@quinnemanuel.com

14      555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065

15      Telephone: (650) 801-5000

16      Facsimile: (650) 801-5100

17      BLACKBERRY CORPORATION

18      Edward R. McGah, Jr (SBN 97719)
Vice President, Deputy General Counsel

19      41 Ticknor Place

20      Laguna Niguel, California 92677
Telephone: (+1) 650-581-4750

21

22      *Attorneys for BlackBerry Limited*

23

24

25

26

27

28