QUINN EMANUEL URQUHART & SULLIVAN, LLP
  James R. Asperger (Bar No. 83188)
  jamesasperger@quinnemanuel.com
  865 S. Figueroa St., 10th Floor
  Los Angeles, CA 90017
  Telephone: (213) 443-3000
  Facsimile: (213) 443-3100

  Kevin P.B. Johnson (Bar No. 177129)
  kevinjohnson@quinnemanuel.com
  555 Twin Dolphin Drive, 5th Floor
  Redwood Shores, CA 94065
  Telephone: (650) 801-5000
  Facsimile: (650) 801-5100

BLACKBERRY CORPORATION
  Edward R. McGah, Jr (SBN 97719)
  Vice President, Deputy General Counsel – Litigation
  41 Ticknor Place
  Laguna Niguel, California 92677
  Telephone: (+1) 650-581-4750

Attorneys for Plaintiff BlackBerry Limited

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLACKBERRY LIMITED, a Canadian corporation,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>FACEBOOK, INC., a Delaware corporation, WHATSAPP INC., a Delaware corporation, and INSTAGRAM, LLC, a Delaware limited liability company<br><br>　　　　　Defendants. | CASE NO. 2:18-cv-01844 GW(KSx)<br><br>**BLACKBERRY LIMITED'S OPENING BRIEF REGARDING SUPPLEMENTAL CLAIM CONSTRUCTION OF U.S. PATENT NO. 8,429,236**<br><br>**Hearing Date: April 20, 2020**<br>**Time: 8:30 A.M.**<br>**Judge: Hon. George H. Wu**<br>**Courtroom: 9D** |

1    BlackBerry respectfully submits this Opening Brief regarding Supplemental
2  Claim Construction of U.S. Patent No. 8,429,236 ("the '236 Patent").  BlackBerry's
3  proposed constructions of the terms "mode selector" and "message generator" closely
4  align with the intrinsic and extrinsic evidence.  Defendants' proposed constructions,
5  by contrast, are unhelpful and represent an attempt to further their legally flawed
6  arguments regarding Section 101 invalidity.  The Court should adopt BlackBerry's
7  constructions and deny Defendants' invalidity motion against the '236 Patent.

8  **I.      BACKGROUND TO THE '236 PATENT**

9    The '236 Patent is directed to an improved mobile communications device
10 operating in a wireless network in a manner that conserves device and network
11 resources.   Ex. 1 ('236 Patent) at 1:29-36 ("Transmissions from the mobile
12 communications device over a wireless communications system consume resources
13 that would be desirable to conserve."); Almeroth Decl. ¶ 66.  At the time of the
14 invention, mobile devices were just beginning to "support a large variety of data-
15 enabled applications" that were designed for use "in a variety of locations."  Ex. 1
16 ('236 Patent) at 1:18-24.  These new data-enabled applications however put strain on
17 devices and the network.  *Id.* at 1:33-35; Almeroth Decl. ¶¶ 35-36.

18   The conventional approach to dealing with this problem had been to consider
19 the status of the transmitting device (*e.g.,* Was the device low on battery?  Was it
20 moving around?  Etc.) when determining whether to transmit updates.   Almeroth
21 Decl. ¶ 88.  But the inventors of the '236 Patent recognized a new technique, whereby
22 a mobile device could determine whether to send transmissions based on whether one
23 or more *receiving* applications were processing the transmissions.  *Id.*; Ex. 1 ('236
24 Patent) at 3:7-9.  This approach was unknown in the prior art, as evidenced by the
25 PTAB's refusal to institute Defendants' IPR.  *See* Ex. 2 (PTAB Decision).

26   To be sure, the '236 claims include known elements, having understood
27 meanings to a skilled artisan at the time.  But, as the patent teaches and the claims
28 reflect, the inventors incorporated these elements into a novel and unconventional

overall system that achieves undisputed technical benefits. *Id.* ¶¶ 88-92, 112-115.

## II.    CLAIM CONSTRUCTION ISSUES

### A.    "Mode Selector"

| BlackBerry Construction | Defendants' Construction |
|---|---|
| "a hardware or software component, such as a recipient callback module, timer, components to observe a local database, components to inspect a request message from a recipient application, or components to compare a timestamp with the local time of the mobile communications device, for controlling the mode of transmitting status messages over a wireless network from a mobile communications device to a recipient application" | "a hardware or software component operable to determine whether the recipient application is actively or not-actively processing status updates from the mobile communications device and to select a message transmission mode" |

The parties agree that the claimed "mode selector" is directed to a sufficiently definite "hardware or software component" for a mobile communications device. Almeroth Decl. ¶ 80.   The parties further agree that the construction of "mode selector" should reflect this component's role in the intended network environment, including its operation relative to the recited "recipient application."

With respect to the further requirements of the recited "mode selector," the inventors described that component by stating the following:

> The mode selector may be any component operable to determine whether the recipient application is actively processing status updates from mobile communications device in accordance with this disclosure and to select a message transmission mode. The mode selector may, for example, comprise a recipient callback module, timer, components to observe a local database, components to inspect a request message from a recipient application, components to compare a timestamp with the local time of the mobile communications device, or other modules operable to determine whether the recipient application is actively processing status updates from mobile communications device in accordance with this disclosure.

Ex. 1 ('236 Patent) at 6:22-34.  The specification goes on to describe how the "mode selector" is configured to "execut[e] logic to determine that the recipient application is actively processing status updates" and may "provide an indication to the message generator to cause status messages to be sent using the accelerated message

transmission mode." *Id.* at 12:26-31.   These disclosures are consistent with BlackBerry's proposal, which requires a "mode selector" to be "for *controlling* the mode of transmitting status messages over a wireless network."   BlackBerry's proposal is also the most consistent with the extensive use of the term in the extrinsic evidence.   Almeroth Decl. ¶¶ 73-79; Exs. 3-8.   Finally, BlackBerry's construction includes the exemplary embodiments from the specification which provide useful context to skilled artisans regarding the "mode selector."[1]   Almeroth Decl. ¶ 71.

Defendants' construction, on the other hand, is circular and unhelpful in that it defines "mode selector" as a component "to select a message transmission mode." *Harris Corp. v. IXYS Corp.*, 114 F.3d 1149, 1152 (Fed. Cir. 1997) (finding circularity of proposed construction a "compelling reason" to reject it).   Defendants' proposal is also flawed because it requires that the "mode selector" be operative "to determine whether the recipient application is actively or not-actively processing status updates," which is already recited by the surrounding claim language. *Apple Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1237 (Fed. Cir. 2016) ("Construing a claim term to include features of that term already recited in the claims would make those expressly recited features redundant."). The Court should adopt BlackBerry's proposal.

**B.    "Message Generator"**

| BlackBerry Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "a hardware or software component, responsive to the mode selector, that is operable to prepare and send transmissions over a wireless network from a mobile communications device to a recipient application" | "a hardware or software component, responsive to the mode selector, operable to generate status messages and cause the status messages to be transmitted to the recipient application using the selected message transmission mode" |

Again, the parties agree that the claimed "message generator" connotes sufficiently definite structure in the form of a "hardware or software component." Almeroth Decl. ¶ 106.   The parties also agree that the construction for "message

---

[1]    Dependent claim 17 provides further narrows the "mode selector" to the specific embodiment of "a component to observe a local database for a record in the database."

generator" properly includes that component's role relative to the "mode selector" and "recipient application" in the overall arrangement of claimed features.

With respect to the further limitations, BlackBerry's proposal is most appropriate. The specification explains that the "message generator" is "responsive to the mode selector" and "is operable to generate status messages comprising status updates and cause the status messages to be transmitted to recipient application . . . ." Ex. 1 ('236 Patent) at 6:34-38. A skilled artisan recognizes that, in the context of wireless communication, this sort of generation and transmission of "status messages comprising status updates" would require hardware and/or software modules for *preparing* the message to be transmitted across the network. Almeroth Decl. ¶ 99. This aligns with the extrinsic evidence, which commonly used "message generator" to refer to modules for the creation and preparation of transmissions for being sent over a network medium. *Id.* ¶¶ 100-105; Exs. 9-13.

Again, Defendants offer an unhelpful and circular construction defining the "message generator" as something "operable to generate status messages." *Harris*, 114 F.3d at 1152. This overly simplistic construction ignores the intrinsic evidence that teaches how the message generation process involves the mobile communication device "collect[ing] a plurality of status updates during a period of time, and includ[ing] the plurality of status updates in a status message transmitted over a wireless network to a recipient application." Ex. 1 ('236 Patent) at 2:50-54. In other words, the "message generator" *prepares* a collection of "status updates" into a form suitable for transmission over the network medium. *Id.* at 5:42-55. Only BlackBerry's proposed construction captures this context. Defendants' construction is also flawed because it improperly includes limitations rendering surrounding claim language redundant. *Apple*, 842 F.3d at 1237; *see also* Almeroth Decl. ¶ 107.

## III.    SECTION 101 ISSUES

### A.    The '236 Patent Is Not Directed Towards An Abstract Idea

As discussed in BlackBerry's summary judgment opposition, Dkt. 584 at 23-

34, the '236 Patent claims are "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks" and are therefore eligible at step one. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). As the patent teaches, the claimed use of a "mode selector" and "message generator, made responsive to the status of a "recipient application," improves the efficiency of the mobile communications device and wireless network by limiting unnecessary transmissions and conserving valuable resources. Ex. 1 ('236 Patent) at 1:14-39, 3:7-9. The issue here is similar to *SRI International, Inc. v. Cisco Systems, Inc.,* 930 F.3d 1295 (Fed. Cir. 2019), where even a claim reciting generic "network monitors" for "generating reports" was found non-abstract, where the network monitors were arranged in an overall system to better identify intruders. *Id.* at 1303-4; *see also Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1350 (Fed. Cir. 2018) (invention for "verification structure" was eligible when claim assigned specific functionality amongst components to improve security).

Importantly, Defendants' summary judgment motion does *not* contest that the invention results in the technical benefits identified by BlackBerry, but instead argues that this technical benefit "flows solely from the abstract idea itself, rather than any specific technique recited in the claims." Dkt. 552 at 25. This is wrong. The specification directly ties the undisputed technical benefits to the specific arrangement of features recited in the claim. Ex. 1 ('236 Patent) at 3:7-43. Moreover, Defendants conflate step one and step two—whether a technical benefit "flows from the abstract idea" is a step two consideration, not a test for whether the invention is directed to an abstract idea in the first instance. Dkt. 487 at 11 (citing cases analyzing *Alice* step two). Thus, the claims are non-abstract, and the Court need not even reach step two.

## B.     The '236 Patent Ordered Combination Is Inventive

Even if the Court finds the claims abstract at step one, the ***factual*** inquiry at step two should focus not on the "mode selector" and "message generator" in isolation, but rather on their "ordered combination" as required by *Alice*. For

example, *BASCOM Global Internet v. AT&T Mobility, LLC*, 827 F.3d 1341 (Fed. Cir. 2016), held that even claims that take "known, conventional pieces" but arrange them in an "inventive" way are eligible at step two of the analysis. *Id.* at 1349-50. That is the case here. *See* Almeroth Decl. ¶¶ 88-92, 112-115. That the ordered combination of claim elements is not "routine, conventional, or well-known," is further supported by the PTAB's denial of Defendants' IPR petition. *See Ericsson Inc. v. TCL Comm. Tech. Holdings, Ltd.*, 2017 WL 5137401, at *7 (E.D. Tex. Nov. 4, 2017) (PTAB decision denying IPR supported denial of Section 101 summary judgment motion).

Unlike BlackBerry, Defendants have offered no evidence—either in their motion for summary judgment or in these claim construction proceedings—that the *ordered combination* of '236 claim elements was "routine, conventional, or well-known." The closest thing Defendants offered at summary judgment was testimony from their expert witness who improperly used hindsight bias to opine that the claims "recite an order that a person of ordinary skill in the art would find logical and would expect." Dkt. 631-2 at 97 (emphasis added). That opinion does not apply the correct standard, and it is in any event disputed. *Id.* Thus, Defendants fail to carry their clear-and-convincing evidence burden, which warrants denial of summary judgment.

## IV.   SECTION 112 ISSUES

Finally, with respect to the "mode selector" and "message generator" terms, the Court expressed "questions regarding these functional-sounding claim terms as they relate to the requirements of 35 U.S.C. § 112." But, Defendants have not challenged the '236 Patent on the basis of § 112—none of their invalidity contentions provide any specific theories against the '236 Patent, their expert has not offered any § 112 opinions, and they did not file any motion within the timetable provided by the Court on these grounds. Respectfully, these arguments are waived. BlackBerry's expert, on the other hand, has now provided unrebutted opinions that the '236 Patent claims have adequate written description support and are enabled. *See e.g.,* Almeroth Decl. ¶¶ 82-92, 108-111. Thus, the '236 Patent is fully supported and enabled.

1    DATED:  March 26, 2020                Respectfully Submitted,

2

3                                          By /s/ *Patrick Schmidt*

4                                            QUINN EMANUEL URQUHART &
                                             SULLIVAN, LLP
5                                              James R. Asperger (Bar No. 83188)
                                               jamesasperger@quinnemanuel.com
6                                              865 S. Figueroa St., 10th Floor
                                               Los Angeles, CA 90017
7                                              Telephone: (213) 443-3000
                                               Facsimile: (213) 443-3100
8

9                                              Kevin P.B. Johnson (Bar No. 177129)
                                               kevinjohnson@quinnemanuel.com
10                                             Victoria F. Maroulis (Bar No. 202603)
                                               victoriamaroulis@quinnemanuel.com
11                                             555 Twin Dolphin Drive, 5th Floor
                                               Redwood Shores, CA 94065
12                                             Telephone: (650) 801-5000
                                               Facsimile: (650) 801-5100
13

14                                           BLACKBERRY CORPORATION
                                               Edward R. McGah, Jr (SBN 97719)
15                                             Vice President, Deputy General Counsel
                                               41 Ticknor Place
16                                             Laguna Niguel, California 92677
                                               Telephone: (+1) 650-581-4750
17

18                                           Attorneys for BlackBerry Limited

19

20

21

22

23

24

25

26

27

28

BLACKBERRY'S OPENING BRIEF RE '236 PATENT SUPPLEMENTAL CLAIM CONSTRUCTION