COOLEY LLP
HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
MARK R. WEINSTEIN (193043)
(mweinstein@cooley.com)
MATTHEW J. BRIGHAM (191428)
(mbrigham@cooley.com)
3175 Hanover Street
Palo Alto, California 94304
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
101 California Street
5th Floor
San Francisco, CA 94111-5800
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

ATTORNEYS FOR DEFENDANTS
FACEBOOK, INC., WHATSAPP INC.
and INSTAGRAM, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| BLACKBERRY LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC., WHATSAPP INC., and INSTAGRAM, LLC,<br><br>Defendants. | Case Nos. 2:18-cv-01844-GW-KSx; 2:18-cv-02693-GW-KSx<br><br>**DEFENDANT WHATSAPP'S OPENING SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF REGARDING U.S. PATENT NO. 8,429,236** |

Only the proposed constructions by WhatsApp[1] stay true to the intrinsic record. Plaintiff's proposals deviate from that record and add unsupported (and confusing) limitations, and thus should be rejected. Moreover, as explained in more detail below, the asserted claims remain ineligible under § 101 under either side's constructions and are substantively indistinguishable from claims invalidated by the Federal Circuit.

## I.   "MODE SELECTOR"

| WhatsApp's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| "a hardware or software component operable to determine whether the recipient application is actively or not-actively processing status updates from the mobile communications device and to select a message transmission mode" | "a hardware or software component, such as a recipient callback module, timer, components to observe a local database, components to inspect a request message from a recipient application, or components to compare a timestamp with the local time of the mobile communications device, for controlling the mode of transmitting status messages over a wireless network from a mobile communications device to a recipient application" |

The parties agree that a "mode selector" is "a hardware or software component." The remainder of WhatsApp's proposed construction comes from the intrinsic record, while Plaintiff's proposal improperly injects unsupported requirements.

The specification repeatedly provides a description of "mode selector" that tracks WhatsApp's proposal nearly verbatim, as shown by the underlined text:

> The mode selector **114** may be any component operable to determine whether the recipient application **250** is actively processing status updates from mobile communications device **110** in accordance with this disclosure and to select a message transmission mode.

('236, 6:22-26 (emphasis added); *see also* '236, 12:10-24 ("The mode selector may be any component operable to determine whether the recipient application is actively

---

[1]   WhatsApp is the only defendant accused of infringing the '236 patent.

processing status updates from mobile communications device in accordance with this disclosure and to select a message transmission mode.") (emphasis added).)  There is no reason to depart from these clear statements in the intrinsic record.  *Phillips v. AWH Corp.*, 415 F. 3d 1303, 1315 (Fed. Cir. 2005) (en banc) ("[T]he specification is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.") (internal quotations omitted).

WhatsApp's proposal further requires "determin[ing] whether the recipient application is actively **or not actively** processing status updates," which comes directly from Plaintiff's representations to the Patent Office in the IPR.  In distinguishing the prior art cited in the IPR petition, Plaintiff argued to the Patent Office that "Claim 15 requires a 'mode selector' that ***must*** be 'configured to determine whether' the recipient application is actively ***or not-actively*** processing status updates."  (Brigham Decl., Ex. 1 (06/28/2019 Patent Owner Preliminary Resp., IPR2019-00787), at p.17; *see also id.*, at pp.18-19.)  Federal Circuit law is clear that "[t]he public notice function of a patent and its prosecution history requires that a patentee be held to what he declares during the prosecution of his patent."  *Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003); *see also Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1360 (Fed. Cir. 2017) (holding that prosecution disclaimer extends to statements made in IPR proceedings).  These statements should be incorporated into the construction.

Plaintiff's proposal should be rejected.  First, it incorporates a lengthy listing of exemplary components and functionality that the "mode selector" may, but need not, comprise.  The specification itself characterizes them as mere examples.  ('236, 6:26-34.)  Incorporating this long, non-limiting list into the construction is improper and would be confusing and unhelpful to the jury.

Plaintiff's proposal next inserts the ambiguous and unsupported requirement that the mode selector "control[]" the mode of transmitting status messages.  But this is not a function of the claimed "mode selector."  The specification and the plain claim

language both make clear the mode selector merely *selects* a transmission mode, and do not suggest that the "mode selector" subsequently exerts control over how the selected transmission mode actually operates. ('236, e.g., 6:26-34, 12:10-24.)

The patent explains that other components actually *control* the transmission mode, such as the "status update assembler" and the separately-claimed "message generator." The status update assembler, for example, "generate[s] or collect[s] status updates" and may further comprise a "filter module [that] may discard or select for use status updates using algorithm-based filters based on the expected usage of the status update." ('236, 6:14-21.) And the separately-claimed "message generator," as explained below, generates status messages and causes them to be transmitted using the selected transmission mode. ('236, 6:34-38.)

Plaintiff's proposal further improperly limits the claims to a "wireless network," a requirement that the claims do not impose. The specification confirms that a "mobile communications device" is not limited to communicating over a wireless network. It provides a list of exemplary components – both <u>wired and wireless</u> – that the electronic device can utilize for network connectivity. For example, the network connectivity devices **1320** of the mobile communications device can include "Ethernet devices," "token ring devices," and "fiber distributed data interface (FDDI)" devices. ('236, 26:43-60, 25:36-54 (explaining that mobile communications device **110** may include network connectivity devices **1320**).) "Ethernet," "FDDI" and "token ring" are all examples of technologies for connecting devices through <u>wired</u> connections. (Brigham Decl., Ex. 2 (Microsoft Computer Dictionary (5th ed. 2002)), pp.172, 180, 445 (definitions of "Ethernet," "FDDI," and "Token Ring network").) And even when a wireless network is present, the specification confirms that it may be further coupled to a wired network. ('236, 25:10-11 ("The network **1200** may be coupled to a wired network **1208**, such as the Internet.").) There is no basis for limiting the claims to a "wireless network." Indeed the intrinsic record mandates the opposite.

Finally, Plaintiff's proposal incorrectly requires transmitting status messages "to

a recipient application," again subsuming a function the claim assigns to the separately-claimed "message generator."

## II.   "MESSAGE GENERATOR"

| WhatsApp's Proposed Construction | Plaintiff's Proposed Construction |
| --- | --- |
| "a hardware or software component, responsive to the mode selector, operable to generate status messages and cause the status messages to be transmitted to the recipient application using the selected message transmission mode" | "a hardware or software component, responsive to the mode selector, that is operable to prepare and send transmissions over a wireless network from a mobile communications device to a recipient application" |

The parties agree that a "message generator" is "a hardware or software component, responsive to the mode selector, [that is] operable" to perform certain functionality.  Again, WhatsApp's proposal tracks the specification, while Plaintiff's proposal improperly rewrites the specification's clear statements.

WhatsApp's proposal comes straight from the '236 patent's repeated descriptions of the "message generator":

> The <u>message generator</u> **112**, <u>responsive to the mode selector</u> **114**, is <u>operable to generate status messages</u> comprising status updates <u>and cause the status messages to be transmitted to recipient application</u> **250** <u>using the selected message transmission mode</u>.

('236, 6:34-38 (emphasis added); *see also id.*, 11:38-43 ("The mobile communications device may transmit status messages using a <u>message generator</u>, such as message generator **112** of FIG. 1, <u>operable to generate status messages</u> comprising status updates <u>and cause the status messages to be transmitted to recipient application</u> **250** <u>using the selected message transmission mode</u>.") (emphasis added).)

Plaintiff's proposal requires that the message generator be operable to "prepare…transmissions."  There is no reason to replace the patent's clear description of the message generator with ambiguous terms like "prepare" and "transmission."  The word "prepare" appears nowhere in the patent, let alone in connection with the message

generator.  And the only "transmissions" identified in connection with the message generator (in both the specification and claims) are status messages.  The claim recites a "*message* generator," not "transmission generator" or "transmission preparer."

Next, Plaintiff's proposal departs from the patent specification by requiring that the message generator actually "*send* transmissions" instead of "*cause* status messages *to be transmitted*."  The intrinsic record does not support such a requirement, and nowhere associates device components for actually sending transmissions (such as a transceiver) with the claimed message generator.  ('236, e.g., 26:43-60.)

Further, as with the "mode selector" term, Plaintiff's proposal improperly requires a "wireless network."  As explained above, there is no basis to import a "wireless network" limitation into the claims.  This last portion of Plaintiff's proposal further requires transmissions "from a mobile communications device."  But again, claim 15 already separately recites that status messages are transmitted "from the mobile communications device," so this surplus language serves no purpose.

## III.   THE ASSERTED CLAIMS OF THE '236 PATENT ARE INVALID UNDER § 101 WITH EITHER PARTY'S PROPOSED CONSTRUCTIONS

The Court ordered briefing on claim construction in order to resolve WhatsApp's pending motion for summary judgment of patent ineligibility under § 101.  As demonstrated above, WhatsApp's proposed constructions should be adopted because they are clear, understandable, and faithfully track the intrinsic record.

The claim construction process ordered by the Court has confirmed that the claims are invalid under § 101 regardless of which side's constructions are adopted.  Plaintiff's proposed constructions do nothing to advance its argument that the claims are directed at a technological improvement for conserving battery power.  The proposed constructions by both sides bring this case squarely in line with *ChargePoint*, which held that the end-result of conserving battery power did not render a claim eligible under § 101 when, as here, that result was simply the by-product of practicing the abstract idea to which the claim was directed.  *ChargePoint, Inc. v. SemaConnect,*

*Inc.*, 920 F.3d 759, 774-75 (Fed. Cir. 2019).   Thus, even if Plaintiff's proposed constructions were adopted, the claim would recite nothing more than a computer-based implementation of the abstract concept of a person choosing not to waste his or her breath by talking to another person who is not currently listening.

For example, both parties agree that the "mode selector" and "message generator" are merely generic "hardware or software components," which are operable to perform functions the claims assign to them.   Neither party contends that these components are specialized or technologically unique in any way.   Indeed, Plaintiff's own expert, who submitted a declaration in support of Plaintiff's claim construction positions, states that "mode selector" "was a **known term** understood by persons of ordinary skill" and that "the term was **commonly used** to refer to general hardware and software structures, without specifying particular implementation details."   (Brigham Decl., Ex. 3 (Almeroth Decl.), ¶¶ 73, 79) (emphasis added).)   For the term "message generator," he similarly states that it "was a **known term** understood by persons of ordinary skill for referring to such hardware and/or software structures" and "was **commonly used** in the art to refer to familiar hardware and software modules used to create and prepare transmissions for being sent over a network."   (*Id.*, ¶¶ 99, 105 (emphasis added).)   Plaintiff's admissions thus reinforce that the claims are directed at an abstract idea and recite only routine, conventional, and well-understood techniques for carrying it out.

Plaintiff's proposal for "mode selector" includes a long list of components from the specification (not in the claims), but that list is merely exemplary and does not narrow the claim scope.   *See ChargePoint, Inc.*, 920 F.3d at 766 ("[W]hen analyzing patent eligibility, reliance on the specification must always yield to the claim language in identifying that focus [for *Alice* step 1].").   Federal Circuit law also confirms that requiring a "wireless network," as Plaintiff proposes, would not change the § 101 analysis.   *See, e.g. Chamberlain Group, Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1346-47 (Fed. Cir. 2019) ("Wirelessly communicating status information about a system is similar to abstract ideas we have found in our previous cases."); *Affinity Labs*

*of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1265 (Fed. Cir. 2016) (finding "wireless" delivery limitations irrelevant to § 101 because they "describe purely conventional features of cellular telephones" and "do not meaningfully limit the scope of the claims."). The patent does not claim to have invented transmission of information over a wireless network; to the contrary, the specification includes a laundry list of existing wireless technologies, such Wi-Fi and several well-known conventional cellular networks, for use in implementing the alleged invention. ('236, 25:19-36.)

## IV.   CONCLUSION

Defendant WhatsApp Inc. respectfully requests that the Court adopt its proposed constructions of "mode selector" and "message generator."

1    Dated:  March 26, 2020                 COOLEY LLP

2                                           /s/ *Heidi L. Keefe*
                                            _____
3                                              Heidi L. Keefe

4                                           COOLEY LLP
                                            HEIDI L. KEEFE (178960)
5                                           (hkeefe@cooley.com)
                                            MARK R. WEINSTEIN (193043)
6                                           (mweinstein@cooley.com)
                                            MATTHEW J. BRIGHAM (191428)
7                                           (mbrigham@cooley.com)
                                            3175 Hanover Street
8                                           Palo Alto, CA 94304-1130
                                            Telephone: (650) 843-5000
9                                           Facsimile: (650) 849-7400

10

11                                          COOLEY LLP
                                            MICHAEL G. RHODES (116127)
12                                          (rhodesmg@cooley.com)
                                            101 California Street
13                                          5th Floor
                                            San Francisco, CA 94111-5800
14                                          Telephone: (415) 693-2000
                                            Facsimile: (415) 693-2222
15

16                                          Attorneys for Defendants
                                            FACEBOOK, INC., WHATSAPP INC.,
17                                          INSTAGRAM, INC., and INSTAGRAM,
                                            LLC
18

19

20

21

22

23

24

25

26

27

28