QUINN EMANUEL URQUHART & SULLIVAN, LLP
  James R. Asperger (Bar No. 83188)
  jamesasperger@quinnemanuel.com
  865 S. Figueroa St., 10th Floor
  Los Angeles, CA 90017
  Telephone: (213) 443-3000
  Facsimile: (213) 443-3100

  Kevin P.B. Johnson (Bar No. 177129)
  kevinjohnson@quinnemanuel.com
  555 Twin Dolphin Drive, 5th Floor
  Redwood Shores, CA 94065
  Telephone: (650) 801-5000
  Facsimile: (650) 801-5100

BLACKBERRY CORPORATION
  Edward R. McGah, Jr (SBN 97719)
  Vice President, Deputy General Counsel – Litigation
  41 Ticknor Place
  Laguna Niguel, California 92677
  Telephone: (+1) 650-581-4750

Attorneys for Plaintiff BlackBerry Limited

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLACKBERRY LIMITED, a Canadian corporation,<br><br>            Plaintiff,<br><br>      v.<br><br>FACEBOOK, INC., a Delaware corporation, WHATSAPP INC., a Delaware corporation, and INSTAGRAM, LLC, a Delaware limited liability company<br><br>            Defendants. | CASE NO. 2:18-cv-01844 GW(KSx)<br><br>**BLACKBERRY LIMITED'S RESPONSIVE BRIEF REGARDING SUPPLEMENTAL CLAIM CONSTRUCTION OF U.S. PATENT NO. 8,429,236**<br><br>**Hearing Date: April 20, 2020**<br>**Time: 8:30 A.M.**<br>**Judge: Hon. George H. Wu**<br>**Courtroom: 9D** |

Case No. 2:18-cv-01844 GW(KSx)
BLACKBERRY'S RESPONSIVE BRIEF RE '236 PATENT SUPPLEMENTAL CLAIM CONSTRUCTION

BlackBerry submits this Responsive Brief regarding Supplemental Claim Construction for the '236 Patent. Defendants' constructions for the "mode selector" and "message generator" terms distort the intrinsic record in an effort to improperly import requirements into the claims. With respect to § 112, ¶ 6, Defendants have never argued that either phrase should be construed as means-plus-function and the intrinsic and extrinsic evidence makes clear that § 112, ¶ 6 is inapplicable.[1]

## I.   DEFENDANTS' CONSTRUCTIONS SHOULD BE REJECTED

### A.   "Mode Selector"

Defendants' construction includes the requirement that the "mode selector" "determin[e] whether the recipient application is actively or not actively processing status updates." Defs. Op. Br. at 2. This argument should be rejected because it renders subsequent language of the claims redundant. For example, below is how Claim 15 would read if Defendants' proposed construction were adopted (Defendants' proposal in red, and redundant language underlined):

> 15. A mobile communications device, comprising:
> **a hardware or software component operable <u>to determine whether the recipient application is actively or not actively processing status updates from the mobile communications device</u> and to select a message transmission mode** configured <u>to determine whether a recipient application is actively processing status updates</u> and to select a message transmission mode based on whether the recipient application is actively processing status updates; and a message generator configured to generate status messages and to cause transmission of status messages from the mobile communications device to a recipient application using the selected message transmission mode.

Constructions that render subsequent language in a claim redundant are improper. *See*

---

[1] The Court directed that "[n]o further information about 35 U.S.C. § 101 is required." Dkt. 660 at 2. Accordingly, BlackBerry does not respond to the arguments Defendants made regarding Section 101 invalidity in their Opening Brief. To the extent the Court is subsequently inclined to grant Defendants' Motion, BlackBerry respectfully requests the opportunity to address those arguments.

*e.g., Apple, Inc. v. Ameranth, Inc.,* 842 F.3d 1229, 1237 (Fed. Cir. 2016); *TMI Products, Inc. v. Rosen Entertainment Systems, L.P.,* 610 Fed. Appx. 968, 972 (Fed. Cir. 2015). This principle gives unique meaning to each word used in a claim and avoids rendering claim language superfluous. *See e.g., Fifth Generation Computer Corp. v. Int'l Bus. Machines Corp.*, 416 Fed. Appx. 74, 78-79 (Fed. Cir. 2011). Defendants' construction should be rejected on this basis alone.

Defendants' construction should also be rejected as attempting to introduce requirements not found in the plain claim language. For example, Defendants propose that the mode selector must "determine whether the recipient application is actively or not actively processing status updates **from the mobile communications device**." But this language is not present in the claim itself. Instead, Defendants point to a single embodiment in the specification where the specification states that "[t]he mode selector *may* be any component operable to determine whether the recipient application is actively processing status updates from mobile communications device in accordance with this disclosure and to select a message transmission mode." Defs. Op. Br. at 1-2 (quoting '236 Patent at 6:22-26) (emphasis added). It is improper to use this embodiment to limit the claim and require that status updates must come from the mobile communications device. *See Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1284 (Fed. Cir. 2012) ("This court will not read such a limitation into the term merely because it is disclosed in some embodiments.").

Similarly, Defendants' proposed construction purports to add the requirement that the mode selector operate so as "to determine whether the recipient application is actively **or not actively processing** status updates . . . ." But again, the claim language requires only that the mode selector be "configured to determine whether a recipient application *is actively processing* status updates." There is no requirement anywhere in the intrinsic evidence that the mode selector make a negative determination that the recipient application is *not actively processing*.

Lacking any basis in the specification or the claim language, Defendants point

to BlackBerry's Patent Owner Preliminary Response to Defendants' IPR Petition. Defs. Op. Br. at 2 (quoting Brigham Ex. 1 at 17). But Defendants ignore that "[c]laim language and the specification generally carry greater weight than the prosecution history." *HTC Corp. v. IPCom GmbH & Co., KG*, 667 F.3d 1270, 1276 (Fed. Cir. 2012). Indeed, because statements in the prosecution history often "lack[] the clarity" of other intrinsic evidence, courts are reluctant to find prosecution disclaimer absent a clear and unequivocal surrender of claim scope. *Msignia, Inc. v. InAuth, Inc.*, No. 17-cv-1289, 2018 WL 5099724, at *1, *2-5 (C.D. Cal. June 6, 2018) (rejecting claim construction premised on statements made in Patent Owner IPR Response); *accord Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347, 1364 (Fed. Cir. 2019).

Defendants fail to provide any articulated reason why BlackBerry's IPR argument should override the unambiguous claim language. In the IPR, BlackBerry did not propose a limiting claim construction for the term "mode selector," but rather merely made arguments about how that term applied to a particular prior art reference ("Haave"). BlackBerry's argument was simply that Haave's ability to receive an "unsolicited command" did not disclose a "mode selector" that was able to determine whether the purported "recipient application" in that reference was, or was not, processing status updates for purposes of selecting a mode. But here, by contrast, Defendants are attempting to inject a *different* and more *restrictive* limitation that would require the "mode selector" to determine when the recipient application is no longer processing status updates for purposes of exiting the mode. Defendants offer no justification from the IPR proceedings for this restriction. *See HTC Corp.*, 667 F.3d at 1276. The Court should reject Defendants' construction for "mode selector."

Defendants take issue with BlackBerry's proposed construction to the extent it includes exemplary components expressly identified in the specification. Defs. Op. Br. at 2. But Defendants cite no authority that the inclusion of such material is improper and simply make the conclusory allegation that such materials are "unhelpful." *Id.* However, in fact, these components help orient the finder of fact

and provide important context for the role of the mode selector. Almeroth Decl. ¶ 71.

Defendants next complain that the mode selector does not "control" the mode of transmitting status messages, but rather "selects a transmission mode." Defs. Op. Br. at 2-3. But Defendants do not explain what the difference is between "controlling" the mode in which status messages are sent and "selecting" the mode in which status messages are sent such that it is unclear what distinction Defendants are drawing here. Furthermore, the fact that separate components, such as a status update assembler or a message generator, may be involved in the creation and transmission of status messages says nothing about the mode selector's role in controlling the mode (*e.g.,* the timing, rate, and/or manner) in which they are sent.

Finally, Defendants complain that BlackBerry's inclusion of "wireless network" in its proposed construction is a "requirement that the claims do not impose." Defs. Op. Br. at 3. But Defendants ignore how the specification, as well as the context of the claims, clearly indicate that the invention is intended to address a problem in the field of *mobile* devices, *i.e.* those connected to wireless networks. '236 Patent at 1:29-36 ("Each transmission from the mobile communications device consumes power from the battery on the device and utilizes a wireless communications channel 35 during the transmission."). As the specification states "[t]his disclosure describes arrangements which enable a mobile communications device to transmit status updates efficiently over a wireless network to a recipient application" and is replete with references to wireless networks. '236 Patent at 3:7-9. There is not a single embodiment disclosed in the '236 Patent that does not include a wireless network. *See CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1160 (Fed. Cir. 1997) ("[T]he problem the inventor was attempting to solve, as discerned from the specification and the prosecution history, is a relevant consideration.").

Defendants attempt to side-step this intrinsic evidence by pointing to a single paragraph in the specification that references components such as "Ethernet devices," "token ring devices," and "fiber distributed data interface (FDDI)" devices. Defs. Op.

Br. at 3.  But, Defendants fail to mention that the possibility of these wired connections exist *only* in the context of Figure 13, whose components the patent teaches "may be located in a single physical entity or in more than one physical entity."  '236 Patent at 25:52-54.  Thus, even in the embodiment cited by Defendants—in which the "network connectivity device 1320" may comprise (for example) an "Ethernet" device—the network connectivity device is *still* described as being further coupled to "one or more tranceiver components 1325 capable of transmitting and/or receiving data *wirelessly*."  '236 Patent at 26:57-60 (emphasis added) & Fig. 13.  Thus, the Court should adopt BlackBerry's construction.

### B.   "Message Generator"

With respect to the "message generator" term, the parties' constructions differ in three respects.  First, BlackBerry proposes that the message generator be "operable to prepare and send transmissions" while Defendants propose "operable to generate status messages and cause the status messages to be transmitted."  The Court should adopt BlackBerry's construction because it is easier for a jury to understand what the words "prepare," "send," and "transmission" mean in an ordinary context.  Defendants confusingly propose instructing the jury that a "message generator" is a component that "generate[s] status messages."  This sort of circular construction is disfavored.  *See Harris Corp. v. IXYS Corp.*, 114 F.3d 1149, 1152 (Fed. Cir. 1997).

Second, Defendants argue that the message generator does not "send transmissions" but rather "cause[s] status messages to be transmitted" because the actual transmission is performed by other components, such as a transceiver.  Defs. Op. Br. at 5.  This is, at best, a matter of semantics.  As the component that generates the message, the message generator must, by definition, send the status messages somewhere, even if to a transceiver that performs the physical transmission.

Third, as they do with the "mode selector" term, Defendants complain that BlackBerry's inclusion of the "wireless network" in its proposed construction is improper.  *Id.* at 5.  But, as set forth above, not only is the invention directed towards

solving a problem specific to the field of wireless mobile devices, all embodiments similarly involve a wireless network. Thus, the Court should also adopt BlackBerry's proposed construction of "message generator" and reject Defendants' construction.

## II.     SECTION 112(6) DOES NOT APPLY

Pursuant to the Court's March 27, 2020 Order (Dkt. 660), BlackBerry addresses here whether the terms "mode selector" or "message generator" are subject to § 112, ¶ 6. Defendants have never before argued—in their invalidity contentions, their expert reports, or in their many legal briefs—that either term is subject to § 112, ¶ 6. To the contrary, both parties and their experts have applied the plain and ordinary meaning of these terms, without issue, throughout fact and expert discovery. There is no dispute that the parties have understood the terms to connote definite structure.

The parties' settled understanding of these terms is legally correct. By its own terms § 112, ¶ 6 only applies if a claim term is "expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof . . . ." As is the case here, "the failure to use the word 'means' creates a presumption that § 112, ¶ 6 does not apply." *See e.g., Personalized Media Communications, LLC v. Int'l Trade Com'n,* 161 F.3d 696, 704-5 (Fed. Cir. 1998). To overcome the presumption, a party advocating for § 112, ¶ 6 treatment must demonstrate that claim language would not be "understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015).

Determining whether a claim term invokes § 112, ¶ 6 requires a consideration of the claim as a whole, including the contextual language surrounding the disputed term. *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1320-21 (Fed. Cir. 2004) (term "circuit" was sufficiently structural where claim described the circuit's objective and thus provided the additional limiting structure). The specification, and its description of structural embodiments, also informs the inquiry. *Inventio AG v. ThyssenKrupp Elevator Americas Corp.*, 649 F.3d 1350, 1357 ("It is proper to consult

the intrinsic record . . . when determining if a challenger has rebutted the presumption that a claim lacking the term 'means' recites sufficiently definite structure."). Finally, extrinsic evidence demonstrating a common understanding of the term is also relevant. *Flo Healthcare Solutions, LLC v. Kappos*, 697 F.3d 1367, 1374 (Fed. Cir. 2012) ("We will not apply § 112, ¶ 6 if the limitation contains a term that 'is used in common parlance or by persons of skill in the pertinent art to designate structure.'").

The structure necessary to avoid § 112, ¶ 6 need not "connote a precise physical structure in the minds of those of skill in the art." *Personalized Media,* 161 F.3d at 705 (term "digital detector" was sufficiently structural because it conveyed a class of structures); *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1359-61 (Fed. Cir. 2004) (term "connector assembly" was not so generic as to invoke § 112, ¶ 6). This is particularly true for patents directed to computer-implemented inventions. *Apple Inc. v. Motorola*, 757 F.3d 1286, 1298-99 (Fed. Cir. 2014). As the Court in *Apple* noted, for example, "looking for traditional 'physical structure' in a computer software claim is fruitless because software does not contain physical structures. . . . Requiring traditional physical structure in software limitations lacking the term means would result in all of these limitations being construed as means-plus-function limitations and subsequently being found indefinite." *Id.* at 1298-99.

The Federal Circuit's recent decision in *Samsung Electronics America, Inc. v. Prisua Engineering Corp.*, 948 F.3d 1342 (Fed. Cir. Feb. 4, 2020) is also instructive. There, the Federal Circuit held that the term "digital processing unit" was not subject to § 112, ¶ 6 because the term "clearly serves as a stand-in for a 'general purpose computer' or a 'central processing unit,' each of which would be understood as a reference to structure in this case, not simply any device that can perform a particular function." *Id.* at 1354. The Federal Circuit further credited the patentee's expert testimony that "the digital processing unit recited in the claims is an image processing device that people in the art are generally familiar with." *Id.*

With these principles in mind, the "mode selector" and "message generator"

connote sufficient structure to a person of ordinary skill in the art and thus do not invoke § 112, ¶ 6. As an initial matter, while the Court has noted that these terms are "functional sounding," it is important to recognize that these are ***not*** the type of "nonce" terms that lack any specific structural meaning and are used as a mere placeholder (*e.g.*, "module," "element," "mechanism"). Rather, as is common with human language, these terms recite a class of structure by describing the function that the structure is intended to perform (*e.g.*, "filters," "brakes," "clamp," "screwdriver," and "locks"). *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996). "The fact that a particular mechanism [] is defined in functional terms is not sufficient to convert a claim element containing that term into a 'means for performing a specified function' within the meaning of section 112(6)." *Id.*

Here, a skilled artisan would understand the structural limitations inherent in these terms. First, the claims themselves provide context as to how the "mode selector" and "message generator" interact with other components to achieve the overall objective of the invention. The claims recite how the "mode selector" must "determine whether a recipient application is actively processing status updates," and must "select a message transmission mode" based on that determination. The claims further recite how the "message generator" is responsive to the "mode selector" and is "configured to generate status messages and to cause transmission of status messages . . . using the selected transmission mode." As in *Linear Tech.*, this "contextual language describes the objective of the [terms]," allowing a skilled artisan to understand the intended structural arrangement of components. 379 F.3d at 1320.

The specification also provides definite, structural examples that further weigh against § 112, ¶ 6 treatment. The "mode selector" may, for example, comprise one of a number of specific embodiments. *E.g.*, '236 Patent at 6:26-34. In fact, dependent claim 17 specifically limits the scope of the "mode selector" to one of these structural embodiments—"a component to observe a local database." Similarly, the role of the "message generator" is described by the specification in the form of a "network

connectivity device" that "enable[s] the processor to communicate with the Internet or one or more telecommunications networks or other networks . . . to which the processor might output information." '236 Patent at 26:52-57. The specification provides a number of structural embodiments. *Id.* at 26:43-52. These examples reinforce the structural meaning of the terms. *Inventio*, 649 F.3d at 1359.

Finally, BlackBerry has provided unrebutted expert testimony that the terms "mode selector" and "message generator" were used in common parlance. Almeroth Decl. ¶¶ 73-79, 98-104. Dr. Almeroth supports this opinion with analysis of corroborating extrinsic evidence. *Id.* ¶¶ 74-79, 100-105. Defendants, on the other hand, have offered no evidence to rebut the presumption against a § 112, ¶ 6 construction here. In fact, Defendants and their expert have offered non-infringement and invalidity positions in this litigation predicated on the assumption that the claim terms do *not* invoke § 112, ¶ 6. Should Defendants offer new evidence and arguments supporting a § 112, ¶ 6 construction, BlackBerry requests an opportunity to respond.

While § 112, ¶ 6 is inappropriate, should the Court find otherwise, BlackBerry identifies the following function/structure that at least render the claims definite:

| **"Mode Selector"** |
|---|
| **Function**: determine whether a recipient application is actively processing status updates and select a message transmission mode based on whether the recipient application is actively processing status updates |
| **Structure**: a recipient callback module, timer, components to observe a local database, components to inspect a request message from a recipient application, components to compare a timestamp with the local time of the mobile communication device (*see* '236 Patent at 6:26-34) |

| **"Message Generator"** |
|---|
| **Function**: generate status messages and cause transmission of status messages from the mobile communications device to a recipient application using the selected transmission mode |
| **Structure**: a modem, modem bank, Ethernet device, universal serial bus (USB) interface device, serial interface, token ring device, fiber distributed data interface (FDDI) device, wireless local area network (WLAN) device, radio transceiver device such as code division multiple access (CDMA) device, global system for mobile communications (GSM) radio transceiver device, or worldwide interoperability for microwave access (WiMAX) device (*see id.* at 26:43-57) |

DATED: April 6, 2020            Respectfully Submitted,

By /s/ *James R. Asperger*

QUINN EMANUEL URQUHART & SULLIVAN, LLP
James R. Asperger (Bar No. 83188)
jamesasperger@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

BLACKBERRY CORPORATION
Edward R. McGah, Jr (SBN 97719)
Vice President, Deputy General Counsel
41 Ticknor Place
Laguna Niguel, California 92677
Telephone: (+1) 650-581-4750

Attorneys for BlackBerry Limited