COOLEY LLP
HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
MARK R. WEINSTEIN (193043)
(mweinstein@cooley.com)
MATTHEW J. BRIGHAM (191428)
(mbrigham@cooley.com)
3175 Hanover Street
Palo Alto, California  94304
Telephone:  (650) 843-5000
Facsimile:  (650) 849-7400

COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
101 California Street
5th Floor
San Francisco, CA 94111-5800
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

ATTORNEYS FOR DEFENDANTS
FACEBOOK, INC., WHATSAPP INC.
and INSTAGRAM, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| BLACKBERRY LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC., WHATSAPP INC., INSTAGRAM, INC. and INSTAGRAM, LLC,<br><br>Defendants. | Case Nos. 2:18-cv-01844-GW-KSx;<br>2:18-cv-02693-GW-KSx<br><br>**DEFENDANT WHATSAPP INC.'S RESPONSIVE SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF REGARDING U.S. PATENT NO. 8,429,236** |

Defendant WhatsApp Inc. respectfully submits the present brief in response to both the March 26, 2020 opening supplemental claim construction brief filed by BlackBerry (ECF No. 658) and the Court's order of March 27, 2020 (ECF No. 660). For the convenience of the Court, this brief will address the issues in two parts. The first part will address the Court's request for briefing on whether "mode selector" and "message generator" should be governed by 35 U.S.C. § 112, ¶ 6 ("§ 112(6)"), and the second part will address the arguments of BlackBerry in its opening brief with respect to the competing proposals exchanged by the parties.

## I. THE COURT SHOULD FIND THAT THE PRESUMPTION AGAINST MEANS-PLUS-FUNCTION TREATMENT OF "MODE SELECTOR" AND "MESSAGE GENERATOR" HAS NOT BEEN OVERCOME

Neither party contends that these terms are subject to § 112(6). Because these terms do not recite the word "means," the law presumes that they are not governed by § 112(6). *See Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015) (en banc). That presumption can be overcome "if <u>the challenger demonstrates</u> that the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Id.* (emphasis added). The "challenger" in this case refers to the party who challenges (*i.e.* seeks to rebut) that presumption. *Cf.* FED. R. EVID. 301 ("[T]he party against whom a presumption is directed has the burden of producing evidence to rebut the presumption.").

Neither party has sought to rebut the presumption, let alone introduced evidence or argument of a lack of sufficient structure. BlackBerry has submitted expert testimony affirmatively opining that both claim terms recite sufficient structure to avoid application of § 112(6). (ECF No. 658-1, Almeroth Decl., ¶¶ 68-80, 97-106.) The Court should therefore find that the presumption against § 112(6) treatment of "mode selector" and "message generator" has not been overcome, and therefore, controls. *See Apex, Inc. v. Raritan Comp., Inc.*, 325 F.3d 1364, 1372 (Fed. Cir. 2003) ("If the party who must bring forth evidence fails to proffer sufficient evidence to meet its burden, the presumption, either for or against the application of § 112, ¶ 6, prevails.").

WhatsApp is not aware of any authority suggesting that a party is obligated to attempt to rebut the presumption that § 112(6) does not apply. Nor is WhatsApp aware of any case law obligating the Court to *sua sponte* address and attempt to rebut the presumption itself. To the contrary, Federal Circuit law is clear that, despite the legal nature of the claim construction inquiry, a district court has no obligation to *sua sponte* reach out to address issues over which the parties have no dispute. *See, e.g.*, *Vivid Techs., Inc. v. America Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) (explaining that in construing terms, "only those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy."). "Thus, a district court's duty at the claim construction stage is, simply, the one that we described in *O2 Micro* and many times before: to resolve a dispute about claim scope that has been raised by the parties." *Eon Corp. IP Holdings LLC v. Silver Springs Networks, Inc.*, 815 F.3d 1314, 1319 (Fed. Cir. 2016) (citing *O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) and other cases).

The Court's order of March 27 appears to suggest surprise that Defendants did not argue that "mode selector" and "message generator" should be governed by § 112(6). The Court even suggested in a footnote that perhaps Defendants were seeking to protect their own patents "that use similar function-sounding terms," by avoiding inconsistent positions. (ECF No. 660 at 1 n.2.) But Defendants' positions are driven solely by the specific facts and circumstances in this case. Although reasonable arguments can be made on both sides of the § 112(6) issue in this case, a "means-plus-function" treatment would result in a construction that is significantly more verbose but would not materially affect either the non-infringement or invalidity issues in this case. Accordingly, because (1) the law presumes that § 112(6) does not apply, (2) neither party contends that the presumption should be overcome (and BlackBerry affirmatively argues that it cannot), and (3) means-plus-function treatment would add verbiage but not materially affect the merits of any disputed issue, there was simply no reason for WhatsApp to argue to the contrary.

The term "**mode selector**" provides a good illustration of why the § 112(6) question is not only a reasonably close one, but one whose resolution would not be helpful. If the Court were to conclude that "**mode selector**" is governed by § 112(6), the construction would likely need to incorporate a number of corresponding structures from the specification that carry out its function. The specification explains that "[t]he mode selector may be <u>any component</u> operable to determine whether the recipient application is actively processing status updates from mobile communications device in accordance with this disclosure and to select a message transmission mode." ('236, 4:10-14 (underlining added).) The specification then lists at least a half dozen examples of such components that correspond to the function of the claimed mode selector:

> For example, but without limitation, the mode selector may comprise one or more of a recipient callback module, timer, components to observe a local database, components to inspect a request message from a recipient application, components to compare a timestamp with the local time of the mobile communications device, or other modules operable to determine whether the recipient application is actively processing status updates from mobile communications device in accordance with this disclosure.

('236, 4:14-22.)

The question of whether "mode selector" connotes sufficient structure, in the context of the entire intrinsic record, is a reasonably close one. The specification does not suggest that the claimed "mode selector" involves overly complex or intricate logic or software, and the list above concludes with an almost dismissive open-ended catchall suggesting that any other known "other modules" could be used instead. *See Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003, 1008 (Fed. Cir. 2018) ("Given that '[t]he basic concept behind both of the patents-in-suit is relatively simple,' a person of ordinary skill in the art could reasonably discern from the claim language that the words 'program,' … and 'user interface code,' … are used not as generic terms or black box recitations of structure or abstractions, but rather as specific references to conventional graphical

user interface programs or code, existing in prior art at the time of the inventions."). BlackBerry's expert on the '236 patent, in fact, contends that "mode selector" was a "commonly used" term referring to "familiar" hardware or software components. (ECF No. 658-1, ¶79 ("[T]he term 'mode selector' was commonly used in the art to refer to familiar hardware or software modules used to control the transmission of messages over a network. While the specific implementation of a 'mode selector' depended on its purpose and the technical environment in which the 'mode selector' was intended to operate, the term was commonly used to refer to general hardware and software structures, without specifying particular implementation details….").) In any case, the way the '236 patent describes the "mode selector" supports a reasonable argument that the patent uses the term "to designate structure, even if the term covers a broad class of structures and even if the term identifies the structures by their function." *Skky, Inc. v. MindGeek, S.A.R.L.*, 859 F.3d 1014, 1019 (Fed. Cir. 2017).

Moving to practical considerations, were the Court to apply § 112(6) to "mode selector," it would likely end up adopting a verbose construction that includes the several different exemplary components listed in the passage above. But such a construction would not advance resolution of any dispute because it would not meaningfully alter the scope of the claim. This is because one of the exemplary components that any § 112(6) corresponding structure would incorporate includes "components to observe a local database" ('236, 6:27-28), which are already separately recited in dependent claim 17. ('236, claim 17 ("… wherein the mode selector comprises a component to observe a local database for a record in the database, the record comprising an indication that the recipient application is actively processing status updates.").) BlackBerry has asserted claim 17 against WhatsApp; accordingly, both sides have submitted expert reports explaining why they believe the claimed component to observe a local database is allegedly present in the accused product (according to BlackBerry) or in the prior art and not infringed (according to WhatsApp). Accordingly, a construction under § 112(6) of "mode selector" would likely do little

more than add a considerable amount of confusing verbiage about additional (but exemplary) components on which BlackBerry's infringement case does not appear to rely, while not sufficiently altering the claim's scope in a way that would impact non-infringement or invalidity issues.

The same observations apply to the "**message generator**" – there is a reasonable argument that § 112(6) does not apply, and even if it did, the resulting construction would not materially impact the scope of the claim or any substantive issues. The functionality of the "message generator" is even more basic than that of the "mode selector." The specification of the '236 patent admits that the prior art ("modern mobile communications devices") already had the capability of collecting status updates, and including them in status messages transmitted over a wireless network to a recipient application. ('236, 2:46-54, 1:21-28.) There is thus a reasonable argument that the claimed "message generator" is not "used not as generic terms or black box recitations of structure or abstractions, but rather as specific references to conventional [status message generation] programs or code, existing in prior art at the time of the inventions." *Zeroclick, LLC*, 891 F.3d at 1008.

WhatsApp acknowledges that the Federal Circuit found "symbol generator" subject to § 112(6) in *Advanced Ground Information Systems, Inc. v. Life360, Inc.*, 830 F.3d 1341, 1346-48 (Fed. Cir. 2016), but that case is distinguishable. The claimed "generator" there did not simply perform the prior art function of generating status messages and cause them to be transmitted. The "symbol generator" instead created graphical symbols to indicate location and status for display on a graphical user interface map. *Id.* at 1344-45. The function of the "symbol generator" in *Life360* was significantly more complex than the "message generator," and unlike the '236 patent, there is no indication from the decision that the patent in *Life360* described the "symbol generator" as performing a common prior art feature.[1]

---

[1] As explained in the text, WhatsApp respectfully requests that the Court decline to treat the two disputed terms as means-plus-function claim limitations. Nevertheless, if the

## II. BLACKBERRY'S PROPOSALS SHOULD BE REJECTED

WhatsApp provided a full explanation of the merits of the parties' competing constructions in its opening supplemental claim construction brief (ECF No. 658), and BlackBerry's arguments in its supplemental brief are unpersuasive.

With respect to the "mode selector" term, BlackBerry's opening brief argues that WhatsApp's construction is "circular" and "unhelpful," but tellingly, does not contend that there is anything substantively incorrect about any aspect of it. BlackBerry complains that WhatsApp's proposed construction is "circular" because it defines the term using language similar to the language in the surrounding claim language. (ECF No. 658, at 4:8-14.) But WhatsApp's proposal is based on the clear description of the "mode selector" in the patent specification, which happens to use language similar to the claim. ('236, 6:22-26 ("The mode selector **114** may be any component operable to determine whether the recipient application **250** is actively processing status updates from mobile communications device **110** in accordance with this disclosure and to select a message transmission mode.").) The Federal Circuit has explained that "the claims themselves provide substantial guidance as to the meaning of particular claim terms." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc). The fact that the specification and claims so closely match WhatsApp's proposed construction is a strong indication that WhatsApp's proposal is legally correct.

Nor does BlackBerry's opening brief identify anything substantively incorrect about WhatsApp's construction of "message generator." BlackBerry instead makes the following puzzling argument against WhatsApp's construction:

> This overly simplistic construction ignores the intrinsic evidence that teaches how the message generation process involves the mobile communication device "collect[ing] a plurality of status updates during a period of time, and

Court were to decide otherwise and adopt a means-plus-function construction for each term, WhatsApp respectfully requests additional briefing to explain why the pending motion for summary judgment based on Section 101 would not be not impacted by such construction.

> includ[ing] the plurality of status updates in a status message transmitted over a wireless network to a recipient application." Ex. 1 ('236 Patent) at 2:50-54. In other words, the "message generator" *prepares* a collection of "status updates" into a form suitable for transmission over the network medium. *Id*. at 5:42-55. Only BlackBerry's proposed construction captures this context.

(ECF No. 658, at 5:16-23 (italics in original).) But the "context" that BlackBerry cites from the specification consists of a description of "modern mobile communication devices" of the prior art. ('236, 2:46-54.) To the extent that "context" is relevant (and BlackBerry does not explain why it is), BlackBerry's proposed construction does not even capture it. BlackBerry's proposed construction says nothing about collecting "status updates" and including them in "status messages" – those terms do not even appear in its construction. BlackBerry's proposal instead merely requires a hardware or software component operable "to prepare and send *transmissions* over a wireless network from a mobile communications device to a recipient application." The only portion of the so-called context that BlackBerry's construction captures is the word "prepare," which is less clear than the term "generate" that the claims use to describe the function of the message generator. As WhatsApp explained in its opening brief, the claim recites a "message generator," not a "transmission preparer."

### III.   CONCLUSION

Defendant WhatsApp Inc. respectfully requests that the Court adopt its proposed constructions of "mode selector" and "message generator."

Dated: April 6, 2020

COOLEY LLP

/s/ *Heidi L. Keefe*
 Heidi L. Keefe

COOLEY LLP
HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
MARK R. WEINSTEIN (193043)
(mweinstein@cooley.com)
MATTHEW J. BRIGHAM (191428)
(mbrigham@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
101 California Street
5th Floor
San Francisco, CA 94111-5800
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

Attorneys for Defendants
FACEBOOK, INC., WHATSAPP INC., INSTAGRAM, INC., and INSTAGRAM, LLC