QUINN EMANUEL URQUHART & SULLIVAN, LLP
  James R. Asperger (Bar No. 83188)
  jamesasperger@quinnemanuel.com
  865 S. Figueroa St., 10th Floor
  Los Angeles, CA 90017
  Telephone: (213) 443-3000
  Facsimile: (213) 443-3100

  Kevin P.B. Johnson (Bar No. 177129)
  kevinjohnson@quinnemanuel.com
  555 Twin Dolphin Drive, 5th Floor
  Redwood Shores, CA 94065
  Telephone: (650) 801-5000
  Facsimile: (650) 801-5100

BLACKBERRY CORPORATION
  Edward R. McGah, Jr (SBN 97719)
  Vice President, Deputy General Counsel – Litigation
  41 Ticknor Place
  Laguna Niguel, California 92677
  Telephone: (+1) 650-581-4750

Attorneys for Plaintiff BlackBerry Limited

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLACKBERRY LIMITED, a Canadian corporation,<br><br>             Plaintiff,<br><br>      v.<br><br>FACEBOOK, INC., a Delaware corporation, WHATSAPP INC., a Delaware corporation, and INSTAGRAM, LLC, a Delaware limited liability company<br><br>             Defendants. | CASE NO. 2:18-cv-01844 GW(KSx)<br><br>**BLACKBERRY LIMITED'S SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT THAT U.S. PATENT NO. 8,429,236 IS INVALID UNDER 35 U.S.C. § 101** |

Pursuant to the Court's April 15 Order (Dkt. 663), BlackBerry submits this brief in opposition to Defendants' arguments that the Court should grant their motion for summary judgment that U.S. Patent 8,429,236 (the "'236 Patent") is invalid under 35 U.S.C. § 101 (the "Motion"). As directed by the Court, the parties advanced competing constructions for the "mode selector" and "message generator" terms of the '236 Patent. Dkt. 658, 659, 661, & 662. However, under either parties' proposed constructions, the claim construction proceedings have made clear that the '236 Patent is patent-eligible, and that Defendants' Motion should be denied.

## I. CLAIM CONSTRUCTION BRIEFING HAS DEMONSTRATED THAT THE '236 PATENT IS PATENT ELIGIBLE UNDER SECTION 101

*First*, the supplemental claim construction process has confirmed that the claims of the '236 Patent are directed to a sufficiently definite arrangement of structural components that do not raise undue preemption concerns. Previously, Defendants criticized the "high-level, functional language" of the '236 Patent claims as "clearly rais[ing] preemption concerns." Dkt. 633 at 13. According to Defendants at summary judgment, the '236 Patent described the claimed "mode selector" and "message generator" as nothing more than "nondescript blank boxes." Dkt. 540-1 at 27. Yet, when expressly invited to advance a § 112, ¶ 6 construction (Dkt. 660), Defendants declined, because such a construction would impose "confusing verbiage" that would "not sufficiently alter[] the claim's scope in a way that would impact noninfringement or invalidity issues." Dkt. 662 at 5. For purposes of claim construction, Defendants argued that the "mode selector" and "message generator" terms were *not* "generic terms or black box recitations," but were used by the '236 Patent claims to "designate structure." *Id.* Indeed, the parties now both agree that these components connote sufficient structure as written. *See* Dkt. 662 at 1, 3.

Defendants' more recent pronouncements regarding "mode selector" and "message generator," as well as their admission that § 112, ¶ 6 does not apply, belies their prior criticisms of these terms. As Defendants have now admitted, the disputed

terms are not purely functional, nor do they improperly expand the scope of the claims beyond the concrete structural embodiments disclosed by the specification. In light of Defendants' position at claim construction, the Court should now give no weight to Defendants' summary judgment arguments that these terms are overly functional, rendering them overbroad or preemptive.

*Second*, Defendants' supplemental claim construction brief acknowledges that, when considered in their entirety,[1] the claims of the '236 Patent do, in fact, result in a technological improvement to the battery life of a mobile communications device. Dkt. 659 at 5 (noting that the "end-result" of practicing the '236 Patent claims was the conservation of battery power); *see also* Dkt. 567 at 3 (Defendants' description of technical testing by their own expert that indicates an admitted battery savings from practicing the '236 Patent claims). This alone requires that the Court deny summary judgment. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) ("[T]he claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks.").

Citing *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 774-75 (Fed. Cir. 2019), Defendants claim that the Court may ignore the admitted technological benefit of the '236 claims as simply the "by-product of practicing the abstract idea to which the claim was directed." Dkt. 659 at 5. This is not correct. In *ChargePoint*, "the problem perceived by the patentee" was decidedly *not* technological in nature, but rather involved "a lack of a communication network for [] charging stations, which limited the ability to efficiently operate them *from a business perspective*." *Id.* at 768

---

[1] Defendants attempt to shift the focus toward individual claim elements in isolation. Dkt. 659 at 5 ("Plaintiff's proposed constructions do nothing to advance its argument that the claims are directed at a technological improvement for conserving battery power."). This is improper. *CardioNet, LLC v. InfoBionic, Inc.*, --- F.3d ---, 2020 WL 1897237, at *8 (Fed. Cir. Apr. 17, 2020) ("The analysis under Alice step one is whether the claims *as a whole* are 'directed to' an abstract idea") (emphasis added).


Case 2:18-cv-01844-GW-KS   Document 664   Filed 04/23/20   Page 4 of 9   Page ID #:44941

(emphasis added).  Critically, the Court expressly noted how "the specification never suggests that the charging station itself is improved from a technical perspective, or that it would operate differently than it otherwise could."[2]  *Id.*  Defendants are therefore wrong that *ChargePoint* justifies ignoring, as a mere "by-product," the technical benefit that the '236 Patent provides.  This undisputed technical benefit renders the claims non-abstract as a matter of law under *DDR* and similar precedents.

    ***Third***, at a minimum, factual issues preclude summary judgment at step two.  As the moving party and patent challenger, it is Defendants' burden to demonstrate that the ordered combination of claim elements was not inventive.  *See BASCOM Global Internet Services, Inc. v. AT&T Mobility, LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016).  But, Defendants cite ***no*** historical evidence that selecting a transmission mode based on whether a recipient application is actively processing status updates meets this standard.  In fact, the PTAB denied Defendants' proposed IPR because the prior art failed to disclose this configuration of elements.  *See generally* Dkt. 658-4.

    Tellingly, Defendants' expert was not willing to opine as to whether the claims were "routine, conventional, or well-known" at the time of the invention; the most he was willing to say was that the claims "recite an order that a person of ordinary skill in the art would find logical and would expect."  Dkt. 631-2 at 97 (emphasis added).  The jury should consider why Defendants' expert has opted to couch his opinions from a hindsight perspective and using an unrecognizable legal standard.

    In their supplemental claim construction brief, Defendants cite liberally from the declaration of BlackBerry's expert (Dr. Kevin Almeroth) in an effort to back-fill their deficient summary judgment record.  Dkt. 659 at 6.  But, Dr. Almeroth's testimony that the "mode selector" and "message generator" terms, ***in isolation***,

---

[2]  The '236 Patent, by contrast, clearly links the claimed technique to an improvement in battery efficiency of the mobile device.  '236 Patent at 3:20-24 ("By selecting between different message transmission modes, the mobile communications device is able to conserve resources during times when the recipient application is not actively processing the status updates."); *see also id.* at 1:18-29.


-3-   Case No. 2:18-cv-01844 GW(KSx)
BLACKBERRY'S SUPPLEMENTAL BRIEF RE: SECTION 101 VALIDITY FOR THE '236 PATENT

referred to "known" components are hardly relevant admissions. *BASCOM*, 827 F.3d at 1350 ("The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art."); *see also CardioNet*, 2020 WL 1897237, at *8-9. This is because, as Dr. Almeroth explained, the novelty of the '236 Patent is in how the known components interact with one another in order to create a more efficient mobile communications device. Dkt. 658-1 (Almeroth Decl.) ¶¶ 87, 113. While conventional mobile devices selected modes and transmitted messages based on their own internal status, the approach of having such a mobile device do so on the basis of *other* applications was "unknown" in the prior art. *Id.* ¶¶ 88, 114. This at least raises a genuine issue of fact, rendering summary judgment inappropriate.

## II. RECENT FEDERAL CIRCUIT LAW CONFIRMS THAT THE '236 PATENT IS PATENT ELIGIBLE UNDER SECTION 101

*Ericsson Inc. v. TCL Communication Technology Holdings Ltd.*, --- F.3d ---, 2020 WL 1856498 (Fed. Cir. Apr. 14, 2020) does not compel a different result. There, the Court held the claims were directed to the abstract idea of "controlling access to resources by receiving a request and determining if the request for access should be granted." *Id.* at *6. The patentee tried to point to limitations reciting "a platform having a software services component and an interface component," for the ultimate goal of "enabling application domain software to be installed, loaded, and run in the platform." *Id.* This, argued the patentee, helped to "solve the specific computer problem . . . of controlling app access in resource-constrained mobile phones." *Id.* at *7. But, the Court disagreed, because "[t]his recitation of functional computer components does not specify how the claim 'control[s] access to a platform,' nor does it direct the claim to anything other than that abstract idea." *Id.* at *6.

Thus, the problem in *Ericsson* was not simply that the claim happened to recite certain elements using functional language. The problem was that the functional elements relied upon by the patentee failed to provide enough specificity to link the core idea of the claim to the purported technological benefits of the invention. *Id.* at

\*8 ("[T]he claims are silent as to how access is controlled. They merely make generic functional recitations that requests are made and then granted."). Specifically, the patentee argued that the invention controlled application access in a resource constrained environment. *Id.* at \*7. But the claims did not reflect this as they merely recited generic "components" intended to "enable" software to be installed and run. In other words, the claims were entirely non-specific at the point of purported novelty. The specification did discuss a potentially inventive "layered architecture"; but, as the Federal Circuit noted, this architecture was not reflected in the claim language. *Id.*

The situation at issue in *Ericsson* is distinguishable from the '236 Patent. Initially, the '236 Patent does not claim a system for "controlling access to resources," which is a concept that the Federal Circuit acknowledged in *Ericsson* has repeatedly been found abstract. *See id.* ("Controlling access to resources is exactly the sort of process that can be performed in the human mind, or by a human using a pen and paper, which we have repeatedly found unpatentable.") (internal citations and quotations omitted). Put simply, there is no way that the dynamic battery conservation improvements reflected in the '236 Patent could be "performed in the human mind" or "using a pen and paper." Furthermore, the Federal Circuit criticized the *Ericsson* claims as "not mention[ing], and [] not [being] limited to, mobile phones or a 'resource-constrained' environment." *Id.* By contrast, the '236 claims ***are*** expressly limited to a "mobile communications device" that faces significant limitations on battery life, thus further distinguishing them from the claims at issue in *Ericsson*.

Additionally, although the '236 claims recite certain elements in terms of the functions they perform (*i.e.*, "mode selector" and "message generator"), the claims go further and also recite how these components interact with one another to accomplish the objectives of the invention. The claims recite (1) the basis on which the a mode is selected (*i.e.*, "based on whether a recipient application is actively processing status updates"); and (2) how messages are transmitted in an resource efficient manner (*i.e.*, "using the selected message transmission mode"). These limitations add exactly the

specificity that was missing in *Ericsson*, by explaining how the known operation of a "mode selector" and "message generator" operate in the overall invention to achieve the conservation of battery life and network capacity.[3]

Importantly, the Section 101 flaw in the claims at issue in *Ericsson* (lack of specificity in how to achieve the purported technical benefit) is ***not*** the same Section 101 flaw that Defendants allege exists in the '236 Patent. Defendants do not dispute that the "end-result" of practicing the '236 claims results in a technical benefit (*i.e.* conservation of battery and network capacity), *supra* pp. 2-3, nor do they dispute that the claims detail how this result is obtained (*i.e.*, by making a mode selector responsive to whether a recipient application is actively processing status updates). Defendants instead chalk up the admitted technical benefit of the invention as a mere "by-product" of performing "the abstract concept of a person choosing not to waste his or her breath by talking to another person who is not currently listening." Dkt. 659 at 6. This abstract-idea-by-analogy argument, upon which Defendants base their entire step one analysis, fails. Obviously, the considerations that a human being makes in deciding whether to speak during a conversation are completely different from the considerations made by a battery-constrained mobile communications device when deciding whether to transmit a status update over a network. This is yet another example of Defendants' over generalizing the claims in an effort to construct an ill-fitting, real-world analogy. Dkt. 487 at 33 ("Facebook Defendants' attempt at a real-world long-standing human practice analogy (to an assistant holding their boss's phone calls) breaks down."), *id.* at 35 ("[T]here are some holes in Facebook Defendants' analogies to real-world long-standing human practice").

The most analogous recent Federal Circuit case to the '236 Patent is not

---

[3] Defendants may argue that the '236 claims lack of specificity in how the "mode selector" and "message generator" *themselves* operate. But, this level of technical detail was unnecessary because these components were well-understood by a person of ordinary skill in the art. Dkt. 658-1 (Almeroth Decl.) ¶¶ 73-79, 99-105. And, as noted, Defendants concede that these terms connote structure. *See* Dkt. 662.

*Ericsson*, but rather *CardioNet*, *supra* n.1, 2020 WL 1897237, which issued since the Court's last minute order.  There, the claims related to a heart monitoring system, requiring a "beat detector," a "ventricular beat detector," and an "event generator" responsive to "variability determination logic" and "relevance determination logic." *Id.* at *2.  The claims did not specify the details of the "variability determination logic" and "relevance determination logic."  They merely required that the "event generator" use these generalized logic modules to generate an event when "the variability in beat-to-beat timing is identified as relevant [to certain anomalies] in light of the variability in the beat-to-beat timing caused by ventricular beats identified by the ventricular beat detector." *Id.*  In other words, the claims recited a technique of determining the relevance of one measurement (by a "beat detector") based on the variability in a second measurement (by a "ventricular beat detector"). *Id.* at *5

Reading these claim requirements against the benefits articulated by the specification, the Federal Circuit held that the claims were non-abstract at step one because they were directed to an "an improved cardiac monitoring device." *Id.* at *5, 6.  The Federal Circuit noted that "heart of the district court's erroneous step one analysis" involved improper fact finding that the claims merely involved the automation of basic diagnostic processes that doctors had long used. *Id.* at *7.  But nothing in the record supported the district court's assumption that the particular claimed technique (*i.e.*, determining the relevance of one measurement on the basis of a second measurement) was known in the art. *Id.*  This is all the more true here, where ***all*** of the record evidence indicates that the '236 Patent technique of making the mode selector of a mobile communications device responsive to whether a recipient application was actively processing status updates was "unknown" in the prior art.  Dkt. 658-1 (Almeroth Decl.) ¶¶ 88, 114.  Thus, as in *CardioNet*, the Court should credit the '236 Patent written description, and hold the claims non-abstract in light of the undisputed technological benefit afforded by the invention.

Thus, the Court should deny Defendants' motion for summary judgment.

| | |
|---|---|
| DATED: April 23, 2020 | Respectfully Submitted, |

By/s/ *James R. Asperger*

QUINN EMANUEL URQUHART & SULLIVAN, LLP
James R. Asperger (Bar No. 83188)
jamesasperger@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

BLACKBERRY CORPORATION
Edward R. McGah, Jr (SBN 97719)
Vice President, Deputy General Counsel
41 Ticknor Place
Laguna Niguel, California 92677
Telephone: (+1) 650-581-4750

Attorneys for BlackBerry Limited