COOLEY LLP
HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
MARK R. WEINSTEIN (193043)
(mweinstein@cooley.com)
MATTHEW J. BRIGHAM (191428)
(mbrigham@cooley.com)
3175 Hanover Street
Palo Alto, California  94304
Telephone:  (650) 843-5000
Facsimile:  (650) 849-7400

COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
101 California Street
5th Floor
San Francisco, CA 94111-5800
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

ATTORNEYS FOR DEFENDANTS
FACEBOOK, INC., WHATSAPP INC.
and INSTAGRAM, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| BLACKBERRY LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC., WHATSAPP INC., INSTAGRAM, INC. and INSTAGRAM, LLC,<br><br>Defendants. | Case Nos. 2:18-cv-01844-GW-KSx; 2:18-cv-02693-GW-KSx<br><br><br>**DEFENDANT WHATSAPP'S RESPONSE TO BLACKBERRY'S SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT THAT U.S. PATENT NO. 8,429,236 IS INVALID UNDER 35 U.S.C. § 101** |

# I. *ERICSSON* CONFIRMS THE '236 CLAIMS ARE NOT PATENT ELIGIBLE

BlackBerry concedes that there is no meaningful difference between the parties' constructions for "mode selector" and "message generator" for purposes of determining patent eligibility.  Indeed, they are both generic "hardware or software components," which perform functions the '236 claims assign to them.  *Ericsson* confirms that these device components and their functions do not make the '236 claims patent eligible.

To start, *Ericsson* makes clear that the '236 claims are directed to an abstract idea.  As in Ericsson, the bulk of the '236 claims provide nothing more than the abstract idea of "don't talk when no one is listening."  The remaining limitations at most provide only necessary antecedent and subsequent components—i.e., determine whether someone is listening ("mode selector") and, based on that determination, talk or don't talk ("message generator").  *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, --- F.3d ---, 2020 WL 1856498, at *7 (Fed. Cir. Apr. 14, 2020) ("[W]here, as here, the bulk of the claim provides an abstract idea, and the remaining limitations provide only necessary antecedent and subsequent components, the claim's character as a whole is directed to that abstract idea.").

BlackBerry does not dispute that *Ericsson* and the '236 claims both involve functional components, but BlackBerry contends that "the ['236] claims go further and also recite how these components interact with one another to accomplish the objectives of the invention."  (BB Br., ECF No. 664, at 5.)  In particular, BlackBerry argues that "the ['236] claims recite (1) the basis on which the a mode is selected (i.e., 'based on whether a recipient application is actively processing status updates'); and (2) how messages are transmitted in an [sic] resource efficient manner (i.e., 'using the selected message transmission mode')."  (*Id.* at 5.)  But *Ericsson* involved a claim that similarly recited (1) the basis on which to grant access to a resource (i.e., "based on an identification") and (2) how access is controlled (i.e., using "a record of requesting application domain software").  *Ericsson*, 2020 WL 1856598, at *6 (reproducing claim

5), *7.  Thus, as in *Ericsson*, the '236 claims "do not 'ha[ve] the specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it.'"  *Id.* at *8 (quoting *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018)).  "Merely claiming 'those functions in general terms, without limiting them to technical means for performing the functions that are arguably an advance,' does not make a claim eligible at step one."  *Id.* at *8 (quoting *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1351 (Fed. Cir. 2016)).[1]

        *Ericsson* also makes clear that the '236 claims do not recite a sufficient inventive concept to render them patent eligible.  In *Ericsson*, like here, the claims involved only generic computer components for performing the abstract idea.  *Id.* at *9 ("None of these elements are sufficient to turn the claim into anything more than a generic computer for performing the abstract idea of controlling access to resources.").  BlackBerry contends that the '236 claims are distinguishable because the "'end-result' of practicing them yields a technical benefit (*i.e.* conservation of battery and network capacity)."  (BB Br. at 6.)  But this is irrelevant to the inventive concept analysis.  The Federal Circuit in *Ericsson* observed that "[e]ven assuming that this collection of elements led to a more efficient way of controlling resource access," this technical benefit did not confer patent eligibility.  *Ericsson*, 2020 WL 1856598, at *9.  Instead, "when a claim 'does no more than require a generic computer to perform generic computer functions,' as here, the claims lack an inventive concept sufficient to demonstrate eligibility at step two."  *Id.* (quoting *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 225 (2014)); *see also BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018) ("If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been

---

[1] BlackBerry also argues that the '236 claims are limited to a mobile communications device.  But the Federal Circuit observed that "limit[ing] the abstract idea to a particular environment—a mobile telephone system—[ ] does not make the claims any less abstract for the step 1 analysis."  *Ericsson*, 2020 WL 1856498 at *7.

transformed into a patent-eligible application of an abstract idea….As a matter of law, narrowing or reformulating an abstract idea does not add 'significantly more' to it.").

## II.   BLACKBERRY FAILS TO DISTINGUISH *CHARGEPOINT*

As explained previously, the proposed constructions by both sides bring this case squarely in line with *ChargePoint*.   (ECF No. 659 at 5-7.)   BlackBerry tries to distinguish *ChargePoint* by contending that the problem perceived by the patentee in that case was not technological in nature, but instead "a lack of a communication network for [] charging stations which limited the ability to efficiently operate them from a business perspective."   (BB Br. at 2-3 (quoting *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 768 (Fed. Cir. 2019)).)   But the claims in *ChargePoint* did provide technical benefits similar to the alleged benefits of the '236 patent, and the Federal Circuit's conclusion that the claims were nonetheless directed to an abstract idea shows that the '236 claims are also directed to an abstract idea.

In particular, the claims in *ChargePoint* provided the ability to "modify electricity flow based on demand response communications received from the server." *ChargePoint*, 902 F.3d at 764.  In other words, the claims described the ability for a charging station to more efficiently charge an electric vehicle's battery—e.g., if the charging station was informed that electricity demand was low, charge transfer to an electric vehicle could be increased.  *Id.* at 770-771.  Despite providing the ability to recharge a battery more quickly, the Federal Circuit observed that "the fact that the electricity flow is modified *based on demand response principles* does nothing to make this claim directed to something other than an abstract idea." *Id.* at 771.  Here, the alleged resource conservation by-product of the abstract idea of "don't talk when no one is listening" cannot be meaningfully distinguished from the battery charging by-product of the abstract idea of "demand response" and matching supply and demand.

Similarly, *ChargePoint* confirms that the '236 claims lack an inventive concept. The use of the abstract idea of network control in *ChargePoint* to implement "demand response" is no different than the use of network control in the '236 claims in carrying

out the abstract idea of "don't talk when no one is listening." *Id.* at 774-775. "[A] claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept." *Id.* at 774 (quoting *BSG Tech*, 899 F.3d at 1290). And, as in *ChargePoint*, using generic software and hardware components (i.e., "mode selector" and "message generator") to perform the abstract idea "is simply an "abstract-idea-based solution implemented with generic technical components in a conventional way." *Id.* at 775.

## III. *CARDIONET* IS DISTINGUISHABLE

BlackBerry claims that *CardioNet, LLC v. InfoBionic, Inc.*¸ --- F.3d ---, 2020 WL 1897237 (Fed. Cir. Apr. 17, 2020), is the most analogous recent Federal Circuit case. (BB Br. at 6-7.) It is not.[2] In *CardioNet*, the claims focused on a specific technique that improved the diagnostic effectiveness of cardiac monitoring devices. *CardioNet*, 2020 WL 1897237 at *5; *see also id.* at *2-3 (claims). The Federal Circuit observed that there was no suggestion that "the claims merely computerize pre-existing techniques for diagnosing atrial fibrillation and atrial flutter." *Id.* at *7.

Here, unlike *CardioNet*, the parties' proposed constructions confirm that the high-level, functional language of the '236 claims are directed to an abstract idea. In *CardioNet*, the claims did more than increase speed or efficiency, unlike here, where the alleged conservation is at best an improvement flowing from the abstract idea itself.

BlackBerry also points to *CardioNet* to contend that the alleged novelty of the '236 claims shows that they are not directed to an abstract idea. (BB Br. at 7.) But that is a misstatement of *CardioNet*. The Supreme Court and the Federal Circuit have repeatedly explained that "[t]he 'novelty' of any element or steps in a process, or even of the process itself, is of no relevance in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter." *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1315 (Fed. Cir. 2016).

---

[2] *CardioNet* also involved a motion to dismiss, unlike here. *CardioNet*, 2020 WL 1897237, at *4.

Stated differently, even if a claim recites something "[g]roundbreaking, innovative, or even brilliant," that is "not enough for eligibility." *SAP Am., Inc. v. Investpic LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018). In *CardioNet*, the specific innovative technique claimed did not involve simply computerizing pre-existing techniques. But here, the generic, functional limitations recited in the '236 claims are nothing more than the computerization of the pre-existing practice of "don't talk when no one is listening."

## IV.   CLAIM CONSTRUCTION CONFIRMS PREEMPTION CONCERNS

BlackBerry contends that the parties' constructions show that the '236 claims are "directed to a sufficiently definite arrangement of structural components that do not raise undue preemption concerns." (BB Br. at 1.) But the opposite is true. The parties now agree the '236 claims encompass any "hardware or software component" operable to perform functions the '236 claims assign to them. Given these constructions, other than having a "mode selector" to determine if someone is listening or not and a "message generator" to transmit in accordance with that determination, how else would a device implement the abstract idea of "don't talk when no one is listening"? The fact that WhatsApp did not pursue means-plus-function constructions is irrelevant. As explained, there was a reasonable argument that the patent uses each term "to designate structure, even if the term covers a broad class of structures and even if the term identifies the structures by their function." (ECF No. 662 at 4 (quoting *Skky, Inc. v. MindGeek, S.A.R.L.*, 859 F.3d 1014, 1019 (Fed. Cir. 2017)) (emphasis added).) In any event, "[w]hile preemption may signal patent ineligible subject matter, the absence of complete preemption does not demonstrate patent eligibility." *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015).

## V.   CONCLUSION

Defendant WhatsApp Inc. respectfully requests that the Court find the asserted claims of the '236 patent unpatentable under 35 U.S.C. § 101.

1    Dated:  April 30, 2020                    COOLEY LLP

2

3

4                                             /s/ *Heidi L. Keefe*
                                              _____
                                                 Heidi L. Keefe
5

6                                             COOLEY LLP
                                              HEIDI L. KEEFE (178960)
7                                             (hkeefe@cooley.com)
                                              MARK R. WEINSTEIN (193043)
8                                             (mweinstein@cooley.com)
                                              MATTHEW J. BRIGHAM (191428)
9                                             (mbrigham@cooley.com)
                                              3175 Hanover Street
10                                            Palo Alto, CA 94304-1130
                                              Telephone: (650) 843-5000
11                                            Facsimile: (650) 849-7400

12
                                              COOLEY LLP
13                                            MICHAEL G. RHODES (116127)
                                              (rhodesmg@cooley.com)
14                                            101 California Street
                                              5th Floor
15                                            San Francisco, CA 94111-5800
                                              Telephone: (415) 693-2000
16                                            Facsimile: (415) 693-2222
17

18                                            Attorneys for Defendants
                                              FACEBOOK, INC., WHATSAPP INC.,
19                                            INSTAGRAM, INC., and INSTAGRAM,
                                              LLC
20

21

22

23

24

25

26

27

28