QUINN EMANUEL URQUHART & SULLIVAN, LLP
  James R. Asperger (Bar No. 83188)
  jamesasperger@quinnemanuel.com
  865 S. Figueroa St., 10th Floor
  Los Angeles, CA 90017
  Telephone: (213) 443-3000
  Facsimile: (213) 443-3100

  Kevin P.B. Johnson (Bar No. 177129)
  kevinjohnson@quinnemanuel.com
  555 Twin Dolphin Drive, 5th Floor
  Redwood Shores, CA 94065
  Telephone: (650) 801-5000
  Facsimile: (650) 801-5100

BLACKBERRY CORPORATION
  Edward R. McGah, Jr (SBN 97719)
  Vice President, Deputy General Counsel – Litigation
  41 Ticknor Place
  Laguna Niguel, California 92677
  Telephone: (+1) 650-581-4750

Attorneys for Plaintiff BlackBerry Limited

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLACKBERRY LIMITED, a Canadian corporation,<br><br>                Plaintiff,<br><br>        v.<br><br>FACEBOOK, INC., a Delaware corporation, WHATSAPP INC., a Delaware corporation, and INSTAGRAM, LLC, a Delaware limited liability company<br><br>                Defendants. | CASE NO. 2:18-cv-01844 GW(KSx)<br><br>**BLACKBERRY LIMITED'S REQUEST FOR ORAL ARGUMENT REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT THAT U.S. PATENT NO. 8,429,236 IS INVALID UNDER 35 U.S.C. § 101** |

Per the Court's July 2 Tentative Order (Dkt. 669), BlackBerry submits this statement, explaining why oral argument is necessary on Defendants' motion for summary judgment that U.S. Patent 8,429,236 (the "'236 Patent") is invalid under 35 U.S.C. § 101 (the "Motion"). BlackBerry would argue the following:

### Step One of the *Alice* Analysis

1.) The Tentative Order (at 5) makes a threshold error in overgeneralizing the invention as "directed to the abstract concept of making a choice about what to communicate to a source <u>based on information</u> collected about that source." (Emphasis added). While the Order states that the result would be the same even if more technical language were used, the overall reasoning is based on the conclusion that the "focus of the claims" is on using mere "information" to make a determination regarding a transmission mode. Dkt. 669 at 5; *see also id.* at 8 (stating that claims are directed to the mere result of "choosing a transmission mode based on information about a [recipient application]."). The claims, however, require more than selection on the mere basis of "information"—they require selection of how to send "status updates" based on the <u>specific determination</u> of whether a "recipient application" is or is not processing those status updates. This specific criteria, which is generalized out of the Tentative Order's articulation, is precisely the innovation that BlackBerry contends renders the claims non-abstract. Dkt. 664 at 5-6. It is error to oversimplify the claims in this way. *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1371 (Fed. Cir. 2020) (holding that courts must "avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims.").

2.) The Tentative Order (at 5) analogizes to cases invalidating patents directed to "collecting, storing, and transmitting information." This analogy is inapposite. In *CardioNet*, the Federal Circuit recently clarified that patent claims found ineligible on these grounds are merely part of the "familiar class of claims that focus on certain independently abstract ideas that <u>use computers as tools</u>," as distinguished from claims that reflect a <u>specific improvement in computer</u>

functionality. 955 F.3d at 1371 (emphasis added, quotation omitted). Here, the '236 Patent claims fall into the latter category. Defendants do not dispute that the claims result in a tangible improvement to mobile device battery. Dkt. 665 at 2. And, the '236 does not use a computer "as a tool," because there is no reason to practice the claimed technique except for the purpose of achieving the undisputed benefit.

3.) The Tentative Order (at 8) discounts the admitted technical benefit of the claims because "Claims 15 and 17 of the '236 Patent do not <u>necessarily</u> require such an improved result." (Emphasis added). This statement reflects an unfortunate error that Defendants have invited throughout this case. There is no support for the notion that a claim must "*necessarily*" generate an improved result (*i.e.*, foreclose every theoretical possibility of practicing the claims in an unimproved way); in fact, the law is to the contrary. *See, e.g.*, *Diamond v. Diehr*, 450 U.S. 175, 187 (1981) (focusing on claimed process "as a whole" and holding that claim was eligible even where it only "significantly lessen[ed] the possibility" of "overcuring" or "undercuring"). This Court, itself, has in the past correctly rejected this very same argument. *Cal. Inst. of Tech. v. Broadcom Ltd.*, No. 2:16-cv-03714, Dkt. 849 at 31 (C.D. Cal. Jan. 18, 2019) (Wu, J.) (emphasis added) ("[A] claim is not invalid simply because in practice, it may cover one or more examples where there is not actually an improvement to the relevant technological field.").

4.) The Tentative Order (at 8) focuses on an alleged lack of specificity in individual claim elements (*e.g.*, the "mode selector"), but does not consider the detail regarding how the claim elements work together to achieve the desired claim results. The claims must be considered "as a whole," and a non-abstract invention can be found in a "concrete assignment of specified functions among a computer's components to improve computer [functionality]." *Ancora Technologies, Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1344 (Fed. Cir. 2018); *see also CardioNet,* 955 F.3d at 1371. In *CardioNet*, for example, the Federal Circuit found independent claims reciting "relevance determination logic" non-abstract, despite a lack of any

implementation details for such logic. 955 F.3d at 1364-66.

5.) Finally, the Tentative Order (at 9 n.6) does not give due weight to dependent claim 17, which limits the claimed "mode selector" to a single, specific structural embodiment. *See* Dkt. 658-1 (Almeroth Decl.) ¶¶ 71, 92. The relevant inquiry is whether claim 17 has "the specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it." *Ancora*, 908 F.3d at 1349. It is, of course, Defendants' burden to establish that claim 17 fails this test.[1] *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) (finding error in treating independent claim as representative where patentee did not agree, and made meaningful arguments relevant to dependent claim). Not only did Defendants fail to make any such argument in their Opening Motion,[2] their responsive claim construction brief eschews the argument by citing claim 17 as a specific, structural embodiment weighing against Section 112, paragraph 6 treatment. Dkt. 662 at 4-5. As BlackBerry argued in its supplemental brief, Defendants' claim construction strategy effectively abandoned any argument that *either* claim 15 or claim 17 was too results-oriented. Dkt. 664 at 1-2 ("As Defendants have now admitted, the disputed terms are not purely functional, nor do they improperly expand the scope of the claims beyond the concrete structural embodiments disclosed by the specification.").

To the extent the Tentative Order independently finds that claim 17 contains

---

[1] The parties' original step one briefing was focused on the independent claim. *See* Dkt. 539-1 at 23-37, Dkt. 604 at 23-27. In response to the Court's concerns regarding the specificity of the "mode selector" term, BlackBerry provided argument and expert testimony that claim 17 covered a specific embodiment of claim 15. Dkt. 658 at 4, n.1; *see also* Dkt. 658-1 (Almeroth Decl.) ¶¶ 71, 92 ("Finally, I note that even if the "mode selector" of claim 15, in isolation were considered to be a generic component, the additional limitation of claim 17 adds further specificity that is unconventional over any of the prior art references identified by Defendants.").

[2] The step one analysis in Defendants' Motion never mentions claim 17. Dkt. 539-1 at 24-25. Defendants only argued, at step two, that a "database" was conventional. *Id.* at 26. Defendants also did not argue that use of the "database" in the ordered combination of limitations was routine, conventional, or well-known. *Id.* at 25-27.

too many "results-focused" and "open-ended" concepts that do not "necessarily" result in the asserted benefits, that finding is erroneous for the same reasons described in paragraphs 3 and 4 above. Particularly for a dependent claim, drawn to one of several discrete embodiments, demanding this type of specificity upon specificity is overly restrictive, and inconsistent with Federal Circuit law. *See, e.g.*, *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259 (Fed. Cir. 2017) (claims requiring "programmable operational characteristics" were not abstract at step one).

### Step Two of the *Alice* Analysis

6.) The Tentative Order (at 9) holds that "selecting a transmission mode based on whether a recipient application is actively processing status updates" cannot supply the inventive concept, because "this is the abstract idea itself." But, this specific, claimed criteria is what the Tentative Order generalizes *out of the claim* at step one. *Compare with* Dkt. 669 at 5 ("They are directed to the abstract concept of making a choice about what to communicate to a source based on information collected about that source."). It is not proper to generalize away specific claim limitations at step one, and then avoid factual issues regarding those claim limitations by simply attributing them to the "abstract idea itself" at step two.

7.) At step two *BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016), is on point. The Tentative Order (at 10) acknowledges *BASCOM*'s holding that "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces," but then pivots the analysis back to an alleged lack of specificity in the claimed "mode selector" and "message generator" terms *in isolation*.[3] Respectfully, this does not answer the question of whether the claims recite an inventive *arrangement* of features.

8.) Related to the prior paragraph, the Tentative Order never addresses the

---

[3] The Tentative Order (at 10) also states that the claim lacks any "structural limitations on what a 'mode selector' or 'message generator' can be." But the parties ***agree*** that these terms connote definite structure. *E.g.*, Dkt. 662 at 4, Dkt. 661 at 6-9.

factual question of whether the "ordered combination" of claim elements was "routine, conventional, or well-known." *Berkheimer*, 881 F.3d at 1349 (standard of review, including for claim elements as an "ordered combination"). Defendants' expert offered **no opinion** in this regard, opining instead that the claim limitations "recite an order that a person of ordinary skill in the art would find logical and would expect." Dkt. 632-2 at 97. This improperly relies on hindsight, and is thus irrelevant. Accordingly, Defendants have no evidence on this key issue, much less clear and convincing evidence to carry their summary judgment burden.

      9.) The Tentative Order (at 9-10) dismisses BlackBerry's expert testimony and argument that the "ordered combination" of claim elements was "novel" and "unknown" at the time of invention, *see* Dkt. 664 at 4, citing Dkt. 658-1 (Almeroth Decl.) ¶¶ 87-88, 113-114. But, at step two, the eligibility and novelty analyses may overlap. *Mayo Collaborative Servs. v. Prometheus Labs, Inc.*, 566 U.S. 66, 90 (2012). Thus, in a summary judgment posture, BlackBerry's detailed and unrebutted expert testimony that the overall claimed arrangement of functionalities was previously unknown, and therefore not "routine, conventional, or well-known," Dkt. 658-1 (Almeroth Decl.) ¶¶ 86, 87-88 92, 112-114, cannot be so easily dismissed. *Vaporstream, Inc. v. Snap, Inc.*, No. 2:17-cv-220, 2018 WL 1116530, at *6-7.

      *SAP America, Inc. v. Investpic LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018), is distinguishable. There, the patent involved computer implementation of new mathematical techniques in the realm of finance. *Id.* at 1170. The algorithm did not improve a computer (*e.g.*, by reducing battery consumption), but rather improved financial decision-making by using the computer as a tool. *Id.* Accordingly, *SAP* does not hold that the inventiveness of an ordered combination is irrelevant; it merely holds that an inventive concept cannot be grounded in the computer-implementation of an independently abstract concept. That is not the case here. *Supra* Paragraph 2.

      BlackBerry welcomes the opportunity to discuss these issues, and any other questions the Court may have, at oral argument.

| | | |
|---|---|---|
| 1 | DATED: July 9, 2020 | Respectfully Submitted, |
| 2 | | |
| 3 | | By/s/ *James R. Asperger* |
| 4 | | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 5 | | James R. Asperger (Bar No. 83188) |
| | | jamesasperger@quinnemanuel.com |
| 6 | | 865 S. Figueroa St., 10th Floor |
| 7 | | Los Angeles, CA 90017 |
| | | Telephone: (213) 443-3000 |
| 8 | | Facsimile: (213) 443-3100 |
| 9 | | Kevin P.B. Johnson (Bar No. 177129) |
| | | kevinjohnson@quinnemanuel.com |
| 10 | | Victoria F. Maroulis (Bar No. 202603) |
| 11 | | victoriamaroulis@quinnemanuel.com |
| | | 555 Twin Dolphin Drive, 5th Floor |
| 12 | | Redwood Shores, CA 94065 |
| 13 | | Telephone: (650) 801-5000 |
| | | Facsimile: (650) 801-5100 |
| 14 | | |
| 15 | | BLACKBERRY CORPORATION |
| | | Edward R. McGah, Jr (SBN 97719) |
| 16 | | Vice President, Deputy General Counsel |
| | | 41 Ticknor Place |
| 17 | | Laguna Niguel, California 92677 |
| | | Telephone: (+1) 650-581-4750 |
| 18 | | |
| 19 | | Attorneys for BlackBerry Limited |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |