UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-1844-GW-KSx | Date | July 23, 2020 |
|---|---|---|---|
| Title | *BlackBerry Limited v. Facebook, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Javier Gonzalez | None Present | | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. | |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** **IN CHAMBERS - ORDER**

    Attached hereto is the Court's Final Rulings. The Court sets a status conference for February 11, 2021 at 8:30 a.m., with a joint status report to be filed by February 8, 2021.

:

Initials of Preparer    JG

<u>*BlackBerry Limited v. Facebook, Inc. et al*</u>; Case No. 2:18-cv-01844-GW-(KSx)

Final Ruling on:

> (1) Parties' Supplemental Claim Construction Briefing as to Two Claim Terms in the '236 Patent, as Ordered by Court at Docket No. 655 at 10-11 and Stipulated by the Parties at Docket No. 654 (no proposed order on parties' Joint Stipulation filed) (Plaintiff's Opening Supplemental Claim Construction Brief, Docket No. 658; WhatsApp's Opening Supplemental Claim Construction Brief, Docket No. 659; Plaintiff's Responsive Supplemental Claim Construction Brief, Docket No. 661; WhatsApp's Responsive Supplemental Claim Construction Brief, Docket No. 662)
>
> (2) Deferred Portions of Defendants' Motion for Summary Judgment as to Non-infringement of '961, '120, and '634 Patents and Invalidity of '961, '634, '236, '713, and '250 Patents, as Outlined by Court at Docket No. 655 at 10-11 and Relating to the '236 Patent (Motion, Docket No. 540 (public), Docket No. 552 (sealed); Opposition, Docket No. 583 (public), Docket No. 604 (sealed); Reply, Docket No. 633 (public), Docket No. 647 (sealed)); *see also* Parties' Supplemental § 101 Briefs as to '236 Patent, as Ordered by the Court at Docket No. 663 (Plaintiff's Supplemental Brief Regarding § 101 Invalidity of the '236 Patent (Docket No. 664), WhatsApp's Supplemental Brief Regarding § 101 Invalidity of the '236 Patent (Docket No. 665))
>
> (3) Deferred Portions of Defendants' Renewed Motion to Stay Case Pending Instituted *Inter Partes* Review Proceedings, as Outlined by the Court at Docket Nos. 652 and 655 and Relating to the '236 Patent (Motion, Docket No. 501 (public), Docket No. 505 (sealed); Opposition, Docket No. 550; Reply, Docket No. 560)

**I. Background**

Plaintiff BlackBerry Limited ("BlackBerry") has filed this patent infringement action against Facebook, Inc., WhatsApp, Inc., and Instagram, LLC ("Defendants"). Docket No. 1; *see also* Docket No. 15 (First Amended Complaint).

The Court recently granted-in-part Defendants' renewed motion to stay pending *inter partes* review ("IPR") proceedings[1] as to all of the remaining asserted patents in this case, except for one. *See* Docket No. 652, Docket No. 655 at 10-11. The Court deferred ruling on whether proceedings should be stayed as to U.S. Patent No. 8,429,236 ("the '236 Patent"), which is not subject to pending IPR proceedings. Docket No. 652. After considering Defendants' arguments for invalidity of the asserted claims of the '236 Patent under 35 U.S.C. § 101,[2] the Court also

---

[1] *See* Defendants' Renewed Motion to Stay Case Pending Instituted *Inter Partes* Review Proceedings (Motion, Docket No. 501 (public), Docket No. 505 (sealed); Opposition, Docket No. 550; Reply, Docket No. 560).

[2] *See* Defendants' Motion for Summary Judgment as to Non-infringement of '961, '120, and '634 Patents and Invalidity of '961, '634, '236, '713, and '250 Patents (Motion, Docket No. 540 (public), Docket No. 552 (sealed);

1

deferred a ruling on that issue and directed the parties to submit supplemental claim construction briefs for two claim terms in the asserted claims of the '236 Patent. Docket No. 655 at 10-11.

Plaintiff and Defendant WhatsApp[3] filed their supplemental claim construction briefs. *See* Plaintiff's Opening Supplemental Claim Construction Brief, Docket No. 658; WhatsApp's Opening Supplemental Claim Construction Brief, Docket No. 659; Plaintiff's Responsive Supplemental Claim Construction Brief, Docket No. 661; WhatsApp's Responsive Supplemental Claim Construction Brief, Docket No. 662. They were subsequently permitted to file additional supplemental briefs regarding 35 U.S.C. § 101, and did so. Plaintiff's Supplemental 35 U.S.C. § 101 Brief, Docket No. 664; WhatsApp's Supplemental 35 U.S.C. § 101 Brief, Docket No. 665; *see also* Docket No. 663 (Court's Order, permitting briefs); Docket No. 666 (Plaintiff's Notice of Supplemental Authority); Docket Nos. 667, 668 (WhatsApp's Notices of Supplemental Authority).

The Court issued a tentative ruling (Docket No. 669) and permitted additional, supplemental briefing in response to that tentative ruling. *See* Docket Nos. 670, 672; *see also* Docket No. 671 (Plaintiff's Notice of Supplemental Authority). Having considered those briefs, the Court finds Plaintiff's additional arguments unpersuasive.[4] The Court adopts its tentative ruling as its final ruling and **DENIES** Plaintiff's request for a hearing on the motion. Docket No. 670.

For the reasons stated in this Order, the Court would rule as follows:

(1) the parties' claim construction disputes with respect to the terms "mode selector" and "message generator" would be found **MOOT**;

(2) the Court would **GRANT** the portion of Defendants' Motion for Summary Judgment as to Non-infringement of the '961, '120, and '634 Patents and Invalidity of the '961, '634, '236, '713, and '250 Patents (Motion, Docket No. 540) that was previously deferred as it relates to the '236 Patent;

(3) the Court would **DENY** the portion of Defendants' motion to stay that was previously deferred as to the '236 Patent (*see* Docket Nos. 501

---

Opposition, Docket No. 583 (public), Docket No. 604 (sealed); Reply, Docket No. 633 (public), Docket No. 647 (sealed)).

[3] Defendants state that WhatsApp is the only defendants accused of infringing claims of the '236 Patent. Docket No. 659 at 1 n.1. Thus, although all Defendants appeared to join the filing of Defendants' summary judgment motion for invalidity of the '236 Patent under 35 U.S.C. § 101, only WhatsApp has filed supplemental claim construction briefs.

[4] Plaintiff's arguments are largely based on certain characterizations of the analysis in the tentative ruling that are not completely accurate. The Court finds they do not warrant further response or analysis, given the analysis already provided in the tentative ruling.

2

      (motion), Docket Nos. 652, 655 (previous orders deferring ruling on motion as to '236 Patent)) **AS MOOT**;

  (4) any request for entry of partial final judgment as to the '236 Patent under Rule 54(b) in advance of the determinations on the remainder of this case, including as to the stayed patents, would be due within seven days of the filing of this final ruling.

## II. Legal Standard

The Court has stated the relevant legal standards relating to summary judgment, patent infringement, and claim construction in previous rulings. *See* Docket No. 157 (Claim Construction Order); Docket No. 655 (February 27, 2020 Summary Judgment Order); *see also* Docket No. 487 (October 1, 2019 Summary Judgment Order); Docket No. 68 (August 21, 2018 Ruling on Defendants' Motion to Dismiss). They are not repeated here, but instead the relevant legal standards from those rulings are incorporated herein by this reference.

## III. Discussion

### A. Background of U.S. Patent No. 8,429,236 and the Asserted Claims

The '236 Patent issued April 23, 2013 and is titled "Transmission of Status Updates Responsive to Status of Recipient Application." BlackBerry apparently accuses only WhatsApp, Inc. of infringing claims of the '236 Patent. Docket No. 659 at 1 n.1. In previous filings, Defendants stated that BlackBerry asserts Claims 15 and 17 of the '236 Patent. Docket No. 552 at 23. Claims 15 and 17 of the '236 Patent recite:

  15. A mobile communications device, comprising:

    a mode selector configured to determine whether a recipient application is actively processing status updates and to select a message transmission mode based on whether the recipient application is actively processing status updates; and

    a message generator configured to generate status messages and to cause transmission of status messages from the mobile communications device to a recipient application using the selected message transmission mode.

  17. The mobile communications device of claim 15, wherein the mode selector comprises a component to observe a local database for a record in the database, the record comprising an indication that the recipient application is actively processing status updates.

### B. Supplemental Claim Construction

The Court previously deferred a ruling on the parties' § 101 invalidity dispute for the asserted claims of the '236 Patent pending the submission of supplemental claim construction

briefs for the terms "mode selector" and "message generator." Docket No. 655. In additional supplemental briefs regarding § 101, both parties agreed that it is not necessary for the Court to construe the two terms before resolving the parties' § 101 dispute. Docket Nos. 664, 665. The Court accordingly finds it unnecessary to construe the two terms, and as discussed further herein, finds the parties' claim construction disputes **MOOT**.

However, lest there be any doubts about how this § 101 inquiry is being conducted, the Court will assume, solely for purposes of this § 101 analysis, that the terms "mode selector" and "message generator" are governed by Plaintiff's proposed constructions. Plaintiff's proposed constructions for the two terms are shown in the following chart:

| Claim Term | Plaintiff's Proposed Construction |
|---|---|
| "mode selector" | "a hardware or software component, such as a recipient callback module, timer, components to observe a local database, components to inspect a request message from a recipient application, or components to compare a timestamp with the local time of the mobile communications device, for controlling the mode of transmitting status messages over a wireless network from a mobile communications device to a recipient application" |
| "message generator" | "a hardware or software component, responsive to the mode selector, that is operable to prepare and send transmissions over a wireless network from a mobile communications device to a recipient application" |

*See generally* Docket No. 658.

    C.    <u>Defendants' Motion for Invalidity Under 35 U.S.C. § 101</u>

Defendants[5] argue that the asserted claims of the '236 Patent are directed to an abstract concept "in which a person decides not to communicate with another person because the other person is not listening, in other words, 'don't waste your breath.'" Docket No. 552 at 24; *see also* Docket No. 655 at 1 ("the bulk of the '236 claims provide nothing more than the abstract idea of 'don't talk when no one is listening.'"). Defendants further argue that the claims do not add "significantly more" to the abstract idea. *Id.* at 26-27. Defendants argue, in part, that:

> the steps recite an order that a person of ordinary skill in the art would find logical and would expect – first, the "mode selector" determines whether the recipient application is actively processing status updates to select a message

---

[5] Although only WhatsApp apparently submitted supplemental briefs regarding claim construction and invalidity of the '236 Patent, because all Defendants joined in the original summary judgment motion for, *inter alia*, invalidity of the '236 Patent claims, the Court refers to all of them in this analysis section.

4

> transmission mode, and then the "message generator" uses the selected mode
> to generate and transmit messages.

*Id.*

Plaintiff argues that the asserted '236 Patent claims are directed to a technological improvement. Specifically, it argues that they improve the battery life of a mobile communications device. *See, e.g.* Docket No. 664 at 2. Plaintiff also argues that factual questions preclude a summary judgment determination at *Alice* Step Two. *See id.* at 3 ("it is Defendants' burden to demonstrate that the ordered combination of claim elements was not inventive. But, Defendants cite **no** historical evidence that selecting a transmission mode based on whether a recipient application is actively processing status updates meets this standard." (citation omitted).).

        1.    *Alice* Step One

The Court agrees with Defendants that the claims are directed to an abstract idea at *Alice* Step One. They are directed to the abstract concept of making a choice about what to communicate to a source based on information collected about that source. Whether phrased colloquially as "don't talk when no one is listening"[6] or in some other fashion, the focus of the claims is on using information to make a decision about how to communicate. Indeed, the abstract idea could also be stated in the more technical terms supplied by Plaintiff as "selecting a transmission mode based on whether a recipient application is actively processing status updates." *Id.* at 3. Understood in Plaintiff's own words, choosing a "mode" for communication in response to whether an application is processing status updates is still an abstract concept, not a technical one.

At bottom, the claims at issue are similar to patent-ineligible claims for collecting, storing, and transmitting information. The Federal Circuit consistently finds such claims abstract. *See, e.g., Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, No. 2019-1587, 2020 WL 2479692, at *3 (Fed. Cir. May 14, 2020) ("the process of recording authentication information—such as the customer's name, address, and telephone number—and including that information in a subsequent communication with the customer is abstract not only because it is a longstanding commercial practice, but also because it amounts to nothing more than gathering, storing, and transmitting information."); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir.

---

[6] Based on the plain claim language, the more technically correct colloquial phrase seems like it would be "do (or say) something different when no one is listening." The face of Claim 15 suggests that the message generator generates and causes transmission of a status message "using the selected transmission mode." The claim language, at least on its face, does not require that a status message only be sent when a certain transmission mode is in effect.

5

2016) ("The advance [the asserted claims] purport to make is a process of gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions.").

Plaintiff's broad constructions for "mode selector" and "message generator" are highly relevant to the *Alice* Step One determination. These terms, according to Plaintiff, can essentially be any "hardware or software component" that satisfies the claimed functions in the context of mobile communications devices. This shows the breadth of the claims as well as their result-oriented nature. So long as the claimed steps of making a "mode" selection and generating a message based on that selection are carried out, there are not any meaningful limitations on the hardware or software required to do so. In other words, so long as the results are accomplished, the means of accomplishing them do not matter. But "abstract idea exception decisions . . . have stressed that a claimed invention must embody a concrete solution to a problem having 'the specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it.'" *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1343 (Fed. Cir. 2018) (citation omitted); *see also Elec. Power*, 830 F.3d at 1356 ("Indeed, the essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101, especially in the area of using generic computer and network technology to carry out economic transactions.").

The Federal Circuit's decision in *Interval Licensing* is instructive. The claims at issue required a computer readable medium with an "attention manager" for obtaining content and controlling its display on a computer. *See Interval Licensing*, 896 F.3d at 1339-40. The term "attention manager" was construed as "a system that displays images to a user either when the user is not engaged in a primary interaction or in an area of the display screen that is not used by the user's primary activity." *Id.* at 1338. The Federal Circuit found the claims abstract. *Id.* at 1344-45. It emphasized the "result-centric construction of the claimed 'attention manager'" and concluded that the claims were similar to abstract claims for collecting and displaying information. *Id.* ("Recitation, as in this case, of the collection, organization, and display of two sets of information on a generic display device is abstract absent a 'specific improvement to the way computers [or other technologies] operate.'"). The Federal Circuit panel stated,

> in light of the broad, result-oriented construction for "attention manager," we agree with the district court that the claimed "attention manager" encompasses a patent-ineligible abstract concept rather than an arguably

6

> technical improvement to display devices, because the term as properly construed simply demands the production of a desired result (non-interfering display of two information sets) without any limitation on how to produce that result. Instead of claiming a solution for producing that result, the claim in effect encompasses all solutions. This result-centric construction for "attention manager" conforms with the specification, which lacks any description for how a display device would ensure the segregation of the two sets of information presented on a display screen.

*Id.* at 1345.

Likewise, although Plaintiff strongly disagrees, the Court finds the Federal Circuit's decision in *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317 (Fed. Cir. 2020) relevant. In *Ericsson*, the Federal Circuit found the following claim patent-ineligible:

> 1. A system for controlling access to a platform, the system comprising:
>> a platform having a software services component and an interface component, the interface component having at least one interface for providing access to the software services component for enabling application domain software to be installed, loaded, and run in the platform;
>> an access controller for controlling access to the software services component by a requesting application domain software via the at least one interface, the access controller comprising:
>> an interception module for receiving a request from the requesting application domain software to access the software services component;
>> and a decision entity for determining if the request should be granted wherein *1326 the decision entity is a security access manager, the security access manager holding access and permission policies; and
>> wherein the requesting application domain software is granted access to the software services component via the at least one interface if the request is granted.

*Id.* at 1325-26. The Federal Circuit explained, "[b]ased on the claim language, we conclude that [the] claims . . . are directed to the abstract idea of controlling access to, or limiting permission to, resources. Although written in technical jargon, a close analysis of the claims reveals that they require nothing more than this abstract idea." *Id.* at 1326. Even though the concept of controlling access to resources did not neatly fall into the category of a "mathematical algorithm," "method of organizing human activity," or "fundamental economic practice," the Federal Circuit found that it remained "the sort of process that can be performed in the human mind," and thus abstract. *Id.* at 1327 (internal quotations omitted). The Federal Circuit also emphasized the result-orientated

7

nature of the claims and lack of limitations to "technical means for performing the functions that are arguably an advance." *Id.* at 1328 (citation omitted).

Similarly here, the claims focus on a result (choosing a transmission mode based on information about a recipient), with no technological limitations on the hardware or software components (the "mode selector" and "message generator") that must achieve it. The claims are not drawn to a technological improvement because they do not provide a technological solution; they are "untethered to any specific or concrete way of implementing" the abstract idea. *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016); *see also Cisco Sys., Inc. v. Uniloc 2017 LLC*, No. 2019-2048, 2020 WL 2465483, at *2 (Fed. Cir. May 13, 2020).

The fact that the claims and Plaintiff's constructions for "mode selector" and "message generator" are focused on mobile communications devices does not change the analysis. An abstract idea limited to a particular technological field is still abstract. *See, e.g. Affinity Labs*, 838 F.3d at 1259; *see also Ericsson*, 955 F.3d at 1327.

Relatedly, Plaintiff's argument that the claims result in improved battery life in mobile communications devices does not support the conclusion that they are necessarily directed to a technological improvement at *Alice* Step One. Making an informed choice based on information - the abstract concept here - is likely to lead to benefits, including when that abstract concept is applied in the technological field of wireless communications. But the benefits that flow from that abstract idea do not transform it into a technological improvement in this case. "An improved result, without more stated in the claim, is not enough to confer eligibility to an otherwise abstract idea . . . . To be patent-eligible, the claims must recite a specific means or method that solves a problem in an existing technological process." *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1150 (Fed. Cir. 2019) (citation omitted). Such a technical means or method is lacking from the combination of "mode selector" and "message generator" in Claims 15 and 17.

Moreover, Claims 15 and 17 of the '236 Patent do not necessarily require such an improved result. The claim language does not require that the broadly-interpreted "mode selector" and "message generator" operate in a manner that would improve mobile communication device battery life. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018), *cert. denied*, 140 S. Ct. 911 (2020) (finding claims invalid that did not include limitations capturing the technological improvements disclosed in the specification). Unlike some of the discussion in the specification, there are no limitations in the claims regarding the types of messages that are

8

generated and transmitted when a particular transmission mode has been selected. *See* '236 Patent at Abstract. Nor is there sufficient information claimed, particularly in Claim 15, regarding how the "mode selector" performs the task of determining whether the recipient application is actively processing status updates to support patent eligibility.[7] *Compare id.* at Claim 15 *with id.* at 3:24-43.

Because the Court finds that the claims are directed to an abstract idea at *Alice* Step One, it proceeds to consider the claims at *Alice* Step Two.

### 2. *Alice* Step Two

The Court also agrees with Defendants that the claims lack an inventive concept. As noted, Plaintiff argues that "selecting a transmission mode based on whether a recipient application is actively processing status updates" supplies the inventive concept. Docket No. 664 at 3. However, this is the abstract idea itself. *See BSG Tech*, 899 F.3d at 1291 ("Here, the only alleged unconventional feature of BSG Tech's claims is the requirement that users are guided by summary comparison usage information or relative historical usage information. But this simply restates what we have already determined is an abstract idea. At *Alice* step two, it is irrelevant whether considering historical usage information while inputting data may have been non-routine or unconventional as a factual matter. As a matter of law, narrowing or reformulating an abstract idea does not add 'significantly more' to it."). Further, to the extent Plaintiff identifies this concept as a "novel" one that was "unknown" in the prior art (*see* Docket No. 664 at 4), that is not the

---

[7] Claim 17 requires that "the mode selector comprises a component to observe a local database for a record in the database, the record comprising an indication that the recipient application is actively processing status updates." Defendants discuss this limitation as implicating "conventional database technologies." *See, e.g.* Docket No. 552 at 24, 17. Plaintiff does not respond to Defendants' assertions or independently argue for the patent eligibility of Claim 17. *See generally* Docket No. 604 at 23-27. Based on the Court's review, this claim presents a much closer call than Claim 15. It provides some form of specificity about a technological method for achieving the claimed results. Ultimately, however, this claim and its limitations are not addressed by Plaintiff, it continues to employ many result-focused concepts (including requiring an open-ended "component" to observe a generic local database), it still does not necessarily lead to a technological improvement insofar as battery consumption, and Defendants have presented arguments to support their position that these additional limitations are not technological improvements or inventive concepts, as opposed to a narrower application of the abstract idea. *See also BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1287 (Fed. Cir. 2018) ("a claim is not patent eligible merely because it applies an abstract idea in a narrow way. For an application of an abstract idea to satisfy step one, the claim's focus must be something other than the abstract idea itself."); *see also id.* at 1287 n.1 (discussing dependent claims and explaining, "[a]lthough these claims cover a narrower range of data input than claim 1, the claims' focus remains on the abstract idea of considering historical usage information while inputting data."); *Ericsson*, 955 F.3d at 1326 ("We are mindful that the step one inquiry looks to the claim's 'character as a whole' rather than evaluating each claim limitation in a vacuum . . . . But where, as here, the bulk of the claim provides an abstract idea, and the remaining limitations provide only necessary antecedent and subsequent components, the claim's character as a whole is directed to that abstract idea.")

9

appropriate focus for the inventive concept analysis, either. *SAP Am., Inc. v. Investpic LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018) ("Under the principles developed in interpreting § 101, patent law does not protect such claims, without more, no matter how groundbreaking the advance.").

Plaintiff does not otherwise argue that the "mode selector" or "message generator" themselves supply an inventive concept. Under Plaintiff's proposed construction, these components include a broad range of generic computer components that are insufficient to transform the abstract idea into an inventive concept. *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1315 (Fed. Cir. 2016) ("Claims that amount to nothing significantly more than an instruction to apply an abstract idea using some unspecified, generic computer and in which each step does no more than require a generic computer to perform generic computer functions do not make an abstract idea patent-eligible, because claiming the improved speed or efficiency inherent with applying the abstract idea on a computer does not provide a sufficient inventive concept." (all internal citations and quotations omitted).)

Plaintiff suggests that the determination in *BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016) should control here. The claims at issue in *BASCOM* required "the installation of a filtering tool at a specific location, remote from end-users, with customizable filtering features specific to each end user." *Id.* at 1350. The Federal Circuit observed that "[a]s is the case here, an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Id.* The Federal Circuit explained that the claims:

> do not merely recite the abstract idea of filtering content along with the requirement to perform it on the Internet, or to perform it on a set of generic computer components. Such claims would not contain an inventive concept . . . . Nor do the claims preempt all ways of filtering content on the Internet; rather, they recite a specific, discrete implementation of the abstract idea of filtering content.

*Id.* The claims at issue in this case align with the scenario that *BASCOM* distinguished. Indeed, without any structural limitations on what a "mode selector" or "message generator" can be and how the two components are arranged, the claims here fail to "recite a specific, discrete implementation of the abstract idea." *Id.* As *Ericsson* explained,

> The most specific elements actually recited in the claim are "an access controller for controlling access," "an interception module for receiving a request," and "a decision entity for determining if the request should be granted." '510 patent claim 1. None of these elements are sufficient to turn the

10

claim into anything more than a generic computer for performing the abstract idea of controlling access to resources. Even assuming that this collection of elements led to a more efficient way of controlling resource access, "our precedent is clear that merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea."

*Ericsson*, 955 F.3d at 1330 (citation omitted).

The Court finds that the asserted claims of the '236 Patent lack an inventive concept. It accordingly finds the asserted claims invalid under 35 U.S.C. § 101. Defendants' summary judgment motion for invalidity of the asserted '236 Patent claims would be **GRANTED** on this basis.

### D. Impact of § 101 Determination for '236 Patent on Deferred Portions of Defendants' Motion to Stay

Because the Court finds that the asserted claims of the '236 Patent are invalid under 35 U.S.C. § 101, it is not necessary to institute a stay of proceedings as to the '236 Patent pending *inter partes* review of other asserted patents. The motion to stay (Docket No. 501) would be **DENIED AS MOOT** as to the '236 Patent.

Given these circumstances, the Court would consider a timely-filed request under Rule 54(b) for entry of partial final judgment as to the '236 Patent. *See, e.g.* Docket Nos. 490, 491 (Joint Stipulation for entry of Rule 54(b) Judgment entered as to U.S. Patent Nos. 8,296,351 and 8,676,929).

## IV. Conclusion

For the reasons stated in this Order, the Court would rule as follows:

(1) the parties' claim construction disputes with respect to the terms "mode selector" and "message generator" would be found **MOOT**;

(2) the Court would **GRANT** the portion of Defendants' Motion for Summary Judgment as to Non-infringement of the '961, '120, and '634 Patents and Invalidity of the '961, '634, '236, '713, and '250 Patents (Motion, Docket No. 540) that was previously deferred as it relates to the '236 Patent;

(3) the Court would **DENY** the portion of Defendants' motion to stay that was previously deferred as to the '236 Patent (*see* Docket Nos. 501 (motion), Docket Nos. 652, 655 (previous orders deferring ruling on motion as to '236 Patent)) **AS MOOT**;

(4) any request for entry of partial final judgment as to the '236 Patent under Rule 54(b) in advance of the determinations on the remainder of this case, including as to the stayed patents, would be due within seven days of the filing of this final ruling.